# EXHIBIT A

## IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| ESSAR STEEL MINNESOTA LLC and ESML HOLDINGS INC.,[1] | Case No. 16-11626 (BLS) |
| | (Jointly Administered) |
| Debtors. | **Related to Docket No. ____** |

## INTERIM ORDER (A) AUTHORIZING DEBTORS TO OBTAIN POSTPETITION FINANCING PURSUANT TO 11 U.S.C. §§ 362 AND 364 AND (B) SCHEDULING FINAL HEARING

Upon consideration of the motion (the "**Motion**"), dated July 19, 2016 [Dkt. No. __] of Essar Steel Minnesota LLC ("**ESML**" or the "**Borrower**") and ESML Holdings Inc. ("**Holdings**" and, together with ESML, the "**Debtors**") in the above-captioned cases (the "**Chapter 11 Cases**") for entry of an order pursuant to sections 362 and 364 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "**Bankruptcy Code**"), and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rules 4001-2 and 9013-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**") seeking, among other things, the Court's authorization for the Borrower to obtain from Strategic Partners Holdings Limited or its designee (the "**DIP Lender**"), an affiliate of SPL Advisors LLC, postpetition financing in an aggregate principal amount of up to $35,000,000 (the "**DIP Facility**");

---

[1] The last four digits of Essar Steel Minnesota LLC's federal taxpayer identification number are 8770.  The last four digits of ESML Holdings Inc.'s federal taxpayer identification number are 8071.

And, the interim hearing on the Motion having been held on July 26, 2016 (the "**Interim Hearing**") and the parties having reached an agreement with respect to interim approval of the DIP Facility, and having otherwise reserved their rights as set forth on the record at the Interim Hearing;

And the Debtors and the DIP Lender having agreed to the DIP Facility pursuant to the terms of a debtor-in-possession promissory note substantively in the form attached hereto as **Exhibit A** (the "**DIP Note**");

And due and sufficient notice of the relief set forth in this order (this "**Interim Order**" and, together with the DIP Note, the DIP Budget (as defined below) and the DIP Guaranty (as defined below), the "**DIP Documents**") having been provided and it appearing that no further or other notice of the Motion need be given;

And after due deliberation and consideration, and sufficient cause appearing therefor:

**BASED ON THE RECORD ESTABLISHED AT THE INTERIM HEARING, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[2]**

A.    Petition Date.  On July 8, 2016 (the "**Petition Date**"), the Debtors commenced their Chapter 11 Cases by filing voluntary petitions for relief under the Bankruptcy Code with the United States Court for the District of Delaware (the "**Court**").  The Debtors are operating their businesses and managing their affairs as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  To date, no trustee or examiner has been appointed in the Chapter 11 Cases.  On July 19, 2016, an official committee of unsecured creditors (the "**Committee**") was appointed in the Chapter 11 Cases.

---

[2]    Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, pursuant to Bankruptcy Rule 7052.

B.      Jurisdiction; Venue.  The Court has jurisdiction over these Chapter 11 Cases, the

parties, and the Debtors' property pursuant to 28 U.S.C. §1334.  This is a core proceeding

pursuant to 28 U.S.C. § 157(b)(2)(D).  Venue of the Chapter 11 Cases and the Motion is proper

under 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are

sections 362 and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001 and 9014 and

Rules 4001-2 and 9013-1 of the Local Rules.

C.      Notice.  The Debtors have represented that notice of the Interim Hearing and the

relief requested in the Motion has been provided by the Debtors, by telecopy, email, overnight

courier and/or hand delivery, to (a) the Office of the United States Trustee for the District of

Delaware (the "**U.S. Trustee**"), (b) counsel to all parties asserting a lien on or a security interest

in the assets of the Debtors to the extent reasonably known to the Debtors; (c) all known parties

with an interest in the collateral including, without limitation, the prepetition lenders; (d) the

Office of the United States Attorney for the District of Delaware; (e) the Internal Revenue

Service, and (f) the Committee (collectively, the "**Notice Parties**").  Under the circumstances,

such notice of the Interim Hearing and the relief requested in the Motion constitutes due,

sufficient and appropriate notice and complies with Section 102(1) of the Bankruptcy Code,

Bankruptcy Rules 2002 and 4001(b) and (c) and the Local Rules.

D.      Purpose and Necessity of Financing.  The Debtors had little working capital on

hand (approximately $700,000) as of the Petition Date, and need access to working capital

immediately. The Debtors require the financing provided in the DIP Documents (i) to provide

working capital and for other general corporate purposes of the Debtors, (ii) to pay

administration costs of these Chapter 11 Cases and claims or amounts authorized by order of this

Court, and (iii) to pay reasonable costs and expenses of the DIP Lender to the extent provided

under the DIP Documents (subject to the notice and objection provisions of paragraph 7 hereof). The Debtors are unable to obtain postpetition financing on equal or more favorable terms than those set forth in the DIP Documents.  A loan facility in the amount provided by the DIP Documents is not available to the Debtors without granting the DIP Liens (as defined below) and the DIP Superpriority Claim (as defined below) to the DIP Lender, pursuant to section 364(c) of the Bankruptcy Code, as provided in this Interim Order.  The DIP Facility represents the best postpetition financing available to the Debtors at this time.  Additionally, the terms of the DIP Facility are fair and reasonable.

  E. <u>Good Cause</u>.  The ability of the Debtors to obtain sufficient working capital and liquidity under the DIP Documents is vital to the Debtors, their estates, creditors and stakeholders.  The liquidity to be provided under the DIP Documents will enable the Debtors to continue to operate their businesses in the ordinary course and preserve the value of their businesses.  The Debtors' estates will be immediately and irreparably harmed if this Interim Order is not entered.  Good cause has, therefore, been shown for the relief granted herein.

  F. <u>Consideration</u>.  All of the Debtors will receive and have received fair consideration and reasonably equivalent value in exchange for access to the DIP Facility and all other financial accommodations provided under the DIP Documents.  In the absence of the availability of funds and liquidity under the DIP Facility in accordance with the terms hereof, the continued operation of the Debtors' businesses would not be possible, and serious and irreparable harm to the Debtors and their estates and creditors would occur.

  G. <u>Arm's Length Transaction</u>. The terms of the DIP Documents have been negotiated at arm's length, and the DIP Facility is being extended in good faith, as that term is used in section 364(e) of the Bankruptcy Code.

H.     Fair and Reasonable. The terms and conditions of the DIP Documents are fair and reasonable, the best available to Debtors under the circumstances, reflect Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration.

I.     Immediate Entry of Interim Order.  Immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2) is appropriate.  This Court concludes that entry of this Interim Order is in the best interests of the Debtors' respective estates, creditors, and stakeholders as its implementation will, among other things, allow for the continued flow of supplies and services to the Debtors necessary to sustain the operation of the Debtors' existing businesses and further enhance the Debtors' prospects for a successful restructuring.  Based upon the foregoing findings, acknowledgements, and conclusions, and upon the record made before this Court at the Interim Hearing, and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED:**

1.     Motion Granted.  The Motion is granted on an interim basis, and the DIP Facility is approved, on the terms and conditions set forth herein.  Any objections to the Motion with respect to the entry of this Interim Order that have not previously been withdrawn, waived, settled, or resolved, including as set forth in this Interim Order, and all reservations of rights included therein, are hereby denied and overruled.

2.     Effectiveness.  This Interim Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable immediately upon entry hereof.  Any objections to the Motion with respect to the entry of this Interim Order that have not previously been withdrawn, waived, settled, or resolved, including as set forth in this Interim Order, and all reservations of rights included therein, are hereby denied and overruled.  Notwithstanding

Bankruptcy Rules 4001(a)(3), 7062, or 9024 or any other Bankruptcy Rule, or Rule 62(a) of the

Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and

enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim

Order.

       3.    <u>Authorization of the Financing</u>.

       (a)    The Debtors are hereby expressly and immediately authorized and

empowered to enter into the DIP Facility and the DIP Documents, to execute and/or deliver all

DIP Documents and all other instruments, certificates, agreements and documents, and to take all

actions which may be reasonably required or are otherwise necessary for the performance by the

Debtors under the DIP Facility, including the creation and perfection of the DIP Liens described

and provided for herein.  The financial and credit accommodations to be provided to the Debtors

by the DIP Lender in respect of the DIP Facility shall be governed by the DIP Documents.

       (b)    The Borrower is hereby expressly and immediately authorized and

empowered to enter into the DIP Note and borrow money pursuant to the DIP Documents, and

Holdings is hereby authorized to enter into the DIP Guaranty and unconditionally guaranty such

borrowings and the Borrowers' other obligations under the DIP Documents (the "**DIP**

**Obligations**") in accordance with the terms of a guaranty in form and substance acceptable to

the DIP Lender (the "**DIP Guaranty**"), in each case up to an aggregate principal amount of

$7,000,000, plus interest, costs and other expenses and other amounts provided for in the DIP

Documents, which borrowed money shall be used solely as provided in the DIP Documents.

       (c)    As used herein, "**DIP Collateral**" shall mean all presently owned and

hereafter acquired tangible and intangible property and assets of the Borrower and its estate

wherever located, and any proceeds and products thereof, including, without limitation, accounts,

deposit accounts, cash, chattel paper, investment property, securities accounts, deposit accounts, cash, chattel paper, investment property, letter-of-credit rights, securities accounts, commercial tort claims, causes of action, investments, instruments, documents, inventory, contract rights, general intangibles, intellectual property, real property, fixtures, goods, equipment, and other fixed assets, and proceeds and products of all of the foregoing (including earnings and insurance proceeds).  The DIP Collateral shall not include causes of action for preferences, fraudulent conveyances, and other avoidance power claims under Sections 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code (the "**Avoidance Actions**") but shall, upon entry of a Final Order, include the proceeds of Avoidance Actions, which shall be available, to the extent necessary, to pay any administrative claim held by the DIP Lender in respect of the DIP Facility; *provided*, *however*, that if the Debtors, or to the extent permitted by the Court, any Creditors' Committee appointed in these cases, fails to commence Avoidance Actions within 60 days after the Termination Date, the DIP Lender shall have the right to pursue such actions, and the DIP Lender shall be deemed to have standing to bring same.

(d)     DIP Liens.  Effective immediately upon the entry of this Interim Order, and subject and subordinate to the Carve-Out, as set forth more fully in this Interim Order, the DIP Lender is hereby granted the following security interests and liens, which shall immediately be valid, binding, perfected, continuing, enforceable and non-avoidable (all liens and security interests granted to the DIP Lender pursuant to this Interim Order, or any Final Order (as defined below), the "**DIP Liens**"):

(i)     pursuant to Section 364(c)(2) of the Bankruptcy Code, first priority liens on, and security interests in, all DIP Collateral that was unencumbered by valid,

enforceable, perfected and non-avoidable liens as of the Petition Date (collectively, the "**Prepetition Liens**"); and

(ii)      pursuant to Section 364(c)(3) of the Bankruptcy Code, liens on, and security interests in, all DIP Collateral encumbered by Prepetition Liens immediately junior only to any such Prepetition Liens.

(e)      The DIP Documents constitute valid, binding and non-avoidable obligations of the Debtors enforceable against each of the Debtors in accordance with their respective terms for all purposes during the Chapter 11 Cases, any subsequently converted case of any Debtor under chapter 7 of the Bankruptcy Code, or after the dismissal of any case.  No obligation, payment, or transfer under the DIP Documents shall be stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under sections 502(d), 544, 547, 548, 549, 550 and 553 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-claims, defenses, disallowance, impairment, or any other challenges under the Bankruptcy Code or any other applicable foreign or domestic law or regulation by any person or entity.

(f)      <u>Other Provisions Relating to the DIP Liens</u>.  The DIP Liens shall secure all of the DIP Obligations.  The DIP Liens shall not, without the consent of the DIP Lender, be made subject to, or *pari passu* with, any other lien or security interest, other than to the extent expressly provided herein and to the Carve-Out, by any Court order heretofore or hereafter entered in the Chapter 11 Cases, and shall be valid and enforceable against any trustee appointed

in the Chapter 11 Cases, upon the conversion of any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code or in any other proceedings related to any of the foregoing (such cases or proceedings, "**Successor Cases**"), and/or upon the dismissal of any of the Chapter 11 Cases.  The DIP Liens shall not be subject to Sections 510, 549, 550 or 551 of the Bankruptcy Code.

(g)    Superpriority Administrative Claim Status.  The DIP Lender is hereby granted, pursuant to section 364(c)(1) of the Bankruptcy Code, an allowed superpriority administrative expense claim (the "**DIP Superpriority Claim**") under Section 503(b)(1) of the Bankruptcy Code for all DIP Obligations (as defined below), which DIP Superpriority Claim shall be subject and subordinate only to the Carve-Out, and no costs or expenses of administration, including, without limitation, professional fees allowed and payable under Sections 328, 330 and 331 of the Bankruptcy Code, or otherwise, that have been or may be incurred in these proceedings or in any Successor Cases, and no priority claims, are or will be, senior to, prior to or *pari passu* with the DIP Liens, the DIP Superpriority Claim or any of the DIP Obligations.

4.    Carve-Out.

(a)    Subject to the terms and conditions contained in this paragraph 4, the DIP Liens and the DIP Superpriority Claim shall, in all cases, be subject and subordinate to a carve-out (the "**Carve-Out**"), which shall be comprised of the following: (i) all fees required to be paid to the Clerk of the Court and to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a), (ii) all fees required to be paid to any chapter 7 trustee appointed upon the conversion of any of these Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code up to $50,000; (iii) allowed (whether allowed prior to or after the Carve-Out Trigger Notice (as defined below)) and unpaid

fees and expenses (collectively, the "**Allowed Professional Fees**") of the Debtors' professionals and the professionals of the Committee (collectively, the "**Carve-Out Professionals**") incurred from the Petition Date to the date of notice (a "**Carve-Out Trigger Notice**") from the DIP Lender that an Event of Default (as defined in the DIP Note) has occurred (clauses (i), (ii) and (iii), collectively, the "**Pre Carve-Out Fees**") to the extent, with respect to each Carve-Out Professional, consistent with the DIP Budget and any permitted variances thereon (the "**Pre Carve-Out Fee Cap**"); and (iv) $1,000,000 (the "**Post Carve-Out Trigger Notice Cap**"), which amount may be used to pay any Allowed Professional Fees incurred after the date of receipt by the Debtors of a Carve-Out Trigger Notice (the "**Post Carve-Out Fees**").  The Pre Carve-Out Fee Cap shall be reduced by the amount of any Pre Carve-Out Fees paid on or prior to receipt by the Debtors of a Carve-Out Trigger Notice.  The Post Carve-Out Trigger Notice Cap shall not be reduced or increased by the amount of any Pre Carve-Out Fees paid after receipt by the Debtors of a Carve-Out Trigger Notice.  For the avoidance of doubt, after the date of receipt by the Debtors of a Carve-Out Trigger Notice, the DIP Lender shall have no obligation to advance any funds to pay Post Carve-Out Fees.  The ability of any party to object to the fees, expenses, reimbursement or compensation described above shall not be impaired by the terms of the Carve-Out.

(b)     In the event that the Debtors' prepetition secured lenders agree to provide a carve-out from their collateral for the benefit of any Carve-Out Professional, the Carve-Out Professionals agree to seek to recover first from proceeds of DIP Collateral encumbered by such prepetition secured lenders' liens to satisfy any Post Carve-Out Fees to the extent of any such carve-out and, only if the recovered proceeds of such DIP Collateral are insufficient to pay the Post Carve-Out Fees to the extent of any such carve-out, shall such Carve-Out Professional seek

to recover Post Carve-Out Fees from DIP Collateral unencumbered by such prepetition secured lenders' liens.

      5.    <u>Authorization and Approval to Use Proceeds of DIP Facility</u>.  Subject to the terms and conditions of this Interim Order and the other DIP Documents, the Debtors are authorized during the period from the date hereof through and including the earlier to occur of (x) the date of entry of an order granting the relief request in this Motion on a final basis (the "**Final Order**") and (y) the Maturity Date (as defined in the DIP Note), in an aggregate principal amount not to exceed $7,000,000, to request and use proceeds of the DIP Facility, in the amounts and for the line item expenditures set forth in the proposed budget prepared by the Debtors (the "**DIP Budget**"), and a summary version of which is annexed hereto as **Exhibit B**, including any variances permitted under the DIP Note and subject to the DIP Lender's approval rights with respect to certain payments as set forth in the DIP Budget; *provided* that the Debtors may pay expenses incurred by the DIP Lender subject to paragraph 7 hereof and the DIP Note in excess of the amount budgeted for such expenses in any given month in the DIP Budget and such excess shall not be included in any calculation of the monthly variance.  The DIP Budget may only be amended, supplemented, modified, restated, replaced, or extended in accordance with the DIP Documents and the prior written consent of the DIP Lender without further order of the Court. Notwithstanding anything herein to the contrary, subject only to the Debtors' rights under paragraph 8 hereof and the Carve-Out, the Debtors' right to request or use proceeds of DIP Facility shall terminate on the Maturity Date.  Nothing in this Interim Order shall authorize the disposition of any assets of the Debtors or their estates or other proceeds resulting therefrom outside the ordinary course of business, except as permitted herein (subject to any required Court approval).

6.      <u>DIP Lien Perfection.</u>  This Interim Order shall be sufficient and conclusive evidence of the validity, perfection and priority of the DIP Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action to validate or perfect the DIP Liens or to entitle the DIP Liens to the priorities granted herein.  Notwithstanding the foregoing, the DIP Lender may, in its sole discretion, file such financing statements, deeds of trust, mortgages, security agreements, notices of liens and other similar documents, and is hereby granted relief from the automatic stay of Section 362 of the Bankruptcy Code in order to do so, and all such financing statements, deeds of trust, mortgages, security agreements, notices and other agreements or documents shall be deemed to have been filed or recorded at the time and on the date of the commencement of the Chapter 11 Cases.  The Debtors shall execute and deliver to the DIP Lender all such financing statements, mortgages, security agreements, notices and other documents as the DIP Lender may reasonably request to evidence, confirm, validate or perfect, or to insure the contemplated priority of the DIP Liens. The DIP Lender, in its sole discretion, may file a photocopy of this Interim Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which the Debtors have real or personal property and, in such event, the subject filing or recording officer shall be authorized to file or record such copy of this Interim Order.

7.      <u>Costs and Expenses, etc.</u>  To the fullest extent provided in the DIP Documents, the Debtors will pay all expenses incurred by the DIP Lender (including, without limitation, the reasonable fees and disbursements of its counsel and any internal or third-party appraisers, consultants, financial, restructuring or other advisors and auditors advising any such counsel) in

connection with (i) the preparation, execution, delivery, funding and administration of the DIP Documents, including, without limitation, all due diligence fees and expenses incurred or sustained in connection with the DIP Documents, (ii) the Chapter 11 Cases or any Successor Case, or (iii) enforcement of any rights or remedies under the DIP Documents, in each case whether or not the transactions contemplated hereby are fully consummated.  Notwithstanding any other provisions of this Interim Order, the DIP Lender, and its advisors and professionals, shall not be required to comply with the U.S. Trustee fee guidelines, but shall provide reasonably detailed statements (redacted if necessary for privileged, confidential or otherwise sensitive information, as to those statements provided to any party other than the U.S. Trustee) to the Office of the U.S. Trustee and counsel for the Committee and the Debtors.  Thereafter, within ten (10) days of presentment of such statements, if no written objections to the reasonableness of the fees and expenses charged in any such invoice (or portion thereof) is made, the Debtors shall pay in cash all such fees and expenses of the DIP Lender, and its advisors and professionals.  Any objection to the payment of such fees or expenses shall be made only on the basis of "reasonableness," and shall specify in writing the amount of the contested fees and expenses and the detailed basis for such objection.  To the extent an objection only contests a portion of an invoice, the undisputed portion thereof shall be promptly paid.  If any such objection to payment of an invoice (or any portion thereof) is not otherwise resolved between the Debtors, the Committee or the U.S. Trustee and the issuer of the invoice, either party may submit such dispute to the Court for a determination as to the reasonableness of the relevant disputed fees and expenses set forth in the invoice.  This Court shall resolve any dispute as to the reasonableness of any fees and expenses.  For the avoidance of doubt, and without limiting any of the forgoing or any other provision of this Interim Order, the DIP Lender's professional fees described herein

are, upon entry of this Interim Order and irrespective of any subsequent order approving or

denying the DIP Facility or any other financing pursuant to Section 364 of the Bankruptcy Code,

fully entitled to all protections of Section 364(e) of the Bankruptcy Code and are deemed fully

earned, indefeasibly paid, non-refundable, irrevocable and non-avoidable as of the date of this

Interim Order.

        8.    <u>Events of Default.</u>

        (a)    Any automatic stay otherwise applicable to the DIP Lender is hereby

modified so that, upon and after the occurrence of the Termination Date (as defined below), the

DIP Lender shall, subject to subparagraph (b) of this paragraph 8, be immediately entitled to

exercise all of its rights and remedies in respect of the DIP Collateral, in accordance with this

Interim Order and the other DIP Loan Documents.  The term "Termination Date" shall mean: (a)

prior to entry of the Final Order, the earlier to occur of (i) the Maturity Date, (ii) the date of

termination of the DIP Lender's obligation to make Advances pursuant to the exercise of

remedies under, and pursuant to the terms and conditions of, the DIP Note, and (iii) this Interim

Order ceasing to be in full force and effect for any reason, and (b) subsequent to entry of the

Final Order, the earlier to occur of (i) the Maturity Date, (ii) the date of termination of the DIP

Lender's obligation to make Advances pursuant to the exercise of remedies under, and pursuant

to the terms and conditions of, the DIP Note, and (iii) the Final Order ceasing to be in full force

and effect for any reason.

        (b)    On the fifth (5th) business day after the Debtors' receipt of written notice

by the DIP Lender of the occurrence of the Termination Date, at the DIP Lender's election and

without notice or further order of the Court: (1) the DIP Lender will have automatic and

immediate relief from the automatic stay with respect to the DIP Collateral (without regard to the

passage of time provided for in Bankruptcy Rule 4001(a)(3)), and will be entitled to exercise all

rights and remedies available to it under the DIP Documents, and applicable non-bankruptcy

law; and (2) Debtors must (i) surrender any DIP Collateral secured by liens created pursuant to

section 3(d)(i) of this Order, (ii) surrender the proceeds of any DIP Collateral secured by liens

created pursuant to section 3(d)(ii) of this Order, after payment in full of any senior liens on such

DIP Collateral, and (iii) otherwise cooperate with the DIP Lender in the exercise of its rights and

remedies under the DIP Documents and applicable non-bankruptcy law at the sole cost and

expense of the DIP Lender, including, without limitation, by filing a motion to retain one or

more agents to sell, lease, or otherwise dispose of the DIP Collateral upon the request of, and

subject to terms and conditions acceptable to, the DIP Lender.  Notwithstanding the foregoing,

during the five (5) business day period following the Debtors' receipt of written notice by the

DIP Lender of the occurrence of the Termination Date, the Debtors, the Committee, and the U.S.

Trustee may seek an order of this Court determining that an Event of Default alleged to have

given rise to the Termination Date did not occur; provided, however, that during such five (5)

business day period, the DIP Lender will have no obligation whatsoever to advance any monies

to the Debtors.

> (c)    Upon the entry of the Final Order, notwithstanding anything to the

contrary herein or in any other document to the contrary, upon written notice to the landlord of

any of the Debtors' leased premises that an Event of Default has occurred and is continuing and

after such landlord has had 5 business days to object, the DIP Lender may enter upon such leased

premises for the purpose of exercising any right or remedy with respect to the DIP Collateral

located thereon and will be entitled to such Debtor's rights and privileges under such lease

without interference from such landlord; provided that such DIP Lender shall pay to such

landlord rent first accruing after the above referenced written notice and during the period of occupancy by such DIP Lender, calculated on a per diem basis.

(d)     The automatic stay imposed under Section 362(a) of the Bankruptcy Code is hereby modified pursuant to the terms of the DIP Documents as necessary to authorize the DIP Lender to retain and apply payments, and otherwise enforce their respective rights and remedies hereunder subject to the provisions of paragraph 8(b) hereof.

9.     <u>No Surcharge</u>.  Debtors represent that the Budget contains all expenses that are reasonable and necessary for the operation of Debtors' businesses and the preservation of the DIP Collateral through the period for which the Budget runs, and therefore includes any and all items potentially chargeable to the DIP Lender under section 506(c) of the Bankruptcy Code. Therefore, in the exercise of their business judgment, subject to entry of the Final Order, Debtors agree that there will be no surcharge of the DIP Collateral for any purpose unless agreed to in writing by the DIP Lender and, effective upon entry of the Final Order, each Debtor, on behalf of its estate, will be deemed to have waived any and all rights, benefits, or causes of action under section 506(c) of the Bankruptcy Code, the "equities of the case" exception under section 552(b) of the Bankruptcy Code, or any other legal or equitable doctrine (including, without limitation, unjust enrichment) as they may relate to, or be asserted against, the DIP Lender, or any DIP Collateral.  In reliance on the foregoing, the DIP Lender has agreed to the entry of this Interim Order.

10.     <u>Amendments, Consents, Waivers, and Modifications</u>. The Debtors and the DIP Lender may enter into any written amendments, consents, waivers, or modifications to the DIP Documents (in accordance with the terms thereof) without the need for further notice and hearing or any order of this Court; *provided* that further notice and hearing or order of this Court shall be

required for any amendments, consents, waivers, or modifications that would (i) shorten the

Maturity Date or (ii) increase commitments, the rate of interest payable under the DIP

Documents, or require the payment of any additional fee; *provided, however*, that a copy of any

such amendment, consent, waiver or other modification shall be served by the Debtors on the

U.S. Trustee via electronic mail and such amendment, consent, waiver or other modification

shall not become effective until three (3) business days have passed following such service or the

U.S. Trustee have otherwise consented to such amendment, consent, waiver or other

modification.

11.    <u>Subsequent Reversal or Modification</u>.  This Interim Order is entered pursuant to,

*inter alia*, section 364 of the Bankruptcy Code and Bankruptcy Rule 4001(b), granting the DIP

Lender all protections afforded by section 364(e) of the Bankruptcy Code.  If any or all of the

provisions of this Interim Order are hereafter reversed, modified, vacated, or stayed, that action

will not affect (i) the validity of any obligation, indebtedness, or liability incurred hereunder by

any of the Debtors to the DIP Lender, prior to the date of receipt by the DIP Lender of written

notice of the effective date of such action or (ii) the validity and enforceability of any claim or

priority authorized or created under the DIP Documents.  Notwithstanding any such reversal,

stay, modification, or vacatur, any postpetition indebtedness, obligation or liability incurred by

any of the Debtors to the DIP Lender, prior to written notice to the DIP Lender of the effective

date of such action, shall be governed in all respects by the original provisions of this Interim

Order and the DIP Lender shall be entitled to all the rights and benefits granted herein and in the

DIP Documents, and under applicable law, with respect to all such indebtedness, obligations or

liability.

12.    <u>No Waiver</u>.  This Interim Order shall not be construed in any way as a waiver or

relinquishment of any rights that the DIP Lender or any affiliate, or any other party, may have to bring or be heard on any matter brought before this Court or any other court.

13.    <u>Conversion/Dismissal/Plan.</u>  Unless the DIP Lender consents in writing, prior to the Termination Date, the Debtors will not seek entry of an order confirming a plan in any of the Chapter 11 Cases unless the DIP Facility shall be indefeasibly paid in full in cash on the earlier of (a) the effective date of such plan or (b) the Termination Date, notwithstanding anything to the contrary in any such order confirming a plan. If an order dismissing or converting any of these cases under sections 305 or 1112 of the Bankruptcy Code or otherwise or an order appointing a chapter 11 trustee or an examiner with expanded powers is at any time entered, and unless otherwise agreed to by the DIP Lender, such order shall provide that (i) the DIP Superpriority Claim granted hereunder and in the DIP Documents shall continue in full force and effect, remain binding on all parties-in-interest, and maintain the priorities provided for the DIP Obligations and the DIP Superpriority Claim as provided in this Interim Order until all DIP Obligations are indefeasibly paid in full, in cash and completely satisfied and the commitments under the DIP Documents are terminated in accordance therewith, subject to the Carve-Out, (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for purposes of enforcing the DIP Superpriority Claim, and (iii) all postpetition indebtedness, obligation or liability incurred by any of the Debtors to the DIP Lender, prior to the date of such order, including, without limitation, the DIP Obligations, shall be governed in all respects by the original provisions of this Interim Order, and the DIP Lender, shall be entitled to all the rights, remedies, privileges, and benefits granted in the DIP Documents with respect to all such indebtedness, obligations, or liability.

14.    <u>Priority of Terms.</u>  To the extent of any conflict between or among (a) the terms

and provisions of this Interim Order, on the one hand, and (b) the express terms or provisions of

any of the other DIP Documents, any other order of this Court, or any other agreements, on the

other hand, unless such term or provision herein is phrased in terms of "as defined in" or "as

more fully described in" the DIP Documents, the terms and provisions of this Interim Order shall

govern.

15.      No Third Party Beneficiary.  Except as explicitly set forth herein, no rights are

created hereunder for the benefit of any third party, any creditor or any direct, indirect or

incidental beneficiary.

16.      Headings.  Section headings used herein are for convenience only and are not to

affect the construction of or to be taken into consideration in interpreting this Interim Order.

17.      Adequate Notice.  The notice given by the Debtors of the Interim Hearing was

given in accordance with Bankruptcy Rules 2002 and 4001(c)(2), and the Local Rules, and was

adequate and sufficient.  Under the circumstances, no further notice of the request for the relief

granted at the Interim Hearing is required.  The Debtors shall promptly mail copies of this

Interim Order to the Notice Parties.

18.      Indemnification.  Debtors will indemnify and hold harmless the DIP Lender in

accordance with the terms of the DIP Documents.

19.      No Marshaling.  Neither the DIP Lender nor any of the DIP Collateral will be

subject to the doctrine of marshaling.

20.      Binding Effect on Successors and Assigns.  The DIP Documents and the

provisions of this Interim Order, including all findings herein, shall be binding upon all

parties-in-interest in these Chapter 11 Cases, including, without limitation, the Debtors, the DIP

Lender, the Committee, and any examiner appointed in these Chapter 11 Cases, and their

19

respective successors and assigns (including any trustee or fiduciary hereinafter appointed as a legal representative of the Debtors or with respect to the property of the estates of the Debtors) whether in these Chapter 11 Cases, in any Successor Cases, or upon any dismissal of any such chapter 11 or chapter 7 case and shall inure to the benefit of the DIP Lender, the Debtors, and their respective successors and assigns.  In determining to make any loan (whether under the DIP Documents or otherwise), or in exercising any rights or remedies as and when permitted pursuant to the DIP Documents, the DIP Lender shall not (i) be deemed to be in control of the operations of the Debtors, (ii) be deemed to be acting as a "responsible person" with respect to the operation, management, sale or liquidation of any Debtor or (ii) owe any fiduciary duty to the Debtors, their respective creditors, shareholders, or estates.  Each admission and agreement contained in this Interim Order shall also be binding upon all other parties in interest, including, the Committee, under all circumstances and for all purposes.

21.    Release.  Upon the date that the DIP Facility is paid in full in cash, each Debtor, on behalf of its estate and itself, hereby releases the DIP Lender and its successors and assigns, and its present and former shareholders, affiliates, subsidiaries, divisions, predecessors, members, managers, directors, officers, attorneys, employees, agents, advisors, principals, consultants, and other representatives (collectively, the "**Releasees**"), of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, and obligations, of every kind, nature, and description, including, without limitation, any so-called "lender liability" claims or defenses, that Debtors (or any of them) had, have, or hereafter can or may have against Releasees as of the date hereof, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity, or otherwise, in respect of events that occurred on or prior to the date the DIP Facility is paid in full.

22.     <u>Subsequent Debtors</u>.  To the extent that any of the Debtors' direct or indirect parents or direct or indirect subsidiaries commence a case under chapter 11 of the Bankruptcy Code in this, or any, judicial district (each an "**Additional Debtor**"), such Additional Debtors shall be bound by the terms of this Interim Order without the need for further order of this Court.

23.     <u>Reservation of Rights and Mutual Acknowledgment</u>.  To the extent that claims or causes of action separate and apart from those that may arise out of or based upon the borrower/lender relationship established under the DIP Documents (the "**Other Potential Claims**") may or may not exist, or hereafter arise or be asserted, between or among each of the Debtors, on the one hand, and the DIP Lender, on the other hand, or their respective affiliates, the existence or assertion of any Other Potential Claim shall not impair, offset or otherwise affect in any way the respective express contractual rights and obligations of the Debtors and the DIP Lender under this Interim Order or any other DIP Document, including the DIP Lender's obligation to fund loans and the Debtors' obligations to repay the obligations, in each case strictly in accordance with the express terms of this Interim Order and the other DIP Documents.

24.     <u>Final Hearing.</u>

(a)     The Final Hearing to consider entry of the Final Order and final approval of the DIP Facility is scheduled for _____, 2016, at ___:___ ____ (EST) at the United States Bankruptcy Court for the District of Delaware.

(b)     On or before two business days after entry of this Interim Order, the Debtors shall serve, by United States mail, first-class postage prepaid, notice of the entry of this Interim Order and of the Final Hearing (the "**Final Hearing Notice**"), together with copies of this Interim Order and the Motion, on the Notice Parties and to any other party that has filed a request for notices with this Court prior thereto and to the Committee after the same has been

appointed, or Committee counsel, if the same shall have been appointed.  The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final Order shall file written objections with the Clerk of the Court no later than _____, 2016, at ___:___ ____ (EST), which objections shall be served so that the same are received on or before such date by: (i) proposed counsel for the Debtors, White & Case LLP, 1155 Avenue of the Americas, New York, NY 10036-2787, Attn: Thomas E Lauria and Andrew Zatz; (ii) proposed co-counsel for the Debtors, Fox Rothschild LLP, 919 N. Market St., Suite 300, P.O. Box 2323, Wilmington, DE 19899-2323, Attn: Jeffrey M. Schlerf and L. John Bird; (iii) counsel for the DIP Lender, Morrison Cohen LLP, 909 Third Avenue, New York, NY 10022-4784, Attn: Joseph T. Moldovan and Robert K. Dakis; and (iv) the U.S. Trustee, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Wilmington, DE 19801, Attn: Linda Casey.

25.    _Retention of Jurisdiction._  This Court has and will retain jurisdiction to enforce and interpret this Interim Order.

Dated:  Wilmington, Delaware
July _____, 2016

_____
UNITED STATES BANKRUPTCY JUDGE