# EXHIBIT B

**THIS PROMISSORY NOTE (THIS "NOTE") HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "ACT"), OR UNDER ANY APPLICABLE STATE SECURITIES LAW.  THIS NOTE MAY NOT BE OFFERED FOR SALE, SOLD, TRANSFERRED OR PLEDGED WITHIN THE UNITED STATES OR TO, OR FOR THE ACCOUNT OR BENEFIT OF, U.S. PERSONS EXCEPT (1) PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT UNDER THE ACT, (2) TO ESML HOLDINGS INC. ("HOLDINGS") OR ESSAR STEEL MINNESOTA LLC, (3) TO A PERSON WHOM PAYEE REASONABLY BELIEVES IS A "QUALIFIED INSTITUTIONAL BUYER" AS DEFINED IN RULE 144A UNDER THE ACT (A "QIB") PURCHASING FOR ITS OWN ACCOUNT OR FOR THE ACCOUNT OF A QIB IN COMPLIANCE WITH RULE 144A UNDER THE ACT, (4) OUTSIDE THE UNITED STATES IN AN OFFSHORE TRANSACTION IN COMPLIANCE WITH RULE 904 UNDER THE ACT, (5) PURSUANT TO THE EXEMPTION FROM REGISTRATION PROVIDED BY RULE 144 UNDER THE ACT (IF AVAILABLE), (6) TO AN INSTITUTIONAL "ACCREDITED INVESTOR" (AS DEFINED IN RULE 501(A)(1), (2), (3) OR (7) OF REGULATION D UNDER THE ACT) OR (7) PURSUANT TO ANOTHER EXEMPTION FROM REGISTRATION UNDER THE ACT, AND, IN EACH CASE, IN ACCORDANCE WITH ANY APPLICABLE STATE SECURITIES LAWS.  FOR PURPOSES OF CLAUSES (6) AND (7) ABOVE, AN OPINION OF COUNSEL THAT SUCH REGISTRATION IS NOT REQUIRED MAY BE REQUESTED BY HOLDINGS OR ESSAR STEEL MINNESOTA LLC.  AS USED HEREIN, THE TERMS "OFFSHORE TRANSACTION," "UNITED STATES" AND "U.S. PERSON" HAVE THE MEANINGS GIVEN TO THEM BY RULE 902 OF REGULATION S UNDER THE ACT.**

## ESSAR STEEL MINNESOTA LLC

### DEBTOR-IN-POSSESSION PROMISSORY NOTE

July [●], 2016
New York, New York

**$35,000,000**

FOR VALUE RECEIVED, **ESSAR STEEL MINNESOTA LLC**, a Minnesota limited liability company ("Maker"), promises to pay to Strategic Partners Holdings Limited ("Payee"), in the manner and at the place hereinafter provided, the principal amount equal to the lesser of (x) $35,000,000 (the "DIP Commitment") and (y) the unpaid outstanding principal amount of all advances made by Payee to Maker hereunder (the "Advances"), on the Maturity Date.  Capitalized terms used herein and not otherwise defined herein shall have the meanings provided in Section 11 below.

Maker also promises to pay interest on the unpaid outstanding principal amount hereof (including any PIK Interest (as defined below)) from the Effective Date until paid in full at an interest rate per annum that is at all times equal to 15.00% (the "Interest Rate"); provided that (i) any outstanding principal amount not paid when due and, to the extent permitted by applicable law, any interest not paid when due, in each case whether at stated maturity, by required prepayment, declaration, acceleration, demand or otherwise (both before as well as after judgment), shall bear interest at a rate that is 2.00% per annum in excess of the Interest Rate (the "Default Rate") and (ii) upon the occurrence and during the continuation of an Event of Default, any outstanding principal amount, to the extent permitted by applicable law, shall bear interest at the Default Rate.

Maker shall pay in cash to Payee (or an affiliate of Payee designated by Payee), upon Maker's receipt of (i) the Initial Advance, a fee equal to 3.00% of $30,000,000, and (ii) each Advance,

if any, made pursuant to clause (f) of Section 1 below, 3.00% of the amount of such Advance (the aggregate fees contemplated by the foregoing clauses (i) and (ii), the "Facility Fee").  On the earliest of (i) the Maturity Date, (ii) the Termination Date (as defined in the DIP Order), and (iii) the date principal and interest under this Note become due and payable in full, whether at maturity, by acceleration or otherwise, Maker shall pay in cash to Payee (or an affiliate of Payee designated by Payee) a fee equal to (A) 3.00% of $30,000,000, plus (B) 3.00% of the total Advances**,** if any, made pursuant to clause (f) of Section 1 below on or prior to such date (collectively, the "Exit Fee" and together with the Facility Fee, the "DIP Fees").  The DIP Fees shall be deemed earned, due, and owing as of the entry of the Interim Order, subject only to the timing of payment as set forth herein.

Accrued interest on this Note shall be payable on the last day of each quarter by capitalizing all interest that has accrued (and has not been paid) during such quarter as additional principal hereof (i.e., by adding on the last day of each quarter the amount of interest accrued during such quarter to the then-unpaid principal amount hereof (and thereby increasing the principal amount outstanding hereunder)) (such capitalized amount, the "PIK Interest").  Unless the context otherwise requires, for all purposes of this Note references to "principal amount" hereof refers to outstanding principal amount hereof plus any PIK Interest added thereto pursuant to this paragraph.  Any PIK Interest so added to the principal amount hereof shall bear interest as provided in the immediately preceding paragraph from the date on which such PIK Interest has been so added. The obligation of Maker to pay PIK Interest shall be automatically evidenced by this Note. Upon the request of Payee, Maker shall confirm in writing the principal amount hereof, including all PIK Interest added to the principal amount hereof pursuant to this paragraph.

In addition, (a) accrued and unpaid interest on this Note shall be paid in cash upon any repayment of this Note and on the Maturity Date and (b) any interest accrued at the Default Rate shall be paid in cash on demand.

All computations of interest shall be made on the basis of a 365-day year, for the actual number of days elapsed in the relevant month (including the first day but excluding the last day).  In no event shall the interest rate payable on this Note exceed the maximum rate of interest permitted to be charged under applicable law.

1.     **Advances**.  Payee agrees, subject to satisfaction of the conditions set forth in Section 3, to lend to Maker:

(a)     upon entry of the Interim Order, $7,000,000 (the "Initial Advance");

(b)     upon entry of the Final Order, $7,000,000;

(c)     on November 1, 2016, $6,000,000;

(d)     on January 2, 2017, $5,000,000;

(e)     on March 1, 2017, $5,000,000; and

(f)     once all Advances have been made pursuant to clauses (a) through (e) above, on such date or dates as may be agreed by Maker and Payee, one or more additional Advances not to exceed $5,000,000 in the aggregate;

provided that the terms set forth in clauses (b), (c), (d), (e) and (f) above may be modified upon the written agreement of Payee and Maker; provided, further, that it shall be in Payee's sole discretion whether to make any Advances contemplated by clause (f) above.  Amounts borrowed under this

Section 1 may not be voluntarily prepaid and, for the avoidance of doubt, once repaid may not be reborrowed.

2.    **Payments**.

(a)    Except as otherwise provided hereunder with respect to PIK Interest, all payments of principal and interest in respect of this Note shall be made in lawful money of the United States of America in same day funds at the address set forth immediately below Payee's signature on the signature page of this Note, or at such other place as Payee may direct in writing.  Whenever any payment on this Note is stated to be due on a day that is not a Business Day, such payment shall instead be made on the next Business Day, and such extension of time shall be included in the computation of interest payable on this Note.  Each payment made hereunder in same-day funds shall be credited first to interest then due and the remainder of such payment shall be credited to principal, and interest shall thereupon cease to accrue upon the principal so credited.  Each of Payee and any subsequent holder of this Note agrees, by its acceptance hereof, that before disposing of this Note or any part hereof it will make a notation hereon of all principal payments previously made hereunder and of the date to which interest hereon has been paid; provided, however, that the failure to make a notation of any payment made on this Note shall not limit or otherwise affect the obligation of Maker hereunder with respect to payments of principal or interest on this Note.

(b)    On the Maturity Date, Maker shall repay in cash the aggregate principal amount then outstanding under this Note (together with accrued and unpaid interest thereon).

3.    **Conditions Precedent**.

(a)    Conditions Precedent to Initial Advance.  The obligation of Payee to make the Initial Advance on the Effective Date is subject to the prior or concurrent satisfaction of the following conditions, unless expressly waived by Payee specifically with respect to any particular Advance:

(i)    Note Documentation.  Maker and Guarantor shall have delivered to Payee:

(A)    this Note, executed by Maker; and

(B)    the Guaranty, executed by Guarantor.

(ii)    Officer's Certificate.  Maker shall have delivered to Payee an officer's certificate, dated the Effective Date, certifying that the applicable conditions specified in this Section 3(a) have been fulfilled.

(iii)    Secretary's Certificate.  Maker and Guarantor shall have delivered to Payee:

(A)    copies of the organizational and governing documents of Maker and Guarantor, certified by the Secretary of State of its jurisdiction of organization (with respect to formation documents) and by the secretary or similar officer, as the case may be, of Maker and Guarantor, together with a good standing certificate from the Secretary of State of its jurisdiction of organization and, to the extent generally available, a certificate or other evidence of good standing as to payment of any applicable franchise or similar taxes from the appropriate taxing authority of each of such jurisdictions, each dated a recent date prior to the Effective Date;

(B)     resolutions of the governing body of Maker and Guarantor approving and authorizing the execution, delivery and performance of this Note, the Guaranty and any other documents, instruments and certificates required to be executed by such Persons in connection herewith and the transactions contemplated hereby certified as of the Effective Date by the secretary or similar officer, as the case may be, of Maker and Guarantor as being in full force and effect without modification or amendment; and

(C)     signature and incumbency certificates of the officers of Maker and Guarantor dated as of the Effective Date and certifying the names and true signatures of the officers and employees of such Persons authorized to execute, deliver and perform this Note, the Guaranty and any other document required to be executed in connection herewith.

(iv)     <u>Representations and Warranties; Covenants</u>. Unless expressly waived by Payee, (A) the representations and warranties made by Maker under this Note shall be true, correct and complete in all material respects (except that such representations and warranties which are qualified by materiality shall be true and correct in all respects) on and as of such date to the same extent as though made on and as of that date, except to the extent such representations and warranties specifically relate to an earlier date, in which case such representations and warranties shall have been true, correct and complete in all material respects on and as of such earlier date, and (B) Maker shall have performed and complied with all agreements, obligations and covenants required by this Note to be so performed or complied with by Maker at or prior to such date.

(v)     <u>No Event of Default</u>.  Unless expressly waived by Payee, no event shall have occurred and be continuing or would immediately result from the consummation of the borrowing under this Note that would constitute an Event of Default or an event, act or condition that, with notice or lapse of time or both, would constitute an Event of Default.

(vi)     <u>Initial Budget</u>.  Maker shall have delivered to Payee an initial cash flow budget depicting on a monthly basis projected receipts and disbursements, cash receipts, cash balance and loan balance from the Effective Date through the Maturity Date (the "<u>Initial Budget</u>"), a summary version of which shall be attached to the Interim Order, which budget shall be in form and substance satisfactory to Payee.[1]

(vii)     <u>Interim Order</u>. The Interim Order shall have been entered by the Bankruptcy Court and shall not have been reversed, modified, amended, stayed or vacated.

(b)     <u>Conditions Precedent to Subsequent Advances</u>.  The obligation of Payee to make each Advance subsequent to the Initial Advance is subject to the following conditions precedent:

(i)     <u>Representations and Warranties; Covenants</u>.  Unless expressly waived by Payee, (A) the representations and warranties made by Maker under this

---

[1] For the avoidance of doubt, "disbursements" shall include all uses of cash of any kind including, without limitation, investments, capital expenditures and repayments of indebtedness and "receipts" shall not include borrowings, tax refunds or other extraordinary receipts.

Note shall be true, correct and complete in all material respects (except that such representations and warranties which are qualified by materiality shall be true and correct in all respects) on and as of such date to the same extent as though made on and as of that date, except to the extent such representations and warranties specifically relate to an earlier date, in which case such representations and warranties shall have been true, correct and complete in all material respects on and as of such earlier date, and (B) Maker shall have performed and complied with all agreements, obligations and covenants required by this Note to be so performed or complied with by Maker at or prior to such date.

(ii)    No Event of Default.  Unless expressly waived by Payee, no event shall have occurred and be continuing or would immediately result from the consummation of the borrowing under this Note that would constitute an Event of Default or an event, act or condition that, with notice or lapse of time or both, would constitute an Event of Default.

(iii)    Officer's Certificate. Maker shall have delivered to Payee an officer's certificate signed by a Responsible Officer, dated the date of each subsequent Advance and certifying that the applicable conditions specified in this Section 3(b) have been fulfilled.

(iv)    Final Order. The Final Order shall have been entered by the Bankruptcy Court and shall not have been reversed, modified, amended, stayed or vacated.

4.    **Mandatory Repayment**.  Maker shall, at the election of Payee, be required to repay in cash the unpaid principal (and accrued interest) under this Note, and any unpaid fees and expenses (including, without limitation, the Exit Fee), upon:

(a)    a liquidation, dissolution or winding up of Holdings or Maker or any transaction that involves a direct or indirect sale of Holdings or Maker (including by way of a transfer of equity securities or all or substantially all of Holdings' or Maker's assets, merger, business combination, reorganization or otherwise, unless such transaction results in the holders of a majority of voting securities of Holdings or Maker, as applicable, prior to such transaction owning a majority of voting securities in the continuing entity after such transaction), in each case occurring after the date hereof;

(b)    the date that any chapter 11 plan confirmed by an order of the Bankruptcy Court in the Chapter 11 Cases shall become effective; or

(c)    if Maker shall arrange for replacement financing or additional financing in an amount in excess of the amounts set forth in Section 6(d) below.

5.    **Board Observation; Governance Rights**.

(a)    Upon Maker's receipt of the Initial Advance, and for so long as any principal or interest under this Note remains outstanding, Payee shall have the right to appoint, upon written notice to Maker, one representative (the "Board Observer") to attend (whether in person or by telephone as solely determined by the Board Observer) all meetings of the board of governors of Maker in an observer capacity, and, in each case, any committees duly authorized to act on behalf thereof (collectively, the "Board").  Payee hereby appoints, and Maker hereby accepts, John-Michael Lind as Board Observer.  The Board Observer shall not constitute a member of the Board and shall

not be entitled to vote on, or consent to, any matters presented to the Board or committee thereof. Payee shall be permitted to remove or replace the Board Observer at any time upon written notice to Maker.

(b)     (i) Maker will give the Board Observer written notice of each applicable meeting of the Board at the same time and in the same manner as notice is given to the members of the Board and (ii) the Board Observer will be provided with all written materials and other information (including, without limitation, copies of minutes of meetings) given to the members of the Board in connection with such meetings at the same time such materials and information are given to such members of the Board, subject to appropriate measures as required to preserve privilege and protect confidential information of Maker. Prior to attending any meeting of the Board, exercising any right or receiving any information contemplated under this Section 5, the Board Observer shall enter into a confidentiality agreement that is reasonably satisfactory in form and substance to Payee and Maker.

(c)     Upon Maker's receipt of the Initial Advance, and for so long as Payee holds this Note, SPL Advisors LLC ("SPL") shall have the right, to be exercised in its reasonable and good faith judgment, to review and discuss key stakeholder agreements, off-take, the Engineering, Procurement and Construction (EPC) domain, mineral rights and creditor issues with Maker's management, and to be directly involved in key stakeholder discussions.

(d)     Upon Maker's receipt of the Initial Advance, and for so long as any principal or interest under this Note remains outstanding, Payee shall have the right, to be exercised in its reasonable and good faith judgment, to (i) approve the hiring and termination (unless such termination is for cause) of each of the chief executive officer and chief financial officer of Maker, such approval not to be unreasonably withheld; and (ii) approve the selection of a chief restructuring officer of Maker and approve any termination or replacement thereof.

(e)     Notwithstanding any rights granted hereunder, Maker reserves the right to exclude the Board Observer from access to any material or meeting or any portion thereof (and to exclude SPL from materials or participation in review and discussions in Section 5(c) above) if the Board in good faith believes that there is or could be a conflict of interest with Payee (or any of its affiliates) with respect to such matters or such exclusion is reasonably prudent with respect to maintaining the confidential nature of the material or meeting or portion thereof. Without limiting the immediately preceding sentence, the applicable Board shall be entitled to excuse the Board Observer from any portion of any meeting of such Board (and any related materials) when such Board discusses any matters (i) directly relating to this Note that could reasonably be expected to present a conflict of interest for the Board Observer (based on the advice of counsel to Maker or the Board), (ii) subject to confidentiality provisions binding upon such Board which prohibit the disclosure of such matters to the Board Observer, or (iii) on which, if the Board Observer were present during such discussion, could reasonably be likely to result in such Board or Maker waiving its attorney-client privilege.

6.     **Covenants**. Maker covenants and agrees, upon Maker's receipt of the Initial Advance and until this Note is paid in full it will, unless otherwise agreed or waived by Payee:

(a)     apply the proceeds of the Advances hereunder in a manner consistent with the Budget (with a monthly variance for total expenditures in the Budget for such month not to exceed 10% in the aggregate), subject to Payee's approval rights with respect to certain payments as set forth in the Budget; provided that Maker may pay Payee's expenses in accordance with Section 6(h) and the DIP Order in excess of the amount budgeted for such expenses in any given month in the Budget and such excess shall not be included in any calculation of the monthly variance; provided, further,

that any amounts or expenses in the Budget that are unused in any month may be carried over and used by Maker in any subsequent month and such carried over amounts or expenses shall not apply to the monthly variance;

(b)      provide to Payee the same financial and operational information delivered by Maker to the lenders under the Existing Credit Agreements (at substantially the same time as such information is delivered to such lenders), and any other information Payee may reasonably request;

(c)      promptly after the occurrence of an Event of Default or an event, act or condition that, with notice or lapse of time or both, would constitute an Event of Default, provide Payee with a certificate of the chief executive officer or chief financial officer of Maker specifying the nature thereof and Maker's proposed response thereto;

(d)      not create, assume, guaranty or incur any indebtedness for borrowed money or liens other than (i) indebtedness for borrowed money or liens existing (A) on the Petition Date, (B) under this Note, and (C) in connection with providing mandatory financial assurance liens, deposits or letters of credit to the State of Minnesota required to maintain Maker's permit to mine and (ii) other indebtedness for borrowed money in an aggregate amount not in excess of $500,000 that is either unsecured or secured by security interests that are, in all respects, junior to the security interests granted herein and in the DIP Order;

(e)      not merge or consolidate with any other Person, or sell, lease or otherwise dispose of all or substantially all of its property or assets to any other Person;

(f)      continue to (i) engage in business of the same general type as now conducted by it, (ii) preserve, renew and keep in full force and effect its existence as a limited liability company and (iii) take all reasonable action to maintain all rights, privileges and franchises necessary or desirable in the normal conduct of its business, in each case except to the extent that failure to do so could not, either individually or in the aggregate, reasonably be expected to have a Material Adverse Effect;

(g)      deliver to Payee (i) by 12:00 p.m. (New York time) by the tenth day of each month (or, if such day is not a Business Day, the next succeeding Business Day), a reconciliation of actual receipts and disbursements, cash receipts, cash balance and loan balance against such figures set forth in the Budget, on a line-by-line basis, showing any percentage variance to the proposed corresponding line item of the Budget for the immediately preceding month, certified by a Responsible Officer of Maker as having been prepared in good faith and with written explanations of material variances; provided that the first such reconciliation that shall be required to be delivered to Payee pursuant to this clause (g) shall be delivered by September 10, 2016; and (ii) by 12:00 p.m. on the fifteenth day of each month (or, if such day is not a Business Day, the next succeeding Business Day) thereafter, an updated budget (commencing with the immediately succeeding day) supplementing the most recent Budget; at the time such budget is in form and substance acceptable to Payee in its sole discretion, such budget shall constitute a Supplemental Budget; provided that the first such Supplemental Budget required to be delivered to Payee pursuant to this clause (g) shall be delivered by September 15, 2016; provided, however, that Maker may make modifications to any Budget with the consent of Payee in its sole discretion);

(h)      subject to the terms and conditions of the DIP Order, reimburse Payee and its affiliates for all reasonable documented out-of-pocket expenses including, without limitation, all reasonable documented attorneys', consultants' and accountants' fees, and other out-of-pocket due diligence expenses whether incurred prior to, on or after the Petition Date;

(i)        cause the following actions to occur no later than the applicable dates set forth below:

(i)        On or before October 31, 2016, Maker shall have (A) reached a resolution that is reasonably acceptable to Payee with the counterparties to the Minnesota state taconite iron ore mining lease agreements numbered 3109-N through 3126-N, T-5018-N through T-5089-N, 3155-N, 3156-N, and T-5101-N through T-5103-N, as amended from time to time (the "State Lease Agreements"), (B) obtained a judicial determination of such rights that is reasonably acceptable to Payee, or (C) shown substantial progress with respect to such a resolution or determination, in the sole discretion of Payee;

(ii)        Maker shall have filed a plan of reorganization (the "Plan") and disclosure statement on or before January 31, 2017; and

(iii)        the effective date of such Plan shall be no later than March 31, 2017; and

(j)        not file any Plan, or any other motion to otherwise dispose of the Chapter 11 Cases, in each case without the express written consent of Payee.

7.        **Representations and Warranties**.

(a)        Maker hereby represents and warrants to Payee that, except as set forth on the Schedule of Exceptions attached hereto as Schedule 1:

(i)        It is a duly organized and validly existing limited liability company in good standing under the laws of the jurisdiction of Minnesota.

(ii)        Subject to the entry of the DIP Order, the execution, delivery and performance by Maker of this Note and the consummation of the transactions contemplated hereby: (A) has been duly authorized by all necessary Board and, if required, equityholder action; (B) do not and will not contravene any provision of any existing law or regulation binding on Maker or its assets, business or properties, or any order, judgment, award or decree of any court, arbitrator or governmental authority binding on Maker or its assets, business or properties, the violation of which could have a Material Adverse Effect, or the terms of the organizational and governing documents of Maker; (C) with respect to any material contract to which Maker is a party, do not and will not (x) conflict with, contravene, result in any violation or breach of or default thereunder (with or without the giving of notice or the lapse of time or both), (y) create in any other Person a right or claim of termination or amendment thereunder, or (z) require modification, acceleration or cancellation of any contractual obligation of Maker; and (D) do not and will not result in the creation of any lien (or obligation to create a lien) against any property, asset or business of Maker other than as provided in the DIP Order.

(iii)        Subject to the entry of the DIP Order, this Note constitutes the duly authorized, legally valid and binding obligation of Maker, enforceable against Maker in accordance with its terms, except as enforcement may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or other similar laws or equitable principles relating to or limiting creditors' rights generally.

(iv)     Subject to the entry of the DIP Order, the "first day orders" and any other orders of the Bankruptcy Court, it has all requisite limited liability company power and authority to own and operate its properties, to transact the business in which it is now engaged and to execute, deliver and perform its obligations under this Note.

(v)     Other than the DIP Order, no approval, consent, compliance, exemption, authorization, or other action by, or notice to, or filing with, any Person, and no lapse of any waiting period, is necessary or required in connection with the execution, delivery or performance by (including, without limitation, the payment of interest on the Note), or enforcement against, Maker of this Note or the consummation of the transactions contemplated hereby.

(vi)     Subject to the entry of the DIP Order, there are no legal actions, suits, proceedings, claims or disputes pending or, to the knowledge of Maker, threatened, at law, in equity, in arbitration or before any governmental authority purporting to enjoin or restrain the execution, delivery or performance of this Note.

(vii)     Maker has furnished Payee with true and complete copies of (i) the audited annual financial statements for the fiscal year ended March 31, 2015 (the "Audited Financial Statements"), and (ii) the unaudited quarterly financial statements for the fiscal year ended March 31, 2016 (the "Unaudited Financial Statements" and together with the Audited Financial Statements, collectively the "Financial Statements"). The Financial Statements fairly present, in all material respects, the financial position of Maker as of the respective dates thereof, and the results of operations and cash flows of Maker as of the respective dates or for the respective periods set forth therein, all in conformity with United States generally accepted accounting principles consistently applied during the periods involved, except as otherwise set forth in the notes thereto and subject, in the case of the Unaudited Financial Statements, to normal year-end audit adjustments. As of the dates of the Financial Statements, Maker had no material obligation, indebtedness or liability (whether accrued, absolute, contingent or otherwise, known or unknown, and whether due or to become due), which was not reflected or reserved against in the balance sheets or the notes thereto that are part of the Financial Statements, except for those incurred in the ordinary course of business, and which are fully reflected on Maker's books of account and, individually or in the aggregate, would not result in a Material Adverse Effect.

(viii)     Maker does not own of record or beneficially, directly or indirectly, (A) any shares of outstanding capital stock or securities convertible into capital stock of any other corporation, or (B) any equity, voting or participating interest in any limited liability company, partnership, joint venture or other non-corporate business enterprises.

(b)     Payee hereby represents and warrants to Maker that:

(i)     It is an affiliate of SPL Advisors LLC.

(ii)     It is a highly sophisticated investor with extensive knowledge and experience in financial and business matters and expertise in assessing the credit, investment and all other relevant risks related to this Note; it is capable of evaluating independently the merits, risks and suitability of investing in the Note (including,

without limitation, the tax consequences of purchasing, owning or disposing of the Note); it has the ability to bear the economic risk of an investment in this Note, has no need for liquidity with respect to an investment in the Note, and is able to sustain a complete loss of an investment in this Note.

(iii)    It has made its own independent decision to invest in this Note and as to whether the investment in the Note is appropriate or proper for it based upon its own judgment and upon advice from such advisers as it has deemed necessary.

(iv)    In making its investment decision, Payee: (A) has relied on its own examination of Maker, including the merits and risks involved; (B) was given full access to any and all information and personnel related to Maker and any and all of its affiliates that it deemed necessary; (C) has made its own assessment of Maker and the Note based on information provided to it along with information that is publicly available; (D) has consulted its own independent advisors or otherwise satisfied itself concerning relevant legal, business, currency and other economic considerations and the effects of United States federal, state and local income tax laws and foreign tax laws generally and the U.S. Employee Retirement Income Security Act of 1974, as amended, the U.S. Investment Company Act of 1940, as amended, and the Act and other applicable securities laws; and (E) has received all information that it believes is necessary or appropriate in order to make its investment decision in respect of Maker and this Note.

(v)    It is an "Accredited Investor" as defined in Regulation D under the Act.

(vi)    It is not purchasing this Note with a view to, or for offer or sale in connection with, any distribution thereof (within the meaning of the Act) that would be in violation of the securities laws of the United States or any state thereof.

(vii)    It understands and acknowledges that Maker is offering and selling this Note in reliance upon an exemption from the registration requirements of the Act and that the Note is a "restricted security" within the meaning of Rule 144(a)(3) under the Act.

(viii)    It became aware of the offering of this Note by Maker solely by direct contact between itself and Maker (and Maker's affiliates) or between itself and one or more agents acting on behalf of Maker (and Maker's affiliates), with whom it has had a pre-existing business relationship and did not become aware of the offering or the Note by any other means, including by any form of general advertising or general solicitation.

(ix)    It understands and acknowledges that the Note has not been and will not be registered under the Act or with any State or other jurisdiction of the United States, nor approved or disapproved by the U.S. Securities and Exchange Commission, any state securities commission in the United States or any other U.S. regulatory authority; it understands and acknowledges that it may not offer, sell, pledge or otherwise transfer the Note at any time, except: (A) to Maker or one of its subsidiaries, (B) pursuant to a registration statement that has been declared and remains effective under the Act, (C) in a transaction that is exempt from the requirements of the Act, and may require the delivery of such certificates, legal

opinions and other information as it may request; it understands and acknowledges that this Note will bear a legend to this effect.

(x)    It is either (A) acting for its own account or (B) acquiring the Note for one or more managed accounts and represents and warrants that it is authorized in writing by each managed account: (1) to purchase the Note for such managed account; and (2) to execute and deliver this Note on behalf of such managed account; it agrees to indemnify and hold Maker harmless from any and all costs, claims, liabilities and expenses (including legal fees and expenses) arising out of or in connection with any breach of the representations and warranties in this Section 7(b), and the provisions of this Section 7(b) shall survive the resale of the Note by or on behalf of the managed accounts.

(xi)    It is a duly organized and validly existing international business company in good standing under the laws of the jurisdiction of its organization.

(xii)    Subject to entry of the DIP Order, this Note constitutes the duly authorized, legally valid and binding obligation of Payee, enforceable against Payee in accordance with its terms, except as enforcement may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or other similar laws or equitable principles relating to or limiting creditors' rights generally.

(xiii)    The execution, delivery and performance of this Note will not violate any provision of any existing law or regulation binding on Payee, or any order, judgment, award or decree of any court, arbitrator or governmental authority binding on Payee, the violation of which would have a material adverse effect on the business, operations, assets or financial condition of Payee and its subsidiaries, taken as a whole, or the organizational and governing documents of Payee.

(xiv)    It has all requisite international business company power and authority to own and operate its properties, to transact the business in which it is now engaged and to execute, deliver and perform its obligations under this Note.

(xv)    It is aware that Maker is relying on the representations, warranties, agreements, acknowledgments, waivers, releases and acceptances Payee makes in this Note and that Maker would not enter into this Note absent the foregoing.

8.    **Reorganizational Matters**.

(a)    <u>Superpriority Claims and Liens</u>.  Maker hereby covenants, represents and warrants that, upon entry of the DIP Orders, the Obligations of Maker hereunder authorized by the DIP Orders:

(i)    pursuant to section 364(c)(1) of the Bankruptcy Code, constitute an allowed administrative expense claim in the Chapter 11 Cases having superpriority over all administrative expenses of the kind specified in section 364(c)(1), 503(b), 507(a)(2), 507(b) or 507(d) of the Bankruptcy Code;

(ii)    pursuant to section 364(c)(2) of the Bankruptcy Code, shall be secured by, and Maker shall have granted to Payee, a perfected first priority Lien on all presently owned and hereafter acquired tangible and intangible property and assets of Maker and its estate wherever located, and any proceeds and products thereof, including, without limitation, accounts, deposit accounts, cash, chattel paper,

investment property, letter-of-credit rights, securities accounts, deposit accounts, cash, chattel paper, investment property, letter-of-credit rights, securities accounts, commercial tort claims, causes of action, investments, instruments, documents, inventory, contract rights, general intangibles, intellectual property, real property, fixtures, goods, equipment, and other fixed assets and proceeds and products of all of the foregoing (including earnings and insurance proceeds) (collectively, the "Collateral") that was unencumbered by any valid, enforceable, perfected and non-avoidable liens as of the Petition Date (collectively, the "Prepetition Liens"); provided that the Collateral shall not include Avoidance Actions but shall, upon entry of a Final Order, include the proceeds of Avoidance Actions; and

(iii)    pursuant to section 364(c)(3) of the Bankruptcy Code, shall be secured by, and Maker shall have granted to Payee, a perfected Lien on all Collateral encumbered by Prepetition Liens, in each case immediately junior only to such Prepetition Liens.

(b)    Carve-Out.  Each of Sections 8(a)(i), 8(a)(ii) and 8(a)(iii) shall be subject and subordinate to the Carve-Out.

9.    **Events of Default**.  The occurrence of any of the following events shall constitute an "Event of Default":

(a)    the failure of Maker or Guarantor to pay any principal under this Note when due, whether at stated maturity, by required prepayment, declaration, acceleration, demand or otherwise, or failure of Maker to pay any interest or other amount due under this Note within three Business Days after the date due;

(b)    the failure of Maker to perform or observe any other term, covenant or agreement to be performed or observed by it pursuant to this Note or the DIP Order, and, with respect to any such term, covenant or agreement other than the milestones set forth in Section 6(i), such failure remains unremedied for a period of thirty (30) calendar days after written notice of such failure is given by Payee to Maker;

(c)    any representation or warranty made by Maker to Payee in connection with this Note shall have been false in any material respect (or, if such representations and warranties are qualified by materiality, shall have been false in any respect) when made;

(d)    except with respect to defaults existing on the Effective Date, a default under any other agreement to which Maker is a party that would have a Material Adverse Effect;

(e)    a Material Adverse Effect (other than in respect of defaults existing on the Effective Date) shall have occurred;

(f)    Maker ceases or publicly announces its intent to cease operating and carrying on its business as it is now conducted;

(g)    (A) the failure of Guarantor to perform or observe any term, covenant or agreement to be performed or observed by it pursuant to the Guaranty, or (B) any representation or warranty made by Guarantor to Payee in connection with the Guaranty shall have been false in any material respect (or, if such representations and warranties are qualified by materiality, shall have been false in any respect) when made;

(h)    Maker shall file a plan or disclosure statement that fails to provide for the

indefeasible repayment in full of the Obligations;

(i)        (A) the rights of Maker under the Lease Agreements are, in any way, impaired other than the impairments existing on the Effective Date, (B) the Lease Agreements are terminated, amended or otherwise modified in any way without the express written consent of Payee, or (C) the Lease Agreements are assumed and assigned or rejected without the express written consent of Payee;

(j)        the reversal, vacatur, stay, amendment, supplementation or other modification of the DIP Order in any way without Payee's consent (which consent for non-material matters shall not be unreasonably withheld), or Maker shall apply for authority to do so or shall take any action to support any third party's application for authority to do so without Payee's consent having been obtained;

(k)        the Chapter 11 Cases shall be dismissed or converted to a case under Chapter 7 of the Bankruptcy Code or Holdings or Maker shall file a motion or other pleading seeking the dismissal or conversion of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise without the consent of Payee; a trustee under Chapter 7 or Chapter 11 of the Bankruptcy Code or a responsible officer or an examiner with enlarged powers relating to the operation of the business (powers beyond those set forth in sections 1106(a)(3) and (4) of the Bankruptcy Code) under section 1106(b) of the Bankruptcy Code shall be appointed in the Chapter 11 Cases; or any manager or member of Guarantor or Maker shall authorize a liquidation of Maker's business;

(l)        the Bankruptcy Court shall enter an order or orders granting relief from the automatic stay applicable under section 362 of the Bankruptcy Code pertaining to the Collateral to the holder or holders of any security interest to permit foreclosure (or the granting of a deed in lieu of foreclosure or the like) on any assets of Maker in an amount exceeding $5,000,000, individually or in the aggregate; or

(m)        the Bankruptcy Court shall enter an order or orders to sell, transfer, lease, exchange, alienate or otherwise dispose of any assets or properties of Maker or any equity interest in Maker pursuant to section 363 of the Bankruptcy Code other than as approved by Payee unless such order or orders contemplate the repayment in full in cash of and termination in full of all commitments and Obligations under this Note.

10.        **Remedies**.  Subject to the terms of the DIP Order, upon the occurrence and during the continuance of any Event of Default, Payee may, by written notice to Maker and Payee, cease making any further Advances hereunder and declare the then-outstanding principal amount of this Note together with accrued interest thereon to be due and payable, and the principal amount of this Note together with such interest shall thereupon immediately become due and payable without presentment, further notice, protest or other requirements of any kind (all of which are hereby expressly waived by Maker).

11.        **Definitions**.  The following terms used in this Note shall have the following meanings (and any of such terms may, unless the context otherwise requires, be used in the singular or the plural depending on the reference):

"Avoidance Actions" means actions for preferences, fraudulent conveyances, and other avoidance power claims under sections 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code.

"Bankruptcy Code" means chapter 11 of title of the United States Code, 11 U.S.C. §§

101. et. seq., as now or hereafter in effect or any successor thereto.

"Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware.

"Budget" shall mean the budget for Maker and Holdings comprised, collectively but without duplication, of all line items that are set forth in the Initial Budget and any Supplemental Budget.

"Business Day" means any day other than a Saturday, Sunday or legal holiday under the laws of the State of New York or any other day on which banking institutions located in such state are authorized or required by law or other governmental action to close.

"Carve-Out" has the meaning specified in the Interim Order and, upon entry thereof, the Final Order.

"Chapter 11 Cases" means the voluntary petitions for relief filed on July 8, 2016 by Holdings and Maker, jointly administered as Case No. 16-11626, under chapter 11 of the Bankruptcy Code.

"DIP Facility" means, at any time, the aggregate amount of Payee's commitments to make Advances at such time.

"DIP Order" means the Interim Order and, upon entry thereof, the Final Order.

"Effective Date" means the date on which each the conditions precedent set forth in Section 3(a) have been satisfied (or expressly waived by Payee).

"Event of Default" means any of the events set forth in Section 9.

"Existing Credit Agreements" means, together, (A) that certain Credit and Security Agreement, dated September 30, 2014, among Maker, the guarantors party thereto, the lenders from time to time party thereto, and U.S. Bank National Association, as agent (as amended, amended and restated, supplemented and/or otherwise modified from time to time) and (B) that certain Senior Secured Credit Agreement, dated as of December 29, 2010, among Maker, the lenders from time to time party thereto, and ICICI Bank Limited, as facility agent (as amended, amended and restated, supplemented and/or otherwise modified from time to time).

"Final Order" means, collectively, the final order or orders entered by the Bankruptcy Court with respect to Maker in the Chapter 11 Cases after a final hearing under Bankruptcy Rule 4001(c)(2), authorizing and approving the DIP Facility and terms of this Note and the Guaranty (including the payment of interest, fees, costs and expenses hereunder), which order or judgment is in effect and not stayed.

"Guarantor" means ESML Holdings, Inc.

"Guaranty" means the Guaranty, dated as of the Effective Date, by Guarantor in favor of Payee, as the same may be amended, restated, supplemented and/or otherwise modified from time to time, as executed as set forth in **Exhibit A** hereto.

"Interim Order" means, collectively, the interim order or orders entered by the Bankruptcy Court with respect to Maker in the Chapter 11 Cases, together with all extensions, modifications and amendments thereto, which, among other matters but not by way of

limitations, authorizes, on an interim basis, Maker to execute and perform under the terms of this Note and Holdings to execute and perform under the terms of the Guaranty, issue indebtedness and incur other obligations in connection therewith, which order and all extensions, modifications and amendments thereto shall be in form and substance reasonably satisfactory to Payee and which shall be deemed satisfactory to Payee if such order is substantially in the form of **Exhibit B** hereto.

"<u>Lease Agreements</u>" means the State Lease Agreements and Maker's Great Northern Iron Ore Properties and Superior Mineral Resources LLC mineral leases.

"<u>Lien</u>" means any mortgage, pledge, hypothecation, collateral assignment, deposit arrangement to create security, encumbrance, lien (statutory or other), charge, or preference or other security interests or preferential arrangement in the nature of a security interest of any kind or nature whatsoever (including any conditional sale or other title retention agreement, any easement, right of way or other encumbrance on title to real property, and any financing lease having substantially the same economic effect as any of the foregoing).

"<u>Material Adverse Effect</u>" means a material adverse effect on (a) the business, assets, results of operations or financial condition of Maker, individually or in the aggregate, (b) the ability of Maker to perform any of its obligations under this Note, or (c) the validity or enforceability of this Note; <u>provided</u> that the commencement of the Chapter 11 Cases shall not, in itself, constitute a Material Adverse Effect.

"<u>Maturity Date</u>" means March 31, 2017.

"<u>Obligations</u>" means all obligations under this Note, including without limitation, the obligations to pay principal, interest and all other amounts pursuant hereto.

"<u>Person</u>" means any individual, partnership, limited liability company, joint venture, firm, corporation, association, bank, trust or other enterprise, whether or not a legal entity, or any government or political subdivision or any agency, department or instrumentality thereof.

"<u>Petition Date</u>" means July 8, 2016.

"<u>Responsible Officer</u>" means the chief executive officer, president, chief financial officer, principal accounting officer, treasurer, corporate controller, vice president of finance or treasury or such other officers of Maker as may be agreed between Maker and Payee from time to time, but in any event, with respect to financial matters, the chief financial officer, corporate controller, principal financial officer or treasurer of Maker.

"<u>Supplemental Budget</u>" means, in respect of the Initial Budget, supplemental or replacement budgets delivered to and approved by Payee in accordance with Section 6(g) (covering any time period covered by a prior budget or covering additional time periods).

12.    **Miscellaneous**.

(a)     Except as otherwise expressly provided herein, all notices and other communications provided for hereunder shall be in writing (including telefacsimile communication) and mailed, telecopied, or delivered to each party hereto at its address specified beneath its signature below or, in each case, at such other address as shall be designated in writing by Payee or Maker from time to time.  All such notices and communications shall be deemed to have been duly given when: delivered by hand, if personally delivered; when delivered by courier, if delivered by commercial

overnight courier service; if mailed, five Business Days after being deposited in the mail, postage prepaid; or if telecopied, upon receipt.

(b)      Neither this Note nor any terms hereof may be amended, supplemented, modified or waived except in accordance with the provisions of this subsection (b).  Subject to the terms of the DIP Order, Payee and Maker may, from time to time, enter into written amendments or waivers of this Note.  Any such amendment, supplement, modification or waiver shall be binding upon Maker, Payee, and any future holders of this Note.

(c)      Maker hereby agrees to (i) indemnify and hold harmless Payee, SPL, and the officers, directors, trustees, employees, agents, advisors and affiliates of Payee and SPL (each, an "Indemnified Party"), to the fullest extent permitted by law, from and against any and all actual losses, claims, damages, obligations, penalties, judgments, awards and other liabilities as and when incurred by such Indemnified Party (collectively, "Liabilities") and (ii) fully reimburse such Indemnified Party for any and all reasonable and documented out of pocket fees, costs, expenses and disbursements (in all such cases, whether legal or otherwise) as and when incurred by such Indemnified Party (collectively, "Expenses"), including those of investigating, preparing for (including, without limitation, preparing, reviewing or furnishing documents), participating in, defending against or giving testimony with respect to any governmental requests, inquiries, investigations, actions, claims, interrogatories, subpoenas, suits, litigation, proceedings or injunctions, whether or not in connection with any threatened or actual litigation, arbitration or other dispute resolution process and whether or not such Indemnified Party is a direct party thereto (collectively, "Actions"), in the case of each of the foregoing clauses (i) and (ii) directly or indirectly caused by, relating to, based upon, arising out of or in connection with any of the following:  (w) any actions or inactions by Maker (or any of its affiliates) with respect to this Note (including without limitation any breach of any provision hereof), (x) the transactions contemplated hereby or (y) the determination and enforcement by such Indemnified Party of its rights pursuant to this Note (including, without limitation, these indemnification provisions); provided, however, that such indemnification agreement will not apply to any portion of any such Liability or Expense to the extent it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from the gross negligence, bad faith or willful misconduct of, or material breach of this Note by, any Indemnified Party (or its affiliates and controlling persons and their respective directors, officers, or employees).  Neither Payee nor any of its affiliates shall have any liability (whether direct or indirect, in contract or tort or otherwise) for any exemplary, special, indirect, consequential, or punitive damages, alleged in connection with, arising out of, or relating to any claims, damages, obligations, penalties, judgments, awards or other liabilities, this Note, the financings contemplated hereunder, the use or the proposed use of the proceeds thereof, or any of the other transactions contemplated hereunder.  This Section 12(d) shall survive indefinitely following any repayment of this Note.

If any Action is commenced as to which an Indemnified Party proposes to demand indemnification hereunder, it will promptly notify Maker; provided, however, that any failure by an Indemnified Party to notify Maker will not relieve Maker from its obligations hereunder.  Each Indemnified Party will have the right to retain legal counsel of its own choice to represent it at its own expense.  Such legal counsel will, to the extent it believes consistent with its professional responsibilities, cooperate with Maker and any legal counsel designated by Maker.  Maker will be liable for any settlement of any claim against an Indemnified Party made with Maker's written consent, which consent will not be unreasonably withheld.  Maker will not, without the prior written consent of the relevant Indemnified Party, (i) settle or compromise any claim, (ii) permit a default or (iii) consent to any settlement or other such agreement or the entry of any judgment, in all of the foregoing cases in connection with or related to any Action with respect to which indemnification or contribution may be sought hereunder (whether or not such Indemnified Party is an actual or potential

party to such Action) or as to which any allegation of wrongful acts or omissions by such Indemnified Party is denied.  Each Indemnified Party shall, in consultation with Maker, take all reasonable steps to mitigate any losses, claims, damages and liabilities and shall give (subject to confidentiality or legal restrictions) such information and assistance to Maker as Maker may reasonably request in connection with any action, proceeding or investigation in connection with any losses, claims, damages and liabilities.

      (d)     Maker and any endorser of this Note hereby consent to renewals and extensions of time at or after the maturity hereof, without notice, and hereby waive diligence, presentment, protest, demand and notice of every kind and, to the full extent permitted by law, the right to plead any statute of limitations as a defense to any demand hereunder.

      (e)    (i)  The term "<u>Payee</u>" as used in this Note shall include any transferee of this Note whose name has been recorded by the Maker in the Note Register (as such term is defined below).

      (ii)    Notwithstanding any anything contrary contained in this Note, his Note may not be transferred or assigned, whether in whole or in part, without the written consent of Maker; <u>provided</u> that Payee may transfer this Note to one or more affiliates of Payee upon (A) prior written notice to Maker, (B) acknowledgement by such assignee of all of Payee's obligations under this Note, (C) the making by such assignee of all the representations and warranties under Section 7(b) of this Note and (D) to the extent any such assignment results in there being more than one holder of this Note (each a "<u>Noteholder</u>"), then Maker and Payee agree to use commercially reasonable efforts to amend this Note to make such technical modifications hereto as may be necessary or reasonably advisable to account for the existence of multiple Noteholders, including, without limitation, with respect to ratability of Advances made by the Noteholders, the application of payments under this Note to Noteholders and voting requirements for future amendments to this Note.

      (iii)    The Maker shall maintain a register (the "<u>Note Register</u>") in the principal offices of the Maker for the purpose of registering this Note and any transfer or partial transfer thereof, which register shall reflect and identify, at all times, the ownership of record of any interest in this Note or any interest therein.  Upon the issuance of this Note, the Maker shall record the name and address of the initial Payee of this Note in the Note Register as the first Payee.  Any failure to so record or any error in doing so shall not, however, limit or otherwise affect the obligation of the Maker hereunder to pay any amount owing with respect to the Obligations .Upon surrender for registration of transfer or exchange of this Note at the principal offices of the Maker, the Maker shall, at its expense, execute and deliver one or more new promissory notes of a like aggregate principal amount, registered in the name of the Payee or a transferee or transferees.

      (iv)    Notwithstanding anything to the contrary contained in this Note, the indebtedness evidenced by this Note are registered obligations, the right, title and interest of the Maker and its assignees in and to such indebtedness shall be transferable only upon notation of such transfer in the Note Register and no assignment thereof shall be effective until recorded therein.  This Section 12(e) shall be construed so that the indebtedness evidenced by this Note are at all times maintained in "registered form" within the meaning of sections 163(f), 871(h)(2) and 881(c)(2) of the Internal Revenue Code of 1986, as amended.

      **(f)**    **EXCEPT TO THE EXTENT GOVERNED BY THE BANKRUPTCY CODE, THIS NOTE AND THE RIGHTS AND OBLIGATIONS OF MAKER AND PAYEE HEREUNDER SHALL BE GOVERNED BY, AND SHALL BE CONSTRUED AND**

Americas 91381677

**ENFORCED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF NEW YORK.**

(g) **EXCEPT INSOFAR AS THE BANKRUPTCY COURT HAS JURISDICTION OVER THE MATTER, ALL JUDICIAL PROCEEDINGS ARISING OUT OF OR RELATING TO THIS NOTE SHALL BE BROUGHT ONLY IN THE NEW YORK STATE COURTS SITTING IN NEW YORK COUNTY OR FEDERAL COURTS OF THE UNITED STATES OF AMERICA SITTING IN THE SOUTHERN DISTRICT OF NEW YORK AND NEW YORK COUNTY, AND BY EXECUTION AND DELIVERY OF THIS NOTE EACH OF MAKER AND PAYEE ACCEPTS FOR ITSELF AND IN CONNECTION WITH ITS PROPERTIES, GENERALLY AND UNCONDITIONALLY, THE EXCLUSIVE JURISDICTION OF THE AFORESAID COURTS AND, SUBJECT TO THE JURISDICTION OF THE BANKRUPTCY COURT, WAIVES ANY DEFENSE OF FORUM NON CONVENIENS AND IRREVOCABLY AGREES TO BE BOUND BY ANY JUDGMENT RENDERED THEREBY IN CONNECTION WITH THIS NOTE.** Maker hereby agrees that service of all process in any such proceeding in any such court may be made by registered or certified mail, return receipt requested, to Maker at its address set forth below its signature hereto, such service being hereby acknowledged by Maker to be sufficient for personal jurisdiction in any action against Maker in any such court and to be otherwise effective and binding service in every respect. Nothing herein shall affect the right to serve process in any other manner permitted by law or shall limit the right of Payee to bring proceedings against Maker in the courts of any other jurisdiction.

(h) **MAKER AND, BY ITS ACCEPTANCE OF THIS NOTE, PAYEE AND ANY SUBSEQUENT HOLDER OF THIS NOTE, HEREBY IRREVOCABLY AGREE TO WAIVE THEIR RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF THIS NOTE OR ANY DEALINGS BETWEEN THEM RELATING TO THE SUBJECT MATTER OF THIS NOTE AND THE LENDER/BORROWER RELATIONSHIP THAT IS BEING ESTABLISHED.** The scope of this waiver is intended to be all-encompassing of any and all disputes that may be filed in any court and that relate to the subject matter of this transaction, including without limitation contract claims, tort claims, breach of duty claims and all other common law and statutory claims. Maker and, by their acceptance of this Note, Payee and any subsequent holder of this Note, each (i) acknowledges that this waiver is a material inducement to enter into a business relationship, that each has already relied on this waiver in entering into this relationship, and that each will continue to rely on this waiver in their related future dealings and (ii) further warrants and represents that each has reviewed this waiver with its legal counsel and that each knowingly and voluntarily waives its jury trial rights following consultation with legal counsel. **THIS WAIVER IS IRREVOCABLE, MEANING THAT IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING, AND THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS OF THIS NOTE.** In the event of litigation, this provision may be filed as a written consent to a trial by the court.

(i) This Note is a separate and detachable security, transferable (subject to clause (f) above) only on the books of Maker at the office of Maker by the registered Payee hereof in person or by an attorney duly authorized in writing, upon surrender of this Note to Maker for transfer. Maker may require and condition any proposed transfer on its receipt of definitive written information reasonably requested concerning the prospective transferee. Upon any such transfer, a new Note will be issued to the transferee or transferees in exchange for this Note. Upon receipt by Maker of evidence reasonably satisfactory to it of the loss, theft, destruction or mutilation of this Note, and, in case of loss, theft or destruction, of an agreement of indemnity, Maker will make and deliver a new

Note of like tenor, in lieu of this Note. This Note shall be promptly canceled by Maker upon the surrender hereof in connection with any exchange, transfer or replacement.

(j)      This Note has not been registered under the Securities Laws, and no such registration is contemplated.  This Note shall not be transferable except in compliance with the provisions of the Securities Laws, which require registration, or an applicable exemption from registration, for each transfer or other disposition of this Note.  This Note and each note issued in exchange for or upon transfer of this Note shall be stamped or otherwise imprinted with a legend in substantially the following form:

> **THIS PROMISSORY NOTE (THIS "NOTE") HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "ACT"), OR UNDER ANY APPLICABLE STATE SECURITIES LAW.  THIS NOTE MAY NOT BE OFFERED FOR SALE, SOLD, TRANSFERRED OR PLEDGED WITHIN THE UNITED STATES OR TO, OR FOR THE ACCOUNT OR BENEFIT OF, U.S. PERSONS EXCEPT (1) PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT UNDER THE ACT, (2) TO ESML HOLDINGS INC. OR ESSAR STEEL MINNESOTA LLC, (3) TO A PERSON WHOM PAYEE REASONABLY BELIEVES IS A "QUALIFIED INSTITUTIONAL BUYER" AS DEFINED IN RULE 144A UNDER THE ACT (A "QIB") PURCHASING FOR ITS OWN ACCOUNT OR FOR THE ACCOUNT OF A QIB IN COMPLIANCE WITH RULE 144A UNDER THE ACT, (4) OUTSIDE THE UNITED STATES IN AN OFFSHORE TRANSACTION IN COMPLIANCE WITH RULE 904 UNDER THE ACT, (5) PURSUANT TO THE EXEMPTION FROM REGISTRATION PROVIDED BY RULE 144 UNDER THE ACT (IF AVAILABLE), (6) TO AN INSTITUTIONAL "ACCREDITED INVESTOR" (AS DEFINED IN RULE 501(A)(1), (2), (3) OR (7) OF REGULATION D UNDER THE ACT) OR (7) PURSUANT TO ANOTHER EXEMPTION FROM REGISTRATION UNDER THE ACT, AND, IN EACH CASE, IN ACCORDANCE WITH ANY APPLICABLE STATE SECURITIES LAWS.  FOR PURPOSES OF CLAUSES (6) AND (7) ABOVE, AN OPINION OF COUNSEL THAT SUCH REGISTRATION IS NOT REQUIRED MAY BE REQUESTED BY ESML HOLDINGS INC. OR ESSAR STEEL MINNESOTA LLC.  AS USED HEREIN, THE TERMS "OFFSHORE TRANSACTION," "UNITED STATES" AND "U.S. PERSON" HAVE THE MEANINGS GIVEN TO THEM BY RULE 902 OF REGULATION S UNDER THE ACT.**

(k)      In the event of any inconsistency between the DIP Order and this Note, the provisions in the DIP Order shall be controlling.

(l)      If any provision of this Note is held by a final judgment of a court of competent jurisdiction to be invalid, illegal or unenforceable, such invalid, illegal or unenforceable provision shall be severed from the remainder of this Note, and the remainder of this Note shall be enforced.  In addition, the invalid, illegal or unenforceable provision shall be deemed to be automatically modified, and, as so modified, to be included in this Note, such modification being made to the minimum extent necessary to render the provision valid, legal and enforceable.

(m)      This Note and any amendments, waivers, consents or supplements hereto may be executed in counterparts, each of which shall constitute an original, but all taken together shall constitute a single contract. This Note and the Guaranty constitute the entire contract between the

parties hereto with respect to the subject matter hereof and supersede all previous agreements and understandings, oral or written, with respect thereto. Delivery of an executed counterpart of a signature page to this Note by facsimile or in electronic (i.e., "pdf" or "tif") format shall be effective as delivery of a manually executed counterpart of this Note.  The headings of the various sections and subsections herein are for reference only and shall not define, modify, expand or limit any of the terms or provisions hereof.

IN WITNESS WHEREOF, Maker have caused this Note to be duly executed and delivered by their respective officers thereunto duly authorized as of the date first written above.


ESSAR STEEL MINNESOTA LLC,
a Minnesota limited liability company

By:    _____
Name: _____
Title: _____

Address:    Essar Steel Minnesota LLC
            555 W 27th Street
            Hibbing, MN 55746
            Attention:  Chief Financial Officer

With a      Essar Steel Minnesota LLC
copy to:    227 Park Ave., 35th Floor
            New York, NY 10172
            Attention:  General Counsel
            Email:  esml.legal@essar.com

**Acknowledged and accepted**:


STRATEGIC PARTNERS HOLDINGS LIMITED


By:   _____
Name: _____
Title: _____

Address:    c/o SPL Advisors LLC
            515 Via Sinuousa
            Santa Barbara, CA 93110
            Attention:  John-Michael Lind
            Email: jmlind@splindia.com

**SCHEDULE 1**

Schedule of Exceptions

[see attached]

**EXHIBIT A**

Form of Guaranty

[see attached]

**EXHIBIT B**

Form of Interim Order

[see attached]