## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| ESSAR STEEL MINNESOTA LLC and ESML HOLDINGS INC.,[1] | Case No. 16-11626 (BLS) |
| | (Jointly Administered) |
| Debtors. | **Objection Deadline: March 9, 2017 at 4:00 PM EST**<br>**Hearing Date: March 16, 2017 at 10:00 AM EST** |

### DEBTORS' MOTION PURSUANT TO 11 U.S.C. §§ 105(a) AND 363(b) FOR ORDER AUTHORIZING DEBTORS TO ENTER INTO CERTAIN AGREEMENTS WITH (A) THE UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AND (B) THE IRON RANGE BUILDING AND CONSTRUCTION TRADES COUNCIL

Mesabi Metallics Company LLC f/k/a Essar Steel Minnesota LLC ("**Mesabi**") and

ESML Holdings Inc. ("**Holdings**," and, together with Mesabi, the "**Debtors**"), as debtors and

debtors in possession in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby

file this motion (the "**Motion**") for entry of an order, pursuant to sections 105(a) and 363(b) of

title 11 of the United States Code (the "**Bankruptcy Code**"), authorizing, but not directing,

Mesabi to enter into a certain neutrality and card check agreement with the United Steel, Paper

and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers

International Union ("**United Steelworkers**") and a certain labor stabilization agreement with

the Iron Range Building and Construction Trades Council ("**Building & Construction Trades**

**Council**," together with United Steelworkers, the "**Unions**").  In support of the Motion, the

Debtors respectfully represent:

---

[1] Essar Steel Minnesota LLC has changed its name to Mesabi Metallics Company LLC.  The last four digits of its federal taxpayer identification number are 8770.  The last four digits of ESML Holdings Inc.'s federal taxpayer identification number are 8071.

# I. PRELIMINARY STATEMENT

The Debtors reached another significant milestone in their efforts to forge a successful future for their Mesabi Range project.  Members of the Iron Range legislative delegation (the "**Iron Range Delegation**"), two separate Unions, and the Debtors have been in discussions to facilitate favorable working environments between the employers and the workers employed on the Project (as defined below).  Specifically, the Debtors and the United Steelworkers, one of the largest industrial labor unions in North America, have been discussing and negotiating an agreement regarding the potential unionization of Mesabi's non-represented production and maintenance employees through a "**Neutrality Agreement**."  Additionally, the Debtors have worked with the Building & Construction Trades Council to establish a proper standard to resolve potential labor issues and promote efficient construction operations for the economical completion of the Project through a "**Project Site Labor Stabilization Agreement**" (collectively with the Neutrality Agreement, the "**Union Agreements**").  After discussing and negotiating these matters with the Iron Range Delegation and the Unions, Mesabi has concluded, in its reasonable business judgment, that entry into the Union Agreements is sound and beneficial to the Debtors and their estates and should be approved.[2]

The proposed Union Agreements are important steps being taken by the Debtors to work in a proactive and cooperative way with the area Unions to eliminate or minimize the risks of future labor disputes, labor shortages or other labor-related disruptions adversely impacting future construction activities on the Project, operational readiness or general operations.  Mesabi believes that the Union Agreements, which come at no cost to the Debtors or their estates, can promote efficiency in its future operations.  The Union Agreements also allow the Debtors and

---

[2] Although the Debtors believe that entry into the Union Agreements are within their ordinary course of business, the Debtors are, out of an abundance of cation, seeking an order pursuant to section 363(b) of the Bankruptcy Code authorizing Mesabi to enter into the Union Agreements and perform thereunder.

their employees to build positive relations with the Unions and the Iron Range Delegation who play significant roles in the Minnesota Iron Range iron-ore mining industry. Importantly, Mesabi believes that the Union Agreements will provide for further productive communications with the Unions and the Iron Range Delegation in the future and help fuel the successful completion and operation of the Project.

For all of the foregoing reasons, the Debtors request that the Court grant the Motion.

## II.    BACKGROUND

### A.    General Background

1.      On July 8, 2016 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 the Bankruptcy Code, thereby commencing these Chapter 11 Cases. The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      The Court has entered an order for the joint administration of the Chapter 11 Cases [D.I. 32].

3.      No trustee or examiner has been appointed in the Chapter 11 Cases. On July 19, 2016, an official committee of unsecured creditors (the "**Committee**") was appointed in the Chapter 11 Cases.

4.      Information regarding the Debtors' businesses, capital structure, and the circumstances leading to the commencement of the Chapter 11 Cases is set forth in the Declaration of Sanjay Bhartia in Support of First Day Motions and Applications (the "**First Day Declaration**") [D.I. 14].

5.      As further detailed in the First Day Declaration, Mesabi was formed to develop and operate a fully-integrated, seven (7) million tonnes per annum iron ore mine and pellet production facility in the western Mesabi Iron Range in northern Minnesota (the "**Project**").

6.      Prior to these Union Agreements, there was a previous Project Site Labor Stabilization Agreement governing work on the Project by construction contractors and trade union workers during prior periods of construction activity on the Project.  In order to continue to promote harmonious labor relations with local trade union workers who will be needed to complete construction of the Project and to avoid potential labor disputes, Mesabi would like to enter into the Project Site Labor Stabilization Agreement for future construction work on the Project.  As to the proposed Neutrality Agreement, Mesabi has not previously entered into any neutrality agreements with the United Steelworkers or any other union.

7.      After recent discussions with the Unions and the Iron Range Delegation, Mesabi has agreed, upon approval by this Court, to enter into the Union Agreements at no cost to the Debtors.

### III.     JURISDICTION AND VENUE

8.      The court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* entered by the United States District Court for the District of Delaware on February 29, 2012.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b).  Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

### IV.     RELIEF REQUESTED

9.      By this Motion, the Debtors respectfully request that the Court enter an order (the "**Proposed Order**"), substantially in the form attached hereto as **Exhibit A**, authorizing, but not

directing the Debtors to enter into the Union Agreements, substantially in the form of those attached to the Motion as **Exhibit 1** and **Exhibit 2**.

## V.     BASIS FOR RELIEF

10.     The Debtors seek authority to enter into the Union Agreements pursuant to sections 105(a) and 363(b) of the Bankruptcy Code.

11.     Section 105(a) authorizes this Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  A debtor must seek court approval to engage in non-ordinary course transactions with respect to property such as the Union Agreements.  *Id.* at § 363(b).  Pursuant to section 363(b), a debtor's proposed use, sale or lease of estate property outside of the ordinary course of business is appropriate where there exists a sound business justification for the proposed transaction.  *See, e.g.*, *Myers v. Martin* (*In re Martin*), 91 F.3d 389, 395 (3d Cir. 1996) (noting that under normal circumstances, courts defer to a trustee's judgment concerning use of property under § 363(b) when there is a legitimate business justification); *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp.* (*In re Montgomery Ward Holding Corp.*), 242 B.R. 147, 153 (D. Del. 1999) (the debtor must "show a sound business purpose" justifying the proposed use of property); *In re Phx. Steel Corp.*, 82 B.R. 334, 335-36 (Bankr. D. Del. 1987) (requiring a "good business reason" for sale of property under section 363(b) of the Bankruptcy Code); *Committee of Equity Sec. Holders v. Lionel Corp.* (*In re Lionel Corp.*), 722 F.2d 1063, 1070 (2d Cir. 1983) (acknowledging the use of the "articulated business justification" for the use of property under § 363).

12.     A debtor has the burden of establishing that a valid business purpose exists for any proposed non-ordinary course use of estate property.  *See Montgomery Ward*, 242 B.R. at 153; *Lionel Corp.*, 722 F.2d at 1071.  Once a debtor articulates a valid business justification, the

proposed transaction is presumed to have been made in good faith and on a fully informed basis. *In re Integrated Resources, Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (*quoting Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).  The business judgment rule therefore shields a debtor's management from judicial second-guessing.  A court should approve a debtor's business decision unless that decision is a product of bad faith or gross abuse of discretion.  *See id.*; *see also Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1047 (4th Cir. 1985).

13.     The valid business purposes with respect to the Union Agreements are clear: (a) promote harmonious labor relations with the Unions and proactively eliminate or minimize the risks of future labor disputes, labor shortages, or other labor disruptions involving local trade union workers who will be needed to complete construction of the Project; and (b) establish an orderly procedure by which Mesabi's future employees may obtain unified representation regarding their employee needs and benefits.  The Union Agreements also provide the Debtors and the Unions, and by extension, the Iron Range Delegation, opportunities to maintain constructive communications and to cooperatively work together in establishing positive business and labor relations in the future.  Moreover, the Union Agreements, proposed in good faith and negotiated by the Debtors and the Unions in arm's-length transactions, do not impose any burdens, monetary, administrative, or otherwise, on the Debtors.  Consequently, entry into the Union Agreements is in the best interests of the Debtors and the Debtors' estates.

14.     For all of these reasons, entry into and performance under the Union Agreements are appropriate exercises of the Debtors' business judgment and should be approved by the Court.

## VI.    NOTICE

15.     Notice of this Motion has been provided to (i) the Office of the United States

Trustee for the District of Delaware, (ii) counsel to the Committee, (iii) known counterparties to

the Union Agreements, and (iv) those parties that have filed requests for notices in this case

pursuant to Bankruptcy Rule 2002.  The Debtors submit that in view of the facts and

circumstances, such notice is sufficient and no other or further notice need be provided.

16.     No previous request for the relief sought herein has been made by the Debtors to

this or any other court.

## VII.    CONCLUSION

WHEREFORE the Debtors respectfully request entry of an order granting the relief

requested herein and such other and further relief that is just and proper.

Dated: February 23, 2017                    Respectfully submitted,

 */s/ Jeffrey M. Schlerf*
Jeffrey M. Schlerf (DE No. 3047)
L. John Bird (DE No. 5310)
Courtney A. Emerson (DE No. 6229)
**FOX ROTHSCHILD LLP**
919 North Market Street, Suite 300
Wilmington, DE 19801
Telephone: (302) 654-7444
Facsimile: (302) 656-8920
jschlerf@foxrothschild.com
jbird@foxrothschild.com

Thomas E Lauria (admitted pro hac vice)
Matthew C. Brown (admitted pro hac vice)
**WHITE & CASE LLP**
Southeast Financial Center
200 South Biscayne Boulevard
Suite 4900
Miami  Florida 33131-2352
Telephone:   (305) 371-2700
Facsimile:    (305) 385-5744
tlauria@whitecase.com

mbrown@whitecase.com

Craig H. Averch (admitted pro hac vice)
Ronald K. Gorsich (admitted pro hac vice)
Lauren C. Fujiu-Berger (admitted pro hac vice)
**WHITE & CASE LLP**
555 South Flower Street
Suite 2700
Los Angeles, California 90071
Telephone:   (213) 620-7700
Facsimile:    (213) 452-2329
caverch@whitecase.com
rgorsich@whitecase.com
lfujiu@whitecase.com

*Attorneys for the Debtors and Debtors in Possession*