**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br><br>ESSAR STEEL MINNESOTA LLC and<br>ESML HOLDINGS INC.,[1]<br><br>                    Debtors. | Chapter 11<br><br>Case No. 16-11626 (BLS)<br>(Jointly Administered)<br><br>Objection Deadline: April 5, 2017<br>(extended by agreement of Debtors) |

**OBJECTION OF U.S. BANK NATIONAL ASSOCIATION TO DEBTORS' MOTION, PURSUANT TO BANKRUPTCY RULE 9019, FOR AN ORDER ALLOWING GREAT LAKES GAS TRANSMISSION LIMITED PARTNERSHIP'S PROOF OF CLAIM**

U.S. Bank National Association ("U.S. Bank"), solely in its capacity as agent for the prepetition term lenders (the "Term Lenders"), hereby submits this objection (the "Objection") to *Debtors' Motion, Pursuant to Bankruptcy Rule 9019, for an Order Allowing Great Lakes Gas Transmission Limited Partnership's Proof of Claim* (the "Motion") and respectfully states as follows:

**I.  PRELIMINARY STATEMENT**

1.      The Motion is objectionable because Debtors are effectively waiving all defenses and counterclaims in exchange for no consideration, seeking to provide Great Lakes an undiscounted claim premised upon a vacated judgment for which no timely claim was filed. Independently, the Motion is objectionable because Debtors are—quite peculiarly—asking the Court to issue Great Lakes a "judgment" against ESML in the Chapter 11 Cases in the amount of the claim, $32,902,183.  The Motion does not establish why or how doing so would be fair,

---

[1]    The last four digits of Essar Steel Minnesota LLC's federal taxpayer identification number are 8770.  The last four digits of ESML Holdings Inc.'s federal taxpayer identification number are 8071.

1

equitable, and in the best interests of the estates. U.S. Bank has uncovered that Great Lakes intends to take this Court's putatively-issued judgment and compete with the estates' significant claim against financially-distressed Essar Global Fund Limited ("EGFL").

2. Perhaps focused on more central and pressing concerns, Debtors have fallen exceedingly short of carrying their burden. Indeed, the Motion omits crucial details regarding ESML's meritorious defenses and counterclaims in connection with any going-forward litigation against Great Lakes. Just as important, the Motion does not set forth any justification for providing a judgment to Great Lakes—which judgment, apparently, Great Lakes has requested in order to seek to transform a judgment against ESML into a judgment against EGFL, and compete with the estates' claim against EGFL—one of the estates' most significant assets. This last "cost" of settlement was not given any weight by Debtors. To the extent the settlement was somehow reasonable without provision of a judgment, it certainly falls below the range of reasonableness with this element included. For all of these reasons, the Motion must be denied.

## II. BACKGROUND

**A.    Transportation Services Agreement**

3. On January 6, 2006, Great Lakes Gas Transmission LP ("Great Lakes") entered into a Transportation Services Agreement (the "TSA") with Minnesota Steel Industries, LLC ("MSI"), the predecessor of Mesabi Metallics Company LLC (f/k/a Essar Steel Minnesota LLC) ("Mesabi") pursuant to which Great Lakes agreed to transport gas to a planned steel-making facility in Minnesota. MSI's performance under the TSA was secured by a letter of credit in the amount of $580,000. Had MSI failed to make payments under the TSA, Great Lakes may have been entitled to draw down the letter of credit.

4.      The monthly payments due under the TSA were determined by reference to a tariff on file with the Federal Energy Regulatory Commission, which contained a provision regarding limitation on liability:

> Except as otherwise provided herein, neither Transporter nor Shipper shall be liable in damages, whether direct, indirect, consequential or otherwise, other than for acts of gross negligence, undue discrimination or willful misconduct and then only to the extent that Force Majeure does not apply, provided that nothing herein shall limit Transporter's or Shipper's liability, if any, for direct damages resulting from its own negligence.

Finestone Decl. Ex. 1 (Brief of Appellants, Great Lakes Gas Transmission Ltd. P'ship v. Essar Steel Minnesota LLC, Case No. 16-1101, Entry ID: 4389205 (8th Cir. Apr. 18, 2016) (hereinafter, the "Debtors' Appeal Brief")) at 46.[2]

**B.      Great Lakes Initiates Litigation in Federal Court**

5.      On October 22, 2007, MSI was sold to Essar Steel Minnesota LLC ("ESML"). In early 2009, ESML notified Great Lakes that it wanted to modify the contractual arrangement due to, among other things, its inability to attain financing. During the course of these discussions, Great Lakes declared that ESML had anticipatorily repudiated the TSA and filed an action (the "Federal Action") in the District Court for the District of Minnesota (the "District Court"), seeking immediate accelerated payment of all future payments under the TSA.

6.      On May 25, 2010, ESML filed its answer in the Federal Action and raised numerous affirmative defenses and asserted various counterclaims. Several of those defenses and counterclaims were rejected by the District Court in a memorandum opinion and order issued on May 15, 2012.

---

[2]    The *Declaration of Benjamin Finestone in Support of U.S. Bank's Opposition to the Motion* (the "Finestone Decl.") is filed concurrently herewith.

7. Following discovery, the parties each moved for summary judgment and, on March 19, 2013, the District Court rejected ESML's remaining arguments and entered summary judgment for Great Lakes.

8. Thereafter, a number of entities related to ESML, including EGFL entered into an offer of judgment (the "Offer of Judgment") with Great Lakes on July 3, 2013, pursuant to which the Foreign Defendants[3] agreed to pay all damages ordered against ESML for breach of contract or anticipatory repudiation in the Federal Action.

9. Following the District Court's ruling on summary judgment, the parties engaged in expert discovery regarding damages—namely, the appropriate discount rate to apply to the acceleration of payments under the TSA. Expert reports were submitted by the parties. However, the District Court rejected both parties' original discount rate experts. The parties thereafter submitted reports by new experts. The District Court nonetheless excluded the expert of ESML while declining to exclude the expert of Great Lakes. The jury accepted the discount rate presented by the sole remaining expert (*i.e.*, Great Lakes' expert) and set damages at $32,902,183.

**C.    ESML Appeals to Eight Circuit**

10. ESML appealed the judgment entered in the District Court to the United States Court of Appeals for the Eighth Circuit (the "Eight Circuit") on no fewer than five (5) issues, including that the District Court lacked subject matter jurisdiction.

11. On December 5, 2016, the Eight Circuit determined that the District Court lacked subject matter jurisdiction over the proceedings and made no determination regarding the several

---

[3] The "Foreign Defendants" as the term is defined in the Offer of Judgment, include "Essar Steel Limited f/k/a Essar Steel Holdings, Ltd., Essar Steel India Limited f/k/a Essar Steel Limited, and Essar Global Fund Ltd. f/k/a Essar Global Limited." Finestone Decl. Ex. 2 (Offer of Judgment, Great Lakes Gas Transmission Ltd. P'ship v. Essar Steel Minnesota LLC, Case No. 09-cv-03037, D.I. 639 (D. Minn. July 15, 2013)) at 1.

alternative bases for reversal raised by ESML. The case was remanded to the District Court, and was summarily dismissed on February 7, 2013.

**D.     ESML Bankruptcy**

12.     On July 8, 2016, ESML and ESML Holdings Inc. (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").

13.     On January 11, 2017, ESML filed the *Complaint and Substantive and Non-Substantive Objections to Claim Nos. 179-186* (the "Adversary Complaint") against, among others, EGFL. The claims asserted within the Adversary Complaint are one of the estates' most valuable assets.

14.     On August 9, 2016, the Court entered its *Order Granting Debtors' Motion for Entry of an Order Pursuant to Bankruptcy Rules 2002 and 3003 and Local Rule 3003-1 (i) Establishing Bar Dates for Filing Certain Proofs of Claim; (ii) Establishing Ramifications for Failure to Comply Therewith; (iii) Approving Proof of Claim Form and Bar Date Notice; and (iv) Approving Publication Notice and Publication Procedures* [D.I. 202] (the "Bar Date Order") fixing September 30, 2016 as the general bar date (the "Bar Date") in the Chapter 11 Cases and approving the form of notice to creditors.

15.     On February 6, 2017, over four months after the Bar Date, Great Lakes filed its *Motion to Designate Proof of Claim as Timely Filed* [D.I. 703] (the "Designation Motion"). The Debtors objected to the Designation Motion on March 8, 2017. However, the Debtors subsequently withdrew their opposition and, on March 15, 2017, the Court entered the *Order Granting Great Lakes Gas Transmission Limited Partnership's Motion to Designate Proof of Claim as Timely Filed* [D.I. 797].

16. The Debtors thereafter filed the instant Motion requesting "the Court enter an order and judgment . . . allowing Great Lakes' proof of claim in the amount of $32,902,183."

### III. ARGUMENT

17. The Motion seeks allowance of the proof of claim filed by Great Lakes in the amount of $32,902,183 in addition to entry of judgment in that amount against ESML pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). Within the Third Circuit, "'the decision whether to approve a compromise under Rule 9019 is committed to the sound discretion of the Court, which must determine if the compromise is fair, reasonable, and in the interest of the estate.'" In re Filene's Basement, LLC, Case No. 11-13511 (KJC), 2014 WL 1713416, at *7 (Bankr. D. Del. Apr. 29, 2014) (quoting In re Louise's, Inc., 211 B.R. 798, 801 (D. Del. 1997)). "'Under the 'fair and equitable' standard, [the court looks] to the fairness of the settlement to the other persons, *i.e.*, the parties who did not settle.'" Id. (quoting Will v .Nw. Univ. (In re Nutraquest, Inc.), 434 F.3d 639, 645 (3d Cir. 2006)). The evaluation encompasses four primary factors: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." Id. (citing Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996)).

18. Here, the Debtors have failed to carry their "burden of persuasion to provide the [C]ourt with sufficient information to conclude that the compromise falls within the reasonable range of litigation possibilities." In re Key3Media Grp., Inc., 336 B.R. 87, 93 (Bankr. D. Del. 2005) (citations omitted) ("[T]he Debtors have the burden of persuading the bankruptcy court that the compromise is fair and equitable and should be approved."). Accordingly, the Motion should be denied. See e.g., In re Spansion, Inc., No. 09-10690 (KJC), 2009 WL 1531788, at *9 (Bankr.

D. Del. June 2, 2009) (denying motion brought pursuant to Bankruptcy Rule 9019 upon a largely conclusory record where "there [was] not enough evidence before [the court] to conclude whether the proposed settlement amount [was] within the 'range of reasonableness.'").

A.  **The Motion is Not a Compromise, Requesting the Allowance of the Full Amount of Great Lakes' Potential Claim, Despite Significant (& Undisclosed) Litigation Risks.**

19. The Motion provides Great Lakes an undiscounted litigation claim despite such claim being subject to numerous (undisclosed) litigation risks. The Motion, if approved, would allow Great Lakes' proof of claim in the amount of $32,902,183. This sum reflects the full amount awarded to Great Lakes by the District Court in a judgment that *has since been vacated*. See Great Lakes Gas Transmission Ltd. P'ship v. Essar Steel Minnesota LLC, 843 F.3d 325, 334 (8th Cir. 2016) (dismissing case for lack of subject matter jurisdiction). Despite this fact, the Debtors now seek to allow Great Lakes' proof of claim in the full amount of the vacated judgment, purportedly in order to avoid "repeating the underlying litigation" that "would be extremely costly and time consuming." Motion at 6. Laudable goals in isolation, but they do not justify laying down and allowing a claim in its entirety, waiving any and all defenses. In view of the fact that ESML may raise numerous meritorious defenses and counterclaims, Great Lakes should not be allowed an undiscounted claim, given the significant litigation risk Great Lakes faces in any going-forward litigation. See In re Taylor, 190 B.R. 413, 417 (Bankr. D. Colo. 1995) ("'[T]he terms of any settlement require 'some more reasonable basis than expediency and the desire to terminate complex and troublesome litigation . . . .'") (quotation marks and citations omitted).

20. Throughout the course of the Federal Action, ESML asserted numerous meritorious legal defenses and counterclaims against Great Lakes.[4] Should Great Lakes seek to pursue

---

[4] See Finestone Decl. Ex. 3 (Defendants' Answer to Amended Complaint Objection to Jurisdiction and Affirmative Defenses, Third Party Complaint of Defendant Essar Steel Minnesota, LLC

litigation in state court, these defenses and counterclaims remain viable.[5] At the very least, this means that Great Lakes' success in state court is far from guaranteed and is no "slam dunk." This risk should have been factored into the amount of the proposed allowed claim. Instead, Debtors seem to take the curious position that they are guaranteed to lose, and propose to give Great Lakes (among other valuable consideration) an undiscounted claim premised on some future litigation. Given the information vacuum under which the Motion has been brought, it is unclear how this can be fair and equitable to the estates.

21. Furthermore, following the entry of the judgment in the District Court, ESML appealed to the Eighth Circuit and obtained a dismissal on jurisdictional grounds. Great Lakes Gas Transmission, 843 F.3d at 334. In its appeal, ESML argued three substantive issues in addition to the subject matter jurisdiction issue.[6] None of these issues were decided by the Eighth Circuit,

---

against TransCanada GL, Inc., Great Lakes Gas Transmission Co., TC Pipelines, LP, TransCanada Pipelines Ltd., TC Pipelines GP, Inc., TransCanada Corporation, TransCanada Pipeline USA, Ltd., TC GL Intermediate Limited Partnership, TransCan Northern, Ltd., Counterclaim of Defendant Essar Minnesota Steel, LLC against Great Lakes Gas Transmission Limited Partnership by Essar Steel Minnesota, LLC (hereinafter, the "Debtors' Answer"), Great Lakes Gas Transmission Ltd. P'ship v. Essar Steel Minnesota LLC, Case No. 09-cv-03037, D.I. 80 (D. Minn. May 25, 2010)) at 18–19 & 38–42 (setting out defenses and counterclaims); id. Ex. 1 (Debtors' Appeal Brief) at 41–77.

[5] To the extent the District Court made dispositive rulings regarding the Debtors' claims, those rulings were rendered null and void by the Eighth Circuit's holding that the District Court lacked subject matter jurisdiction. See Elliott v. Peirsol's Lessee, 26 U.S. 328, 340 (1828) ("Where a Court has jurisdiction, it has a right to decide every question which occurs in the cause; and whether its decision be correct or otherwise, its judgment, until reversed, is regarded as binding in every other Court. But, if it act without authority, its judgments and orders are regarded as nullities. They are not voidable, but simply void; and form no bar to a recovery sought, even prior to a reversal, in opposition to them."); Void Judgment, BLACK'S LAW DICTIONARY (10th ed. 2014) ("A judgment that has no legal force or effect, the invalidity of which may be asserted by any party whose rights are affected at any time and any place, whether directly or collaterally. From its inception, a void judgment continues to be absolutely null. It is incapable of being confirmed, ratified, or enforced in any manner or to any degree. *One source of a void judgment is the lack of subject-matter jurisdiction*.") (emphasis added).

[6] See Finestone Decl. Ex. 1 (Debtors' Appeal Brief) at 41–77.

and all the arguments may be asserted in any subsequent proceeding. See Great Lakes Gas Transmission, 843 F.3d at 334 ("[W]e conclude that the district court lacked subject matter jurisdiction. Accordingly, we do not reach the remaining issues."). For instance, in addition to its subject matter jurisdiction argument, ESML advanced and vigorously argued the position that its actions and statements regarding the TSA were merely requests for negotiation, and did not amount to anticipatory repudiation.[7] This argument, if accepted, would cut off ESML's liability entirely, and would in fact render Great Lakes potentially liable to ESML for the amount Great Lakes drew down on the letter of credit.[8]

22. Similarly, ESML argued that the provision limiting liability under the TSA limited the damages Great Lakes could recover to the amount offered in the letter of credit.[9] If this argument is accepted, then the full amount Great Lakes could recover would be $580,000—far from the nearly $33,000,000 claim it will receive if the Motion is granted.[10]

23. Finally, during the appeal, ESML argued that damages were calculated erroneously for two reasons. First, the District Court erroneously excluded ESML's expert on the calculation of a discount rate, which led to the jury hearing only Great Lakes' expert on the issue.[11] Second, the court erroneously allowed Great Lakes' expert to testify to matters outside of the scope of the expert report, which undermined ESML's ability to effectively cross examine that expert.[12] These

---

[7] See id. at 41–46; Finestone Decl. Ex. 4 (Reply Brief of Appellants, Great Lakes Gas Transmission Ltd. P'ship v. Essar Steel Minnesota LLC, Case No. 16-1101, Entry ID: 4424722 (8th Cir. July 12, 2016) (hereinafter, the "Debtors' Reply Brief")) at 17–23.

[8] See Finestone Decl. Ex 3 (Debtors' Answer) at 39–40 (asserting the counterclaim of conversion for improperly drawing down on the letter of credit).

[9] See Finestone Decl. Ex 1 (Debtors' Appeal Brief) at 46–53.

[10] See id.

[11] Id. at 53–72.

[12] Id. at 74–76.

arguments highlight the fact that, even if Great Lakes were to achieve a favorable result on the merits in state court, the determination of damages is far from clear, particularly where (1) ESML could potentially introduce new expert testimony, and (2) the standards for qualifying experts may be different in state court.

24. In addition to the arguments advanced on appeal, ESML included in its answer three additional defenses and one counterclaim that—like those detailed above—remain within ESML's litigation arsenal. These claims included: (1) the defense of *force majore* based on the inability to find financing due to the onset of the 2008 financial crisis, (2) the defense of temporary commercial impossibility/impracticability based on the same facts, (3) the defenses of laches and estoppel, and (4) a counterclaim for conversion, based on the improper draw down on the letter of credit by Great Lakes. The Debtors may assert these claims against Great Lakes in any future litigation. This strongly suggests that Great Lakes should not be receiving an undiscounted claim premised on some future litigation with ESML.

25. Finally, it is not the intention of U.S. Bank to re-litigate the merits of ESML's defenses and counterclaims vis-à-vis the claim of Great Lakes. Rather, the details concerning ESML's defenses and counterclaims are included here because they demonstrate that there are not insignificant risks associated with Great Lakes' claim for the simple reason that ESML has meritorious defenses and counterclaims. It is troubling that U.S. Bank must raise these facts in the first instance. In light of these risks, it is wholly unreasonable for Great Lakes to receive an undiscounted claim. Therefore, U.S. Bank submits that the Motion is not in the best interest of the estate and, accordingly, should be denied.

**B.     The Motion, Without Justification, Requests Entry of Judgment in Favor of Great Lakes' at Expense of the Estate.**

26.     Within the since-dismissed Federal Action, EGFL (among others) agreed that "it will pay all damages determined by the [District Court] to be recoverable by [Great Lakes] as a result of any judgment entered against [ESML] in th[e Federal Action] for breach and anticipatory repudiation of the [TSA] along with all costs in relation to such claims which have been incurred to date."[13]  In the Motion, the Debtors request that a *judgment* be entered against ESML in the amount of $32,902,183.  There is simply no justification for this "bonus" consideration and, apparently, Great Lakes seeks to do mischief were it to obtain the judgment.

27.     Great Lakes appears to be using the Motion as a backdoor attempt to revive the Offer of Judgment—which, Great Lakes will argue, entitles it to a judgment against EGFL (a major potential source of value to ESML's estate).[14]  Whatever analysis the Debtors undertook in concluding that 100% claim allowance was appropriate, they did not consider that Great Lakes would also seek to use the putatively-allowed claim and compete with the estates' claim against EGFL.

28.     U.S. Bank believes that Great Lakes' planned mischief would be invalid and ultimately fail.  Nevertheless, the provision of the judgment to Great Lakes (without explanation) exposes the Debtors at best to subsequent litigation regarding the implications of any such judgment and, at worst, a significant dilution of its claim against a financially distressed EGFL.  These risks were not disclosed within the Motion which suggests that the Court (and creditors) are currently unable to appropriately determine whether the Motion is "fair and equitable to the

---

[13]     Finestone Decl. Ex. 2 (Offer of Judgment) at 1.

[14]     As set forth above,  ESML has instituted an action against EGFL for, among other things, breach of contract, tortious interference with existing contract, and fraudulent transfers.

estate"—and, in fact, suggests the contrary.  In re Ashing Corp., 552 B.R. 80, 83 (D. Del. 2015) ("[T]he bankruptcy court must be apprised of all relevant information that will enable it to determine what course of action will be in the best interest of the estate."); In re Taylor, 190 B.R. at 418 (explaining, in the context of considering a settlement, that "full disclosure, particularly of consideration promised or given to the creditor for withdrawing the objection . . . , so that parties in interest have equal access to information regarding the assets, liabilities, and claims against a debtor" is important).  In sum, the Motion fails to explain why Great Lakes is entitled to a significant windfall at the expense of the estates.  Under these circumstances, the relief sought in the Motion is not "fair and equitable" and, as a result, the Motion must be denied.  In re Spansion, Inc., 2009 WL 1531788, at *9 (denying settlement motion were the debtors provided little information as to the specifics of the actions to provide a basis for evaluating the strengths and weaknesses of the litigation as well as insufficient information upon which to make a reasoned decision as to the success of the actions).

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

**WHEREFORE,** U.S. Bank respectfully requests that the Court (i) deny the Motion; and (ii) grant such other relief as is just and proper.

Dated:    April 5, 2017
             Wilmington, DE

/s/ Matthew B. Harvey
Robert J. Dehney (No. 3578)
Matthew B. Harvey (No. 5186)
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, DE 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

-and-

Benjamin I. Finestone
William Pugh
Zachary Russell
QUINN EMANUEL URQUHART AND SULLIVAN LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

*Attorneys for U.S. Bank National Association*