**EXHIBIT A**

**<u>CHIPPEWA BID</u>**

THIS COMMITMENT LETTER IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES OR A SOLICITATION OF ACCEPTANCES OF A CHAPTER 11 PLAN WITHIN THE MEANING OF SECTION 1125 OF THE BANKRUPTCY CODE.  ANY SUCH OFFER OR SOLICITATION SHALL COMPLY WITH ALL APPLICABLE SECURITIES LAWS AND/OR PROVISIONS OF THE BANKRUPTCY CODE

April 21, 2017

Essar Steel Minnesota LLC
d/b/a/ Mesabi Metallics Company LLC
555 W 27th Street
Hibbing, MN 55746

Attention:    David Pauker, Chief Restructuring Officer


Re:    $250,000,000 Equity Purchase Commitment

Ladies and Gentlemen:

Reference is made to the jointly administered bankruptcy cases under chapter 11 of title 11, United States Code, 11 U.S.C. §§ 101-1532 (the "Chapter 11 Cases"), commenced by Essar Steel Minnesota LLC d/b/a Mesabi Metallics Company LLC ("Mesabi") and ESML Holdings Inc. ("Holdings," and, together with Mesabi, the "Debtors") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") and styled *In re Essar Steel Minnesota LLC and ESML Holdings, Inc.*, Ch. 11 Case No. 16-11626 (BLS).

The Debtors and Chippewa Capital Partners, LLC ("Chippewa," collectively with the Debtors, the "Parties" and each individually, a "Party") are parties to that certain Plan Sponsor Term Sheet attached hereto (Exhibit 1, and all terms, conditions, agreements and obligations set forth therein, the "Term Sheet"), pursuant to which, among other things, Chippewa has agreed, subject to the terms and conditions set forth therein and the documents attached thereto as Exhibit A concerning the Cash Collateral Order, to fund the Debtors' bankruptcy proceedings.

The Parties and their respective professionals have engaged in arms'-length, good faith negotiations regarding the Debtors' restructuring that will be implemented and consummated on the terms and conditions of the Term Sheet pursuant to the Amended Plan.

As part of the Amended Plan, Chippewa proposes to make, or cause its designee(s) to make, an equity investment in the reorganized Debtors (to be determined whether through Holdings or Mesabi, with the applicable Debtor being referenced herein as the "Issuer"), and the Issuer proposes to issue to Chippewa or its designee(s) 100% of its new equity in exchange for an investment in the amount of $250,000,000 in the aggregate, minus the amount of any earnest money deposit(s) and the aggregate funds provided to the Debtors pursuant to the Cash Collateral Order (the "Commitment"). Capitalized terms used in this agreement (the "Commitment Letter") and not otherwise defined herein shall have the meanings provided in the Term Sheet, which Term Sheet is incorporated by reference as if set forth herein in its entirety.  The structure of the Commitment set forth herein is subject to change in the event the structure described in the Term Sheet is changed as permitted thereby to conform with such changed structure.

The obligation of Chippewa to fund the Commitment is conditioned upon (i) timely satisfaction,

or waiver by Chippewa, of, among other things, each of the conditions set forth in this Commitment Letter or in the Term Sheet, (ii) the negotiation and filing, no later than April 26, 2017, of the Amended Plan, with terms and conditions consistent in all respects with this Commitment Letter and the Term Sheet, (iii) the Debtors' compliance with all terms and conditions of the Term Sheet and Cash Collateral Order, (iv) the consummation of the transactions contemplated by the Term Sheet and the Amended Plan, including the substantially contemporaneous funding of the Exit Credit Facility in accordance with its terms, and (v) the receipt of any and all consents and regulatory approvals required for the investment contemplated hereby and the investment in Chippewa by investors of its choosing, in its sole discretion, including, but not limited to, any and all approvals required pursuant to the Patriot Act or the Foreign Corrupt Practices Act, or from the Committee on Foreign Investment in the United States.

Whether or not the transactions contemplated by this Commitment Letter are consummated, but subject to the last sentence of this paragraph, the Debtors jointly and severally agree to: indemnify and hold harmless the Consortium, ERP Iron Ore, LLC, their investors, and each of their general partners, limited partners, members, managers and equity holders, and the respective officers, employees, affiliates, advisors, agents, attorneys, accountants, financial advisors and consultants of each such entity (each an "Indemnified Person") from and against any and all losses, claims, damages, liabilities and expenses, joint or several, which any such person or entity may incur, have asserted against it or be involved in as a result of or arising out of or in any way related to this Commitment Letter, the Term Sheet, the matters referred to herein and therein, the use of proceeds thereunder or any related transaction or any claim, litigation, investigation or proceeding relating to any of the foregoing, regardless of whether any of such Indemnified Persons is a party thereto, and to reimburse each of such Indemnified Persons upon 10 days of demand for any of the foregoing, or any legal or other expenses incurred in connection with any of the foregoing; provided, that any such Indemnified Person shall repay any such amounts to the extent they are finally determined to have resulted from the willful misconduct or fraud of such Indemnified Person. All amounts payable by the Debtors pursuant to this paragraph shall constitute allowed administrative expense claims of their bankruptcy estates. The terms set forth in this paragraph survive termination of this Commitment Letter and shall remain in full force and effect. The obligations of the Debtors set forth in this paragraph are subject to entry by the Bankruptcy Court of an order in form and substance reasonably satisfactory to the Parties authorizing the Debtors' performance thereof, which order the Debtors shall seek on an expedited and best efforts basis after acceptance of this Commitment Letter.

Neither Chippewa nor any Indemnified Person shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Debtors or any of their respective subsidiaries or affiliates or to any of their respective equity holders or creditors arising out of, related to or in connection with any aspect of this Commitment Letter, the Term Sheet and the matters referred to herein or therein, for special, indirect, consequential, or punitive damages.

This Commitment Letter is not assignable by any Debtor and is intended to be solely for the benefit of the Parties and does not confer any benefits on, or create any rights in favor of, any person or entity other than the Parties (other than the Indemnified Persons, who are express third party beneficiaries hereof), and any attempted assignment in violation hereof shall be void ab initio. Chippewa may assign all or any portion of the Commitment to any of its affiliates.

This Commitment Letter sets forth the agreement of Chippewa with respect to the Commitment on the terms and subject to the conditions described herein and shall be considered effective, on the terms and subject to the conditions set forth herein as of the date on which all Parties execute this Commitment Letter.

The obligations of the Parties under this Commitment Letter shall terminate upon the giving of written notice of termination by Chippewa concurrently with or at any time following the occurrence of

any of the following, if:

(i)     the Debtors have failed to file the Amended Plan on or before April 26, 2017;

(ii)    by 5:00 p.m. (New York time) on April 28, 2017, or such other time as may be agreed to by the Parties, the Debtors shall not have obtained a Bankruptcy Court order confirming the Amended Plan providing for the assumption of each of the mining and surface lease agreements between the State[1] and one or more of the Debtors, as amended from time to time, either (A) on the same terms and conditions of such leases existing as of the date hereof, or (B) with such modifications to the terms and conditions of such leases existing as of the date hereof that are satisfactory to Chippewa in its sole discretion;

(iii)   a breach by any Debtor of any of its obligations under this Commitment Letter, or any instrument or document delivered pursuant to the terms of this Commitment Letter;

(iv)    a breach by any Debtor of the Term Sheet, or the termination, by Chippewa, of the Term Sheet or the Debtors' right to receive funding from Chippewa for use as cash collateral or to use funds provided pursuant to the Cash Collateral Order;

(v)     the transactions contemplated by the Term Sheet and Amended Plan shall not have been consummated on or prior to June 30, 2017; or

(vi)    any of the Chapter 11 Cases shall be dismissed or converted to a chapter 7 case, or a trustee under chapter 11 of the Bankruptcy Code or examiner with expanded powers is appointed.

The obligations of the Parties under this Commitment Letter shall terminate upon the giving of written notice of termination by Mesabi concurrently with or at any time following the occurrence of any of the following, if:

(i)     the board of directors, board or governors, managers, or similar governing body, as applicable, of the Debtors reasonably determines in good faith, based on the advice of outside counsel White & Case LLP, that continued performance of this Commitment Letter (including taking any action or refraining from taking any action) would violate its fiduciary duties to all stakeholders of the Debtors under applicable law;

(ii)    a breach by Chippewa of any of its obligations under this Commitment Letter; or

(iii)   any of the Chapter 11 Cases shall be dismissed or converted to a chapter 7 case, as to each, over the objection of the Debtors.

Notwithstanding anything contained in this Commitment Letter, the obligations of the Debtors to satisfy their indemnification as set forth herein shall survive any termination of this Commitment Letter.

This Commitment Letter shall be construed and enforced in accordance with, and the rights of the parties hereto shall be governed by, the laws of the State of New York, without giving effect to the conflict of laws principles thereof.  Each party hereto agrees that it shall bring any action or proceeding in respect of any claim arising out of or related to this Commitment Letter, to the extent possible, in either

---

[1]     The "State" means the State of Minnesota, and any departments, agencies, counties, municipalities or instrumentalities of the State of Minnesota, including the Minnesota Department of Natural Resources and Itasca County.

the United States Bankruptcy Court for the District of Delaware or any New York State court (the "Chosen Courts"), and solely in connection with claims arising under this Commitment Letter: (i) irrevocably submits to the exclusive jurisdiction of the Chosen Courts; (ii) waives any objection to laying venue in any such action or proceeding in the Chosen Courts; and (iii) waives any objection that the Chosen Courts are an inconvenient forum or do not have jurisdiction over any party hereto. Each party hereto hereby waives, to the fullest extent permitted by applicable law, any right it may have to a trial by jury in any legal proceeding arising out of, or relating to, this Commitment Letter (whether based on contract, tort, or any other theory). Each Party hereto (i) certifies that no representative, agent, or attorney of any other Party hereto has represented, expressly or otherwise, that such other Party would not, in the event of litigation, seek to enforce the foregoing waiver and (ii) acknowledges that it and the other Parties hereto have been induced to enter into this Commitment Letter by, among other things, the mutual waivers and certifications in this paragraph.

This Commitment Letter may not be amended, and any obligations in this Commitment Letter may not be waived by the obligated Party, except in writing signed by the Debtors and Chippewa.

This Commitment Letter may be executed in any number of counterparts, each of which shall be an original, and all of which, when taken together, shall constitute one agreement. Delivery of an executed counterpart of this Commitment Letter by facsimile or portable document format (PDF) shall be effective as delivery of a manually executed counterpart of this Commitment Letter.

Notwithstanding anything that may be expressed or implied in this Commitment Letter, or any document or instrument delivered in connection herewith, the Debtors, by their acceptance of the benefits of the Commitment provided herein, agree and acknowledge that no other person or entity other than Chippewa shall have any obligations hereunder and that, notwithstanding that Chippewa or any of its permitted assigns may be a corporation, partnership or limited liability company, no recourse hereunder or under any documents or instruments delivered in connection herewith or in respect of any oral representations or warranties made or alleged to have been made in connection herewith or therewith shall be had against the Consortium, ERP Iron Ore, LLC, any former, current or future director, officer, employee, representative, direct or indirect equity holder, controlling person, general or limited partner, manager, member, stockholder, incorporator, affiliate, attorney, agent, successor or assignee of Chippewa or ERP Iron Ore, LLC or any former, current or future director, officer, employee, representative, direct or indirect equity holder, controlling person, general or limited partner, manager, member, stockholder, incorporator, attorney, agent, successor or assignee of any of the foregoing (each, other than Chippewa and its respective successors and assigns, a "Related Party"), whether by or through alter ego, piercing of the corporate (or limited liability company or limited partnership) veil, by or through a claim by or on behalf of Chippewa against any Related Party, by the enforcement of any assessment or by any legal or equitable action, by virtue of any applicable law or otherwise. It is expressly agreed and acknowledged that no personal liability whatsoever shall attach to, be imposed on or otherwise be incurred by any Related Party for any obligations of Chippewa or any of its successors or permitted assigns under this Commitment Letter or any documents or instrument delivered in connection herewith or in respect of any oral representations or warranties made or alleged to have been made in connection herewith or therewith or for any claim (whether at law or equity or in tort, contract or otherwise) based on, in respect of, or by reason of such obligations or their creation.

Each Party hereto hereby represents and warrants, severally as to itself only and not jointly, to the other Parties hereto that (a) it has all requisite limited liability company or other applicable power and authority to execute, deliver and perform this letter agreement, (b) the execution, delivery and performance of this letter agreement by such Party has been duly and validly authorized and approved by all necessary organizational action by it, (c) this letter agreement has been duly and validly executed and delivered by it and constitutes a legal, valid and binding obligation of such Party, enforceable against such

Party in accordance with its terms, subject to (i) the effects of bankruptcy, insolvency, fraudulent conveyance, reorganization, moratorium or other similar laws affecting creditors' rights generally, and (ii) general equitable principles (whether considered in a proceeding in equity or at law) and (d) the execution, delivery and performance by such Party of this letter agreement do not violate such Party's organizational documents or any other agreement to which it is a Party.

This Commitment Letter constitutes the entire understanding among the Parties hereto with respect to the subject matter hereof and replaces and supersedes all prior agreements and understandings, both written and oral, between the Parties with respect to the subject matter hereof. Notwithstanding anything herein to the contrary, nothing contained in this Commitment Letter shall affect, limit or impair the rights and remedies of Chippewa (or any of its affiliates) pursuant to the Cash Collateral Order or any other documentation relating to Chippewa's funding of the Debtors' bankruptcy proceedings, or restrict in any way the activities of, or impact any rights or obligations of, Chippewa (or any of its affiliates) in its capacity as funder or secured creditor. Without limiting the generality of the foregoing, and notwithstanding anything to the contrary, it is hereby agreed that nothing in this Commitment Letter shall amend or modify in any way any term or provision of the Cash Collateral Order or any other documentation relating to Chippewa's funding of the Debtors' bankruptcy proceedings. If the foregoing is in accordance with your understanding of our agreement, please sign this Commitment Letter in the space indicated below and return it to us.

Very truly yours,

*[Signature pages to follow]*

**CHIPPEWA CAPITAL PARTERS, LLC**

By: _____

Name: Thomas M. Clarke

Title: Authorized Signatory

Address:        15 Appledore Lane
                Natural Bridge, VA 24578

With a
copy to:        Oscar N. Pinkas
                Dentons US LLP
                1221 Avenue of the Americas
                New York, NY 10020

**ESSAR STEEL MINNESOTA LLC d/b/a MESABI METALLICS COMPANY LLC
ESSAR HOLDINGS INC.**


By:  _____
Name: David Pauker
Title:  Chief Restructuring Officer


Address:    Essar Steel Minnesota LLC
            d/b/a/ Mesabi Metallics Company LLC
            555 W 27th Street
            Hibbing, MN 55746


With a
copy to:    Ronald K. Gorsich
            White & Case LLP
            555 South Flower, Suite 2700
            Los Angeles, CA 90071

## **EXHIBIT 1**

## PLAN SPONSOR TERM SHEET

This Plan Sponsor Term Sheet (the "Term Sheet") dated as of April 21, 2017 presents the terms of an agreement between Chippewa Capital Partners, LLC ("Chippewa"), on the one hand, and Mesabi Metallics Company LLC (f/k/a Essar Steel Minnesota LLC) and ESML Holdings Inc. (together, the "Debtors," and each of Chippewa, Mesabi Metallics Company LLC and ESML Holdings Inc., a "Party," and collectively, the "Parties"), on the other hand, concerning Chippewa becoming the plan sponsor (the "Plan Sponsor") and acquiring substantially all the assets of the Debtors through an amended plan of reorganization pursuant to the terms and conditions of this Term Sheet (such plan and the transactions relating to consummation of such plan, or otherwise contemplated by this Term Sheet, as reflected in all definitive and ancillary documentation thereof, collectively, the "Amended Plan").

This Term Sheet is enforceable and binding upon full execution hereof by the Parties, subject only to: (i) orders of the United States Bankruptcy Court for the District of Delaware (the "Court") approving the terms and conditions of, as well as the transactions contemplated by, this Term Sheet, and (ii) definitive documentation of the Amended Plan, each of which is a condition precedent to consummation of transactions contemplated in this Term Sheet.[1]

| Amended Plan Overview | The Amended Plan would reorganize the Debtors pursuant to a $1+ billion proposal made by a consortium, which provides over $350 million of distributable value to the Debtors' estates and creditors. |
|---|---|
| | Chippewa, supported by a family office investor and the GFG Alliance (which includes "Liberty House" and "SIMEC"), have been in discussions over the last few weeks and formed a consortium (the "Consortium") for the purposes of this proposal, which the Consortium believes brings substantial benefits to the Debtors. |
| | • The Consortium brings financial wherewithal, operational expertise and complimentary assets which fit naturally with the proposed acquisition, including: The GFG Alliance is an integrated global steelmaking, natural resources and trading alliance of companies with over $9 billion in annual revenues. Liberty House is a leading integrated metals manufacturer with downstream advanced engineering components production and distribution to UK and global industry, and owns and operates one of the UK's largest aluminum foundries. SIMEC owns and operates a number of UK power stations and an international resources and commodities combined shipping business. The GFG Alliance also has a twenty five-year history in commodity trading and is an LME Category 5 member; |
| | • The family office investor has a track record of industrial transactions concerning hundreds of millions to billions of dollars; and |
| | • Chippewa, which has the agreement of ERP Iron Ore, LLC ("ERPI") to integrate its three concentrate plants, pellet plant and rail loadout facility with those of the reorganized Debtors as part of the Amended Plan. At closing, GFG Alliance and the family office investor will have 50/50 ownership in the reorganized Debtors, and Chippewa envisions that after the integration of the ERPI assets that GFG Alliance and ERPI will have a controlling interest in the reorganized Debtors. |
| | The Consortium provides the Debtors with a complete solution, from a group with expertise in relevant sectors together with a strong commitment to the local industry. |
| | The Amended Plan put forward by the Consortium contemplates: (i) an equity investment of $250 million[2] (including the Earnest Money Deposit and any amounts funded pursuant to the Cash Collateral Order) (the "Equity Investment"), and (ii) $650 |

---

[1]     Capitalized terms not defined herein shall have the meaning ascribed in the *First Amended Chapter 11 Plan of Reorganization of Mesabi Metallics Company LLC (f/k/a Essar Steel Minnesota LLC) and ESML Holdings Inc.* with SPL Advisors LLC (SPL Advisors LLC, Strategic Partners Holdings Limited, and any parent, affiliate or subsidiary thereof, collectively, "SPL") as plan sponsor (such plan, filed at Docket No. 823, and any documents or agreements contemplated thereby or related thereto, including those filed at Docket No. 889, collectively, the "SPL Plan").

[2]     The Equity Investment is intended to be funded in equal parts by GFG Alliance and the family office.

|  | million of senior debt financing with a first lien on substantially all assets acquired from the Debtors to fund completion of construction of Debtor projects and operation of ERPI's existing assets (the "<u>Exit Credit Facility</u>").[3] |
|  | On the effective date of the Amended Plan (the "<u>Effective Date</u>"), ERPI would combine or integrate its pre-existing assets and businesses with those of the reorganized Debtors.[4] |
|  | All equity interests issued by the reorganized Debtors on the Effective Date shall be issued and distributed as directed by Chippewa (which shall include issuance to other members of the Consortium,[5] and subject to issuance of interests to be determined as a part of executive compensation). |
| **Commitment Letter** | Chippewa's obligation to make the Equity Investment shall be governed by the terms and conditions of the commitment letter to which this Term Sheet is attached as <u>Exhibit 1</u> (the "<u>Commitment Letter</u>"). |
| **Baseline Bidder** | On or before April 24, 2017, the Debtors shall designate Chippewa's bid as the Baseline Bid (as defined in and) pursuant to the Bid Procedures. |
| **Earnest Money Deposit** | Pursuant to the bid procedures approved by Court order (Docket No. 887, the "<u>Bid Procedures</u>"), Chippewa shall provide an earnest money deposit of $10 million, to be held in a segregated account in Chippewa's name and control, towards consummation of the Amended Plan (the "<u>Earnest Money Deposit</u>"). |
| **Cash Collateral** | • In the event Chippewa's bid is selected as the Baseline Bid and the Cash Collateral Order is approved by the Court: |
|  |    ○ Chippewa shall provide funding from the Earnest Money Deposit account into a segregated account held by the Debtors, which funding shall be used as cash collateral subject to adequate protection, as to each pursuant to the terms of the stipulation and Court order attached as <u>Exhibit A</u>, or another order in form and substance acceptable to Chippewa, and subject to an agreed budget (collectively, the "<u>Cash Collateral Order</u>"); and |
|  |    ○ In the event an agreement is reached with the State,[6] or the Court enters an Order in form and substance acceptable to Chippewa, approving the Debtors' assumption of all mining leases to which the State and a Debtor are a party, Chippewa shall supplement the Earnest Money Deposit, as necessary, by providing up to $5 million in additional deposits to fund the $5 million letter of credit to secure the payment of any cure amounts due and owing under the DNR Leases pursuant to the terms of an amended Cash Collateral Order. |
|  | • The amount of the Earnest Money Deposit, less the amount drawn and paid to third |

---

[3]   The Exit Credit Facility will provide funding sufficient to (i) complete the Debtor construction projects including a plant with three concentrator lines, a pellet plant, a rail load-out facility and related construction projects (all described as the "Project" in the SPL Plan) (the "<u>Construction Credit Facility</u>") and (ii) provide liquidity sufficient to fund restart and operation of ERPI's assets (the "<u>ERPI Credit Facility</u>"), which together are referred to as the "Exit Credit Facility." Chippewa will seek to utilize the Construction Credit Facility to fund completion of the Project, which construction is expected to expedite commissioning of up to two of the Debtors' concentrator lines, the rail load-out facility and related expenses in order to finish and operate the Debtors' assets in a manner that compliments the pre-existing ERPI assets and optimizes cash flows from the Debtors' assets (the "<u>Initial Projects</u>"). The New Prepetition Lender Notes and Prepetition Lien Trade Creditor Notes will contain terms permitting the Exit Credit Facility financing with lien and payment priority ahead of each of the foregoing, to the extent of collateral crossover, for the purpose of completing the Project. The existing ERPI assets may serve as collateral, if necessary, to facilitate obtaining the Exit Credit Facility, provided the terms and conditions of the Exit Credit Facility acceptable to Chippewa, in its sole discretion.

Chippewa intends to structure the Exit Credit Facility to correlate draws thereunder to timing and completion of its construction plan. Since Chippewa intends to expedite commissioning of the Initial Projects, Chippewa would therefore seek to structure the facility to permit draws to complete those Initial Projects, with further funding to complete the balance of the Project conditioned on appropriate milestones. As a result, commitments for initial draws under the Exit Credit Facility are expected to be substantially less than under the SPL Plan.

[4]   In connection with that combination or integration, ERPI's long-term secured indebtedness will be satisfied or replaced with a letter of credit.

[5]   The Equity Investment providers would be issued significant amounts of the equity interests in ERPI and the reorganized Debtors on the Effective Date, and are expected to have influence over their management and operations.

[6]   "<u>State</u>" means the State of Minnesota and any district, territory, municipality, department, agency or instrumentality of the State of Minnesota, including the Minnesota Department of Natural Resources, the Minnesota Pollution Control Agency and Itasca County.

| | |
|---|---|
| | parties by the Debtors pursuant to the Cash Collateral Order, shall be refunded in accordance with the Cash Collateral Order to Chippewa in the event the Amended Plan is not consummated or Chippewa is not the Successful Bidder (as defined in the Bid Procedures). In the event the Amended Plan is consummated, the remaining amount of the Earnest Money Deposit, plus any unused proceeds of the funding pursuant to the Cash Collateral Order, shall be utilized to pay Amended Plan distributions. |
| **The State of Minnesota** | As part and parcel of the Amended Plan, Chippewa would agree to execute the proposed settlement agreement(s) with the State on terms outlined on Exhibit B. |
| **Treatment of Claims and Equity Interests**[7] | The treatment of Claims and interests under Articles IV and V of the Amended Plan shall be the same as under Articles IV and V of the SPL Plan, with the following exceptions: |
| | *Chippewa Cash Collateral:*  Any unused proceeds of the funding pursuant to the Cash Collateral Order shall be utilized to pay Amended Plan distributions. |
| | *Allowed Administrative Claims*: Same as under the SPL Plan, including, without limitation, payment of the DIP Claims in full on the Effective Date, except no breakup fee or expense reimbursement is payable to any person or entity other than Chippewa. |
| | *Allowed Project Finance Secured Claims*: |
| | • Pro rata share of New Prepetition Lender Notes[8] ($86.9 million), or such other notes of reasonably equivalent market value as agreed to by Chippewa, the Project Finance Lenders, and the Debtors |
| | • Beneficial Trust Interests[9] |
| | • Pro rata share of remaining cash collateral, which excludes the Earnest Money Deposit and funds provided to the Debtors pursuant to the Cash Collateral Order, less the $5 million transferred to the Litigation Trust and for any other agreed uses (the "Remaining Cash Collateral") |
| | *Allowed Term Loan Secured Claims*: |
| | • Pro rata share of New Prepetition Lender Notes ($64.4 million) |
| | • Beneficial Trust Interests |
| | • Pro rata share of Remaining Cash Collateral |
| | *Allowed Supplier Credit Secured Claims*: |
| | • Pro rata share of New Prepetition Lender Notes ($23.7 million) |
| | • Beneficial Trust Interests |
| | • Pro rata share of Remaining Cash Collateral |
| | *Allowed General Unsecured Claims*: Beneficial Trust Interests |
| | *Other*: |
| | • Each creditor of a Debtor that is given a Prepetition Lien Trade Creditor Note or Post-Emergence Trade Agreement shall release (which may be included in the Plan or Confirmation Order instead) as of the Effective Date of all liens, Claims, lis pendens, Causes of Action, interests, security interests and other |

---

[7]   To the extent a creditor receives payment from a third-party, distributions/recoveries to such creditor will be reduced dollar for dollar such that a creditor shall not receive more than 100% of its Allowed Claim.

[8]   "New Prepetition Lender Notes" means 8% junior notes due in 2022, issued in the aggregate principal amount of $175 million.  Payments of principal will commence on a deferred date and shall be made subject to satisfaction of an excess cash flow provision.  Interest on the notes will be paid semi-annually.  For the first three years following the Effective Date, interest shall be paid 15% in cash subject to a $10 million minimum liquidity level, after accounting for the interest payment, and 85% will be pay-in-kind, after which time all interest shall be cash pay.  ERPI shall agree to pay the 15% cash interest under the New Prepetition Lender Notes for the first three years in the event the reorganized Debtors are unable to do so; provided, that ERPI shall have no other obligation with respect to the New Prepetition Lender Notes.

[9]   "Beneficial Trust Interests" means the applicable Litigation Trust interests proposed in the SPL Plan, except that none of Chippewa, ERPI or the reorganized Debtors would have any beneficial Litigation Trust interests.

|  | encumbrances (and agree to dismiss any pending proceedings with prejudice) against all non-Debtor persons, entities or governmental units, and each of their assets.<br><br>• Chippewa, in consultation with the Debtors, shall determine which creditors will be selected to enter into a Post-Emergence Trade Agreement. |
|---|---|
| **Litigation Trust** | • Same as in SPL Plan, except that none of Chippewa, ERPI or the reorganized Debtors will be issued any beneficial interests in the Litigation Trust. |
| **Other Changes to SPL Plan** | The Amended Plan (and Documents) shall also modify the SPL Plan as follows:<br><br>• Absent the consent of Chippewa, the Debtors may only revoke or withdraw the Amended Plan in the event the Board of Directors and/or Board of Governors of the Debtors reasonably determines in good faith, based upon the advice of outside counsel White & Case LLP, that continued performance under this Term Sheet and the Amended Plan would violate the Board of Directors and/or Board of Governors' fiduciary duties to all stakeholders of the Debtors under applicable law;<br><br>• To select the Board of Directors or Board of Governors of the reorganized Debtors;<br><br>• To include any conforming changes for terms or conditions contemplated by this Term Sheet; and<br><br>• To include any other changes desired by Chippewa that do not materially and adversely affect the Debtors or a creditor that voted in favor of the SPL Plan (or to make such material and adverse changes with the consent of such affected party(ies)). |
| **Contracts and Leases** | The treatment (e.g., modification, termination, assumption, assignment, rejection, etc.) of contracts and leases shall be acceptable to Chippewa, and shall be determined by Chippewa prior to the Effective Date. |
| **Releases, Exculpations, and Injunctions** | The Amended Plan shall provide for broad and general releases and exculpations, acceptable to Chippewa: (i) of the Consortium, ERPI, the reorganized Debtors, their investors and parent, affiliate and subsidiary entities, the Debtors, and each of the representatives and agents of the foregoing, other than Transferred Causes of Action and payment obligations pursuant to the Plan, and (ii) all tangible and intangible assets (including all right, title and interest in contracts or leases) of the Consortium, ERPI, the reorganized Debtors, their investors and parent, affiliate and subsidiary entities, the Debtors, and each of the representatives and agents of the foregoing, with the exception of liens granted pursuant to the Exit Credit Facility, New Prepetition Lender Notes and Prepetition Lien Trade Creditor Notes.  The releases and exculpations shall include all Claims, Causes of Action, rights of subrogation, contribution or indemnification, interests, obligations, other rights, suits, damages, defenses, remedies and liabilities whatsoever that any creditor or equity holder of a Debtor could assert in respect of Claims, Causes of Action, rights of subrogation, contribution or indemnification, interests, obligations, other rights, suits, damages, defenses, remedies and liabilities asserted or that could be asserted against such creditor or equity holder prior to the Effective Date.  The Amended Plan shall also include injunctions enjoining any actions, Claims, or Causes of Action against any of the foregoing, including any contemplated or pending foreclosure proceedings, and shall require dismissal of pending actions.<br><br>The Amended Plan shall preclude setoff, offset, netting, recoupment, or any other remedy concerning deposits, advances, or prepayments made by the Debtors, as well as the Debtors' assets.<br><br>The released and exculpated parties shall be indemnified and held harmless from, and shall be paid for, any cost, loss, expense, liability, Claim, demand or damage (including reasonable legal fees and the cost of enforcing this indemnity) arising out of or resulting from failure to adhere to, or violation of the release, exculpation, or injunctions |

| | |
|---|---|
| | provisions. Such indemnity and hold harmless obligation may be realized by offset, setoff, or netting of Amended Plan distributions that would have otherwise been made to the person, entity, or governmental unit failing to adhere or violating same. In addition, such indemnity and hold harmless obligation shall be paid by the Litigation Trustee from proceeds of the Litigation Trust Assets that would have been distributable to the person, entity, or governmental unit failing to adhere or violating same if not paid by them prior to such distribution. |
| **Structure** | Notwithstanding anything in this Term Sheet, Chippewa will determine the precise restructuring and business integration transactions contemplated by this Term Sheet at a later date. The form and structure of the Equity Investment may change as a result of the foregoing. |
| **Exemption from SEC Registration** | All securities issued under the Amended Plan will be exempt from SEC registration. |
| **Breakup Fee and Expense Reimbursement** | Chippewa shall be entitled to the breakup fee and expense reimbursement as provided in the Bid Procedures, and the Confirmation Order shall so provide. |
| **Other Terms and Conditions** | • The Debtors shall not take or omit any action, without the prior written consent of Chippewa, that would or may: (i) have a material and adverse effect upon or materially impair the assets or business or the proposed acquisition thereof by Chippewa, or (ii) create liability or a Claim, or alter the value of the assets or business, individually or in the aggregate, by $250,000 or more (including entry into agreements, whether binding or non-binding, concerning supply or offtake).<br><br>• Subject only to a Qualified Bid by a party other than Chippewa being selected as the Successful Bid (each as defined in the Bid Procedures) pursuant to the Bid Procedures, the Debtors shall not hinder, delay, impede or impair the Court's approval, or the consummation, of the Amended Plan, and shall take commercially reasonable efforts to avoid or eliminate each and every impediment thereto and/or enable consummation thereof. |
| **Procedure** | Debtors shall seek expedited confirmation of the Amended Plan pursuant to the Documents, without amendment or resolicitation of the *First Amended Disclosure Statement Relating to the Chapter 11 Plan of Reorganization of Mesabi Metallics Company LLC (f/k/a Essar Steel Minnesota LLC) and ESML Holdings Inc.* (Docket No. 823) absent the written consent of Chippewa. |
| **Documents Acceptable to Chippewa** | All documents concerning transactions contemplated by this Term Sheet, including the Amended Plan, Confirmation Order,[10] Amended Plan-related documents, transition services agreement, debt documents to be issued on the Effective Date of the Amended Plan (such as the Exit Credit Facility, New Prepetition Lender Notes, Prepetition Lien Trade Creditor Notes and any other indebtedness documents), any related intercreditor agreements, governance documents, any other documents necessary or desirable to consummate the transactions contemplated by this Term Sheet, and any ancillary documents (collectively, the "<u>Documents</u>"), must be in form and substance acceptable to Chippewa. |
| **Conditions Precedent to Effective Date** | The following shall constitute conditions precedent to the Effective Date of the Amended Plan, which may be waived in whole or in part by Chippewa:<br><br>• All Documents shall be in form and substance acceptable to Chippewa, and shall have been fully executed and delivered;<br><br>• The Exit Credit Facility shall have closed and all obligations thereunder have |

---

[10] "<u>Confirmation Order</u>" means an order of the Court in form and substance acceptable to Chippewa: (i) confirming the Amended Plan, (ii) approving, and authorizing the Debtors' performance of, this Term Sheet and the Commitment Letter, and (iii) providing that the Chippewa adequate protection claim pursuant to the Cash Collateral Order shall be paid in full in cash pursuant to any other order approving a transaction concerning all or a material portion of the Debtors' assets with a third party (and that no other order of the Court will modify that obligation).

| | |
|---|---|
| | become fully effective and enforceable; |
| | • Assumption by the reorganized Debtors of all State, GPIOP, Superior and Langdon/Warren mining and surface leases and mineral tenures, each of which shall be in full force and effect; |
| | • All of the Debtors' permits shall be in full force and effect, including the air permit (and related construction authorization) that was the subject of the motion filed at Docket No. 836; |
| | • Court orders shall have been entered approving assumption of contracts or leases designated by Chippewa for assumption; |
| | • There shall be no order or determination restraining or prohibiting consummation of the Amended Plan; |
| | • There shall have been no MAE;[11] and |
| | • All consents and/or approvals necessary to consummate the Amended Plan shall have been obtained. |
| **Termination by Chippewa** | This Term Sheet and any agreements relating to the Amended Plan shall be terminable immediately by Chippewa, with no further force or effect, in the event: |
| | • The Debtors stop doing business as currently conducted; |
| | • A Debtor's case is dismissed, converted to Chapter 7, or a trustee or examiner is appointed; |
| | • A Debtor seeks to enter into, the approval of, or consummation of a transaction or agreement, or fails to oppose another transaction or agreement, that conflicts with, impairs, or delays consummation of the Amended Plan, or any such transaction or agreement is approved by the Court; |
| | • The Debtors fail to perform any material covenant, obligation, or agreement; |
| | • If consummation of the Amended Plan would violate any order, decree or judgment; |
| | • In the event any secured creditor holding a claim in excess of $250,000 obtains relief from the automatic stay, is permitted to prosecute or continue prosecution of a foreclosure action, or SPL enforces, whether pursuant to a prior or subsequent order of the Court, any of its DIP Claims against any of the Debtors or their assets; |
| | • Termination of the Debtors' right to receive funding from Chippewa for use as cash collateral or to use funds provided pursuant to the Cash Collateral Order; |
| | • In the event Chippewa's bid is not the Baseline Bid before the Auction, or if Chippewa is not the Successful Bidder after the Auction (as defined in the Bid Procedures); |
| | • In the event the Confirmation Order is not entered by the Court on or before April 28, 2017; or |
| | • In the event the Effective Date does not occur on or before June 30, 2017. |
| **Access** | Chippewa shall continue to be provided access through the Effective Date in order to facilitate or consummate the transactions contemplated by this Term Sheet, including to the Debtors and their assets, their employees, and their books and records (including calculations regarding cost to construct the Project). |

*[signature page follows]*

---

[11]    An "MAE" means a material adverse effect as to (a) the business, assets, results of operations or financial condition of the Debtors, individually or in the aggregate, for which payment or reimbursement of damages, losses, costs and expenses has not already been received by the Debtors in full in cash proceeds of the Debtors' insurance policies, which cash proceeds shall be transferred to ERPI on the Effective Date, (b) the ability of the Debtors to perform any of their obligations under this Term Sheet, or (c) the validity or enforceability of this Term Sheet.

If the foregoing correctly sets forth the Parties' agreement, please indicate your acceptance of the terms hereof by returning to Chippewa an executed counterpart hereof. This Term Sheet will be of no force or effect in the event Chippewa has not received all executed counterparts.

**CHIPPEWA CAPITAL PARTNERS, LLC**

Name: Tom Clarke
Title: Authorized Signatory

**MESABI METALLICS COMPANY LLC
(F/K/A ESSAR STEEL MINNESOTA LLC)**

Name: David Pauker
Title: Chief Restructuring Officer

**ESML HOLDINGS INC.**

Name: David Pauker
Title: Chief Restructuring Officer

- 8 -

**Exhibit A**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ESSAR STEEL MINNESOTA LLC and ESML HOLDINGS INC.,[1] | Case No. 16-11626 (BLS) |
| Debtors. | (Jointly Administered) |

**CERTIFICATION OF COUNSEL IN CONNECTION WITH STIPULATION REGARDING THE REQUEST FOR ADEQUATE PROTECTION FOR CHIPPEWA CAPITAL PARTNERS, LLC**

The undersigned counsel for Mesabi Metallics Company LLC (f/k/a Essar Steel Minnesota LLC) and ESML Holdings Inc. (the "**Debtors**") hereby certifies and states as follows:

1. On July 8, 2016, the Debtors each commenced a chapter 11 case in this Court by filing a voluntary petition for relief under the Bankruptcy Code. The Debtors' chapter 11 cases (the "**Cases**") are being jointly administered by Order dated July 12, 2016 [Docket No. 32].

2. On April 12, 2017, the Court entered the *Order (I) Authorizing and Approving Bid Procedures to be Employed in Connection with the First Amended Chapter 11 Plan of Reorganization of Mesabi Metallics Company LLC (f/k/a Essar Steel Minnesota LLC) and ESML Holdings Inc. and (II) Scheduling an Auction* [Docket No. 887] (the "**Bid Procedures Order**"), approving the bid procedures attached thereto as Exhibit 1 (the "**Bid Procedures**").

3. Chippewa Capital Partners, LLC ("**Chippewa**") and the Debtors have executed a binding term sheet (as amended, supplemented or modified from time to time with the prior

---

[1] Essar Steel Minnesota LLC has changed its name to Mesabi Metallics Company LLC. The last four digits of its federal taxpayer identification number are 8770. The last four digits of ESML Holdings Inc.'s federal taxpayer identification number are 8071.

written consent of Chippewa, the "**Chippewa Proposal**"), the terms of which are set forth in

Exhibit A to the Stipulation (as defined below).  As part of the Chippewa Proposal, Chippewa

has agreed to provide a $10 million deposit in connection with its bid subject to certain requested

protections.

4.      As part of the Chippewa Proposal, Chippewa is willing to release certain portions

of the deposit to the Debtors as cash collateral to fund the Debtors' bankruptcy proceedings.

5.      On April [__], 2017, the Debtors and Chippewa entered into a Stipulation

Regarding the Request for Adequate Protection for Chippewa Capital Partners, LLC (the

"**Stipulation**").

6.      Attached hereto as **Exhibit 1** is a proposed form of order (the "**Proposed Order**")

approving the Stipulation.  A true and correct copy of the Stipulation is attached to the Proposed

Order as Exhibit A thereto.

7.      SPL, the Project Finance Lenders, the Term Loan Lenders, the Supplier Credit

Lenders (each as defined in the Chippewa Proposal) and the Official Committee of Unsecured

Creditors have reviewed the Stipulation and Proposed Order, and consent to entry of the

Proposed Order and the terms of the Stipulation.

Accordingly, the Debtors respectfully request that the Court enter the Proposed Order.

Dated: April [__], 2017

Respectfully submitted,

**FOX ROTHSCHILD LLP**

/s/      [DRAFT]_____
Jeffrey M. Schlerf (DE No. 3047)
L. John Bird (DE No. 5310)
Courtney A. Emerson (DE No. 6229)
919 North Market Street, Suite 300
Wilmington, DE 19801
Telephone:  (302) 654-7444
Facsimile:  (302) 656-8920

2

jschlerf@foxrothschild.com
jbird@foxrothschild.com
cemerson@foxrothschild.com

and

Thomas E Lauria (admitted *pro hac vice*)
Matthew C. Brown (admitted *pro hac vice*)
**WHITE & CASE LLP**
200 South Biscayne Boulevard, Suite 4900
Miami, Florida 33131-2352
Telephone:  (305) 371-2700
Facsimile:  (305) 385-5744
tlauria@whitecase.com
mbrown@whitecase.com

and

Craig H. Averch (admitted *pro hac vice*)
Ronald K. Gorsich (admitted *pro hac vice*)
**WHITE & CASE LLP**
555 South Flower Street, Suite 2700
Los Angeles, California 90071
Telephone:  (213) 620-7700
Facsimile:  (213) 452-2329
caverch@whitecase.com
rgorsich@whitecase.com

*Attorneys for the Debtors and Debtors in Possession*

3

**EXHIBIT 1**

**Proposed Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ESSAR STEEL MINNESOTA LLC and ESML HOLDINGS INC.,[1] | Case No. 16-11626 (BLS) |
| Debtors. | (Jointly Administered) |
| | **Related to Docket No. 887** |

### ORDER APPROVING STIPULATION REGARDING THE REQUEST FOR ADEQUATE PROTECTION BY CHIPPEWA CAPITAL PARTNERS, LLC

Upon the Stipulation Regarding the Request for Adequate Protection by Chippewa Capital Partners, LLC (the "**Stipulation**"), it is HEREBY ORDERED THAT:

1.      The Stipulation attached hereto as **Exhibit A** is approved and is immediately enforceable in accordance with its terms.[2]

2.      The failure to specifically include any particular provision of the Stipulation in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that all the terms and conditions of the Stipulation be authorized and approved in their entirety as if set forth at length herein.

3.      SPL, the Project Finance Lenders, the Term Loan Lenders, the Supplier Credit Lenders (each as defined in the Chippewa Proposal) and the Official Committee of Unsecured Creditors have reviewed the Stipulation and this Order, and consent to entry of this Order and the terms of the Stipulation.

---

[1] Essar Steel Minnesota LLC has changed its name to Mesabi Metallics Company LLC.  The last four digits of its federal taxpayer identification number are 8770.  The last four digits of ESML Holdings Inc.'s federal taxpayer identification number are 8071.

[2] Capitalized terms used but not defined herein shall have the meanings set forth in the Stipulation.

Americas 92701421

4.     All funds in the Funding Account and all funds disbursed from the Funding

Account constitute Chippewa's cash collateral and Chippewa is entitled to adequate protection

for all such amounts pursuant to the terms of the Stipulation and is also entitled to the good faith

and other protections of Section 363 of the Bankruptcy Code with respect to the funds in the

Funding Account and the funding transactions described in the Stipulation.

5.     This Court retains jurisdiction with respect to all matters arising from or related to

the implementation of this Order.

Dated:  April ___, 2017
           Wilmington, Delaware

_____
THE HONORABLE BRENDAN L. SHANNON
CHIEF BANKRUPTCY JUDGE

**EXHIBIT A**

Americas 92701421

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| ESSAR STEEL MINNESOTA LLC and ESML HOLDINGS INC., | Case No. 16-11626 (BLS) |
| Debtors. | (Jointly Administered) |

**STIPULATION REGARDING THE REQUEST FOR ADEQUATE PROTECTION BY**
**CHIPPEWA CAPITAL PARTNERS, LLC**

Upon consideration of the request of Mesabi Metallics Company LLC (f/k/a Essar Steel Minnesota LLC) and ESML Holdings Inc. (together, the "**Debtors**") and Chippewa Capital Partners, LLC ("**Chippewa**") for certain adequate protection in connection with Chippewa permitting the Debtors to utilize portions of the refundable, earnest money $10 million deposit provided by Chippewa (the "**Earnest Money Deposit**") in accordance with the bidding procedures approved by Order of the Court [Docket No. 887] (the "**Bidding Procedures**") to the Debtors pursuant to the terms and conditions of the binding term sheet executed by the Debtors and Chippewa attached hereto as **Exhibit A** (as amended, modified or supplemented from time to time, the "**Chippewa Proposal**"), the Debtors, as debtors and debtors in possession in the above-captioned chapter 11 cases (the "**Cases**"), and Chippewa  hereby stipulate as follows:

1.      Within one business day after entry of an order of the Court approving this Stipulation (the "**Approval Order**"), Chippewa shall establish a segregated account at Chippewa and fund it with the Earnest Money Deposit (the "**Earnest Money Deposit Account**").

2.      The Debtors shall establish a segregated bank account at a financial institution acceptable to Chippewa which shall not be an existing lender to or creditor of a Debtor (the

1

"**Funding Account**" and, together with the Earnest Money Deposit Account, the "**Accounts**").

3.      So long as no Termination Event has occurred that has not been waived by Chippewa's counsel in writing, Chippewa will transfer portions of the Earnest Money Deposit Account to the Debtors' Funding Account (i) in the amount of $2 million within one business day of entry of the Approval Order and (ii) in additional amounts requested by the Debtors for payments due in the upcoming week, which requests shall be funded by Chippewa from the Earnest Money Deposit Account within one business day of any request for funding by the Debtors consistent with the budget attached hereto as <u>Exhibit A</u> (as amended pursuant to the terms hereof, the "**Budget**"), with a weekly variance for total expenditures in the Budget for such week not to exceed 15% in the aggregate (the "**Permitted Variance**"); <u>provided</u> that any amounts or expenses in the Budget that are unused in any week may be carried over and used by the Debtors in any subsequent week in accordance with the Budget, and such carried over amounts or expenses shall not apply to the Permitted Variance, but shall not be included by the Debtors in any further requests for funds from the Earnest Money Deposit by the Debtors; and <u>provided</u>, <u>further</u>, that the Debtors shall, in consultation with Chippewa, limit to the greatest extent practicable, whether through reduction in amounts to be paid in accordance with the Budget, deferral or otherwise, use of the Earnest Money Deposit.

4.      The Debtors shall deliver to Chippewa, the Official Committee of Unsecured Creditors appointed in the Cases (the "**Committee**") and the Prepetition Lenders[1] by 12:00 p.m. (New York City time) each week, starting on Wednesday, April 26, 2017 for the week ended Saturday, April 22, 2017, a record of the Debtors' actual cash receipts and disbursements for the preceding week, categorized by line item as set forth in the Budget, and certified by the Chief

---

[1] "**Prepetition Lenders**" has the meaning set forth in the *Declaration of Sanjay Bhartia, in Support of Debtors' First Day Pleadings* [Docket No. 14].

Americas 92701421

Restructuring Officer, Chief Executive Officer or Chief Financial Officer of the Debtors as having been prepared in good faith.

5.      The Debtors shall deliver to Chippewa, as determined to be necessary by the Debtors in their reasonable discretion from time to time, an updated budget supplementing and/or modifying the most recent Budget approved by Chippewa; at the time such budget is in form and substance acceptable to Chippewa in its sole discretion and approved by the Committee, such budget shall replace and thereby constitute the Budget hereunder without the need for further Court order.   The Debtors shall also provide a copy of any updated or supplemental budget to the Prepetition Lenders at the time of delivery to Chippewa or the Committee.  Any supplemental Budget shall promptly be filed in the Cases.

6.      Chippewa shall be granted, pursuant to the Approval Order, a first-priority perfected lien upon and security interest in the Funding Account and the funds held therein, and the Debtors shall use their best efforts to obtain a deposit account control agreement in form and substance acceptable to Chippewa as soon as practicable.  Thus, any amounts of the Earnest Money Deposit funded into the Funding Account shall constitute, and be determined by the Court to be, Chippewa's cash collateral, as defined in section 363 of 11 U.S.C. §§ 101, et seq. (the "**Bankruptcy Code**").  The funds held in the Earnest Money Deposit Account shall not constitute the property or collateral of the Debtors or their estates, and shall also not be subject to the claims or liens of any creditors of the Debtors.  The Debtors will only have an ownership interest in the Earnest Money Deposit if and at the time that Chippewa breaches its obligations under the Chippewa Proposal or Investment Letter (as defined below).  No funds in the Funding Account shall be subject to the claims or liens of any creditors of the Debtors.  The only funds the Debtors will include in the Funding Account will be cash collateral from the Earnest Money

3

Deposit.  No cash collateral or proceeds of other non-cash collateral of the Prepetition Lenders shall be deposited into the Accounts.  Chippewa shall be entitled to recover the funds held in the Accounts and close the Earnest Money Deposit Account (at which point the Debtors and their estates shall no longer have any interest in the funds in the Funding Account or the Earnest Money Deposit Account, or the Earnest Money Deposit) in the event (i) Chippewa is not named the Successful Bidder (as defined in the Bidding Procedures), (ii) a Debtor breaches its obligations under this Stipulation, (iii) Chippewa terminates the Chippewa Proposal in accordance with its terms, or (iv) a closing on the Chippewa Proposal does not occur in accordance with its terms and the terms of the Investment Letter.

7.      As adequate protection for the Debtors' use of the funds in the Funding Account, pursuant to sections 361 and 363(e) of the Bankruptcy Code and pursuant to the Approval Order, Chippewa is hereby granted the following protections, including the protections afforded a party acting in "good faith" under section 363(m) of the Bankruptcy Code (collectively, the "**Adequate Protection**"):

   a.  an allowed administrative expense claim in the Cases (the "**Superpriority Claim**"), equal to the aggregate amount of funds transferred to and not otherwise recovered by Chippewa from the  Funding Account, having superpriority over all administrative expenses of the kind specified in section 364(c)(1), 503(b), 507(a)(2), 507(b) or 507(d) of the Bankruptcy Code, other than those allowed administrative expense claims owed by the Debtors to the DIP Lender under (and as defined in) the *Final Order Authorizing Debtors to Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 362 and 364* [Docket No. 216] (the "**DIP Order**"), which claims will have priority over such claims in favor of Chippewa;

4

b.  to the extent of any use by the Debtors of funds transferred to and not otherwise recovered by Chippewa from the Funding Account, perfected and unavoidable liens, immediately junior only to the DIP Liens (as defined in the DIP Order), on all presently owned and hereafter acquired tangible and intangible property and assets of the Debtors and their estates wherever located, and any proceeds and products thereof (the "**Collateral**"), that was unencumbered by any valid, enforceable, perfected and non-avoidable liens as of the Petition Date, including the liens of the Prepetition Lenders (collectively, the "**Prepetition Liens**"); provided that the Collateral shall not include causes of action for preferences, fraudulent conveyances, and other avoidance power claims under sections 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code but shall include proceeds thereof subject to the same distribution allocation the DIP Lender is subject to under paragraph 3(f) of the DIP Order; and

c.  to the extent of any use by the Debtors of the funds transferred to and not otherwise recovered by Chippewa from the Funding Account, perfected and unavoidable liens on all Collateral encumbered by Prepetition Liens, in each case immediately junior only to such Prepetition Liens and the DIP Liens.

8.      Each of the liens and claims granted to Chippewa in paragraphs 6 and 7 above shall, in all cases, be subject and subordinate to a carve-out (the "**Carve-Out**"), which shall be comprised of the following: (w) all fees required to be paid to the Clerk of the Court and to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a) in an amount agreed to by the Debtors and the U.S. Trustee or ordered by the Court, (x) all fees required to be paid to any chapter 7 trustee appointed upon the conversion of any of the Cases to a case under chapter 7 of the Bankruptcy Code up to

5

$50,000; (y) allowed (whether allowed prior to or after a Termination Event (as defined below)) and unpaid fees and expenses (collectively, the "**Allowed Professional Fees**") of the Debtors' professionals and the professionals of the Committee (collectively, the "**Carve-Out Professionals**") incurred from the date of filing of the Cases to the date of a Termination Event solely to the extent permitted under the Budget (clauses (w), (x) and (y), collectively, the "**Pre Carve-Out Fees**"); and (z) $1,000,000 (the "**Post Carve-Out Cap**"), which amount may be used to pay Allowed Professional Fees incurred after the date of a Termination Event and approved by the Bankruptcy Court (the "**Post Carve-Out Fees**") on a pro rata basis.  For the sake of clarity, the Post Carve-Out Fees hereunder shall be identical to, and not in addition to, the Post Carve-Out Fees under (and as defined in) the DIP Order.  The Post Carve-Out Cap shall not be reduced or increased by the amount of any Pre Carve-Out Fees paid after a Termination Event.  The ability of any party to object to the fees, expenses, reimbursement or compensation described above shall not be impaired by the terms of the Carve-Out.

9.      Upon the occurrence of any of the following (each, a "**Termination Event**"), unless such Termination Event is waived by Chippewa's counsel in writing, the Debtors' right to receive funding from Chippewa into the Funding Account for use as cash collateral or to use funds in the Funding Account shall terminate immediately, the Debtor shall return the unused balance in the Funding Account to Chippewa within 3 days of such Termination Event, and the Earnest Money Deposit shall no longer be available for funding to the Funding Account or otherwise available to the Debtors under any circumstances:

a.     if a Debtor breaches, or Chippewa exercises its right to terminate, the Chippewa Proposal, or the Commitment Letter dated April [__], 2017 between Chippewa and the Debtors (the "**Investment Letter**"), as to each according to its terms;

6

b.  these Cases are dismissed, converted to Chapter 7 or a Chapter 11 trustee or an examiner with expanded powers is appointed in these cases;

c.  the Debtors utilize the funds in the Funding Account in a manner not permitted by the Budget and the Permitted Variance;

d.  a Debtor ceases or publicly announces its intent to cease operating and carrying on its business as it is now conducted;

e.  a Debtor seeks to enter into, the approval of, or consummation of a transaction or agreement, or fails to oppose another transaction or agreement, that conflicts with, impairs, or delays consummation of the Chippewa Plan, or any such transaction or agreement is approved by the Court;

f.  in the event any secured creditor of the Debtors obtains relief from the automatic stay or is permitted to prosecute or continue prosecution of a foreclosure action on any assets of the Debtors in an amount exceeding $2,500,000, individually or in the aggregate;

g.  the reversal, vacatur, stay, amendment, supplementation or other modification of the Approval Order in any way without Chippewa's consent, or a Debtor shall apply for authority to do so or shall take any action to support any third party's application for authority to do so without Chippewa's prior consent to such action;

h.  on April 26, 2017, in the event Chippewa is not the plan sponsor (as reflected in a notice to be filed with the Court);

i.  in the event Chippewa is not the bidder with the Baseline Bid at any time prior to the Auction (each as defined in the Bidding Procedures);

7

j.   on and after April 26, 2017, in the event Chippewa is not the Successful Bidder;

k.   on and after April 30, 2017, in the event the Confirmation Order has not been entered; provided, however, that such deadline shall immediately extend to one (1) business day after the conclusion of the Confirmation Hearing to the extent such hearing is continued with the consent of Chippewa;

l.   (A) the rights of the Debtors under mining leases with the State (as defined in the Chippewa Proposal) are, in any way, impaired, (B) any one or more of such mining leases is terminated, amended or otherwise modified in any way without the prior express written consent of Chippewa, or (C) the mining leases are assumed and assigned or rejected without the prior express written consent of Chippewa; and

m.   the Debtors file a purchase agreement, plan of reorganization or disclosure statement that fails to provide for the indefeasible repayment in full of any amounts deposited by Chippewa into the Funding Account (or such other treatment as agreed to by Chippewa).

10.   If Chippewa, without legal justification as determined by order of the Court, unilaterally terminates the Investment Letter, Chippewa shall forfeit the balance of any unused funds on deposit in the Funding Account and the funds then on deposit in the Earnest Money Deposit Account, and any and all right to repayment of such sums in the Accounts, and the Debtors may use the Earnest Money Deposit Account without the consent of Chippewa or any further order of the Court.

Americas 92701421

11.     If the Chippewa Proposal closes, the full amount of the Earnest Money Deposit (whether or not used by the Debtors) and the Superpriority Claim for use of the funds in the Funding Account shall be applied as a portion of Chippewa's investment.

12.     This Stipulation, and the terms and conditions hereunder, are effective only, and immediately, upon the entering the Approval Order by the Court.

13.     To the extent of any conflict between this Stipulation, on the one hand, and any order entered in the Cases (including the DIP Order), this Stipulation shall control.

14.     Upon entry of the Approval Order, the provisions of this Stipulation shall be binding upon all parties-in-interest in the Cases, including, without limitation, the Debtors, any creditor of the Debtors, Chippewa, the DIP Lender, the Committee, and any examiner or liquidating trustee appointed in the Cases, and their respective successors and assigns (including any trustee or fiduciary hereafter appointed as a legal representative of the Debtors or with respect to the property of the estates of the Debtors) whether in the Cases, in any successor case, or upon any dismissal of any such chapter 11 or chapter 7 case and shall inure to the benefit of Chippewa, the Debtors, and their respective successors and assigns.

15.     The Court shall retain jurisdiction to all matters arising from or related to the interpretation and implementation of this Stipulation.

[Signature page follows]

Dated:  Wilmington, Delaware
        April ___, 2017

**MESABI METALLICS COMPANY LLC**

By:  _____
Name:
Title:

**ESML HOLDINGS, INC.**

By:  _____
Name:
Title:

**CHIPPEWA CAPITAL PARTNERS, LLC**

By:  _____
Name: Charles A. Ebetino, Jr.
Title: Authorized Signatory

[Chippewa Stipulation]

**<u>EXHIBIT A</u>**

**Budget**

# Exhibit B

## Proposed Settlement Agreement(s) With The State Of Minnesota[1]

Chippewa seeks to make The State of Minnesota "whole" and reinforce its commitment to the future of the Mesabi Iron Ore Range. Chippewa proposes to enter into one or more settlement agreements reflecting the terms below with the "State" (*i.e.* the State of Minnesota and any district, territory, municipality, department, agency or instrumentality of the State of Minnesota, including the Minnesota Department of Natural Resources, the Minnesota Pollution Control Agency and Itasca County). Chippewa acknowledges that as part of the settlement(s) the Debtors' mining and surface leases and permits with/from the State would need to be renegotiated and amended.

The settlement(s) would be approved by Court order acceptable to the State and Chippewa, and include the following:

- A commitment to build and commission a 3 mmtpa DRI/HBI plant in Minnesota on an agreed timetable and with agreed milestones.

- Assumption of State mining and surface leases would be expressly conditioned upon the closing of the Amended Plan transactions. Assumption would therefore not occur until the Amended Plan is consummated, and any order or agreement regarding the assumption would be void if the Amended Plan is not consummated.

- An outside date by which the Amended Plan must be consummated, which will preclude any undue delay. In the event the Amended Plan is not consummated by the agreed outside date, the settlement(s) shall be terminable by the State, which would void any order or agreement regarding assumption of leases.

- The State (presumably Itasca County) would be provided a royalty agreement to provide for payment of up to $65 million to recoup its investment in the Project infrastructure on terms to be agreed.

- If the DRI/HBI plant milestones or completion requirements are not met, the royalty agreement would require fixed quarterly payments in cash until the earlier of (a) full payment under the royalty agreement, or (b) the date the DRI/HBI plant completion requirement is satisfied, at which time the fixed quarterly payments would cease and royalty payments would recommence.

- The mining and surface leases and permits would be renegotiated and amended to conform to the new Project construction plan, and would permit the State to terminate them if agreed Project construction plan requirements are not met.

- Chippewa and ERPI would work hand in hand with the State, under a rubric of transparency, frequent communication and an agreed upon schedule of regular reporting of financial, construction and operational matters, including progress to consummation of the Chippewa Plan. This would provide the State transparency regarding consummation of the Exit Credit Facility.

- The release, or bonding off, of any liens on State land concerning work performed on the Project.

- The Minnesota Department of Natural Resources would be issued a $5 million letter of credit to ensure payment of all cure costs under the mining and surface leases, or such other financial assurances as are agreed.

- Prepetition owners or management of the Project would not own or manage it going forward.

---

[1]   Capitalized terms not defined herein shall have the meaning ascribed in the Plan Sponsor Term Sheet to which this document is attached.