EXHIBIT A

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ESSAR STEEL MINNESOTA LLC and ESML HOLDINGS INC., | Case No. 16-11626 (BLS) |
| Debtors. | (Jointly Administered) |

## STIPULATION REGARDING THE REQUEST FOR ADEQUATE PROTECTION BY CHIPPEWA CAPITAL PARTNERS, LLC

Upon consideration of the request of Mesabi Metallics Company LLC (f/k/a Essar Steel Minnesota LLC) and ESML Holdings Inc. (together, the "**Debtors**") and Chippewa Capital Partners, LLC ("**Chippewa**") for certain adequate protection in connection with Chippewa permitting the Debtors to utilize portions of the refundable, earnest money $10 million deposit provided by Chippewa (the "**Earnest Money Deposit**") in accordance with the bid procedures approved by Order of the Court [Docket No. 887] (the "**Bid Procedures**") to the Debtors pursuant to the terms and conditions of the binding term sheet executed by the Debtors and Chippewa attached as Exhibit 1 to the Investment Letter (as defined below) (as amended, modified or supplemented from time to time, the "**Chippewa Proposal**"), the Debtors, as debtors and debtors in possession in the above-captioned chapter 11 cases (the "**Cases**") filed on July 8, 2016 (the "**Petition Date**"), and Chippewa hereby stipulate as follows:

1.      The Debtors shall establish a segregated bank account at a financial institution acceptable to Chippewa which shall not be an existing lender to or creditor of a Debtor (the "**Funding Account**").

2.      As soon as practicable after entry of an order of the Court approving this

1

Stipulation (the "**Approval Order**"), Chippewa will transfer the Earnest Money Deposit to the Debtors' Funding Account. If Chippewa does not transfer the Earnest Money Deposit to the Funding Account by April 28, 2017, Tom Clarke (or one of his affiliates) will immediately deposit $2 million into the Funding Account to be applied towards the amount of the Earnest Money Deposit to be provided pursuant to clause (i) of paragraph 3 below.

      3.     So long as no Termination Event (as defined below) has occurred that has not been waived by Chippewa's counsel in writing, the Debtors may transfer funds in the Funding Account to the Debtors' primary operating and disbursement account (such account, the "**Operating Account**") (i) in the amount of $2 million as soon as practicable after entry of the Approval Order (and on or about the date of such transfer, the Debtors shall transfer out of the Operating Account cash that is not Cash Collateral), and (ii) in additional amounts requested by the Debtors for payments to be made in the upcoming week, as such amounts are confirmed by Chippewa, within one business day of any request of any transfer by the Debtors, to be consistent with the budget attached hereto as **Exhibit A** (as amended pursuant to the terms hereof, the "**Budget**") with a weekly variance for total expenditures in the Budget for such week not to exceed 15% in the aggregate (the "**Permitted Variance**"); provided that any amounts or expenses in the Budget that are unused in any week may be carried over and used by the Debtors in any subsequent week in accordance with the Budget, and such carried over amounts or expenses shall not apply to the Permitted Variance for that subsequent week, but shall not be included by the Debtors in any further requests for transfer of funds from the Earnest Money Deposit by the Debtors; and provided, further, that the Debtors shall, in consultation with Chippewa, limit to the greatest extent practicable, whether through reduction in amounts to be paid in accordance with the Budget, deferral or otherwise, use of the Earnest Money Deposit.

4.      The Debtors shall deliver to Chippewa, the Official Committee of Unsecured Creditors appointed in the Cases (the "**Committee**") and the Prepetition Lenders1 by 12:00 p.m. (New York City time) each week, starting on Wednesday, April 26, 2017 for the week ended Saturday, April 22, 2017, a record of the Debtors' actual cash receipts and disbursements for the preceding week, categorized by line item as set forth in the Budget, and certified by the Chief Restructuring Officer, Chief Executive Officer or Chief Financial Officer of the Debtors as having been prepared in good faith.

5.      The Debtors shall deliver to Chippewa, as determined to be necessary by the Debtors in their reasonable discretion from time to time, an updated budget supplementing and/or modifying the most recent Budget approved by Chippewa; at the time such budget is in form and substance acceptable to Chippewa in its sole discretion and approved by the Committee, such budget shall replace and thereby constitute the Budget hereunder without the need for further Court order.  The Debtors shall also provide a copy of any updated or supplemental budget to the Prepetition Lenders and the DIP Lender under (and as defined in) the *Final Order Authorizing Debtors to Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 362 and 364* [Docket No. 216] (the "**DIP Order**") at the time of delivery to Chippewa or the Committee.  Any supplemental Budget shall promptly be filed in the Cases.

6.      Chippewa shall be granted, pursuant to the Approval Order, a first-priority perfected lien upon and security interest in any funds transferred from the Funding Account to the Operating Account (collectively, the "**Cash Collateral**"), and the Debtors shall use their best efforts to obtain a deposit account control agreement with respect to the Operating Account in form and substance acceptable to Chippewa as soon as practicable.  Thus, the Cash Collateral

---

1 "**Prepetition Lenders**" has the meaning set forth in the *Declaration of Sanjay Bhartia, in Support of Debtors' First Day Pleadings* [Docket No. 14].

shall constitute, and be determined by the Court to be, Chippewa's cash collateral, as defined in section 363 of 11 U.S.C. §§ 101, et seq. (the "**Bankruptcy Code**"). The Earnest Money Deposit held in the Funding Account shall not constitute the property or collateral of the Debtors or their estates, and shall also not be subject to the claims or liens of any creditors of the Debtors. The Debtors will have an ownership interest in the Earnest Money Deposit only if and at the time that Chippewa breaches its obligations under the Chippewa Proposal or Investment Letter (as defined below). Except as provided in paragraph 10 below, none of the Cash Collateral or the Funding Account shall be subject to the claims or liens of any creditors of the Debtors. The only funds transferred to or from the Funding Account will be the Earnest Money Deposit. No cash collateral or proceeds of other non-cash collateral of the Prepetition Lenders shall be deposited into the Funding Account or the Operating Account. Chippewa shall be entitled to recover any Cash Collateral held in the Operating Account and any cash in the Funding Account (at which point the Debtors and their estates shall no longer have any interest in the Cash Collateral or the Earnest Money Deposit) in the event (i) Chippewa is not named the Successful Bidder (as defined in the Bid Procedures), (ii) a Debtor breaches its obligations under this Stipulation, (iii) Chippewa terminates the Chippewa Proposal in accordance with its terms, or (iv) a closing on the Chippewa Proposal does not occur in accordance with its terms and the terms of the Investment Letter.

7.     As adequate protection for the Debtors' use of the Cash Collateral, pursuant to sections 361 and 363(e) of the Bankruptcy Code and pursuant to the Approval Order, Chippewa is hereby granted the following protections, including the protections afforded a party acting in "good faith" under section 363(m) of the Bankruptcy Code (collectively, the "**Adequate Protection**"):

4

a.  an allowed administrative expense claim in the Cases (the "**Superpriority
    Claim**"), equal to the aggregate amount of Cash Collateral not otherwise
    recovered by Chippewa, having superpriority over all administrative expenses of
    the kind specified in section 364(c)(1), 503(b), 507(a)(2), 507(b) or 507(d) of the
    Bankruptcy Code, other than those allowed administrative expense claims owed
    by the Debtors to the DIP Lender, which claims will have priority over such
    claims in favor of Chippewa;

b.  to the extent of any use by the Debtors of Cash Collateral not otherwise recovered
    by Chippewa, perfected and unavoidable liens, immediately junior only to the
    DIP Liens (as defined in the DIP Order), on all presently owned and hereafter
    acquired tangible and intangible property and assets of the Debtors and their
    estates wherever located, and any proceeds and products thereof (the
    "**Collateral**"), that was unencumbered by any valid, enforceable, perfected and
    non-avoidable liens as of the Petition Date, including the liens of the Prepetition
    Lenders (collectively, the "**Prepetition Liens**"); provided that the Collateral shall
    not include causes of action for preferences, fraudulent conveyances, and other
    avoidance power claims under sections 544, 545, 547, 548, 549, 550 and 553 of
    the Bankruptcy Code but shall include proceeds thereof subject to the same
    distribution allocation the DIP Lender is subject to under paragraph 3(f) of the
    DIP Order; and

c.  to the extent of any use by the Debtors of Cash Collateral not otherwise recovered
    by Chippewa, perfected and unavoidable liens on all Collateral encumbered by
    Prepetition Liens, in each case immediately junior only to such Prepetition Liens,

5

liens securing the Mechanics' Lien Claims (as defined in D.I. 810), and the DIP Liens.

8.    Each of the liens and claims granted to Chippewa in paragraphs 6 and 7 above shall, in all cases, be subject and subordinate to a carve-out (the "**Carve-Out**"), which shall be comprised of the following: (w) all fees required to be paid to the Clerk of the Court and to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a) in an amount agreed to by the Debtors and the U.S. Trustee or ordered by the Court, (x) all fees required to be paid to any chapter 7 trustee appointed upon the conversion of any of the Cases to a case under chapter 7 of the Bankruptcy Code up to $50,000; (y) allowed (whether allowed prior to or after a Termination Event) and unpaid fees and expenses (collectively, the "**Allowed Professional Fees**") of the Debtors' professionals and the professionals of the Committee (collectively, the "**Carve-Out Professionals**") incurred from the date of filing of the Cases to the date of a Termination Event solely to the extent permitted under the Budget (clauses (w), (x) and (y), collectively, the "**Pre Carve-Out Fees**"); and (z) $1,000,000 (the "**Post Carve-Out Cap**"), which amount may be used to pay Allowed Professional Fees incurred after the date of a Termination Event and approved by the Court (the "**Post Carve-Out Fees**") on a pro rata basis. For the sake of clarity, the Post Carve-Out Fees hereunder shall be identical to, and not in addition to, the Post Carve-Out Fees under (and as defined in) the DIP Order. The Post Carve-Out Cap shall not be reduced or increased by the amount of any Pre Carve-Out Fees paid after a Termination Event. The ability of any party to object to the fees, expenses, reimbursement or compensation described above shall not be impaired by the terms of the Carve-Out.

9.    Upon the occurrence of any of the following (each, a "**Termination Event**"), unless such Termination Event is waived by Chippewa's counsel in writing, the Debtors' right to

6

receive funds from the Funding Account for use as cash collateral shall terminate immediately, the Debtor shall return the unused balance in the Funding Account and any Cash Collateral held in the Operating Account to Chippewa within three (3) days of such Termination Event, and the Earnest Money Deposit shall no longer be available for funding to the Operating Account or otherwise available to the Debtors under any circumstances:

    a.  if a Debtor breaches, or Chippewa exercises its right to terminate, the Chippewa Proposal, or the Commitment Letter dated April 21, 2017 between Chippewa and the Debtors attached as Exhibit A to the *Notice of Selection of Baseline Bid* [Docket No. 919] (the "**Investment Letter**"), as to each according to its terms;

    b.  these Cases are dismissed, converted to Chapter 7 or a Chapter 11 trustee or an examiner with expanded powers is appointed in these cases;

    c.  the Debtors utilize the Cash Collateral in a manner not permitted by the Budget and the Permitted Variance;

    d.  a Debtor ceases or publicly announces its intent to cease operating and carrying on its business as it is now conducted;

    e.  a Debtor seeks to enter into, the approval of, or consummation of a transaction or agreement, or fails to oppose another transaction or agreement, that conflicts with, impairs, or delays consummation of the Amended Plan (as defined in the Chippewa Proposal), or any such transaction or agreement is approved by the Court;

    f.  in the event any secured creditor of the Debtors obtains relief from the automatic stay or is permitted to prosecute or continue prosecution of a foreclosure action on

any assets of the Debtors in an amount exceeding $2,500,000, individually or in the aggregate;

g.  the reversal, vacatur, stay, amendment, supplementation or other modification of the Approval Order in any way without Chippewa's consent, or a Debtor shall apply for authority to do so or shall take any action to support any third party's application for authority to do so without Chippewa's prior consent to such action;

h.  on April 26, 2017, in the event Chippewa is not the plan sponsor (as reflected in a notice to be filed with the Court);

i.  in the event Chippewa is not the bidder with the Baseline Bid at any time prior to the Auction (each as defined in the Bid Procedures);

j.  on and after April 26, 2017, in the event Chippewa is not the Successful Bidder;

k.  on and after April 30, 2017, in the event the Confirmation Order has not been entered; provided, however, that such deadline shall immediately extend to one (1) business day after the conclusion of the Confirmation Hearing to the extent such hearing is continued with the consent of Chippewa;

l.  (A) the rights of the Debtors under mining leases with the State (as defined in the Chippewa Proposal) are, in any way, impaired, (B) any one or more of such mining leases is terminated, amended or otherwise modified in any way without the prior express written consent of Chippewa, or (C) the mining leases are assumed and assigned or rejected without the prior express written consent of Chippewa; and

8

m. the Debtors file a purchase agreement, plan of reorganization or disclosure statement that fails to provide for the indefeasible repayment in full of any Cash Collateral transferred to the Debtors and not recovered by Chippewa (or such other treatment as agreed to by Chippewa).

10.    If Chippewa, without legal justification as determined by order of the Court, unilaterally terminates the Investment Letter, Chippewa shall forfeit the Earnest Money Deposit, including the balance of any unused Cash Collateral on deposit in the Operating Account and any cash then on deposit in the Funding Account, and any and all right to repayment of such sums in the Funding Account and the Operating Account, and the Debtors may use the Earnest Money Deposit without the consent of Chippewa or any further order of the Court.

11.    If the Chippewa Proposal closes, the full amount of the Earnest Money Deposit (whether or not used by the Debtors) and the Superpriority Claim for use of the Cash Collateral shall be applied as a portion of Chippewa's investment.

12.    This Stipulation, and the terms and conditions hereunder, are effective only, and immediately, upon the entering the Approval Order by the Court.

13.    To the extent of any conflict between this Stipulation, on the one hand, and any order entered in the Cases (including the DIP Order), this Stipulation shall control.

14.    Upon entry of the Approval Order, the provisions of this Stipulation shall be binding upon all parties-in-interest in the Cases, including, without limitation, the Debtors, any creditor of the Debtors, Chippewa, the DIP Lender, the Committee, and any examiner or liquidating trustee appointed in the Cases, and their respective successors and assigns (including any trustee or fiduciary hereafter appointed as a legal representative of the Debtors or with respect to the property of the estates of the Debtors) whether in the Cases, in any successor case,

or upon any dismissal of any such chapter 11 or chapter 7 case and shall inure to the benefit of Chippewa, the Debtors, and their respective successors and assigns.

15.    The Court shall retain jurisdiction to all matters arising from or related to the interpretation and implementation of this Stipulation.

[Signature page follows]

Dated: Wilmington, Delaware
   April 25, 2017

**MESABI METALLICS COMPANY LLC**

By:
Name: David Pocker
Title: CRO

**ESML HOLDINGS, INC.**

By:
Name: David Pocker
Title: CEO

**CHIPPEWA CAPITAL PARTNERS, LLC**

By:
Name: Charles A. Ebetino, Jr.
Title: Authorized Signatory

Dated: Wilmington, Delaware
       April ___, 2017


**MESABI METALLICS COMPANY LLC**


By: _____
Name:
Title:


**ESML HOLDINGS, INC.**


By: _____
Name:
Title:


**CHIPPEWA CAPITAL PARTNERS, LLC**

By: _____
Name: Charles A. Ebetino, Jr.
Title: Authorized Signatory

## EXHIBIT A

**Budget**

| Chippewa Budget | Week Ending | Months Ending | | ($ in 000s) |
| --- | --- | --- | --- | --- |
| | 4/30E | 5/31E | 6/30E | 4/24 - 6/30 Outflow |
| Payroll, Benefits and Incentive Plans | 267 | 1,293 | 628 | 2,188 |
| Taxes and Royalties | 22 | 529 | 153 | 704 |
| Insurance and Utilities | 45 | 69 | 107 | 221 |
| General and Administrative | 118 | 450 | 493 | 1,060 |
| Equipment Purchases and Construction Restart Costs | -- | 926 | 4,316 | 5,242 |
| Professional and Other Costs | 5 | 533 | 297 | 835 |
| Restructuring Costs | 950 | 950 | 950 | 2,850 |
| Total Expenditures | $1,406 | $4,751 | $6,944 | $13,101 |
| Cumulative total | | 6,157 | 13,101 | |