## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| ESSAR STEEL MINNESOTA LLC and ESML HOLDINGS INC.,[1] | Case No. 16-11626 (BLS) |
| Debtors. | (Jointly Administered) |

---

**~~SECOND~~THIRD AMENDED CHAPTER 11 PLAN OF REORGANIZATION OF MESABI METALLICS COMPANY LLC (F/K/A ESSAR STEEL MINNESOTA LLC) AND ESML HOLDINGS INC.**

---

Dated: ~~May 17,~~June 8, 2017

| | |
|---|---|
| **WHITE & CASE LLP** | **FOX ROTHSCHILD LLP** |
| Thomas E Lauria (admitted *pro hac vice*) | Jeffrey M. Schlerf (No. 3047) |
| Matthew C. Brown (admitted *pro hac vice*) | L. John Bird (No. 5310) |
| Southeast Financial Center | Courtney A. Emerson (No. 6229) |
| 200 South Biscayne Boulevard, Suite 4900 | 919 North Market Street, Suite 300 |
| Miami, Florida 33131-2352 | Wilmington, Delaware 19801-3062 |
| Telephone: (305) 371-2700 | Telephone: (302) 654-7444 |
| Facsimile: (305) 385-5744 | Facsimile: (302) 656-8920 |

and

**WHITE & CASE LLP**
Craig H. Averch (admitted *pro hac vice*)
Ronald K. Gorsich (admitted *pro hac vice*)
Lauren C. Fujiu-Berger (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, California 90071-2433
Telephone: (213) 620-7700
Facsimile: (213) 452-2329

*Attorneys for the Debtors and Debtors in Possession*

---

[1] Essar Steel Minnesota LLC has changed its name to Mesabi Metallics Company LLC. The last four digits of its federal taxpayer identification number are 8770. The last four digits of ESML Holdings Inc.'s federal taxpayer identification number are 8071.

## TABLE OF CONTENTS

**Page**

ARTICLE I. DEFINITIONS AND INTERPRETATION.................................................1

    1.1 Definitions.................................................................................1

    1.2 Interpretation.....................................................................~~17~~16

    1.3 Application of Definitions and Rules of Construction Contained in the
        Bankruptcy Code.................................................................17

    1.4 Appendices and Plan Documents...............................................17

ARTICLE II. CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS....................~~18~~17

    2.1 Administrative Claims and Tax Claims.......................................~~18~~17

    2.2 Claims and Equity Interests.....................................................18

    2.3 Separate Classification of Secured Claims....................................~~19~~18

    2.4 Limited Consolidation...........................................................~~19~~18

ARTICLE III. IDENTIFICATION OF IMPAIRED CLASSES OF CLAIMS AND
    EQUITY INTERESTS..............................................................~~19~~18

    3.1 Unimpaired Classes of Claims and Equity Interests......................~~19~~18

    3.2 Impaired Classes of Claims and Equity Interests...........................19

    3.3 Impairment Controversies......................................................19

ARTICLE IV. PROVISIONS FOR TREATMENT OF CLAIMS AND EQUITY
    INTERESTS UNDER THE PLAN.................................................19

    4.1 Claims and Equity Interests....................................................19

    4.2 Treatment of Guaranty and Joint Liability Claims Against a Debtor....~~23~~21

ARTICLE V. PROVISIONS FOR TREATMENT OF UNCLASSIFIED CLAIMS UNDER
    THE PLAN..........................................................................~~23~~21

    5.1 Unclassified Claims.............................................................~~23~~21

    5.2 Treatment of Administrative Claims..........................................~~23~~22

    5.3 Treatment of Tax Claims.......................................................~~25~~23

ARTICLE VI. ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF
    REJECTION BY ONE OR MORE CLASSES OF CLAIMS OR EQUITY
    INTERESTS.........................................................................~~25~~23

    6.1 Class Entitled to Vote..........................................................~~25~~23

    6.2 Class Acceptance Requirement................................................~~25~~24

    6.3 Cramdown........................................................................~~25~~24

ARTICLE VII. MEANS FOR IMPLEMENTATION OF THE PLAN.........................~~26~~24

**Page**

7.1 Implementing Transactions on or Prior to the Effective Date. ...............................2624
7.2 Corporate Action. ...............................................................................................2725
7.3 New Membership Interests. ................................................................................2726
7.4 Continued Corporate Existence. .........................................................................2826
7.5 New Governing Documents. ...............................................................................2826
7.6 Revesting of Assets; Release of Liens. ...............................................................2826
7.7 Cancellation of Instruments. ..............................................................................2826
7.8 Appointment of the Disbursing Agent. ...............................................................2827
7.9 Sources of Cash for Plan Distributions. ..............................................................2927
7.10 Investment of Funds Held by the Disbursing Agent; Tax Reporting by the
        Disbursing Agent. ........................................................................................2927
7.11 Governors of the Reorganized Debtor. ..............................................................2927
7.12 Officers of the Reorganized Debtor. ..................................................................2928
7.13 Indemnification of the Reorganized Debtor's Governors, Officers, and
        Employees. ...................................................................................................2928
7.14 Director and Officer Liability Insurance. ...........................................................3028
7.15 Management and Employee Incentive Programs. ................................................3028
7.16 Post-Emergence Trade Agreement Procedure. ...................................................3028
7.17 Dissolution of Holdings. ..................................................................................3129
7.18 Approval of Compromises and Settlements Embodied in the Plan. ......................3129

ARTICLE  VIII. THE LITIGATION TRUSTS ...............................................................3130

8.1 Creation of the Litigation Trusts and Appointment of the Litigation Trustees........3130
8.2 Property of the Litigation Trusts. .......................................................................3230
8.3 Purpose of the Litigation Trusts. ........................................................................3331
8.4 Litigation Trustee Selection Committees. ...........................................................3332
8.5 Powers and Responsibilities of the Litigation Trustees. ......................................3432
8.6 Transition Services. ...........................................................................................3735
8.7 The Litigation Trust Advisory Boards. ...............................................................3836
8.8 Reserved. ..........................................................................................................3837
8.9 Governance of Litigation Trusts. .......................................................................3837
8.10 Cash. ...............................................................................................................3937
8.11 Litigation Trust Distributions .........................................................................3937
8.12 Litigation Trust Distributions Allocation. ..........................................................3938
8.13 Compensation of the Litigation Trustee. ............................................................4139
8.14 Retention of Professionals by the Litigation Trustees. ........................................4139
8.15 Noncertificated Litigation Trust Interests. .........................................................4139
8.16 Dissolution of the Litigation Trusts. ..................................................................4140
8.17 Securities Exempt. ...........................................................................................4240

ARTICLE  IX. PLAN DISTRIBUTION PROVISIONS ...................................................4240

9.1 Plan Distributions. .............................................................................................4240
9.2 Timing of Plan Distributions. .............................................................................4241
9.3 Address for Delivery of Plan Distributions/Unclaimed Plan Distributions. ...........4241
9.4 Time Bar to Cash Payments. ..............................................................................4341
9.5 Manner of Payment under the Plan. ....................................................................4341

Americas 92755524 92879360 (2K)

**Page**

9.6 Fractional Plan Distributions. ......................................................... ~~43~~42

9.7 De Minimis Distributions. .............................................................. ~~43~~42

9.8 Unclaimed Property. ..................................................................... ~~44~~42

9.9 Expenses Incurred on or after the Effective Date and Claims of the Disbursing
      Agent. .................................................................................... ~~44~~42

9.10 Application of the Record Date. ................................................... ~~44~~42

9.11 Plan Distributions and the ICA. ................................................... ~~44~~43

ARTICLE X. PROCEDURES FOR RESOLVING AND TREATING CONTESTED
    CLAIMS ........................................................................................ ~~45~~43

10.1 Claim Objection Deadline. ........................................................... ~~45~~43

10.2 Prosecution of Contested Claims. ................................................. ~~45~~43

10.3 Claims Settlement. ...................................................................... ~~45~~44

10.4 Entitlement to Plan Distributions upon Allowance. .......................... ~~46~~44

10.5 Estimation of Claims. ................................................................. ~~46~~44

ARTICLE XI. CONDITIONS PRECEDENT TO CONFIRMATION OF THE PLAN AND
    THE OCCURRENCE OF THE EFFECTIVE DATE ................................. ~~46~~45

11.1 Conditions Precedent to Confirmation. .......................................... ~~46~~45

11.2 Conditions Precedent to the Occurrence of the Effective Date. .......... ~~47~~45

11.3 Waiver of Conditions. ................................................................. ~~47~~46

11.4 Effect of Non-Occurrence of the Effective Date. ............................. ~~48~~46

ARTICLE XII. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
    LEASES ....................................................................................... ~~48~~46

12.1 Assumption and Rejection of Executory Contracts and Unexpired Leases. ..........~~48~~46

12.2 Assumption of the Mineral and Surface Leases. .............................. ~~49~~47

12.3 Cure. ...................................................................................... ~~50~~48

12.4 Claims Arising from Rejection, Expiration, or Termination. .............. ~~50~~49

ARTICLE XIII. RETENTION OF JURISDICTION ...................................... ~~51~~49

ARTICLE XIV. MISCELLANEOUS PROVISIONS ....................................... ~~52~~51

14.1 Payment of Statutory Fees. .......................................................... ~~52~~51

14.2 Satisfaction of Claims. ............................................................... ~~53~~51

14.3 Special Provisions Regarding Insured Claims. ................................ ~~53~~51

14.4 Third Party Agreements; Subordination. ........................................ ~~53~~52

14.5 Exculpation. ............................................................................ ~~54~~52

14.6 Discharge of Liabilities. ............................................................. ~~54~~52

14.7 Discharge of Debtors. ................................................................ ~~54~~52

14.8 Post-Effective Date Service List. .................................................. ~~55~~53

14.9 Notices. .................................................................................. ~~55~~53

14.10 Headings. ............................................................................... ~~57~~55

14.11 Governing Law. ....................................................................... ~~57~~55

14.12 Expedited Determination. .......................................................... ~~57~~55

Americas ~~92755524~~92879360 (2K)

**Page**

14.13 Exemption from Transfer Taxes. ........................................................... ~~57~~55
14.14 Notice of Entry of Confirmation Order and Relevant Dates. ........................... ~~57~~56
14.15 Interest and Attorneys' Fees. ............................................................. ~~57~~56
14.16 Modification of the Plan. .................................................................. ~~58~~56
14.17 Revocation of Plan. ........................................................................ ~~58~~56
14.18 Setoff Rights and Defenses. ............................................................... ~~58~~56
14.19 Compliance with Tax Requirements. ..................................................... ~~59~~57
14.20 Rates. ......................................................................................... ~~59~~57
14.21 Dissolution of the Committee. ............................................................ ~~59~~57
14.22 Injunctions. .................................................................................. ~~59~~57
14.23 Indemnification. ............................................................................ ~~60~~58
14.24 Binding Effect. .............................................................................. ~~60~~59
14.25 Severability. ................................................................................. ~~61~~59
14.26 No Admissions. ............................................................................. ~~61~~59

Americas ~~92755524~~92879360 (2K)

Mesabi Metallics Company LLC (f/k/a Essar Steel Minnesota LLC) and ESML Holdings Inc. propose the following chapter 11 plan:

# ARTICLE I.

## DEFINITIONS AND INTERPRETATION

**1.1    Definitions.**

The capitalized terms used herein shall have the respective meanings set forth below:

(1)    "Administrative Claim" means a Claim incurred by the Debtors (or their Estates) on or after the Petition Date and before the Effective Date for a cost or expense of administration in the Chapter 11 Cases entitled to priority under sections 503(b) and 507(a)(1) of the Bankruptcy Code, including Fee Claims.

(2)    "Allowed," when used

(a)    with respect to any Claim that is not an Administrative Claim, means such Claim to the extent it is not a Contested Claim or a Disallowed Claim;

(b)    with respect to an Administrative Claim, means such Administrative Claim to the extent it has become fixed in amount and priority pursuant to the procedures set forth in Section 5.2 of the Plan; and

(c)    with respect to Equity Interests in the Debtors, means the Equity Interests in the Debtors as reflected in the stock transfer ledger or similar register of the Debtors as of the Effective Date.

(3)    "Assets" means all of the Debtors' right, title, and interest of any nature in property of any kind, wherever located, as specified in section 541 of the Bankruptcy Code, including, Off-Site Stored Assets.

(4)    "Avoidance Actions" means all Causes of Action of the Estates that arise under chapter 5 of the Bankruptcy Code.

(5)    "Bankruptcy Code" means  title 11 of the United States Code, as amended from time to time and applicable to the Chapter 11 Cases.

(6)    "Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware.

(7)    "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as prescribed by the United States Supreme Court pursuant to 28 U.S.C. § 2075 and as applicable to the Chapter 11 Cases.

(8)    "Bar Date Notice" means the *Notice of Deadlines and Bar Dates for Filing Proofs of Claim Against the Debtors*, as approved by the Bar Date Order.

(9)    "Bar Date Order" means the *Order Granting Debtors' Motion for Entry of an Order Pursuant to Bankruptcy Rules 2002 and 3003 and Local Rule 3003-1 (i) Establishing Bar Dates for Filing Certain Proofs of Claim; (ii) Establishing Ramifications for Failure to Comply Therewith; (iii) Approving Proof of Claim Form and Bar Date Notice; and (iv) Approving Publication Notice and Publication Procedures* [D.I. 202] entered by the Bankruptcy Court on August 9, 2016.

(10)    "Bid Procedures" means those procedures to maximize the Distributable Value approved in that certain *Order (I) Authorizing and Approving Bid Procedures to be Employed in Connection with the First Amended Chapter 11 Plan of Reorganization of Mesabi Metallics Company, LLC (F/K/A Essar Steel Minnesota LLC) and ESML Holdings, Inc., And (II) Scheduling an Auction* [D.I. 887].

(11)    "Business Day" means any day other than a Saturday, a Sunday, or any other day on which commercial banks are required or authorized to close for business in New York, New York.

(12)    "Cash" means legal tender of the United States of America or readily marketable direct obligations of, or obligations guaranteed by, the United States of America.

(13)    "Causes of Action" means claims, counterclaims, liability, damages, debts, dues, sums of money however and whenever received, deposits, accounts, bonds, bills, covenants, contracts, controversies, demands, causes of action, and rights of every kind, nature, or character, including, but not limited to, setoff and/or recoupment; whether absolute, inchoate, or contingent; whether determined or undetermined, proven or unproven; whether held individually, jointly, or jointly and severally; whether arising directly, indirectly, derivatively, or by way of any legal or equitable right of subrogation, contribution, indemnity, estoppel, marshaling of assets, or otherwise; whether for compensation, relief, or any other remedy or result of any kind, character, or nature; whether based upon any intentional or negligent conduct, strict liability, any tort of any kind, upon any breach of any contract or upon any other grounds or upon any other theory whatsoever; whether asserted or subject to assertion by complaint, cross-complaint, counterclaim, affirmative defense, or other pleading, by motion, by notice, or otherwise; whether asserted or subject to assertion in any jurisdiction, in any court or other forum or with any federal, state, county, municipal, or other governmental authority, agency, or official; and whether arising at law, in equity, or otherwise arising or existing on or before the Effective Date.

(14)    "Chapter 11 Cases" means the cases commenced in the Bankruptcy Court on the Petition Date under chapter 11 of the Bankruptcy Code with respect to the Debtors, which cases are jointly administered as *Essar Steel Minnesota LLC* and *ESML Holdings Inc.*, Case No. 16-11626 (BLS).

(15)    "Chippewa" means Chippewa Capital Partners, LLC.

(16)    "Chippewa Cash Collateral Order" means that certain *Order Approving Stipulation Regarding the Request for Adequate Protection by Chippewa Capital Partners, LLC* [D.I. 932] entered by the Bankruptcy Court on April 28, 2017.

(17)    "Claim" has the meaning set forth in section 101(5) of the Bankruptcy Code.

2

(18)    "Claim Objection Deadline" means the deadline for filing objections to Claims as set forth in Section 10.1 of the Plan.

(19)    "Claims Agent" means Epiq Bankruptcy Solutions, LLC.

(20)    "Class A Beneficial Trust Interests" means the Litigation Trust Interests, which will be issued to Holders of Prepetition Lender Secured Claims (unless Disallowed), which in the aggregate, shall entitle the Holders to a certain allocation of certain Litigation Trust distributions to the Litigation Trust Beneficiaries determined pursuant to Sections 8.11 and 8.12 of the Plan.

(21)    "Class A Beneficiaries" means the holders of Class A Beneficial Trust Interests.

(22)    "Class A-1 Beneficial Trust Interests" means a Pro Rata Share of the Class A Beneficial Trust Interests distributed to the Holders of Allowed Project Finance Secured Claims on account of the full amount of their Allowed Project Finance Secured Claims.

(23)    "Class A-2 Beneficial Trust Interests" means a Pro Rata Share of the Class A Beneficial Trust Interests distributed to the Holders of Allowed Term Loan Secured Claims on account of the full amount of their Allowed Term Loan Secured Claims.

(24)    "Class A-3 Beneficial Trust Interests" means a Pro Rata Share of the Class A Beneficial Trust Interests distributed to the Holders of Allowed Supplier Credit Secured Claims on account of the full amount of their Allowed Supplier Credit Secured Claims.

(22)    (25)  "Class UC Beneficial Trust Interests" means the Litigation Trust Interests, which will be issued to Holders of Allowed General Unsecured Claims and certain Holders of Allowed Project Unsecured Claims, which in the aggregate, shall entitle the Holders to a certain allocation of certain Litigation Trust distributions to the Litigation Trust Beneficiaries determined pursuant to Sections 8.11 and 8.12 of the Plan.

(23)    (26)  "Class UC Beneficiaries" means the Class UC Beneficial Trust Interests distributed to Holders of Allowed General Unsecured Claims and certain Holders of Allowed Project Unsecured Claims.

(24)    (27)  "Commitment Letter" means the $250 million Equity Purchase Commitment letter dated April 21, 2017 executed by Chippewa and the Debtors.

(25)    (28)  "Committee" means the Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases.

(26)    (29)  "Confirmation Date" means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

(27)    (30)  "Confirmation Hearing" means the hearing held by the Bankruptcy Court, as it may be continued from time to time, to consider confirmation of the Plan.

(28)    (31)  "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan.

3

(29)    (32) "Contested" (a) when used with respect to a Claim, means such Claim (i) to the extent it is listed in the Schedules as disputed, contingent, or unliquidated, in whole or in part, and as to which no proof of claim has been filed; (ii) if it is listed in the Schedules as undisputed, liquidated, and not contingent, and as to which a proof of claim has been filed with the Bankruptcy Court, to the extent that (A) the Claim Objection Deadline has not yet passed or an objection has been filed on or before the Claim Objection Deadline as to such proof of claim; and (B) the proof of claim amount exceeds the amount indicated in the Schedules or the proof of claim priority differs from the priority set forth in the Schedules, in each case unless and to the extent allowed in amount and/or priority by a Final Order of the Bankruptcy Court or the Plan; or (iii) if it is not listed in the Schedules or was listed in the Schedules as disputed, contingent, or unliquidated, in whole or in part, but as to which a proof of claim has been filed with the Bankruptcy Court, in each case as to which an objection was filed on or before the Claim Objection Deadline or if the Claim Objection Deadline has not yet passed, unless and to the extent allowed in amount and/or priority by a Final Order of the Bankruptcy Court or the Plan; *provided*, that a Claim that is fixed in amount and priority pursuant to the Plan or by Final Order on or before the Effective Date shall not be a Contested Claim; and (b) when used with respect to an Equity Interest, means such Equity Interest to the extent it is not reflected on the Debtors' stock transfer register as of the Effective Date.

(30)    (33) "Convenience Claim" means any Claim, other than a Priority Claim, (a) in an amount equal to or less than $50,000 or (b) with respect to which the Person holding such Claim has made a Convenience Class Election.

(31)    (34) "Convenience Class Election" means the election of a Person holding a Claim, other than a Priority Claim, that exceeds $50,000 to reduce its Allowed Claims, in their entirety, to $50,000, and thereby receive treatment in Class 97 – Convenience Claims in full satisfaction of its Allowed Claims.  A Convenience Class Election may be made by submitting a properly completed ballot to the Solicitation Agent on or before the Voting Deadline.

(32)    (35) "D&O Insurance Policies" means all of the Debtors' director and officer insurance policies.

(33)    (36) "Debtors" means Mesabi Metallics Company LLC (f/k/a Essar Steel Minnesota LLC) and ESML Holdings Inc.

(34)    (37) "Debtors in Possession" means the Debtors, in their capacity as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

(35)    (38) "DIP Claims" means any Claim against the Debtors arising from or related to the DIP Note, the DIP Guaranty, and the DIP Order.

(36)    (39) "DIP Guaranty" means that certain guaranty by and between Holdings and the DIP Lender, dated July 26, 2016.

(37)    (40) "DIP Lender" means Strategic Partners Holdings Limited.

(38)    (41) "DIP Note" means that certain Promissory Note, dated July 26, 2016 by and between ESML, as maker, and the DIP Lender, as payee, as amended by the DIP Order and as otherwise amended from time to time.

4

(39)    (42)  "DIP Order" means the *Final Order Authorizing Debtors to Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 362 and 364* [D.I. 216] entered by the Bankruptcy Court on August 10, 2016.

(40)    (43)  "Disallowed," when used with respect to a Claim, means a Claim, or such portion of a Claim, that has been disallowed by a Final Order.

(41)    (44)  "Disbursing Agent" means the Reorganized Debtor or any agent selected by the Reorganized Debtor acting on behalf of the Debtors in (a) making the Plan Distributions under the Plan, the Confirmation Order, or any other relevant Final Order, and (b) performing any other act or task that is or may be delegated to the Disbursing Agent under the Plan.

(42)    (45)  "Disclosure Statement" means the disclosure statement [D.I. 823] approved by order of the Bankruptcy Court [D.I. 817] with respect to the Plan, and the exhibits and schedules thereto.

(43)    (46)  "Disclosure Statement Hearing" means the hearing held pursuant to Bankruptcy Rule 3017 to approve the Disclosure Statement.

(44)    (47)  "Distributable Value" means the consideration available for distribution to Holders of Allowed Claims under the Plan, excluding the Litigation Trust Assets.

(45)    (48)  "DNR" means the State of Minnesota Department of Natural Resources.

(46)    (49)  "DNR Leases" means the DNR Mineral Leases and the DNR Surface Leases.

(47)    (50)  "DNR Mineral Leases" means, collectively, those certain mineral leases, dated as of December 9, 2004 or June 7, 2012, by and between the State of Minnesota, as lessor, and ESML, as lessee, as amended from time to time.

(48)    (51)  "DNR Surface Leases" means, collectively, those certain leases, dated as of October 1, 2011, by and between the State of Minnesota, as lessor, and ESML, as lessee.

(49)    (52)  "Earnest Money Deposit" means the aggregate amount of the Plan Sponsor's earnest money deposit(s) pursuant to the Bid Procedures and the Chippewa Cash Collateral Order.

(50)    (53)  "Effective Date" means a Business Day selected by the Debtors that is no later than three (3) Business Days after all of the conditions specified in Section 11.2 of the Plan have been satisfied or waived (to the extent waivable), and upon which the Debtors shall have filed with the Bankruptcy Court a notice of the occurrence of the Effective Date.

(51)    (54)  "Equity Interest" means (a) any outstanding ownership interest in the Debtors, including interests evidenced by common or preferred stock, membership interests, options, stock appreciation rights, restricted stock, restricted stock units or their equivalents, or other rights to purchase or otherwise receive any ownership interest in the Debtors and any right to payment or compensation based upon any such interest, whether or not such interest is owned by the Holder of such right to payment or compensation; and (b) any Claim against the Debtors that is subordinated

5

and has the same priority as common or preferred stock by operation of the Bankruptcy Code or any order entered by the Bankruptcy Court.

(52)    (55) "ERPI" means ERP Iron Ore, LLC.

(53)    (56) "ESML" means Essar Steel Minnesota LLC (n/k/a Mesabi Metallics Company LLC).

(54)    (57) "Estates" means the estates of the Debtors created pursuant to section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases.

(55)    (58) "Exit Facility" means one or more credit facilities pursuant to the Exit Facility Documents for $650675 million as contemplated by the Plan Sponsor Term Sheet, on the terms and conditions set forth therein, and may include one or more tranches secured by first and/or second liens.

(56)    (59) "Exit Facility Agent" means the agent for the Exit Facility Lenders under the Exit Facility.

(57)    (60) "Exit Facility Documents" means the agreement(s), documents, and instruments to be dated on or about the Effective Date and to be entered into by the Reorganized Debtor (and/or ERPI, on the terms agreed to by the Plan Sponsor), as borrower, the Exit Facility Agent(s), and the Exit Facility Lenders in respect of the Exit Facility for $650 million, and all related documents, instruments, and agreements entered into or executed in connection therewith.

(58)    (61) "Exit Facility Lenders" means the lenders under the Exit Facility.

(59)    (62) "Fee Application" means an application for allowance and payment of a Fee Claim (including Claims relating to making a "substantial contribution" in the Chapter 11 Cases pursuant to section 503(b) of the Bankruptcy Code).

(60)    (63) "Fee Claim" means a Claim of a Professional Person.

(61)    (64) "Final Order" means (a) an order or judgment of the Bankruptcy Court or any other court or adjudicative body as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending, or (b) in the event that an appeal, writ of certiorari, reargument, or rehearing thereof has been sought, such order of the Bankruptcy Court or any other court or adjudicative body shall have been affirmed by the highest court to which such order was appealed, or certiorari has been denied, or from which reargument or rehearing was sought, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired; *provided*, that no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to section 502(j) of the Bankruptcy Code, Rules 59 or 60 of the Federal Rules of Civil Procedure, or Bankruptcy Rule 9024 may be filed with respect to such order.

(62)    (65) "General Unsecured Claims" means any Unsecured Claim, other than a Project Unsecured Claim, a Convenience Claim, and a Prepetition Lender Secured Claim.

6

(63)    (66) "Glossary of Defined Terms" means this Section 1.1 of the Plan.

(64)    (67) "GPIOP" means Glacier Park Iron Ore Properties LLC.

(65)    (68) "GPIOP Mineral Lease" means each of those certain mineral leases, dated as of November 29, 2006, by and between GPIOP, as lessor and successor in interest, and ESML, as lessee, as amended from time to time.

(66)    (69) "Holder" means a holder of a Claim against or Equity Interest in a Debtor, and such holder's successors and permitted assigns.

(67)    (70) "Holdings" means ESML Holdings Inc.

(68)    (71) "ICA" means that certain Intercreditor Agreement, dated as of September 30, 2014, by and among ESML; Holdings, as pledgor; ICICI Bank Limited, Singapore Branch, as the facility agent, under the Project Finance Credit Agreement; Central Bank of India, as the facility agent under Supplier Credit Facility Agreement; U.S. Bank National Association, as the agent under the Term Loan Credit and Security Agreement; Wilmington Trust, National Association, as the security agent; and other parties thereto from time to time.

(69)    (72) "Individual Claims" means all Transferred Causes of Action of any Debtor against any natural person who was or is an officer, director, manager, Insider or controlling equity Holder of any Debtor including claims for breach of fiduciary duties or other tort committed by any such person, and the right to receive all proceeds in respect thereof, including any proceeds of D&O Insurance Policies.

(70)    (73) "Insider" means a Person that, with respect to the Debtors, would at any time prior to the Effective Date fall within the definition ascribed to such term in section 101(31) of the Bankruptcy Code.

(71)    (74) "Insurance Coverage Actions" means any direct or derivative rights of the Debtors to indemnification, reimbursement, contribution, or other payment under any of the Debtors' insurance policies that are related to Transferred Causes of Action, including the D&O Insurance Policies.

(72)    (75) "Insurance Recovery" means (a) the right to pursue and receive the benefits and proceeds of any insurance policy issued to, owned by, purchased or funded by, or otherwise providing coverage to any Debtor, Insider or other entity as to which any Debtor is an insured or beneficiary or (b) the right to pursue and receive recovery from or as a result of any Insurance Coverage Action.

(73)    (76) "Insured Claim" means any Claim against a Debtor for which the Debtor is entitled to indemnification, reimbursement, contribution, or other payment under a policy of insurance wherein a Debtor is an insured or beneficiary of the coverage of any of the Debtors.

(74)    (77) "Internal Revenue Code" means the Internal Revenue Code of 1986, as amended, and any applicable rulings, regulations (including temporary and proposed regulations)

7

promulgated thereunder, judicial decisions, and notices, announcements and other releases of the United States Treasury Department or the IRS.

(75)    (78)  "Investment" means $250 million in cash, less (a) the unused portion of the Earnest Money Deposit, and (b) the aggregate amount funded pursuant to the Chippewa Cash Collateral Order.  The Investment may take the form of an equity investment, or a subordinate convertible secured note issued in an amount not less than $250 million (rolling up the aggregate amount funded pursuant to the Chippewa Cash Collateral Order and the Earnest Money Deposit).

(76)    (79)  "Investors" means the entity or entities that provide the Investment to the Plan Sponsor.

(77)    (80)  "IRS" means the United States Internal Revenue Service.

(78)    (81)  "Langdon/Warren" means, collectively, Langdon Warren Limited Partnership, Jenny Langdon Limited Liability Company, Alice Langdon Limited Liability Company, O'Neill Langdon Corporation, and LMGHH LLC.

(79)    (82)  "Langdon/Warren Mineral Leases" means that certain mineral lease, dated as of July 18, 2007, by and between Langdon/Warren, as lessors, and ESML, as lessee, as amended from time to time.

(80)    (83)  "Lien" means any charge against or interest in property (including, but not limited to, any mortgage, lien, pledge, charge, security interest, encumbrance, or other security device of any kind) to secure payment of a debt or performance of an obligation.

(81)    (84)  "Litigation Trust Advisory Boards" means the SC Litigation Trust Advisory Board and the UC Litigation Trust Advisory Board.

(82)    (85)  "Litigation Trust Agreements" means the SC Litigation Trust Agreement and the UC Litigation Trust Agreement.

(83)    (86)  "Litigation Trust Assets" means the SC Litigation Trust Assets and the UC Litigation Trust Assets.

(84)    (87)  "Litigation Trust Beneficiaries" means the SC Litigation Trust Beneficiaries and the UC Litigation Trust Beneficiaries.

(85)    (88)  "Litigation Trust Interests" means the beneficial interests in the Litigation Trusts to be issued to the Litigation Trust Beneficiaries under the Plan, which will not be certificated, will not be tradeable (except as provided in the Litigation Trust Agreements), and will be evidenced in the records of the Litigation Trusts.

(86)    (89)  "Litigation Trustee" means either the UC Litigation Trustee or the SC Litigation Trustee as the case may be, and together the "Litigation Trustees."

(87)    (90)  "Litigation Trusts" means the UC Litigation Trust and SC Litigation Trust to be created pursuant to Section 8.1 of the Plan.

8

(88)    (91) "Local Rules" means the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.

(89)    (92) "Mechanic's Lien Claims" means (a) any Claim that is secured by a mechanic's or miner's lien recorded against the Debtors that (i) has been properly preserved, noticed, and perfected, and is otherwise enforceable under applicable law; (ii) is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law; and (iii) has been properly noticed in the Chapter 11 Cases pursuant to (A) section 546(b)(2) of the Bankruptcy Code or (B) the protocol order entered by the Bankruptcy Court on October 18, 2016 [D.I. 448]; or (b) those Claims included on the Schedule of Project Secured Claims, to the extent their Liens are valid.

(90)    (93) "Mechanic's Lien Claims Pool Amount" means the aggregate of $59.3 million in Cash less the Pro Rata Share of such Cash that would have been paid to any Holder of a Mechanic's Lien Claim that elects to receive a Prepetition Lien Trade Creditor Note.

(91)    (94) "Mineral and Surface Leases" means, collectively, the DNR Leases, the Superior Mineral Lease, and the Langdon/Warren Mineral Leases and any other mineral or surface leases of the Debtors except the GPIOP Mineral Lease.

(92)    (95) "Net Available Cash" means undistributed Cash of the Litigation Trust not reserved by the Litigation Trustee for disputed Claims or estimated operating expenses of the Litigation Trust.

(93)    (96) "New Board" means the board of governors of the Reorganized Debtor to be selected in accordance with Section 7.11 of the Plan.

(94)    (97) "New Governing Documents" mean the Reorganized Debtor's governing documents substantially in the most current form filed with the Bankruptcy Court as a Plan Document.

(95)    (98) "New Membership Interests" means the membership interests to be issued by the Reorganized Debtor on or after the Effective Date pursuant to the Plan.

(96)    (99) "Notice of Confirmation" means the notice of entry of the Confirmation Order to be filed with the Bankruptcy Court and mailed by the Claims Agent to Holders of Claims and Equity Interests.

(97)    (100) "Off-Site Stored Assets" means those Assets that are in the physical possession of a vendor or third-party warehouseman, which, for the avoidance of doubt, constitute property of the Estates.

(98)    (101) "Other Secured Claims" means any Secured Claim arising prior to the Petition Date against any of the Debtors, other than a Prepetition Lender Secured Claim or a Mechanic's Lien Claim.

9

(99)  (102) "Person" means an individual, corporation, partnership, limited liability company, joint venture, trust, estate, unincorporated association, unincorporated organization, governmental entity, or political subdivision thereof, or any other entity.

(100)  (103) "Petition Date" means the date of commencement of the Chapter 11 Cases.

(101)  (104) "Plan" means this chapter 11 plan, either in its present form or as it may be amended, supplemented, or otherwise modified from time to time, and the exhibits and schedules hereto, as the same may be in effect at the time such reference becomes operative.

(102)  (105) "Plan Distribution" means the payment or distribution under the Plan of, or pursuant to, Cash, Assets, Prepetition Lender Notes, Prepetition Lien Trade Creditor Notes, Litigation Trust Interests, securities, or instruments on account of an Allowed Claim; including, without limitation, distributions made by the Litigation Trusts.

(103)  (106) "Plan Distribution Date" means with respect to any Claim, (a) if such Claim is Allowed on the Effective Date, a date that is as soon as reasonably practicable after the Effective Date, or (b) if such Claim is not Allowed on the Effective Date, a date that is as soon as reasonably practicable after the date such Claim becomes Allowed, and, thereafter, the date of any Plan Distribution.

(104)  (107) "Plan Documents" means the documents that aid in effectuating the Plan as specifically identified as such herein and filed with the Bankruptcy Court as specified in Section 1.4 of the Plan.

(105)  (108) "Plan Notes" means the Prepetition Lender Notes and Prepetition Lien Trade Creditor Notes.

(106)  (109) "Plan Notes Documents" means the Prepetition Lender Notes Documents and the Prepetition Trade Creditors Notes Documents.

(107)  (110) "Plan Sponsor" means Chippewa and any Person designated by Chippewa prior to the Effective Date.

(108)  (111) "Plan Sponsor Term Sheet" means the Plan Sponsor Term Sheet dated April 21, 2017 executed by Chippewa and the Debtors.

(109)  (112) "Post-Emergence Trade Agreement" means an agreement, substantially in the form filed with the Bankruptcy Court as an exhibit to the Disclosure Statement and in a form and substance agreeable to the Plan Sponsor, to be entered into pursuant to the procedures set forth in Section 7.16 of the Plan, between the Reorganized Debtor and a Holder of a Mechanic's Lien Claim or a Project Unsecured Claim who has agreed to continue to supply goods or services to the Reorganized Debtor for completion of the Project after entry of the Confirmation Order.

(110)  (113) "Post-Emergence Trade Creditor" means any Holder of a Mechanic's Lien Claim or a Project Unsecured Claim that has executed an enforceable Post-Emergence Trade Creditor Agreement.

10

(111)   (114) "Prepetition Agents" means the administrative agents under the Prepetition Credit Facilities.

(112)   (115) "Prepetition Credit Facilities" means (a) the Project Finance Credit Agreement, (b) the Term Loan Credit and Security Agreement, and (c) the Supplier Credit Facility Agreement and all documents related thereto.

(113)   (116) "Prepetition Lender Cash Collateral" means Cash in which the Prepetition Lenders have a Lien, including the Cash released by Atlantic Specialty Insurance Company to the Debtors pursuant to the *Order Granting Debtors' Motion for Release of Supersedeas Bond* [D.I. 796], but for the avoidance of doubt, Prepetition Lender Cash Collateral does not include the Earnest Money Deposit and amounts funded pursuant to the Chippewa Cash Collateral Order.

(114)   (117) "Prepetition Lender Fees and Expenses Payment" means Cash, not to exceed $3 million in the aggregate, to pay fees, costs and expenses (including attorneys' or other professionals' fees, costs and expenses) of the Prepetition Lenders and any agents or representatives thereof under the Prepetition Credit Facilities.  The Prepetition Lenders agree that no Claims regarding any such fees, costs, or expenses shall be paid or reimbursed, as Administrative Claims or otherwise, and shall direct any agents or representatives under the Prepetition Credit Facilities not to seek such payment or reimbursement, as necessary.

(115)   (118) "Prepetition Lender Notes" means those 7% junior notes due in 2027, that may be issued by the Reorganized Debtor in accordance with Section 7.1(b) of the Plan, in the aggregate principal amount of $300 million pursuant to an indenture.  The Prepetition Lender Notes shall be substantially in the most current form filed with the Bankruptcy Court as a Plan Document.

(116)   (119) "Prepetition Lender Notes Documents" means the Prepetition Lender Notes and any other documents, instruments, or agreements executed or entered into in connection therewith, and any amendments thereto.

(117)   (120) "Prepetition Lender Secured Claims" means any Claims arising under the Prepetition Credit Facilities.

(118)   (121) "Prepetition Lenders" means the Project Finance Lenders, Term Loan Lenders, and the Supplier Credit Lenders.

(119)   (122) "Prepetition Lien Trade Creditor Notes" means those 1.5% notes due in 2022, that may be issued by the Reorganized Debtor in accordance with Section 7.1(b) of the Plan. The Prepetition Lien Trade Creditor Notes shall be substantially in the most current form filed with the Bankruptcy Court as a Plan Document.

(120)   (123) "Prepetition Lien Trade Creditor Notes Documents" means the Prepetition Trade Creditor Notes and any other documents, instruments, or agreements executed or entered into in connection therewith, and any amendments thereto.

11

(121) (124) "Priority Claim" means any Claim against the Debtors to the extent such Claim is entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, other than Secured Claims, Administrative Claims, and Tax Claims.

(122) (125) "Pro Rata Share" means the proportion that an Allowed Claim bears to the aggregate amount of all Claims in a particular class, *including* Contested Claims, but *excluding* Disallowed Claims (a) as calculated by the Disbursing Agent or a Litigation Trustee, as applicable; or (b) as determined or estimated by the Bankruptcy Court.

(123) (126) "Production Date" means the first Business Day following the first fourteen (14) consecutive days during which at least 7,000 metric tons of iron ore concentrate is produced per day from mining operations at the Project.

(124) (127) "Professional Person" means a Person retained or to be compensated for services rendered or costs incurred on or after the Petition Date and on or prior to the Effective Date pursuant to sections 327, 328, 329, 330, 331, 503(b), or 1103 of the Bankruptcy Code in the Chapter 11 Cases.

(125) (128) "Project" means the Debtors' fully integrated, seven (7) million tonnes per annum (mtpa) capacity iron ore mine and pellet production facility under construction in the western Mesabi Range in northern Minnesota, as the same is completed in accordance with the Plan Sponsor's construction and business plan.

(126) (129) "Project Finance Credit Agreement" means that certain Senior Secured Credit Agreement, dated as of December 29, 2010, as amended from time to time, among ESML, as borrower, Holdings and certain other affiliates of ESML as guarantors, ICICI Bank Limited, Singapore Branch, as facility agent, Wilmington Trust, National Association, as security agent, ICICI Bank Limited, New York Branch, as lender and issuing bank, escrow agent, and account bank, and mandated lead arranger.

(127) (130) "Project Finance Credit Agreement Documents" means Project Finance Credit Agreement, together with all documents, instruments, mortgages, and loan documents and agreements executed or entered into in connection therewith, and any amendments thereto.

(128) (131) "Project Finance Lenders" means the financial institutions from time to time party to the Project Finance Credit Agreement.

(129) (132) "Project Finance Secured Claims" means any Claims arising under the Project Finance Credit Agreement Documents.

(130) (133) "Project Unsecured Claims" means any Unsecured Claim related to or arising from goods or services for the Project provided by a Person that is listed on the Schedule of Project Unsecured Claims. For the avoidance of doubt, the term shall not include (a) any Claim arising from an employee or individual independent contractor relationship between any Debtor and any Person, (b) any Claim arising from the rejection of an executory contract or unexpired lease, or (c) any Mechanic's Lien Claim.

(131) (134) "Project Unsecured Claims Pool Amount" means $3.5 million in Cash.

12

(132)  (135) "Record Date" means the record date for determining entitlement to receive Plan Distributions on account of Allowed Claims, which date shall be the Business Day immediately preceding the Effective Date at 5:00 p.m. prevailing Eastern time.

(133)  (136) "Relevant Plan Distribution" means any Plan Distribution by the SC Litigation Trustee of funds which comprise proceeds of Tranche 2 Claims that consist of Transferred Causes of Action—Collateral and Transferred Causes of Action—Unencumbered.

(134)  (137) "Reorganized Debtor" means any reorganized Debtor or its successor on or after the Effective Date, unless such Debtor is dissolved pursuant to the Plan.

(135)  (138) "SC Claims" means the Tranche 1 Claims and the Tranche 2 Claims.

(136)  (139) "SC Litigation Trust" means the trust to be created pursuant to Section 8.1 of the Plan, which shall possess the Tranche 1 Claims for the benefit of the SC Litigation Trust Beneficiaries and the Tranche 2 Claims for the joint benefit of all Litigation Trust Beneficiaries.

(137)  (140) "SC Litigation Trust Advisory Board" has the meaning set forth in Section 8.7 of the Plan.

(138)  (141) "SC Litigation Trust Agreement" means that certain trust agreement substantially in the most current form filed with the Bankruptcy Court as a Plan Document, which shall have the terms and conditions reasonably satisfactory to the Debtors and the Prepetition Agent, which agreement shall govern the SC Litigation Trust.

(139)  (142) "SC Litigation Trust Assets" means (a) any financing agreed to between the Prepetition Lenders from the Prepetition Lender Cash Collateral or otherwise approved by the SC Litigation Trust Pre-Effective Date Committee, (b) the SC Claims, (c) any proceeds derived from any Insurance Coverage Action related to the SC Claims, and (d) any Plan Distributions by the SC Litigation Trustee pursuant to the SC Litigation Trust Agreement that become Unclaimed Property pursuant to Sections 9.3, 9.4, and 9.7 of the Plan.

(140)  (143) "SC Litigation Trust Beneficiaries" means the holdersHolders of Class A Beneficial Trust Interests in the SC Litigation Trust.

(141)  (144) "SC Litigation Trust Pre-Effective Date Committee" means a committee consisting of three members, one member appointed by each of the Project Finance Lenders, the Term Loan Lenders, and the Supplier Credit Lenders.

(142)  (145) "SC Litigation Trustee" means the Person selected to serve as the trustee of the SC Litigation Trust under the SC Litigation Trust Agreement or Section 8.4 of the Plan.

(143)  (146) "Schedule of Post-Emergence Trade Creditors" means both the Schedule of Project Unsecured Claims and the Schedule of Project Secured Claims.

(144)  (147) "Schedule of Project Secured Claims" means that Schedule of Project Secured Claims filed as a schedule to the Disclosure Statement, as amended from time to time prior to the Voting Deadline.

Americas 9275552492879360 (2K)

(145) (148) "Schedule of Project Unsecured Claims" means that Schedule of Project Unsecured Claims filed as a schedule to the Disclosure Statement, as amended from time to time prior to the Voting Deadline.

(146) (149) "Schedules" means, unless otherwise stated, the schedules of assets and liabilities and list of Equity Interests and the statements of financial affairs filed by the Debtors with the Bankruptcy Court, as required by section 521 of the Bankruptcy Code and in conformity with the Official Bankruptcy Forms of the Bankruptcy Rules, as such schedules and statements have been or may be amended or supplemented by the Debtors in Possession from time to time in accordance with Bankruptcy Rule 1009.

(147) (150) "Secured Claims" means any Claim (other than a DIP Claim) against the Debtors (a) secured by a lien on any Assets, which lien is valid, perfected, and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, and which is duly established in the Chapter 11 Cases, but only to the extent of the value of the Holder's interest in the collateral that secures payment of the Claim; (b) that is subject to a valid right of recoupment or setoff under section 553 of the Bankruptcy Code, but only to the extent of the Allowed amount subject to recoupment or setoff as provided in section 506(a) of the Bankruptcy Code; and (c) deemed or treated under the Plan as a Secured Claim; *provided that*, to the extent that the value of such interest is less than the amount of the Claim which has the benefit of such security, the unsecured portion of such Claim shall be treated as an Unsecured Claim unless, in any such case, the class of which such Claim is a part makes a valid and timely election in accordance with section 1111(b) of the Bankruptcy Code to have such Claim treated as a Secured Claim to the extent Allowed.

(148) (151) "Securities Act" means the Securities Act of 1933, 15 U.S.C. §§ 77a, *et seq.*

(149) (152) "Solicitation Agent" means the Person designated by order of the Bankruptcy Court to act as the Debtors' agent in soliciting the Plan and tabulating votes in connection with the Plan.

(150) (153) "Statutory Fees" means all fees payable by the Debtors pursuant to 28 U.S.C. § 1930.

(151) (154) "Superior" means Superior Mineral Resources LLC.

(152) (155) "Superior Mineral Lease" means that certain mineral lease, dated as of November 29, 2006, by and between Superior and GPIOP, as lessors and successors in interest, and ESML, as lessee, as amended from time to time.

(153) (156) "Supplier Credit Facility Agreement" means that certain Facility Agreement, dated June 1, 2012, as amended from time to time, by and among EPIL, as borrower, Central Bank of India, as lender, lead bank, and facility agent, and Export Import Bank of India, as lender.

(154) (157) "Supplier Credit Facility Agreement Documents" means that certain Supplier Credit Facility Agreement, together with all documents, instruments, mortgages, letter agreements, assignments, loan documents, and agreements executed or entered into in connection therewith, and any amendments thereto, including that certain Assignment Deed, dated as of June

14

1, 2012, by and among Essar Projects (India) Limited, as assignor; Export Import Bank of India, as lender; and Central Bank of India, as lender, lead bank, and facility agent, as amended; that certain Letter Agreement, dated as of March 3, 2014, by and between ESML and Essar Projects (India) Limited, as amended; that certain Assignment, dated as of March 3, 2014, by and between Essar Projects (India) Limited and Export Import Bank of India, Central Bank of India; and that certain Assignment of Mortgage, dated March 3, 2014, by and between Essar Projects (India) Limited and Wells Fargo Bank Northwest, N.A., as security agent.

(155) (158) "Supplier Credit Lenders" means the financial institutions from time to time party to the Supplier Credit Facility Agreement.

(156) (159) "Supplier Credit Secured Claims" means any Claims arising under the Supplier Credit Facility Agreement Documents.

(160) "Surcharge Motion" means that certain motion to be filed by the Debtors prior to the Effective Date pursuant to section 506(c) of the Bankruptcy Code, which motion shall not be with respect to the Term Loan Secured Claims.

(157) (161) "Tax Claim" means a Claim against any of the Debtors that is of a kind specified in section 507(a)(8) of the Bankruptcy Code.

(158) (162) "Term Loan Credit and Security Agreement" means that certain Credit and Security Agreement, dated as of September 30, 2014, as amended from time to time, by and among ESML, as borrower, Holdings, as guarantor, the lenders signatory thereto, and U.S. Bank National Association, as agent.

(159) (163) "Term Loan Credit and Security Agreement Documents" means the Term Loan Credit and Security Agreement, together with all documents, instruments, mortgages, and loan documents and agreements executed or entered into in connection therewith, and any amendments thereto.

(160) (164) "Term Loan Lenders" means the financial institutions from time to time party to the Term Loan Credit and Security Agreement.

(161) (165) "Term Loan Secured Claims" means any Claims arising under the Term Loan Credit and Security Agreement Documents.

(162) (166) "Tranche 1 Claims" means all Transferred Causes of Action of any Debtor against any affiliate of any Debtor, other than Individual Claims.

(163) (167) "Tranche 2 Claims" means all Transferred Causes of Action of any Debtor, other than Individual Claims and Tranche 1 Claims.

(164) (168) "Transferred Causes of Action" means all Causes of Action and rights relating thereto of any kind or nature whatsoever, other than Causes of Action against Post-Emergence Trade Creditors, and including, without limitation, (a) Avoidance Actions and Insurance Coverage Actions, (b) claims against Insiders, (c) any  claims or Causes of Action arising from or related to the Litigation Trust Assets and Trust Claims, and (d) Claims of

15

Post-Emergence Trade Creditors against any of the Debtors' Affiliates assigned and transferred to the Debtors and their Estates pursuant to a Post-Emergence Trade Agreement.

(165) (169) "Transferred Causes of Action—Collateral" means Transferred Causes of Action that are the collateral of the Prepetition Lenders.

(166) (170) "Transferred Causes of Action—Unencumbered" means Transferred Causes of Action that are not the collateral of the Prepetition Lenders.

(167) (171) "Transition Services Agreement" means that certain transition services agreement, dated prior to the Effective Date, by and among the Litigation Trustees, the Debtors, and the Reorganized Debtor substantially in the most current form filed with the Bankruptcy Court as a Plan Document.

(168) (172) "UC Litigation Trust" means the trust to be created pursuant to Section 8.1 of the Plan, which shall possess the Individual Claims for the benefit of the UC Litigation Trust Beneficiaries.

(169) (173) "UC Litigation Trust Advisory Board" has the meaning set forth in Section 8.7 of the Plan.

(170) (174) "UC Litigation Trust Agreement" means that certain trust agreement substantially in the most current form filed with the Bankruptcy Court as a Plan Document, which shall have the terms and conditions reasonably satisfactory to the Debtors and the Committee, which agreement shall govern the UC Litigation Trust.

(171) (175) "UC Litigation Trust Assets" means (a) $500,000 to be transferred by the Debtors to the UC Litigation Trust on the Effective Date to defer the fees, costs, and expenses associated with objections to Claims that may receive a distribution from the UC Litigation Trust, (b) any financing approved by the Committee for the UC Litigation Trust, (c) the Individual Claims, (d) any proceeds derived from any Insurance Coverage Action related to the Individual Claims, and (e) any Plan Distributions by the UC Litigation Trustee pursuant to the UC Litigation Trust Agreement that become Unclaimed Property pursuant to Sections 9.3, 9.4, and 9.7 of the Plan.

(172) (176) "UC Litigation Trust Beneficiaries" means the Holders of Class UC Beneficial Trust Interests in the UC Litigation Trust.

(173) (177) "UC Litigation Trustee" means the Person selected to serve as the trustee of the UC Litigation Trust under the UC Litigation Trust Agreement or Section 8.4 of the Plan.

(174) (178) "UC Litigation Trustee Selection Committee" means a committee consisting of the three members of the Committee.

(175) (179) "Unclaimed Property" means all property described as such in Sections 9.3, 9.4 and 9.7 of the Plan.

Americas 92755524 92879360 (2K)

(176) (180) "Unsecured Claim" means any Claim against the Debtors other than an Administrative Claim, a Priority Claim, a Secured Claim, a Mechanic's Lien Claim, an Other Secured Claim, a Tax Claim, a Fee Claim, a DIP Claim, or a Prepetition Lender Secured Claim.

(177) (181) "Voting Deadline" means the deadline established by an order of the Bankruptcy Court for voting to accept or reject the Plan.

## 1.2    Interpretation.

Unless otherwise specified, all section, article, and exhibit references in the Plan are to the respective section in, article of, or exhibit to the Plan, as the same may be amended, waived, or modified from time to time.  The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan.  Words denoting one gender shall include the other gender.  The Disclosure Statement may be referred to for purposes of interpretation to the extent any term or provision of the Plan is determined by the Bankruptcy Court to be ambiguous.

## 1.3    Application of Definitions and Rules of Construction Contained in the Bankruptcy Code.

Words and terms defined in section 101 of the Bankruptcy Code shall have the same meanings when used in the Plan, unless a different definition is given in the Glossary of Defined Terms.  The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan, including, without limitation, that the terms "includes" and "including" are not limiting.

## 1.4    Appendices and Plan Documents.

All appendices and exhibits to the Plan and the Plan Documents are incorporated into the Plan by this reference and are a part of the Plan as if set forth in full herein.  Except as otherwise provided herein, all Plan Documents shall be filed with the Bankruptcy Court.  The Plan Documents may be amended from time to time pursuant to the Bankruptcy Code or otherwise, after entry of the Confirmation Order, with consent of the Prepetition Lenders, the Committee, and/or the Plan Sponsor, as applicable, or, if the Debtors are unable to obtain consent from the aforementioned parties in interest, then by order of the Bankruptcy Court, provided that consent shall not be required from any of the foregoing parties who have no rights under the applicable Plan Document or their rights are not otherwise affected.  Holders of Claims and Equity Interests may obtain a copy of the Plan Documents, once filed, at www.deb.uscourts.gov and http://dm.epiq11.com/#/case/ESM/info, or by a written request sent to:

> White & Case LLP
> Attention: Ronald K. Gorsich
> 555 South Flower Street, Suite 2700
> Los Angeles, California 90071
> Telephone:    (213) 620-7700
> Facsimile:    (213) 452-2329

17

# ARTICLE  II.

## CLASSIFICATION OF
## CLAIMS AND EQUITY INTERESTS

For the purposes of organization, voting, and all confirmation matters, except as otherwise provided herein, all Claims against and all Equity Interests in the Debtors shall be classified as set forth in this Article II.

**2.1      Administrative Claims and Tax Claims.**

Pursuant to section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Tax Claims shall not be classified under the Plan, and shall instead be treated separately as unclassified Claims on the terms set forth in Article V of the Plan.

**2.2      Claims and Equity Interests.**

The classes of Claims against and the Equity Interests in the Debtors shall be classified under the Plan as follows:

Class 1 – Priority Claims.  Class 1 shall consist of all the Priority Claims.

Class 2 – ~~Project Finance~~Prepetition Lender Secured Claims.  Class 2 shall consist of all the ~~Project Finance~~Prepetition Lender Secured Claims.

Class 3 – ~~Term Loan Secured~~Mechanic's Lien Claims. Class 3 shall consist of all the ~~Term Loan Secured~~Mechanic's Lien Claims.

~~Class 4 – Supplier Credit Secured Claims.  Class 4 shall consist of all the Supplier Credit Secured Claims.~~

~~Class 5 – Mechanic's Lien Claims.  Class 5 shall consist of all the Mechanic's Lien Claims.~~Class 6 – Other Secured Claims.  Class ~~6~~4 shall consist of all the Other Secured Claims.

Class ~~7~~5 – Project Unsecured Claims.  Class ~~7~~5 shall consist of all the Project Unsecured Claims.

Class 6 – General Unsecured Claims.  Class 6 shall consist of all the General Unsecured Claims.

Class 7 – Convenience Claims.  Class 7 shall consist of all the Convenience Claims.

~~Class 8 – General Unsecured Claims.  Class 8 shall consist of all the General Unsecured Claims.~~

~~Class 9 – Convenience Claims.  Class 9 shall consist of all the Convenience Claims.~~Class ~~10~~ – Equity Interests.  Class ~~10~~8 shall consist of all the Equity Interests.

18

**2.3      Separate Classification of Secured Claims.**

For purposes of nomenclature, all Mechanic's Lien Claims have been placed in one category and all Other Secured Claims have been placed in one category.  Notwithstanding the foregoing, each Mechanic's Lien Claim and Other Secured Claim shall be treated as a separate class for purposes of voting on the Plan and receiving Plan Distributions to the extent Allowed (to be designated as Class ~~5~~3A, ~~5~~3B, ~~5~~3C, etc. and Class ~~6~~4A, ~~6~~4B, ~~6~~4C, etc., respectively).

**2.4      Limited Consolidation.**

The Plan treats the Debtors as comprising a single Estate solely for purposes of voting on the Plan, confirmation of the Plan, and making Plan Distributions in respect of Claims against and Equity Interests in the Debtors under the Plan.

## ARTICLE  III.

## IDENTIFICATION OF IMPAIRED
## CLASSES OF CLAIMS AND EQUITY INTERESTS

**3.1      Unimpaired Classes of Claims and Equity Interests.**

Class 1 – Priority Claims is not impaired under the Plan.

**3.2      Impaired Classes of Claims and Equity Interests.**

Except as provided in Section 3.1 of the Plan, all classes of Claims and Equity Interests are impaired under the Plan.

**3.3      Impairment Controversies.**

If a controversy arises as to whether any Claim or Equity Interest, or any class of Claims or Equity Interests, is impaired under the Plan, the Bankruptcy Court shall, after notice and a hearing, determine such controversy.

## ARTICLE  IV.

## PROVISIONS FOR TREATMENT OF CLAIMS
## AND EQUITY INTERESTS UNDER THE PLAN

**4.1      Claims and Equity Interests.**

The Claims against the Debtors and Equity Interests in the Debtors shall be treated under the Plan as follows:

(a)      Class 1 – Priority Claims.

Each Holder of an Allowed Priority Claim shall be unimpaired under the Plan and, pursuant to section 1124 of the Bankruptcy Code, all legal, equitable, and contractual rights of

19

each Holder of an Allowed Priority Claim in respect of such Claim shall be fully reinstated and retained, except as provided in section 1124(2)(A)-(D) of the Bankruptcy Code, and such Holder of an Allowed Priority Claim shall be paid on the Plan Distribution Date in full and in Cash.

   (b)  Class 2 – ~~Project Finance~~Prepetition Lender Secured Claims.

~~Each Holder of an Allowed Project Finance Secured Claim shall receive:~~

    ~~(i) if Class 2 – Project Finance Secured Claims accepts the Plan: (A) $149,004,883 of the Prepetition Lender Notes, (B) the Class A-1 Beneficial Trust Interests, (C) the Pro Rata Share of the remaining Prepetition Lender Cash Collateral on the Effective Date less any amounts for other agreed uses, and (D) if approved by the Bankruptcy Court, a pro rata share of the Prepetition Lender Fees and Expenses Payment;~~

    ~~(ii) if Class 2 – Project Finance Secured Claims rejects the Plan: (A) $149,004,883 of the Prepetition Lender Notes (representing the "proceeds" of the Prepetition Lender's collateral revested in the Reorganized Debtor pursuant to section 7.6 of the Plan or the indubitable equivalent of such collateral), (B) the Class A-1 Beneficial Trust Interests, and (C) the Pro Rata Share of the remaining Prepetition Lender Cash Collateral on the Effective Date less (x) any amounts for other agreed uses and (y) less any amounts due and owing under a Final Order resolving the Surcharge Motion. There shall be no Plan Distribution of Prepetition Lender Cash Collateral on account of Class 2 – Project Finance Secured Claims pursuant to this Section 4.1(b)(ii) until the Surcharge Motion has been adjudicated by a Final Order. For the avoidance of doubt, under this Section 4.1(b)(ii), Holders of Project Finance Secured Claims shall not receive any portion of the Prepetition Lender Fees and Expenses Payment.~~

   ~~(c) Class 3 – Term Loan Secured Claims.~~

   Class ~~3~~2 – ~~Term Loan~~Prepetition Lender Secured Claims has accepted the Plan~~, accordingly, the Holders of~~. Each Holder of an Allowed ~~Term Loan~~Prepetition Lender Secured Claim shall receive: (A) ~~$110,446,346~~i) the Pro Rata Share of the Prepetition Lender Notes, ~~(B)~~ii) the Pro Rata Share of the Class A-~~2~~ Beneficial Trust Interests, ~~and (C)~~iii) the Pro Rata Share of the remaining Prepetition Lender Cash Collateral on the Effective Date less any amounts for other agreed uses, and ~~(D~~iv) a ~~pro rata share~~Pro Rata Share of the Prepetition Lender Fees and Expenses Payment.

   (c)  Reserved.

   (d)  ~~Class 4 – Supplier Credit Secured Claims.~~Reserved.

~~Each Holder of an Allowed Supplier Credit Secured Claim shall receive:~~

    ~~(i) if Class 4 – Supplier Credit Secured Claims accepts the Plan: (A) $40,548,771 of the Prepetition Lender Notes, (B) the Class A-3 Beneficial Trust Interests, (C) the Pro Rata Share of the remaining Prepetition Lender Cash Collateral on the Effective Date less any amounts for other agreed uses, and (D) if approved by the Bankruptcy Court, a pro rata share of the Prepetition Lender Fees and Expenses Payment;~~

20

~~(ii)     if Class 4 – Supplier Credit Secured Claims rejects the Plan: (A) $40,548,771 of the Prepetition Lender Notes (representing the "proceeds" of the Prepetition Lender's collateral revested in the Reorganized Debtor pursuant to section 7.6 of the Plan or the indubitable equivalent of such collateral), (B) the Class A-3 Beneficial Trust Interests, (C) the Pro Rata Share of the remaining Prepetition Lender Cash Collateral on the Effective Date less (x) any amounts for other agreed uses and (y) less any amounts due and owing under a Final Order resolving the Surcharge Motion.  There shall be no Plan Distribution of Prepetition Lender Cash Collateral on account of Class 4 – Supplier Credit Secured Claims pursuant to this Section 4.1(d)(ii) until the Surcharge Motion has been adjudicated by a Final Order.  For the avoidance of doubt, under this Section 4.1(d)(ii), Holders of Supplier Credit Secured Claims shall not receive any portion of the Prepetition Lender Fees and Expenses Payment.~~

(e)     Class ~~5~~3 – Mechanic's Lien Claims.

(i)     Each Holder of an Allowed Mechanic's Lien Claim shall receive, at its option, in full satisfaction of its Allowed Mechanic's Lien Claim, (A) a Pro Rata Share of the following payments, not to exceed 75% of such Holder's Allowed Mechanic's Lien Claim: (1) two-thirds of the Mechanic's Lien Claims Pool Amount on the first Plan Distribution Date and (2) one-third of the Mechanic's Lien Claims Pool Amount on the twelve-month anniversary of the Production Date, or (B) a Prepetition Lien Trade Creditor Note in the principal amount equal to the value of the collateral securing such Holder's Allowed Mechanic's Lien Claim based on a hypothetical liquidation as of the Effective Date; provided,  that to the extent the Holder's Allowed Mechanic's Lien Claim exceeds the principal amount of the Prepetition Lien Trade Creditor Note issued on account of such Allowed Mechanic's Lien Claim, the difference shall be included and treated in Class ~~8~~6 to the extent Allowed and shall be subject to allowance, reduction, or disallowance to the same extent as any other Class ~~8~~6 Claim.

(ii)     If the Holder of an Allowed Mechanic's Lien Claim elects to receive a Cash distribution pursuant to this Section 4.1(e) of the Plan but is not selected to receive a Notice of Intent to Enter into a Post-Emergence Trade Agreement or does not execute an enforceable Post-Emergence Trade Agreement, such Holder shall receive treatment pursuant to Section 4.1(e)(i)(B) of the Plan.

(f)     Class ~~6~~4 – Other Secured Claims.

Each Holder of an Allowed Other Secured Claim, other than a DIP Claim, against any of the Debtors shall receive, at the Reorganized Debtor's election, on the Plan Distribution Date, in full satisfaction of its Allowed Other Secured Claim, (i) a single Cash payment equal to the sum of (A) its Allowed Other Secured Claim and (B) accrued postpetition interest through the Effective Date, at an interest rate agreed to by the parties, or, if no agreement can be reached, as determined by the Bankruptcy Court after notice and a hearing; (ii) the collateral that secured payment of such Other Secured Claim; (iii) if such Allowed Other Secured Claim is subject to a valid right of recoupment or setoff, such Claim shall be setoff to the extent of the amount subject to setoff in accordance with sections 506(a) and 553 of the Bankruptcy Code; (iv) a Prepetition Lien Trade Creditor Note in the principal amount equal to the value of the collateral securing such Holder's Allowed Other Secured Claim based on a hypothetical liquidation as of the Effective Date; provided, further, that to the extent the Holder's Allowed Other Secured Claim exceeds the

21

principal amount of the Prepetition Lien Trade Creditor Note issued on account of such Allowed Other Secured Claim, the difference shall be included and treated in Class ~~8~~6 to the extent Allowed and shall be subject to allowance, reduction, or disallowance to the same extent as any other Class ~~8~~6 Claim; or (v) the otherwise indubitable equivalent.  Notwithstanding any of the foregoing, the Debtors and any Holder of an Allowed Other Secured Claim may agree to any alternate treatment for such Other Secured Claim; except that such treatment shall not provide a return to such Holder having a present value as of the Effective Date in excess of the amount of such Holder's Allowed Secured Claim.

(g)    Class ~~7~~5 – Project Unsecured Claims.

(i)    Each Holder of an Allowed Project Unsecured Claim shall receive, at the election of the Holder of the Allowed Project Unsecured Claim, in full satisfaction of its Allowed Project Unsecured Claim, (i) its Pro Rata Share of the following payments, not to exceed 50% of such Holder's Project Unsecured Claim: (A) two-thirds of the Project Unsecured Claims Pool Amount on the first Plan Distribution Date and (B) one-third of the Project Unsecured Claims Pool Amount on the twelve-month anniversary of the Production Date, or (ii) on the Plan Distribution Date, its Pro Rata Share of the Class UC Beneficial Trust Interests.

(ii)    If the Holder of an Allowed Project Unsecured Claim is not selected to receive a Notice of Intent to Enter into a Post-Emergence Trade Agreement or does not execute a Post-Emergence Trade Agreement, such Allowed Project Unsecured Claim, shall be included in and treated as a Class ~~8~~6 Claim to the extent Allowed and shall be subject to allowance, reduction, or disallowance to the same extent as any other Class ~~8~~6 Claim.

(h)    Class ~~8~~6 – General Unsecured Claims.

Class ~~8~~6 – General Unsecured Claims ~~have~~has accepted the Plan.  Each Holder of an Allowed General Unsecured Claim shall receive on the Plan Distribution Date its Pro Rata Share of the Class UC Beneficial Trust Interests.

(i)    Class ~~9~~7 – Convenience Class.

Each Holder of an Allowed Convenience Class Claim shall receive on the Plan Distribution Date a single Cash payment in an amount equal to 100% of such Holder's Allowed Convenience Class Claim.

Any Holder of a Secured Claim that makes a Convenience Class Election shall be deemed to release any Liens related to such Claims for work performed prior to the Petition Date, and shall waive any Plan Distribution on account of any deficiency Claims.

(j)    Class ~~10~~8 – Equity Interests.

On the Effective Date, all Equity Interests in the Debtors shall be cancelled, and each Holder of an Equity Interest in the Debtors shall neither receive nor retain any property under the Plan on account such interests.

22

**4.2        Treatment of Guaranty and Joint Liability Claims Against a Debtor.**

Any Holder of a Claim against a Debtor and a Claim against another Debtor based on a guaranty of such base Claim shall receive only a single recovery in respect of such Claims.  Any Holder of a Claim against a Debtor and a Claim against another Debtor based on joint or joint and several liability of such Debtors shall receive only a single recovery in respect of such Claims.

**ARTICLE V.**

**PROVISIONS FOR TREATMENT OF
UNCLASSIFIED CLAIMS UNDER THE PLAN**

**5.1        Unclassified Claims.**

Administrative Claims and Tax Claims are treated in accordance with sections 1129(a)(9)(A) and 1129(a)(9)(C) of the Bankruptcy Code, respectively.  Such Claims are not designated as classes of Claims for the purposes of this Plan or for the purposes of sections 1123, 1124, 1125, 1126, or 1129 of the Bankruptcy Code.

**5.2        Treatment of Administrative Claims.**

All Administrative Claims shall be treated as follows:

(a)        Time for Filing Administrative Claims.

The Holder of an Administrative Claim, other than (i) a Fee Claim, (ii) a Claim for Statutory Fees, (iii) a DIP Claim, or (iv) an Administrative Claim that has been Allowed on or before the Effective Date, must file with the Bankruptcy Court and serve on the Debtors, the Committee (if before the Effective Date), and the Office of the United States Trustee, notice of such Administrative Claim within forty-five (45) days after service of the Notice of the Effective Date (the "**Administrative Bar Date**").  The Notice of Effective Date shall include notice of the Administrative Bar Date.  Any and all Administrative Claims filed pursuant to this Section 5.2 of the Plan must include at a minimum (i) the name of the Holder of the Claim; (ii) the amount of the Claim; and (iii) the basis of the Claim.  **Failure to timely and properly file and serve a request for payment of an Administrative Claim shall result in such Administrative Claim not being entitled to any distribution under the Plan.**

(b)        Time for Filing Fee Claims.

Each Professional Person who holds or asserts a Fee Claim shall be required to file with the Bankruptcy Court, and serve on all parties required to receive notice, a Fee Application within forty-five (45) days after the Effective Date.  **Failure of a Professional Person to timely and properly file and serve a Fee Application shall result in such Professional Person's Fee Claim not being entitled to any distribution under the Plan.**

23

(c)     Allowance of Administrative Claims.

The Plan constitutes a motion under Local Rule 2002-1(b) to establish the deadline to object to Administrative Claims.  An Administrative Claim with respect to which notice has been properly filed and served pursuant to Section 5.2(a) of the Plan shall become an Allowed Administrative Claim if no objection is filed on or before the later of (i) the date that is ninety (90) days after the Effective Date; and (ii) such date as may be (A) agreed to by the Holder of such Administrative Claim, or (B) approved by the Bankruptcy Court on motion of a party in interest, without notice or a hearing.  If an objection is filed by the applicable objection deadline (or any extension thereof), the Administrative Claim shall become an Allowed Administrative Claim only to the extent allowed by Final Order.

A Fee Claim in respect of which a Fee Application has been properly filed and served pursuant to Section 5.2(b) of the Plan shall become an Allowed Administrative Claim only to the extent allowed by order of the Bankruptcy Court.

(d)     Payment of Allowed Administrative Claims.

On the Plan Distribution Date, each Holder of an Allowed Administrative Claim shall receive (i) the amount of such Holder's Allowed Administrative Claim in one Cash payment; or (ii) such other treatment as may be agreed upon in writing by the Debtors and such Holder; *provided*, that such treatment shall not provide a return to such Holder having a present value as of the Effective Date in excess of such Holder's Allowed Administrative Claim.  Notwithstanding anything else set forth herein, an Administrative Claim representing a liability incurred in the ordinary course of business of the Debtors may be paid at the Debtors' election in the ordinary course of business at any time.

(e)     Allowance and Payment of DIP Claims.

The DIP Claims shall be Allowed Administrative Claims on the Effective Date and shall be paid in full in Cash on the Effective Date.  No later than seven (7) Business Days after the Confirmation Date, the DIP Lender shall file a notice containing a computation of the amount of the DIP Claims, including any *per diem* amount accruing after the Confirmation Date.  A party objecting to the computation of such amount shall attempt to resolve any such objection directly with the DIP Lender.  If no resolution is reached, such objecting party shall file an objection to the computation no later than seven (7) Business Days after the DIP Lender filed its notice of computation.

(f)     Allowance and Payment of Claims under Chippewa Cash Collateral Order.

Chippewa's Claims pursuant to the Chippewa Cash Collateral Order constitute Allowed Administrative Claims, and shall be credited towards the Investment or rolled into a subordinate convertible secured note reflecting the Investment on a dollar for dollar basis on the Effective Date.

Americas 92755524 92879360 (2K)

**5.3     Treatment of Tax Claims.**

Each Holder of an Allowed Tax Claim will receive in full satisfaction of such Allowed Tax Claim (a) payments in Cash, in regular installments over a period ending not later than five (5) years after the Petition Date, of a total value, as of the Effective Date, equal to the Allowed amount of such Claim; (b) a lesser amount in one Cash payment as may be agreed upon in writing by such Holder; or (c) such other treatment as may be agreed upon in writing by such Holder; *provided*, that such agreed upon treatment may not provide such Holder with a return having a present value as of the Effective Date that is greater than the amount of such Holder's Allowed Tax Claim.

**ARTICLE VI.**

**ACCEPTANCE OR REJECTION OF THE PLAN;**
**EFFECT OF REJECTION BY ONE OR MORE**
**CLASSES OF CLAIMS OR EQUITY INTERESTS**

**6.1     Class Entitled to Vote.**

Class 2 – ~~Project Finance~~Prepetition Lender Secured Claims, Class 3 – ~~Term Loan Secured~~Mechanic's Lien Claims, Class 4 – ~~Supplier Credit~~Other Secured Claims, Class 5 – ~~Mechanic's Lien~~Project Unsecured Claims, Class 6 – ~~Other Secured Claims, Class 7 – Project Unsecured Claims, Class 8 –~~ General Unsecured Claims, and  Class ~~9~~7 – Convenience Claims shall be entitled to vote on the Plan.  Class 1 – Priority Claims is unimpaired.  Accordingly, Class 1 – Priority Claims is deemed to accept the Plan.  Class ~~10~~8 – Equity Interests shall receive no recovery.  Accordingly, Class ~~10~~8 – Equity Interests is deemed to reject the Plan.

**6.2     Class Acceptance Requirement.**

A class of Claims shall have accepted the Plan if at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Holders of Allowed Claims in such class that have voted on the Plan vote to accept the Plan.

**6.3     Cramdown.**

If all applicable requirements for confirmation of the Plan are met as set forth in section 1129(a)(1) through (16) of the Bankruptcy Code, except subsection (8) thereof, then the Plan shall be treated as a request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code, notwithstanding the failure to satisfy the requirements of section 1129(a)(8), on the basis that the Plan is fair and equitable and does not discriminate unfairly with respect to any Class that has rejected or is deemed to reject the Plan.

# ARTICLE  VII.

## MEANS FOR IMPLEMENTATION OF THE PLAN

### 7.1    Implementing Transactions on or Prior to the Effective Date.

The following transactions shall occur and be implemented pursuant to section 1123(a)(5) of the Bankruptcy Code on or prior to the Effective Date:

(a)    Issuance of Equity Securities.

On the Effective Date, the existing Equity Interests in the Debtors shall be cancelled.  The Reorganized Debtor shall, thereafter, on the Effective Date, without further order of the Bankruptcy Court, (i) authorize 10,000 units of New Membership Interests, and (ii) issue 10,000 units of New Membership Interests representing 100% of the outstanding units of New Membership Interests as of such date to be distributed pursuant to Section 7.3 of the Plan.  The issuance of New Membership Interests and the distribution thereof shall be exempt from registration under applicable securities laws pursuant to section 1145(a) of the Bankruptcy Code.

(b)    Issuance of Notes.

The Reorganized Debtor shall execute the Plan Notes Documents, including, but not limited to, (i) the Prepetition Lender Notes and (ii) the Prepetition Lien Trade Creditor Notes, in each case in accordance with the Plan.  Without limiting the generality of the foregoing, the Plan Notes Documents shall provide that (i) the obligations of the Reorganized Debtor in connection with the Prepetition Lender Notes shall be secured by a junior lien in and upon substantially all of the assets of the Reorganized Debtor and ERPI, subject only to the liens granted pursuant to the Exit Facility Documents, the Prepetition Lien Trade Creditor Notes Document, and certain customary permitted liens and (ii) the obligations of the Reorganized Debtor in connection with the Prepetition Lien Trade Creditor Notes shall be secured by assets to be determined at or after the Confirmation Hearing.  The issuance of the Plan Notes and the distribution thereof shall be exempt from registration under applicable security laws pursuant to section 1145(a) of the Bankruptcy Code.  There shall be no presumption that the fair value of the Prepetition Lender Notes is their face value.

The Prepetition Lender Notes shall be tradable through the Depository Trust Company.  Interest on the Prepetition Lender Notes shall be: (i) paid semi-annually, (ii) paid in kind until the date the first interest payment is due on or after the one-year anniversary of the completion of construction of the Project, and (iii) on such date and thereafter, five-sevenths ($^5/_7$) of interest payments shall be paid in Cash and two-sevenths ($^2/_7$) of interest payments shall be paid in kind until maturity.  Principal shall be paid in one lump sum Cash payment at maturity in 2027.  The Prepetition Lender Notes shall include customary and commercially reasonable provisions for notes of this type regarding distributions on account of New Membership Interests or equity interests in ERPI.

26

(c)      The Exit Facility.

The Reorganized Debtor (and/or ERPI, on the terms agreed to by the Plan Sponsor) shall, if necessary, execute and deliver to the Exit Facility Lenders the Exit Facility Documents.  Without limiting the generality of the foregoing, the obligations under the Exit Facility Documents shall be secured by a first priority lien in and upon substantially all the assets of the Reorganized Debtor (and/or a lien on assets of ERPI, on the terms agreed to by the Plan Sponsor), subject only to certain customary permitted liens.

(d)      ERPI Integration.

The Plan Sponsor shall cause ERPI's business and operations to be integrated with those of the Reorganized Debtor on the Effective Date, either pursuant to an inter-company agreement (which may be limited to cooperation in the production of iron ore concentrate and pellets) or a merger (or other form of business combination), which integration transactions shall be determined by the Plan Sponsor.

## 7.2      Corporate Action.

The entry of the Confirmation Order shall constitute authorization for the Debtors and Reorganized Debtor to take or cause to be taken all corporate actions necessary or appropriate to implement all provisions of, and to consummate, the Plan, the Plan Sponsor Term Sheet, and the Commitment Letter prior to, on, and after the Effective Date and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act, or action under any applicable law, order, rule, or regulation, including (a) the incurrence of all obligations contemplated by the Plan and the making of Plan Distributions; (b) the issuance of New Membership Interests; (c) the issuance of the Plan Notes and the execution, delivery, and performance of the Plan Notes Documents; (d) the execution, delivery, and performance  of the Exit Facility Documents and the incurrence of indebtedness and granting of liens thereunder; (e) all transfers of Assets that are to occur pursuant to the Plan; (f) the adoption of the New Governing Documents; (g) the implementation of all settlements and compromises as set forth in or contemplated by the Plan; and (h) the adoption of any management or employee incentive programs.  On the Effective Date, the officers of the Debtors and Reorganized Debtor shall be authorized and directed to do all things and to execute and deliver all agreements, documents, instruments, notices, and certificates as are contemplated by the Plan, the Plan Sponsor Term Sheet, and the Commitment Letter and to take all necessary actions required in connection therewith, in the name of and on behalf of the Debtors and Reorganized Debtor, as applicable.

## 7.3      New Membership Interests.

On the Effective Date, the Reorganized Debtor shall distribute units of New Membership Interests in an amount equal to 100% of the New Membership Interests in the Reorganized Debtor as directed by the Plan Sponsor in exchange for the Investment.

**7.4      Continued Corporate Existence.**

The Reorganized Debtor shall continue to exist after the Effective Date as a separate entity, with all the powers available to such legal entity, in accordance with applicable law and pursuant to the New Governing Documents.

**7.5      New Governing Documents.**

The New Governing Documents shall be amended as necessary to satisfy the provisions of the Plan and the Bankruptcy Code and shall be substantially in the most current form filed with the Bankruptcy Court as Plan Documents.

**7.6      Revesting of Assets; Release of Liens.**

(a)      Upon the occurrence of the Effective Date, except for the Litigation Trust Assets or as otherwise expressly provided herein, and without further order of the Bankruptcy Court, title to all of the Debtors' Assets shall vest in the Reorganized Debtor, free and clear of all Liens, Claims, Causes of Action, interests, security interests, and other encumbrances.  On and after the occurrence of the Effective Date, except as otherwise provided herein, the Reorganized Debtor may operate its business and may use, acquire, and dispose of the Assets free of any restrictions of the Bankruptcy Code.

(b)      Pursuant to section 1142 of the Bankruptcy Code and in accordance with the Confirmation Order, the Debtors and any other necessary party shall execute, deliver, or join in the execution or delivery (as applicable) of any instrument, document, or agreement and perform any other act required to effect a release of a Lien dealt with by the Plan.  Notwithstanding the foregoing, if necessary, the Debtors may file a motion pursuant to section 1142 of the Bankruptcy Code to implement any deemed releases of Liens in the Plan.

**7.7      Cancellation of Instruments.**

Except as otherwise provided in the Plan, all Equity Interests in the Debtors and any other note, bond, indenture, or other instrument or document evidencing or creating any indebtedness or obligation of the Debtors, including, but not limited to, the Prepetition Credit Facilities, shall be deemed cancelled on the Effective Date and any such indebtedness or obligation of the Debtors shall be discharged.

**7.8      Appointment of the Disbursing Agent.**

Upon the occurrence of the Effective Date, the Reorganized Debtor shall be appointed to serve as the Disbursing Agent and shall have all the powers, rights, duties, and protections afforded the Disbursing Agent under the Plan.

Any attorney-client privilege, work-product protection, or other privilege or immunity attaching to any documents or communications (whether written or oral and including but not limited to all electronic information) relating to Assets, except the Litigation Trust Assets, and objections to the Project Unsecured Claims and the General Unsecured Claims shall also vest in the Disbursing Agent.  The Debtors, the Reorganized Debtor, and the Disbursing Agent are

28

authorized and required to take all necessary actions to effectuate the transfer of such privileges, protections and immunities.

**7.9      Sources of Cash for Plan Distributions.**

All Cash necessary for the Disbursing Agent to make Plan Distributions shall be obtained from the proceeds of the Exit Facility, the Investment by the Plan Sponsor, the unused portion of the Earnest Money Deposit, the Debtors' existing Cash balances, or the liquidation of the Assets.

**7.10    Investment of Funds Held by the Disbursing Agent; Tax Reporting by the Disbursing Agent.**

The Disbursing Agent may, but shall not be required to, invest any funds held by the Disbursing Agent pending the distribution of such funds pursuant to the Plan in investments that are exempt from federal, state, and local taxes. Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt by the Disbursing Agent of a private letter ruling if the Disbursing Agent so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Disbursing Agent), the Disbursing Agent may (a) treat the funds and other property held by it as held in a single trust for federal income tax purposes in accordance with the trust provisions of the Internal Revenue Code (sections 641, et seq.), and (b) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes.

**7.11    Governors of the Reorganized Debtor.**

The New Board shall be comprised of up to seven (7) governors appointed by the Plan Sponsor. The initial designation of the governors shall be made at least five (5) days prior to the Voting Deadline and the final designation of the governors shall be made in a filing with the Bankruptcy Court no later than five (5) days prior to the Effective Date. The members of the New Board shall continue to serve as such until replaced or removed in accordance with the New Governing Documents, or until any such individual's voluntary resignation.

**7.12    Officers of the Reorganized Debtor.**

Unless the Plan Sponsor determines otherwise, the existing officers of ESML shall serve initially in the same capacities after the Effective Date for the Reorganized Debtor until replaced or removed in accordance with the New Governing Documents or company policy, or until any of such individual's voluntary resignation.

**7.13    Indemnification of the Reorganized Debtor's Governors, Officers, and Employees.**

Upon the Effective Date, the New Governing Documents shall contain customary indemnification provisions for the Reorganized Debtor's governors, officers, and other key employees (as identified by the Reorganized Debtor's Chief Executive Officer) for acts or omissions first arising and accruing after the Effective Date to the extent permitted by applicable state law; provided, however, that no such indemnification shall be applicable to any prepetition actions or omissions, and provided further, that no such indemnification shall be applicable to any

29

prepetition governor, officer, or other key employee who was not employed by the Debtors as a governor, officer, or employee as of the Confirmation Date.

**7.14    Director and Officer Liability Insurance.**

The Debtors' tail coverage under the prepetition D&O Insurance Policies shall remain in full force and effect.  The Debtors shall purchase tail coverage for $20,000,000 (twenty million dollars) of their postpetition D&O Insurance Policies for a term ending six years after the Effective Date.  No additional tail coverage shall be purchased, renewed, or extended at the expense of the Debtors or the Reorganized Debtor.

**7.15    Management and Employee Incentive Programs.**

The details of the management and employee incentive programs will be filed with the Bankruptcy Court as a Plan Document.  All compensation arising thereunder shall be paid post-Effective Date by the Reorganized Debtor.

**7.16    Post-Emergence Trade Agreement Procedure.**

(a)    The Plan Sponsor, in consultation with the Debtors, may elect to enter into a Post-Emergence Trade Agreement, in form and substance agreeable to the Plan Sponsor, with certain Holders of Mechanic's Lien Claims or Project Unsecured Claims, in accordance with the following procedure:

(i)    The Plan Sponsor, in consultation with the Debtors, shall determine, in their business judgment and sole discretion, if the Reorganized Debtor will have a continuing need for the goods or services of certain Holders of Mechanic's Lien Claims and Project Unsecured Claims to complete the Project.

(ii)    Upon such determination, the Debtors shall (A) include such Holders of Mechanic's Lien Claims or Project Unsecured Claims that they have selected to enter into a Post-Emergence Trade Agreement on the Schedule of Post-Emergence Trade Creditors and (B) provide such Holder with a Notice of Intent to Enter into Post-Emergence Trade Agreement. A form of the (A) Post-Emergence Trade Agreement and (B) Notice of Intent to Enter into a Post-Emergence Trade Agreement shall be filed with the Bankruptcy Court as a Plan Document.

(iii)    If the Holder of a Mechanic's Lien Claim or Project Unsecured Claim is willing to enter into and comply with the terms of a Post-Emergence Trade Agreement, such Holder shall return to the Debtors a completed Notice of Intent to Enter into a Post-Emergence Trade Agreement within five (5) days of receipt of the Notice of Intent or such later date as agreed by the Plan Sponsor.

(iv)    Within a reasonable time of receiving a Notice of Intent to Enter into a Post-Emergence Trade Agreement from a provider, the Debtors shall contact the provider and negotiate the terms and conditions of the Post-Emergence Trade Agreement in good faith.

(v)    Unless the parties agree otherwise, all Post-Emergence Trade Agreements must be executed by the Effective Date.

30

(b)    Holders of Mechanic's Lien Claims that elect to receive a Cash distribution on account of their Allowed Mechanic' Lien Claims must execute an enforceable Post-Emergence Trade Agreement prior to receiving any such Plan Distribution, shall be deemed to release any Liens related to such Claims for work performed prior to the Petition Date, and shall waive any Plan Distribution on account of any deficiency Claims.

(c)    Holders of Project Unsecured Claims that elect to receive a Cash distribution on account of their Allowed Project Unsecured Claims must execute an enforceable Post-Emergence Trade Agreement prior to receiving any such Plan Distribution.

(d)    Holders of Mechanic's Lien Claims or Project Unsecured Claims that execute an enforceable Post-Emergence Trade Agreement must assign, transfer, set over, and deliver to the Debtors and their Estates any and all Causes of Action that such Holders have against any of the Debtors' affiliates.

## 7.17    Dissolution of Holdings.

On the Effective Date or as soon as practicable thereafter, the Debtors shall take all actions necessary to dissolve Holdings.

## 7.18    Approval of Compromises and Settlements Embodied in the Plan.

The terms of the Plan represent compromises and settlements of certain issues among the Debtors and parties in interest.  To the extent necessary, the Plan is deemed a motion for approval of compromises and settlements and the Confirmation Order shall contain findings supporting and conclusions approving the compromises and settlements as fair and equitable within the bounds of reasonableness.

## ARTICLE  VIII.

## THE LITIGATION TRUSTS

## 8.1    Creation of the Litigation Trusts and Appointment of the Litigation Trustees.

(a)    The Litigation Trust Agreements shall be executed on or before the Effective Date, and all other necessary steps shall be taken to establish the Litigation Trusts and the Litigation Trust Assets, which shall be for the benefit of the Litigation Trust Beneficiaries.  A copy of the form of each of the Litigation Trust Agreements shall be filed with the Bankruptcy Court as a Plan Document and the terms of the Litigation Trust Agreements are hereby incorporated by reference and made a part of the Plan.

(b)    On the Effective Date, two Litigation Trusts will be created pursuant to respective Litigation Trust Agreements.  One of the Litigation Trusts shall be the UC Litigation Trust and it shall be vested with the Individual Claims.  The other Litigation Trust shall be the SC Litigation Trust and it shall be vested with the Tranche 1 Claims and the Tranche 2 Claims.

(c)    Each of the Litigation Trusts shall be administered by its respective Litigation Trust Advisory Board and Litigation Trustee.  The SC Litigation Trustee shall be

31

Bradley E. Scher, unless the SC Litigation Trust Pre-Effective Date Committee unanimously selects someone else no later than five (5) days prior to the Effective Date. The UC Litigation Trustee shall be selected by the UC Litigation Trustee Selection Committee and identified no later than five (5) days prior to the Effective Date. The appointment of the initial Litigation Trustees and the terms and compensation of such appointment shall be subject to the approval of the Bankruptcy Court.

(d)    On the Effective Date, in accordance with section 1141 of the Bankruptcy Code, all of the SC Litigation Trust Assets, as well as the rights and powers of the Estates applicable to the SC Litigation Trust Assets, shall automatically vest in the SC Litigation Trust, free and clear of all Claims and interests, for the benefit of the SC Litigation Trust Beneficiaries. On the Effective Date, in accordance with section 1141 of the Bankruptcy Code, all of the UC Litigation Trust Assets, as well as the rights and powers of the Estates applicable to the UC Litigation Trust Assets, shall automatically vest in the UC Litigation Trust, free and clear of all Claims and interests, for the benefit of the UC Litigation Trust Beneficiaries.

## 8.2    Property of the Litigation Trusts.

(a)    Notwithstanding any prohibition of assignability under applicable non-bankruptcy law, on the Effective Date, the Debtors shall be deemed to have automatically transferred (i) to the SC Litigation Trust all of their right, title, and interest in and to the SC Litigation Trust Assets, including the SC Claims and the proceeds derived from any Insurance Coverage Actions related to the SC Claims, and any proceeds thereof and (ii) to the UC Litigation Trust all of their right, title, and interest in and to the UC Litigation Trust Assets, including the Individual Claims and the proceeds derived from any Insurance Coverage Actions related to the Individual Claims, and any proceeds thereof. In accordance with section 1141 of the Bankruptcy Code, on the Effective Date, the transfer of (i) the SC Litigation Trust Assets, including the SC Claims and the Insurance Coverage Actions related to the SC Claims, shall automatically vest in the SC Litigation Trust free and clear of all Claims and interests, for the benefit of the SC Litigation Trust Beneficiaries and (ii) the UC Litigation Trust Assets, including the Individual Claims and the Insurance Coverage Actions related to the Individual Claims shall automatically vest in the UC Litigation Trust free and clear of all Claims and interests, for the benefit of the UC Litigation Trust Beneficiaries. The Litigation Trusts shall be the successors to the Debtors for purposes of (i) (A) prosecuting and/or settling the Transferred Causes of Action and (B) prosecuting, objecting to, and settling all affirmative claims or Causes of Action arising from or relating to the Litigation Trust Assets and Trust Claims; and (i) litigating and allowing (A) Claims held by any Creditor that is adverse to a Litigation Trust with respect to the Transferred Causes of Action, (B) all General Unsecured Claims, and (C) Claims held by a Litigation Trust Beneficiary that will receive a distribution from a Litigation Trust (collectively the "**Trust Claims**").

(b)    In connection with the vesting and transfer of the property, rights, title, and interests in this Section 8.2(a) of the Plan, any attorney-client privilege, work-product protection, or other privilege or immunity attaching to any documents or communications (whether written or oral and including but not limited to all electronic information) relating to the Litigation Trust Assets, affirmative claims or Causes of Action arising from or related to the Litigation Trust Assets and Trust Claims, and objections to the Trust Claims shall also vest in the Litigation Trusts.

32

The Debtors, the Reorganized Debtor, and the Litigation Trustees are authorized and required to take all necessary actions to effectuate the transfer of such privileges, protections, and immunities.

## 8.3    Purpose of the Litigation Trusts.

The Litigation Trusts shall be established for the purposes of (a) liquidating its assets in accordance with Treas. Reg. § 30-1.770-1-4(d) with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Litigation Trust, (b) administering the Litigation Trust Assets, and (c) after consultation with the their respective Litigation Trust Advisory Board, (i) resolving all Trust Claims and (ii) making all Plan Distributions to the Litigation Trust Beneficiaries. Consistent with Treas. Reg. § 301.7701-4(d), the Litigation Trustees shall not unduly prolong the duration of the Litigation Trusts.

The Litigation Trusts shall not be deemed a successor-in-interest of the Debtors for any purpose other than as specifically set forth herein or in the Litigation Trust Agreements.

The transfer of the Litigation Trust Assets to the Litigation Trusts shall be made for the benefit and on behalf of the Litigation Trust Beneficiaries. The Litigation Trust Assets comprising the Litigation Trusts shall be treated for federal income tax purposes as being transferred by the Debtors to the Litigation Trust Beneficiaries pursuant to the Plan in exchange for their Allowed Claims and then by the Litigation Trust Beneficiaries to the Litigation Trusts. The Litigation Trusts are intended to qualify as a "grantor trust" for federal income tax purposes with the holders of Litigation Trust Interests treated as grantors and owners of the Litigation Trust. As soon as practicable after the Effective Date, the Litigation Trustees (to the extent that the Litigation Trustee deems it necessary or appropriate in its sole discretion) shall value the assets of the Litigation Trust based on the good faith determination of the Litigation Trustee. The valuation shall be used consistently by all parties for all federal income tax purposes. The Bankruptcy Court shall resolve any dispute regarding such valuation.

The Litigation Trusts, acting through the Litigation Trustees, shall be authorized to exercise and perform the rights, powers, and duties held by the Estates with respect to the Litigation Trust Assets, including, without limitation, the authority under section 1123(b)(3) of the Bankruptcy Code, and shall be deemed to be acting in the capacity of the bankruptcy or insolvency trustee or examiner, or a receiver for the Committee, to provide for the prosecution, objection, settlement, adjustment, retention, and enforcement of the Transferred Causes of Action and Trust Claims.

## 8.4    Litigation Trustee Selection Committees.

The initial UC Litigation Trustee shall be selected by the UC Litigation Trustee Selection Committee. The UC Litigation Trustee Selection Committee's responsibilities shall also include: (a) determining the UC Litigation Trustee's compensation and (b) approving any financing for the UC Litigation Trust.

33

The initial SC Litigation Trustee shall be Bradley E. Scher.  The SC Litigation Trust Pre-Effective Date Committee's responsibilities shall include: (a) determining the SC Litigation Trustee's compensation and (b) approving any financing for the SC Litigation Trust.

On the Effective Date, each of the UC Litigation Trustee Selection Committee and SC Litigation Trust Pre-Effective Date Committee shall automatically dissolve.  The members of the UC Litigation Trustee Selection Committee appointed by the Committee to the UC Litigation Trustee Selection Committee shall become the initial members of the UC Litigation Trust Advisory Board.  The members of the SC Litigation Trust Pre-Effective Date Committee appointed by the Supplier Credit Lenders, the Term Loan Lenders, and the Project Finance Lenders shall become the members of the SC Litigation Trust Advisory Board.

**8.5     Powers and Responsibilities of the Litigation Trustees.**

(a)     The responsibilities of the Litigation Trustees with respect to their respective Litigation Trusts shall include, but shall not be limited to: (i) ~~subject to Section 8.7 of the Plan,~~ prosecuting through judgment or settling, regardless of whether the Causes of Action are collateral of the Prepetition Lenders with respect to the SC Litigation Trustee, (A) the Transferred Causes of Action, including compelling the prosecution and/or settlement of the Insurance Coverage Actions and (B) any affirmative claims or Causes of Action arising from or related to the Litigation Trust Assets and Trust Claims of their respective Litigations Trusts; (ii) facilitating the prosecution and/or settlement of objections to, and estimation of, Trust Claims; (iii) calculating and implementing all Plan Distributions to be made from their respective Litigation Trust Assets; (iv) filing all required tax returns, and paying taxes and all other obligations on behalf of their respective Litigation Trusts from the respective Litigation Trust Assets; (v) consulting with and providing status reports to their respective Litigation Trust Advisory Boards no less frequently than monthly, which reports may occur telephonically; (vi) providing annual reports to their respective Litigation Trust Beneficiaries (and providing copies of the same to the Reorganized Debtor) (A) reflecting expenditures, receipts, and distributions of their respective Litigation Trust; and (B) detailing the prosecution and resolution of the Transferred Causes of Action and the objections to the Trust Claims of their respective Litigation Trusts; and (vii) such other responsibilities as may be vested in each Litigation Trustee pursuant to the respective Litigation Trust Agreements, the Confirmation Order, or as may be necessary and proper to carry out the provisions of the Plan relating to the Litigation Trusts.  For the avoidance of doubt, the Litigation Trustees shall with respect to their respective Litigations Trusts investigate, object, prosecute and/or settle the following claims and Causes of Action: (i) any Claims that potentially will be satisfied in whole or in part by the respective Litigation Trust Assets pursuant to the Plan and (ii) any claims or Causes of Action, and any objections to the allowance, amount, and priority of any Claims, liens, or security interests, including, without limitation, under 11 U.S.C. §§ 502(d) and 510(c), based on or related to the information gathered and the subjects investigated in the investigation conducted by the Debtors in preparing the complaint styled, *Essar Steel Minnesota LLC v. Essar Global Fund Limited*, Adv. No. 17-50001 (BLS), filed in the Bankruptcy Court, on January 11, 2017 (the "**Complaint**") (whether or not enumerated or alleged in the Complaint).  If a Litigation Trustee, in consultation with the Litigation Trust Advisory Board of the Litigation Trustee's Litigation Trust, determines that any reports required by this Section 8.5(a) of the Plan require the execution of a confidentiality agreement, such Litigation Trustee shall have the right and power to condition release of such report on the execution of such confidentiality agreement.

34

(b)      EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THIS PLAN, NO CAUSES OF ACTION AGAINST CREDITORS, OR DEFENSES TO THE ALLOWANCE, AMOUNT, AND PRIORITY OF ANY CLAIMS AGAINST THE DEBTORS OR THEIR PROPERTY AND ESTATES, ARE RELEASED OR DISCHARGED.    NEITHER THE SOLICITATION OF THIS PLAN NOR THE ABSENCE OF AN OBJECTION TO ANY FILED PROOF OF CLAIM SHALL, OR SHALL BE CONSTRUED TO, LIMIT OR IMPAIR THE RIGHT OF THE LITIGATION TRUSTEES TO PROSECUTE ANY OF THE CAUSES OF ACTION VESTING IN THEIR RESPECTIVE LITIGATION TRUST.

(c)      Each Litigation Trust shall maintain good and sufficient books and records of account relating to such Litigation Trust's Litigation Trust Assets, the management thereof, all transactions undertaken by the Litigation Trustee of such Litigation Trust, all expenses incurred by or on behalf of such Litigation Trustee, and all distributions to the Litigation Trust Beneficiaries of such Litigation Trust contemplated or effectuated under the Plan, which books and records shall be made available to the Litigation Trust Advisory Board of such Litigation Trust.

(d)      The powers and authority of the Litigation Trustees with respect to their respective Litigations Trusts, without any further approval from the Bankruptcy Court, shall include the power, in consultation with their respective Litigation Trust Advisory Board: (i) to invest the respective Litigation Trust Assets, withdraw funds from their respective Litigation Trust, make distributions, incur obligations for reasonable and necessary expenses of liquidating and converting their respective Litigation Trust Assets to Cash, and pay taxes and other obligations owed by such Litigation Trust from funds held by such Litigation Trustee in accordance with the Plan; (ii) to engage professionals and service providers to assist such Litigation Trustee with respect to its responsibilities; (iii) ~~subject to Section 8.7 of the Plan,~~ to evaluate and determine strategy with respect to the Transferred Causes of Action, the Insurance Coverage Claims, and the objections to Trust Claims, and to prosecute, compromise, transfer, release, abandon, and/or settle the Transferred Causes of Action, the Insurance Coverage Claims, and the objections to Trust Claims on behalf of their respective Litigation Trusts, (iv) to liquidate any remaining Litigation Trust Assets of their respective Litigation Trusts, and provide for the distributions therefrom in accordance with the provisions of the Plan; (v) to interpret the provisions of the Plan relating to their respective Litigation Trusts in such Litigation Trustee's reasonable discretion; (vi) to obtain insurance, as necessary; (vii) to obtain financing, as necessary; (viii) to establish reserves to fund ongoing litigation; (ix) to purchase assignments of Claims; (x) to enter into joint prosecution agreements providing for allocation of expenses and proceeds; (xi) to maintain an office; (xii) to investigate, prosecute, compromise, and/or settle any Causes of Action related to or against Cliffs Natural Resources Inc. with respect to the SC Litigation Trust or any other party against which the Debtors have a claim or Cause of Action, (xiii) to otherwise administer their respective Litigation Trust; and (xiv) to exercise such other powers and authority as may be vested in or assumed by such Litigation Trustee by any Final Order, or as may be necessary and proper to carry out the provisions of the Plan relating to their respective Litigation Trusts.  The Litigation Trustees shall be responsible for all decisions and duties with respect to their respective Litigation Trust and their respective Litigation Trust Assets.  In all circumstances, the Litigation Trustees shall act in the best interests of their respective Litigation Trust Beneficiaries and in furtherance of the purpose of their respective Litigation Trust.  The Litigation Trustees shall only be permitted, however, to make any investments that a liquidating trust, within the meaning of Treas. Reg. § 301.7701-4(d), may be

35

permitted to hold, pursuant to Treasury Regulations, or any modifications in the IRS guidelines, whether set forth in IRS rulings, other pronouncements or otherwise.

(e)     ~~Subject to Section 8.7 of the Plan, to~~To effectively investigate, prosecute, compromise, and/or settle the Transferred Causes of Action and the objections to Trust Claims on behalf of their respective Litigation Trust, the Litigation Trustees, the Debtors, and the Reorganized Debtor shall enter into the Transition Services Agreement.

(f)     From and after the Effective Date, the Litigation Trustees, their respective firms, companies, partners, officers, directors, employees, professionals, representatives, successors, and assigns (collectively, the "**Trust Indemnified Parties**" and each a "**Trust Indemnified Party**") shall be, and hereby are, indemnified by their respective Litigation Trust, to the fullest extent permitted by applicable law, from and against any and all claims, debts, dues, accounts, actions, suits, causes of action, bonds, covenants, judgments, damages, attorneys' fees, defense costs, and other assertions of liability arising out of any such Trust Indemnified Party's good faith exercise of what such Trust Indemnified Party reasonably understands to be its powers or the discharge of what such Trust Indemnified Party reasonably understands to be its duties conferred by their respective Litigation Trust Agreement, the Plan, or any order of the Bankruptcy Court entered pursuant to, or in furtherance of, the Plan, applicable law, or otherwise (except only for actions or omissions to act to the extent determined by a Final Order to be due to its own fraud, self-dealing, intentional misrepresentation, or willful misconduct), including but not limited to, acts or omissions concerning pursuing or not pursuing the Transferred Causes of Action or objections to Trust Claims of their respective Litigation Trust, on and after the Effective Date.  The foregoing indemnification shall also extend to matters directly or indirectly in connection with, arising out of, based on, or in any way related to (i) their respective Litigation Trust Agreement or the Plan; (ii) the services to be rendered pursuant to the Litigation Trust Agreement or the Plan; (iii) any document or information, whether verbal or written, referred to herein or supplied to their respective Litigation Trustee; or (iv) proceedings by or on behalf of any creditor.  The Litigation Trusts shall, on demand, advance, or pay promptly out of their respective Litigation Trust Assets, on behalf of each of its Trust Indemnified Party, reasonable attorneys' fees and other expenses and disbursements to which such Trust Indemnified Party would be entitled pursuant to the foregoing indemnification obligation; *provided, however*, that any Trust Indemnified Party receiving any such advance shall execute a written undertaking to repay such advance if a court of competent jurisdiction ultimately determines that such Trust Indemnified Party is not entitled to indemnification hereunder due to the fraud, self-dealing, intentional misrepresentation, or willful misconduct of such Trust Indemnified Party.  In any matter covered by the first two sentences of this subsection, any person entitled to indemnification shall have the right to employ such person's own separate counsel reasonably acceptable to such Litigation Trustee, at such Litigation Trust's expense, subject to the foregoing terms and conditions.

(g)     Upon (i) the final Plan Distribution, (ii) the final accounting of each Litigation Trust, and (iii) notice to its Litigation Trust Beneficiaries, such Litigation Trustee shall be released and discharged of all duties under Litigation Trust Agreement of such Litigation Trust, the Plan, or any order of the Bankruptcy Court entered pursuant to, or in furtherance of, the Plan, applicable law, or otherwise.

36

**8.6     Transition Services.**

(a)     To effectively investigate, prosecute, compromise, and/or settle the Transferred Causes of Action and the objections to the Trust Claims on behalf of the Litigation Trusts, each Litigation Trustee and its counsel and representatives must have access to all documents and information relating to their respective Litigation Trust Assets and the objections to the Trust Claims and be able to exchange such information with the Reorganized Debtor on a confidential basis and in common interest without being restricted by or waiving any applicable work product, attorney-client, or other privilege.  Given each Litigation Trust's position as successor to the Debtors for the purposes provided in Section 8.2(a) of the Plan, sharing such information between the Reorganized Debtor and the Litigation Trustees and their counsel shall not waive or limit any applicable privilege or exemption from disclosure or discovery related to such information.  Accordingly, on the Effective Date, the Reorganized Debtor and the Litigation Trustees shall enter into the Confidentiality and Common Interest Agreement providing for, inter alia, the Reorganized Debtor to provide reasonable access to, and the Litigation Trusts shall have the right to secure, at its own expense, copies of, all of the Debtors' and Reorganized Debtor's records and information relating to the Litigation Trust Assets and objections to the Trust Claims, including, without limitation, all electronic records or documents.  The Litigation Trustees shall also have full and complete access to, and the right to copy at the expense of such Litigation Trust, all reports, documents, memoranda and other work product of the Debtors and the Committee and their respective professionals and advisors related to their respective Litigation Trust Assets and objections to the Trust Claims.  For a period of five (5) years after the Effective Date, the Reorganized Debtor shall preserve all records and documents (including all electronic records or documents) related to the Transferred Causes of Action or, if any Transferred Cause of Action has been asserted in a pending action, then until such later time as such Transferred Cause of Action is fully and finally resolved or the relevant Litigation Trustee notifies the Reorganized Debtor in writing that such records are no longer required to be preserved; provided, however, that nothing herein shall or shall be deemed to expand the scope of documents available, and/or require production of work product, to the Litigation Trusts, that would not otherwise have been available to the Debtors or be available to the Reorganized Debtor.

(b)     From and after the Effective Date, the Reorganized Debtor and its officers, employees, agents, and professionals shall provide reasonable cooperation during normal business hours in responding to information requests of the Litigation Trustees regarding their respective Litigation Trust Assets and objections to the Trust Claims.  To the extent that any employee of the Reorganized Debtor is required to spend four hours or more in any day providing support to such Litigation Trustee, the Reorganized Debtor shall be entitled to be reimbursed by such Litigation Trust for such employee's time at a rate to be agreed upon in the Transition Services Agreement.

(c)     To the extent that the Reorganized Debtor incurs out of pocket costs and expenses for travel accommodations, electronic discovery and other forensic investigation and analysis or courier and mail service in performing its obligations under this Section 8.6 of the Plan or in otherwise supporting the Litigation Trusts to the extent such support is required by the relevant Litigation Trust Agreement or is otherwise requested and provided under the Confidentiality and Common Interest Agreement, such Litigation Trust shall be required to reimburse the Reorganized Debtor for such actual costs and expenses within thirty (30) days of receipt of a written invoice; provided, however, that if such costs and expenses are third party costs

37

and expenses, the Reorganized Debtor may require that such costs and expenses be incurred directly by such Litigation Trust; provided, further, however, that the Reorganized Debtor shall not incur any such out of pocket cost or expense reasonably estimated to be in excess of $50 without the prior written consent of the relevant Litigation Trust.

**8.7     The Litigation Trust Advisory Boards.**

On the Effective Date, an advisory board for the SC Litigation Trust (the "**SC Litigation Trust Advisory Board**") shall be created pursuant to the SC Litigation Trust Agreement, initially consisting of the three members of the SC Litigation Trust Pre-Effective Date Committee.  On the Effective Date, an advisory board for the UC Litigation Trust (the "**UC Litigation Trust Advisory Board**") shall be created pursuant to the UC Litigation Trust Agreement, initially consisting of the three members of the UC Litigation Trustee Selection Committee.

Each of the Litigation Trustee Advisory Board's powers and responsibilities shall include: (a) approval of its respective Litigation Trustee's retention of professionals and service providers and the terms thereof; (b) approval of its respective Litigation Trustee's annual budgets; (c) approval of all Plan Distributions to be made from its respective Litigation Trust Assets; (d) approval of all settlements of its respective Transferred Causes of Action and the Trust Claims; (e) termination of its respective Litigation Trustee, for cause, and (f) the appointment of any successor Litigation Trustee of its respective Litigation Trust.

~~Notwithstanding anything to the contrary provided for herein or in the Confirmation Order, with respect to any Transferred Causes of Action – Collateral, the members of the Litigation Trustee Advisory Board appointed by the Project Finance Lenders and the Term Loan Lenders may direct the prosecution of such Transferred Causes of Action, including directing the Litigation Trustee to settle or otherwise resolve such Transferred Causes of Action on terms as such members deem appropriate in their sole discretion.~~

**8.8     Reserved.**

**8.9     Governance of Litigation Trusts.**

Each of the Litigation Trusts shall be governed and administered by its respective Litigation Trustee, in consultation with its respective Litigation Trust Advisory Board, pursuant to its respective Litigation Trust Agreement.

Each Litigation Trustee may modify its respective Litigation Trust Agreement, in consultation with and upon approval by the Litigation Trust Advisory Board for such Litigation Trust.  If such modification is material, such Litigation Trustee shall file a "**Notice of Modification of Litigation Trust Agreement**," which shall include a description of the modification, with the Bankruptcy Court and serve such notice on any Litigation Trust Beneficiaries of such Litigation Trust as of the date of service of such notice.  Bankruptcy Court approval is not required for such modifications to be effective, unless a Litigation Trust Beneficiary of such Litigation Trust files an objection within fourteen (14) days of the filing of the Notice of Modification of Litigation Trust Agreement.  If the parties cannot resolve the objection to the Notice of Modification of Litigation Trust Agreement, such Litigation Trustee shall set the objection for hearing to be resolved by the Bankruptcy Court.

Americas ~~92755524~~92879360 (2K)

Notwithstanding any of the foregoing, a designee of the UC Litigation Trust Advisory Board shall be entitled to full observation and consultation (but not voting) rights with respect to the Tranche 2 Claims, including their prosecution and settlement, which rights shall not be curtailed or abbreviated by the Litigation Trust Agreement for the SC Litigation Trust or any amendments thereto, or otherwise.

## 8.10    Cash.

Each Litigation Trustee may invest Cash (including any earnings thereon or proceeds therefrom) as permitted by section 345 of the Bankruptcy Code; *provided*, *however*, that such investments are investments permitted to be made by a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings, or other controlling authorities.

## 8.11    Litigation Trust Distributions.

(a)    The Class A Beneficiaries shall receive all Net Available Cash distributed on account of the Tranche 1 Claims, provided that if no insurance proceeds are received by the UC Litigation Trust with respect to the Individual Claims after the UC Litigation Trustee's good faith efforts to collect under all applicable insurance policies, the UC Litigation Trust  shall be entitled to 2.0% of the Net Available Cash distributed on account of the Tranche 1 Claims, less any amount of Net Available Cash distributed to the Class UC Beneficiaries from the UC Litigation Trust.

(b)    Net Available Cash distributed on account of the Tranche 2 Claims shall be distributed to Class A Beneficiaries and the UC Litigation Trust in accordance with the allocation set forth in Section 8.12 of the Plan.

(c)    The Class UC Beneficiaries shall be entitled to the first $50 million of Net Available Cash distributed from the UC Litigation Trust.  All Net Available Cash distributed from the UC Litigation Trust in excess of $50 million shall be distributed 50.0% to the SC Litigation Trust and ~~50~~50.0% to Class UC Beneficiaries.

## 8.12    Litigation Trust Distributions Allocation.

(a)    With respect to Tranche 2 Claims, (a) proceeds of Transferred Causes of Action—Collateral shall be distributed on account of Class A Beneficial Trust Interests and (b) proceeds of Transferred Causes of Action—Unencumbered shall be distributed pro rata to all Litigation Trust Beneficiaries.  The SC Litigation Trust may transfer Class UC Beneficiaries' share of proceeds of Transferred Causes of Action—Unencumbered to the UC Litigation for distribution to Class UC Beneficiaries.

(b)    To the extent an allocation is necessary with respect to Tranche 2 Claims, such as because the SC Litigation Trust realizes proceeds of Transferred Causes of Action—Collateral and Transferred Causes of Action—Unencumbered in a commingled or otherwise unclear manner (whether via settlement or judgment or otherwise), the allocation of Litigation Trust distributions between the classes of Litigation Trust Beneficiaries shall be based on the relative value of the relevant Transferred Causes of Action.  Such allocation may be allocated in one of three manners:

39

(i)       by unanimous agreement of the SC Litigation Trust Advisory Board and the UC Litigation Trust Advisory Board upon realization of such commingled proceeds of Transferred Causes of Action prior to the SC Litigation Trust making any Relevant Plan Distribution; or

(ii)       if the SC Litigation Trust Advisory Board and the UC Litigation Trust Advisory Board fail to agree on the allocation by the time the Secured Creditors Litigation Trust is prepared to make its first Relevant Plan Distribution of Tranche 2 Claims, then by the Plan Allocator, pursuant to the procedures set forth below.

(c)       The Plan Allocator.

(i)       The "**Plan Allocator**" will be an independent third party selected by agreement by the SC Litigation Trustee and the UC Litigation Trustee upon direction of their respective Litigation Trust Advisory Boards.  If the SC Litigation Trustee and the UC Litigation Trustee are unable to agree on a Plan Allocator, then the Plan Allocator will be the Bankruptcy Court or a New York arbitrator appointed by JAMS pursuant to its procedures for appointing an arbitrator.

(ii)       The Plan Allocator will determine and resolve any disputes over whether Transferred Causes of Action that are Tranche 2 Claims comprise Transferred Causes of Action—Collateral or Transferred Causes of Action—Unencumbered.

(iii)       The Plan Allocator will determine the allocation of the distributions from Tranche 2 Claims made by the SC Litigation Trust between the Class A Beneficial Trust Interests and the Class UC Beneficial Trust Interests (or UC Litigation Trust), not otherwise provided for pursuant to this Section 8.12(a) or (b), based on the relative values of Transferred Causes of Action—Collateral and Transferred Causes of Action—Unencumbered relevant to such distribution of Tranche 2 Claims.  In arriving at the Plan Allocator's determination as to how much value has been contributed on account of Transferred Causes of Action—Collateral versus Transferred Causes of Action—Unencumbered, the Plan Allocator may consider, without limitation:

(A)       The amount contributed by each defendant or source of recovery to the distribution;

(B)       Whether the contributing defendant was subject to material claims pursuant to Transferred Causes of Action—Collateral and Transferred Causes of Action—Unencumbered;

(C)       With respect to relevant Transferred Causes of Action—Collateral and Transferred Causes of Action—Unencumbered: (1) the overall prospects and probability of success in establishing the facts necessary to prove the claims, (2) the cost or potential cost of prosecuting the claims being settled or adjudicated, (3) the potential strength of defenses to the claims, and (4) judicial rulings or other events within the subject proceedings or otherwise or that have occurred prior to the determination that bear on the preceding.

40

(iv)    The Plan Allocator will make a final determination based on one written submission from the SC Litigation Trust Advisory Board members on behalf of each of the Class A Beneficial Trust Interests and the UC Litigation Trust Advisory Board on behalf of the Class UC Beneficial Trust Interests, each of which shall not exceed twenty-five pages.  The cost of preparing each submission shall be borne by their respective Litigation Trust.  The Plan Allocator may elect to hear direct testimony on the subject, but in no case will either party proffer more than two witnesses.

## 8.13    Compensation of the Litigation Trustee.

Each Litigation Trustee shall be entitled to reasonable compensation as provided in its respective Litigation Trust Agreement and as approved by its respective Litigation Trust Advisory Board.

## 8.14    Retention of Professionals by the Litigation Trustees.

Each Litigation Trustee may retain and reasonably compensate professionals and service providers to assist such Litigation Trustee with respect to its responsibilities as approved by its Litigation Trust Advisory Board and on terms as approved by its Litigation Trust Advisory Board, without Bankruptcy Court approval.  Each Litigation Trustee may retain any professional who represented parties in interest in the Chapter 11 Cases.

## 8.15    Noncertificated Litigation Trust Interests.

The beneficial interests in the Litigation Trusts shall not be certificated, except as otherwise provided in the Litigation Trust Agreements.

## 8.16    Dissolution of the Litigation Trusts.

Each Litigation Trustee and its Litigation Trust shall be discharged and dissolved, respectively, at such time as (a) all assets of such Litigation Trust have been liquidated; and (b) all distributions required to be made by such Litigation Trustee under the Plan have been made, but in no event shall such Litigation Trust be dissolved later than five (5) years from the Effective Date. Each Litigation Trustee, in consultation with its Litigation Trust Advisory Board, may obtain one extension of up to five (5) years by filing a notice of such extension with the Bankruptcy Court, without Bankruptcy Court approval, after such Litigation Trustee has obtained a favorable letter ruling from the IRS that such an extension would not adversely affect the status of such Litigation Trust as a liquidating trust for federal income tax purposes.

## 8.17    Securities Exempt.

The issuance of any beneficial interests of the Litigation Trusts satisfies the requirements of section 1145 of the Bankruptcy Code and, therefore, such issuance is exempt from registration under the Securities Act of 1933, as amended, and any state or local law requiring registration.

41

## ARTICLE IX.

## PLAN DISTRIBUTION PROVISIONS

### 9.1     Plan Distributions.

(a)     Unless otherwise provided herein, the Disbursing Agent shall make all Plan Distributions, except that payments made to Litigation Trust Beneficiaries from the Litigation Trusts shall be made by the Litigation Trustees in accordance with their respective Litigation Trust Agreement.

(b)     In the event a Plan Distribution shall be payable on a day other than a Business Day, such Plan Distribution shall instead be paid on the immediately succeeding Business Day, but shall be deemed to have been made on the date otherwise due.

(c)     For federal income tax purposes, except to the extent a Plan Distribution is made in connection with reinstatement of an obligation pursuant to section 1124 of the Bankruptcy Code, a Plan Distribution will be allocated first to the principal amount of a Claim and then, to the extent the Plan Distribution exceeds the principal amount of the Claim, to the portion of the Claim representing accrued but unpaid interest.

(d)     Except as otherwise provided herein, Plan Distributions shall be made to the Holders of Allowed Claims as reflected in the registry of claims maintained by the Claims Agent on the Effective Date.

(e)     The Disbursing Agent and the Litigation Trustees and their respective agents shall only recognize a transfer of a Claim after the Effective Date that complies with Bankruptcy Rule 3001(e).

### 9.2     Timing of Plan Distributions.

Each Plan Distribution shall be made on the relevant Plan Distribution Date therefor and shall be deemed to have been timely made if made on such date or within twenty (20) days thereafter.

### 9.3     Address for Delivery of Plan Distributions/Unclaimed Plan Distributions.

Subject to Bankruptcy Rule 9010, any Plan Distribution or delivery to a Holder of an Allowed Claim shall be made at the address of such Holder as set forth in the latest dated of the following documents: (a) the proof of claim filed by such Holder, (b) any notice of assignment filed with the Bankruptcy Court with respect to such Claim pursuant to Bankruptcy Rule 3001(e), and (c) any notice of change of address filed with the Bankruptcy Court and served on the Debtors or, if post-Effective Date, the Reorganized Debtor and the Litigation Trustees, by such Holder; provided, however, if no proof of claim is filed then any Plan Distribution or delivery to a Holder of an Allowed Claim shall be made at the address of such Holder as set forth in the Schedules.  If any Plan Distribution is returned to the Disbursing Agent or a Litigation Trustee as undeliverable, no Plan Distributions shall be made to such Holder unless the Disbursing Agent or the applicable Litigation Trustee, respectively, is notified of such Holder's then current address within ninety

42

(90) days after such Plan Distribution was made.  After such date, if such notice was not provided, a Holder shall have forfeited its right to such Plan Distribution and any and all future Plan Distributions, which Plan Distributions shall constitute Unclaimed Property.

## 9.4      Time Bar to Cash Payments.

Checks issued by the Disbursing Agent or a Litigation Trustee, as applicable, in respect of Allowed Claims shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof.  Requests for reissuance of any voided check shall be made directly to the Disbursing Agent or a Litigation Trustee, as applicable, by the Holder of the Allowed Claim to whom such check was originally issued.  Any claim in respect of such a voided check shall be made within one hundred twenty (120) days after the date of issuance of such check.  If no request is made as provided in the preceding sentence, any claims in respect of such voided check shall be discharged and forever barred, the Holder of the Allowed Claim to whom such voided check was sent shall have forfeited its right to any further Plan Distributions, and all such Plan Distributions shall constitute Unclaimed Property.

## 9.5      Manner of Payment under the Plan.

Unless the Person receiving a Plan Distribution agrees otherwise, any Plan Distribution to be made in Cash under the Plan shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank.  Cash payments to foreign creditors may, in addition to the foregoing, be made in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

## 9.6      Fractional Plan Distributions.

Notwithstanding anything to the contrary contained herein, no Plan Distributions of fractional shares or fractions of dollars (whether in Cash or notes) will be made.  Fractional shares and fractions of dollars (whether in Cash or notes) shall be rounded to the nearest whole unit (with any amount equal to or less than one-half share or one-half dollar, as applicable, to be rounded down).

## 9.7      De Minimis Distributions.

Notwithstanding anything to the contrary contained herein, no Plan Distribution of less than twenty-five dollars ($25.00) shall be made to the Holder of any Claim unless a request therefor is made in writing to the Disbursing Agent or a Litigation Trustee, as applicable.  If no request is made as provided in the preceding sentence within ninety (90) days of the Effective Date, all such Plan Distributions shall constitute Unclaimed Property.

## 9.8      Unclaimed Property.

Unclaimed Property held by the Disbursing Agent shall be returned to the Reorganized Debtor.  Unclaimed Property held by a Litigation Trustee shall be returned to the respective Litigation Trust.

43

**9.9     Expenses Incurred on or after the Effective Date and Claims of the Disbursing Agent.**

Except as otherwise ordered by the Bankruptcy Court or as provided herein, the amount of any reasonable fees and expenses incurred (or to be incurred) by the Disbursing Agent on or after the Effective Date (including, but not limited to, taxes) shall be paid when due.  Professional fees and expenses incurred by the Disbursing Agent from and after the Effective Date in connection with the effectuation of the Plan shall be paid in the ordinary course of business.  Any dispute regarding compensation shall be resolved by agreement of the parties, or if the parties are unable to agree, as determined by the Bankruptcy Court.

**9.10     Application of the Record Date.**

(a)     Prepetition Lender Secured Claims.

To the extent a successor agent is appointed and becomes a Prepetition Agent, the Prepetition Agent shall disclose the appointment to the Reorganized Debtor, the Disbursing Agent, and the SC Litigation Trustee and comply with Bankruptcy Rule 3001(e), if applicable.  Following the Record Date, the Prepetition Agents shall disclose the registers and any changes thereto maintained by the Prepetition Agents to the Reorganized Debtor, the Disbursing Agent, and the Litigation Trustee.

(b)     Other Claims.

On the Record Date, the claims register maintained by the Claims Agent shall be closed and there shall be no further changes in the listed Holder of the Claims.  The Reorganized Debtor, the Disbursing Agent, the UC Litigation Trustee, the Claims Agent, and each of their respective agents, successors, and assigns shall have no obligation to recognize any transfer of Claims occurring after the Record Date and shall be entitled instead to recognize and deal for all purposes hereunder with only those record holders stated on the claims register maintained by the Claims Agent on the Record Date irrespective of the number of Plan Distributions to be made to such Persons or the date of such Plan Distributions.

**9.11     Plan Distributions and the ICA.**

The parties to the ICA shall be excused, relieved, and discharged from any obligations arising under or related to the ICA in exchange for the Plan Distributions made pursuant to Article IV of the Plan.

**ARTICLE X.**

**PROCEDURES FOR RESOLVING
AND TREATING CONTESTED CLAIMS**

**10.1     Claim Objection Deadline.**

As soon as practicable, but in no event later than one hundred and eighty (180) days after the Effective Date (subject to being extended by the order of the Bankruptcy Court upon motion of

44

the Disbursing Agent or a Litigation Trustee with notice of the motion pursuant to Local Rule 2002-1(b)), objections to Claims shall be filed with the Bankruptcy Court and served upon the Holders of each of the Claims to which objections are made.  Without limiting the rights afforded parties in interest pursuant to section 502(a) of the Bankruptcy Code, the Disbursing Agent and the Litigation Trustees, as applicable, shall be entitled to object to all Claims.

**10.2    Prosecution of Contested Claims.**

(a)    The Disbursing Agent may (i) prosecute any objection to a Claim filed prior to the Effective Date; and (ii) object to the allowance of all Claims, other than Trust Claims, including such Claims filed with the Bankruptcy Court on or after the Effective Date.  All objections that are filed and prosecuted as provided herein shall be litigated to Final Order or compromised and settled in accordance with Section 10.3 of the Plan.

(b)    The Litigation Trustees may object to the allowance of all Trust Claims, including Trust Claims filed with the Bankruptcy Court on or after the Effective Date.  All objections that are filed and prosecuted as provided herein shall be litigated to Final Order or compromised and settled in accordance with Section 10.3 of the Plan.

(c)    A distribution of Beneficial Trust Interests in respect of a Claim shall not prejudice or preclude a party having requisite standing and authority from objecting to such Claim at any time prior to the applicable deadline for doing so.

**10.3    Claims Settlement.**

Notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, from and after the Effective Date, only the Disbursing Agent or a Litigation Trustee, as applicable, shall have authority to settle or compromise all Claims and Causes of Action.  Any such settlement or compromise, except for a settlement or compromise by a Litigation Trustee regarding such Claims and Causes of Action asserted in an amount more than $5 million, shall be effective and binding without further review or approval of the Bankruptcy Court.  All settlements or compromises of Claims and Causes of Action by a Litigation Trustee shall require approval of its respective Litigation Trust Advisory Board.  Neither the SC Litigation Trustee nor the UC Litigation Trustee shall have any authority to create or allow claims against the other Litigation Trust or increase the amount of Litigation Trust Interests in the other Litigation Trust.

**10.4    Entitlement to Plan Distributions upon Allowance.**

(a)    Except as provided in this Section 10.4, no payment shall be made with respect to any Claim to the extent it is a Contested Claim, unless and until such Contested Claim becomes an Allowed Claim.  When a Claim that is not an Allowed Claim becomes an Allowed Claim (regardless of when), the Holder of such Allowed Claim shall thereupon become entitled to receive the Plan Distributions in respect of such Claim, the same as though such Claim had been an Allowed Claim on the Effective Date.

(b)    Notwithstanding anything else in the Plan or Confirmation Order, ~~each of the~~ unless an objection is pending with respect to a Prepetition Lender Secured Claim on the Effective Date, a Prepetition Lender Secured ~~Claims~~ Claim shall be deemed an Allowed

45

~~Claims~~Claim solely for purposes of receiving ~~their~~its Pro Rata Share of Plan Distributions provided for in Section 4.1 of the Plan ~~on the Effective Date. Notwithstanding the foregoing, any Causes of Action, including objections to the allowance, amount, and priority of any Prepetition Lender Secured Claims or any liens and security interests relating to such Prepetition Lender Secured Claims are preserved, and such Plan Distributions, other than with respect to the Prepetition Lender Notes, but including, without limitation, distributed SC Litigation Trust Interests, shall be subject to disgorgement, subordination, set-off, termination, reduction, cancellation and avoidance in an appropriate amount; provided, further that, to the extent any distributions are the subject of disgorgement, which distributions were on account of collateral of the Prepetition Lenders, such disgorgement proceeds shall be treated as collateral of, and inure to the benefit of, the Prepetition Lenders.~~ To the extent an objection to a Prepetition Lender Secured Claim is pending on the Effective Date, the holder of the Prepetition Lender Secured Claim may receive a distribution with respect to any undisputed portion of its Prepetition Lender Secured Claim, and the remainder of any distribution shall be reserved pending resolution of the objection. Notwithstanding any putative impact of the foregoing, all SC Litigation Trust Assets, including the SC Claims, are fully preserved.

**10.5    Estimation of Claims.**

The Disbursing Agent or a Litigation Trustee, as applicable, may, at any time, request that the Bankruptcy Court estimate any Contested Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Disbursing Agent has previously objected to such Claim, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any Contested Claim, that estimated amount will constitute the Allowed amount of such Claim for all purposes under the Plan.  All of the objection, estimation, settlement, and resolution procedures set forth in the Plan are cumulative and not necessarily exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

**ARTICLE  XI.**

**CONDITIONS PRECEDENT TO
CONFIRMATION OF THE PLAN AND
THE OCCURRENCE OF THE EFFECTIVE DATE**

**11.1    Conditions Precedent to Confirmation.**

The following are conditions precedent to confirmation of the Plan:

(a)    the Clerk of the Bankruptcy Court shall have entered an order or orders (i) approving the Disclosure Statement as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (ii) authorizing the solicitation of votes with respect to the Plan; (iii) determining that all votes are binding and have been properly tabulated as acceptances or rejections of the Plan; (iv) confirming and giving effect to the terms and provisions of the Plan; (v) determining that all applicable tests, standards, and burdens in connection with the Plan have been

46

duly satisfied and met by the Debtors and the Plan; (vi) approving the Plan Documents; and (vii) authorizing the Debtors to execute, enter into, and deliver the Plan Documents and to execute, implement, and to take all actions otherwise necessary or appropriate to give effect to the transactions and transfer of Assets contemplated by the Plan and the Plan Documents; and

(b)    the Confirmation Order shall include determinations that all of the settlements and compromises contained in the Plan meet the applicable standards under section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019 for approval and implementation.

## 11.2    Conditions Precedent to the Occurrence of the Effective Date.

The following are conditions precedent to the occurrence of the Effective Date:

(a)    the Confirmation Order shall have been entered by the Bankruptcy Court, be in full force and effect, and not be subject to any stay or injunction;

(b)    all necessary consents, authorizations, and approvals shall have been given for the transfers of property and the payments provided for or contemplated by the Plan, *including*, without limitation, satisfaction or waiver of all conditions to (i) the obligations of the Debtors under the Plan and the Plan Documents, and (ii) the obligations of the Exit Facility Lenders to make loans under the Exit Facility;

(c)    the Exit Facility shall have become effective and all conditions to the effectiveness thereof shall have been satisfied or waived;

(d)    the Confirmation Order shall have approved the assumption of the DNR Leases;

(e)    the Commitment Letter and Plan Sponsor Term Sheet shall be in full force and effect, without breach by a Debtor (including a breach that would occur with the passage of time, or by the giving of notice); and

(f)    all conditions precedent to the Investment in the Commitment Letter and all conditions precedent to the Effective Date of the Plan in the Plan Sponsor Term Sheet shall have been satisfied.

## 11.3    Waiver of Conditions.

The Debtors, with the consent of the Plan Sponsor, may waive any one or more of the conditions set forth in Section 11.1 of the Plan or Section 11.2(a-d) of the Plan in writing without notice or order of the Bankruptcy Court and without notice to any other parties in interest.  The Plan Sponsor may waive, in whole or in part, any one or more of the conditions set forth in Section 11.2(e-f) of the Plan in writing without notice or order of the Bankruptcy Court and without notice to any parties in interest other than the Debtors.

Americas 92755524 92879360 (2K)

**11.4    Effect of Non-Occurrence of the Effective Date.**

If the Effective Date shall not occur, the Plan shall be null and void and nothing contained in the Plan shall: (a) prejudice in any manner the rights of the Debtors, including any right to seek a further extension of the exclusivity periods under section 1121(d) of the Bankruptcy Code; or (b) constitute an admission, acknowledgement, offer, or undertaking by the Debtors.

**ARTICLE  XII.**

**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**12.1    Assumption and Rejection of Executory Contracts and Unexpired Leases.**

(a)    Except as otherwise provided herein or in a Plan Document, each executory contract and unexpired lease that is not or was not (i) the subject of a separate motion to reject or assume filed pursuant to section 365 of the Bankruptcy Code by the Debtors before the entry of the Confirmation Order; (ii) assumed by order of the Bankruptcy Court entered before the Effective Date and not subsequently rejected pursuant to an order of the Bankruptcy Court; (iii) listed in Disclosure Statement Schedule 2 and any subsequently filed "Schedule of Assumed Executory Contracts and Unexpired Leases" to be filed by the Debtors with the Bankruptcy Court before the Effective Date; (iv) a guaranty or similar agreement executed by a third party which guarantees repayment or performance of an obligation owed to the Debtors or to indemnify the Debtors; (v) with third parties regarding preservation of the confidentiality of documents produced by the Debtors; or (vi) to the extent it is executory, other than master development agreements, an agreement embodied in development orders, city and/or county ordinances, zoning approvals, permits and/or other related documents or any other official action of a governmental unit, quasi-governmental unit, and/or utility granting certain development rights, property interests and/or entitlements to the Debtors, is rejected on the Effective Date.  The rejection of any executory contract or unexpired lease rejected postconfirmation shall constitute a prepetition breach under sections 365(g) and 502(g) of the Bankruptcy Code as if such rejection was effected preconfirmation; provided, however, that the rejection of any executory contract or unexpired lease previously breached by the non-Debtor party to the contract will not create a counterclaim or defense of any kind, including a right of setoff, against the Debtors, nor shall it impair the Reorganized Debtor's right to pursue a damage claim against the non-Debtor counterparty on account of such breach.  The Debtors reserve the right to amend Disclosure Statement Schedule 2 or the "Schedules of Assumed Executory Contracts and Unexpired Leases" prior to the Effective Date.

(b)    For the avoidance of doubt, all master development agreements with any governmental unit or quasi-governmental unit are rejected upon entry of the Confirmation Order.

(c)    The Plan shall constitute a motion to reject such executory contracts and unexpired leases rejected or to be rejected pursuant to this Section 12.1, and the Debtors shall have no liability thereunder *except* as is specifically provided in the Plan.  Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such rejections pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such rejected

48

executory contract or unexpired lease is burdensome and that the rejection thereof is in the best interests of the Debtors and the Estates.

(d)    Notwithstanding the rejection of any of the Debtors' executory contracts under this Plan or by separate motion or notice, the Debtors or a Litigation Trustee, as applicable, shall retain and be entitled to enforce any warranties provided to, or for the benefit of, the Debtors under applicable federal or state law.

(e)    The Plan shall constitute a motion to assume such executory contracts and unexpired leases as set forth in Disclosure Statement Schedule 2 or any subsequent "Schedule of Assumed Executory Contracts and Unexpired Leases" filed prior to the date of the entry of the Confirmation Order or as otherwise designated as being assumed herein.   Entry of the Confirmation Order by the Clerk of the Bankruptcy Court shall constitute approval of such assumption, effective as of the Effective Date and subject to removal of executory contracts or expired leases from the schedules after entry of the Confirmation Order, pursuant to sections 365(a), (b) and (f) of the Bankruptcy Code, and a finding by the Bankruptcy Court that the requirements of section 365(f) of the Bankruptcy Code have been satisfied.   Any non-Debtor counterparty to an agreement listed on Disclosure Statement Schedule 2 or a subsequently filed "Schedule of Assumed Executory Contracts and Unexpired Leases" or otherwise designated as being assumed herein who disputes the assumption of an executory contract or unexpired lease must file with the Bankruptcy Court, and serve upon the Debtors, a written objection to the assumption, which objection shall set forth the basis for the dispute by no later than ten (10) days prior to the Confirmation Hearing.   The failure to timely object shall be deemed a waiver of any and all objections to the assumption of executory contracts and leases as set forth in Disclosure Statement Schedule 2 or a subsequently filed "Schedule of Assumed Executory Contracts and Unexpired Leases" or as otherwise designated as being assumed herein.

## 12.2    Assumption of the Mineral and Surface Leases.

The Plan shall constitute a motion to assume the Mineral and Surface Leases pursuant to section 365(a) and (b) of the Bankruptcy Code.   The Debtors shall provide proof of ability to provide adequate assurance of future performance as required under section 365(b) of the Bankruptcy Code at the Confirmation Hearing.   Entry of the Confirmation Order by the Clerk of the Bankruptcy Court shall constitute a finding by the Bankruptcy Court that the requirements of section 365(a) and (b) of the Bankruptcy Code have been satisfied and approve such assumption.

The Bankruptcy Court or the parties, by agreement, will determine the amount of any cure payments for the Mineral and Surface Leases prior to the Effective Date.   Notwithstanding the generality of the foregoing, the Debtors or the Plan Sponsor shall post (ia) a $4 million letter of credit, escrow, or similar financial guarantee such as a surety bond to secure the payment of any cure amounts due and owing under the DNR Leases and (iib) a $1 million letter of credit, escrow, or similar financial guarantee such as a surety bond to secure the payment of any cure amounts due and owing the other Mineral and Surface Leases, as to each within five (5) Business Days after the Confirmation Order becomes a Final Order; provided, further, that if the Effective Date does not occur within six (6) months after the Confirmation Date, (a) the lessors may draw and/or apply the entire $5 million as liquidated damages and (b) absent prior written consent to another treatment by a lessor regarding the Mineral and Surface Leases to which they are a party, the

49

Mineral and Surface Leases shall be deemed rejected and the Debtors will immediately surrender such leases.

**12.3    Cure.**

Except as otherwise provided herein, at the election of the Debtors, any monetary defaults under each executory contract and unexpired lease to be assumed under this Plan shall be satisfied pursuant to section 365(b)(1) of the Bankruptcy Code: (a) by payment of the default amount in Cash on the Effective Date or as soon thereafter as practicable; or (b) on such other terms as agreed to by the parties to such executory contract or unexpired lease.  In the event of a dispute regarding: (a) the amount of any cure payments; (b) the ability to provide adequate assurance of future performance under the contract or lease to be assumed; or (c) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the dispute and approving assumption, as applicable.  Disclosure Statement Schedule 2 and any subsequently filed "Schedule of Assumed Executory Contracts and Unexpired Leases" set forth the Debtors' cure obligations for each agreement for which a cure obligation must be satisfied as a condition to the assumption of such agreement.  Any non-Debtor counterparty to an agreement listed on Disclosure Statement Schedule 2 and any subsequently filed "Schedule of Assumed Executory Contracts and Unexpired Leases" who disputes the scheduled cure obligation must file with the Bankruptcy Court, and serve upon the Debtors, a written objection to the cure obligation, which objection shall set forth the basis for the dispute, the alleged correct cure obligation, and any other objection related to the assumption or assumption of the relevant agreement by no later than ten (10) days prior to the Confirmation Hearing.  If a non-Debtor counterparty fails to file and serve an objection which complies with the foregoing, the cure obligation set forth on Disclosure Statement Schedule 2 and any subsequently filed "Schedule of Assumed Executory Contracts and Unexpired Leases" shall be binding on the non-Debtor counterparty, and the non-Debtor counterparty shall be deemed to have waived any and all objections to the assumption of the relevant agreement as proposed by the Debtors.

**12.4    Claims Arising from Rejection, Expiration, or Termination.**

Claims created by the rejection of executory contracts and unexpired leases or the expiration or termination of any executory contract or unexpired lease must be filed with the Bankruptcy Court and served on the Debtors (a) in the case of an executory contract or unexpired lease rejected by the Debtors prior to the Confirmation Date, in accordance with the Bar Date Notice; (b) in the case of an executory contract or unexpired lease rejected by the Debtors prior to the Effective Date or that was terminated or expired by its terms prior to the Effective Date, no later than thirty (30) days after the Effective Date (the "**Rejection Claim Bar Date**"); or (c) in the case of an executory contract or unexpired lease that is rejected pursuant to Section 12.1 of the Plan, no later than the Rejection Claim Bar Date.  Any such Claims for which a proof of claim is not filed and served by the deadlines set forth in the Bar Date Notice or the Rejection Claim Bar Date, as applicable, will be forever barred from assertion and shall not be enforceable against the Debtors, the Estates, or the Assets.  Unless otherwise ordered by the Bankruptcy Court, all such Claims that are timely filed as provided herein shall be treated as Unsecured Claims under the Plan subject to objection by a Litigation Trustee.  The Notice of Effective Date shall include notice of the Rejection Claim Bar Date.

50

# ARTICLE XIII.

## RETENTION OF JURISDICTION

Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall retain and shall have exclusive jurisdiction over any matter (a) arising under the Bankruptcy Code, (b) arising in or related to the Chapter 11 Cases or the Plan, or (c) that relates to the following:

(i)      to hear and determine any and all motions or applications pending on the Confirmation Date or thereafter brought in accordance with Article XII hereof for the assumption, assumption and assignment, or rejection of executory contracts or unexpired leases to which a Debtor is a party or with respect to which such Debtor may be liable, and to hear and determine any and all Claims and any related disputes (*including*, without limitation, the exercise or enforcement of setoff or recoupment rights, or rights against any third party or the property of any third party resulting therefrom or from the expiration, termination, or liquidation of any executory contract or unexpired lease);

(ii)      to determine any and all adversary proceedings, applications, motions, and contested or litigated matters that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by the Debtors, the Disbursing Agent, or the Litigation Trustees after the Effective Date;

(iii)      to hear and determine any objections to the allowance of Claims, whether filed, asserted, or made before or after the Effective Date, including, without limitation, to hear and determine any objections to the classification of any Claim and to allow, disallow, or estimate any Contested Claim in whole or in part;

(iv)      to issue such orders in aid of execution of the Plan to the extent authorized or contemplated by section 1142 of the Bankruptcy Code;

(v)      to consider any modifications of the Plan, including material modifications, provided that such modification are in the best interest of Holders of Allowed Claims, proposed by a Litigation Trustee and approved by the applicable Litigation Trust Advisory Board, with notice to the Trust Beneficiaries; remedy any defect or omission; or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

(vi)      to hear and determine all Fee Applications and applications for allowances of compensation and reimbursement of any other fees and expenses authorized to be paid or reimbursed under the Plan or the Bankruptcy Code;

(vii)      to hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with the Plan, the Plan Documents, or their interpretation, implementation, enforcement, or consummation;

(viii)      to hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with the Confirmation Order (and all exhibits to the

51

Plan or ancillary to the Plan, including the Litigation Trust Agreements) or its interpretation, implementation, enforcement, or consummation;

(ix)    to the extent that Bankruptcy Court approval is required, to consider and act on the compromise and settlement of any Claim or Cause of Action by, on behalf of, or against the Estates;

(x)    to determine such other matters that may be set forth in the Plan or the Confirmation Order, or that may arise in connection with the Plan or the Confirmation Order;

(xi)    to hear and determine matters concerning state, local, and federal taxes, fines, penalties, or additions to taxes for which the Debtors may be liable in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(xii)    to hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with any setoff and/or recoupment rights of the Debtors or any Person under the Plan;

(xiii)    to hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with Causes of Action (including, but not limited to, Avoidance Actions) commenced by the Debtors, the Disbursing Agent, the Litigation Trustees, or any third parties, as applicable, before or after the Effective Date, including entering orders pursuant to Bankruptcy Rule 2004;

(xiv)    to enter an order or final decree closing the Chapter 11 Cases;

(xv)    to issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person with consummation, implementation, or enforcement of the Plan or the Confirmation Order; and

(xvi)    to hear and determine any other matters related hereto and not inconsistent with chapter 11 of the Bankruptcy Code.

## ARTICLE XIV.

## MISCELLANEOUS PROVISIONS

### 14.1    Payment of Statutory Fees.

All Statutory Fees, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid by the Debtors on or before the Effective Date. All post-Effective Date Statutory Fees shall be paid by the Reorganized Debtor pursuant to 28 U.S.C. § 1930.  The obligation to pay such post-Effective Date Statutory Fees as to any one of the Chapter 11 Cases shall only continue until such case is closed, dismissed, or converted.

52

**14.2     Satisfaction of Claims.**

(a)     Subject to the occurrence of the Effective Date, as of the Effective Date, except as provided in the Plan, all Persons shall be precluded from asserting against the Debtors, the Reorganized Debtor, the Litigation Trustees, or their respective successors or property, any other or further Claims, debts, setoffs, rights, Causes of Action, liabilities, or Equity Interests based upon any act, omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date.

(b)     No Holder of a Claim against the Debtors may receive any payment from, or seek recourse or recovery against, any Assets that are to be distributed under the Plan, other than Assets required to be distributed to such Holder under the Plan.

**14.3     Special Provisions Regarding Insured Claims.**

Plan Distributions to each Holder of an Allowed Insured Claim against the Debtors shall be made in accordance with the treatment provided under the Plan for the class in which such Allowed Insured Claim is classified; *except*, that there shall be deducted from any Plan Distribution on account of an Insured Claim, for purposes of calculating the Allowed amount of such Claim, the amount of any insurance proceeds actually received by such Holder in respect of such Allowed Insured Claim.  Nothing in this Section 14.3 shall constitute a waiver of any Claim, right, or Cause of Action the Debtors or the Estates may hold against any Person, including any insurer.  Pursuant to section 524(e) of the Bankruptcy Code, nothing in the Plan shall release or discharge any insurer from any obligations to any Person under applicable law or any policy of insurance under which the Debtors are an insured or beneficiary or for purposes of any Insurance Recovery.

**14.4     Third Party Agreements; Subordination.**

The Plan Distributions to the various classes of Claims hereunder shall not affect the right of any Person to levy, garnish, attach, or employ any other legal process with respect to such Plan Distributions by reason of any claimed subordination rights or otherwise.  All such rights and any agreements relating thereto shall remain in full force and effect, *except* as otherwise compromised and settled pursuant to the Plan.

Subject to Section 10.4 of the Plan, Plan Distributions shall be subject to and modified by any Final Order directing distributions other than as provided in the Plan, which modification must comply with Bankruptcy Code requirements.  The right of the Debtors or the Litigation Trustees to seek subordination of any Claim or Equity Interest pursuant to section 510 of the Bankruptcy Code is fully reserved, and the treatment afforded any Claim or Equity Interest that becomes a subordinated Claim or subordinated Equity Interest at any time shall be modified to reflect such subordination.  Unless the Confirmation Order provides otherwise, no Plan Distributions shall be made on account of a subordinated Claim or subordinated Equity Interest.

**14.5     Exculpation.**

**None of the Debtors, the Reorganized Debtor, the Committee or any of their respective officers, directors, governors, employees, Professional Persons, or successors and**

53

**assigns will have or incur any liability to any Person for any act or omission in connection with, or arising out of, the Chapter 11 Cases, the pursuit of confirmation of the Plan, the consummation of the Plan, or the implementation or administration of the Plan or the property to be distributed under the Plan, except for willful misconduct, gross negligence, or fraud as finally determined by the Bankruptcy Court, and, in all respects shall be entitled to rely upon the advice of counsel and all information provided by other exculpated persons herein without any duty to investigate the veracity or accuracy of such information with respect to their duties and responsibilities under the Plan. The exculpation in this Section 14.5 of the Plan shall only be applicable to any prepetition officers, directors, governors, or employees of the Debtors or the Reorganized Debtor who are employed by the Debtors as of the Confirmation Date.**

## 14.6    Discharge of Liabilities.

Except as otherwise provided in the Plan, upon the occurrence of the Effective Date, the Debtors shall be discharged from all Claims and Causes of Action to the fullest extent permitted by section 1141 of the Bankruptcy Code, and all Holders of Claims and Equity Interests shall be precluded from asserting against the Reorganized Debtor, the Debtors, their Assets, or any property dealt with under the Plan, any further Claim or other Cause of Action based upon any act or omission, transaction, event, thing, or other activity of any kind or nature that occurred or came into existence prior to the Effective Date.

## 14.7    Discharge of Debtors.

Except as otherwise provided in the Plan or the Confirmation Order, on the Effective Date, without further notice or order, all Claims against the Debtors or their Estates of any nature whatsoever shall be automatically discharged forever. Except as otherwise provided in the Plan or the Confirmation Order, on the Effective Date, the Debtors, their Estates, and all successors thereto shall be deemed fully discharged and released from any and all Claims, including, but not limited to, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), and 502(i) of the Bankruptcy Code, whether or not (a) a proof of claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code, (b) a Claim based upon such debt is allowed under section 502 of the Bankruptcy Code, or (c) the Holder of a Claim based upon such debt has accepted the Plan. The Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtors, their Estates, and all successors thereto. As provided in section 524 of the Bankruptcy Code, such discharge shall void any judgment against the Debtors, their Estates, or any successor thereto at any time obtained to the extent it relates to a discharged Claim, and operates as an injunction against collection or the prosecution of any action against the Debtors, their Estates, the Reorganized Debtor, or property of the Debtors, their Estates, or the Reorganized Debtor to the extent it relates to a discharged Claim.

## 14.8    Post-Effective Date Service List.

Unless otherwise required by the Bankruptcy Code, the Bankruptcy Rules, or in this Section 14.8 of the Plan, all post-Effective Date pleadings filed with the Bankruptcy Court shall only be required to be served on: (a) the Reorganized Debtor, (b) the Disbursing Agent, (c) the Litigation Trustees, (d) any party in interest to the applicable pleading, and (e) counsel for any of

54

the foregoing parties.  Parties may file a request to receive pleadings filed with the Bankruptcy Court post-Effective Date pursuant to Bankruptcy Rule 2002.

**14.9    Notices.**

Any notices, requests and demands required or permitted to be provided under the Plan, in order to be effective, shall be in writing (which requirement may be satisfied by facsimile transmission of a writing), and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

If to the Reorganized Debtor:

Mesabi Metallics Company LLC
Attention:  Legal Department
555 W. 27th Street
Hibbing, Minnesota 55746
Telephone:      (218) 263-3331
Facsimile:      (218) 262-1497

with copies (which shall not constitute notice) to:

White & Case LLP
Attention: Craig H. Averch
555 South Flower Street, Suite 2700
Los Angeles, California 90071
Telephone:      (213) 620-7700
Facsimile:      (213) 452-2329

—and—

Fox Rothschild LLP
Attention: Jeffrey M. Schlerf
919 North Market Street, Suite 300
Wilmington, Delaware 19801
Telephone:      (302) 654-7444
Facsimile:      (302) 656-8920

—and—

Dentons US LLP
Attention: Oscar N. Pinkas
1221 Avenue of the Americas
New York, New York 10020
Telephone:      (212) 768-6701
Facsimile:      (212) 768-6800

55

If to the Disbursing Agent:

> Mesabi Metallics Company LLC
> Attention:  Legal Department
> 555 W. 27th Street
> Hibbing, Minnesota 55746
> Telephone:      (218) 263-3331
> Facsimile:      (218) 262-1497

with a copy (which shall not constitute notice) to:

> White & Case LLP
> Attention: Craig H. Averch
> 555 South Flower Street, Suite 2700
> Los Angeles, California 90071
> Telephone:      (213) 620-7700
> Facsimile:      (213) 452-2329

> —and—

> Fox Rothschild LLP
> Attention: Jeffrey M. Schlerf
> 919 North Market Street, Suite 300
> Wilmington, Delaware 19801
> Telephone:      (302) 654-7444
> Facsimile:      (302) 656-8920

> —and—

> Dentons US LLP
> Attention: Oscar N. Pinkas
> 1221 Avenue of the Americas
> New York, New York 10020
> Telephone:      (212) 768-6701
> Facsimile:      (212) 768-6800

If to a Litigation Trustee:

> To the contacts provided in the notice identifying the respective Litigation Trustee.

## 14.10   Headings.

The headings used in the Plan are inserted for convenience only, and neither constitute a portion of the Plan nor in any manner affect the construction of the provisions of the Plan.

Americas 92755524 92879360 (2K)

**14.11   Governing Law.**

Unless a rule of law or procedure is supplied by federal law (*including* the Bankruptcy Code and the Bankruptcy Rules), the laws of the State of New York, without giving effect to the conflicts of laws principles thereof, shall govern the construction of the Plan and any agreements, documents and instruments executed in connection with the Plan, *except* as otherwise expressly provided in such instruments, agreements, or documents.

**14.12   Expedited Determination.**

The Disbursing Agent is hereby authorized to file a request for expedited determination under section 505(b) of the Bankruptcy Code for all tax returns filed with respect to the Debtors.

**14.13   Exemption from Transfer Taxes.**

Pursuant to section 1146 of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust, lien, pledge, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.  Transfers made under the Plan include, without limitation, any transfer, sale, or exchange of the Assets that is the subject of a motion or notice pursuant to section 363 of the Bankruptcy Code filed by the Debtors before the Effective Date regardless of the date the transaction is approved by the Court or the date such transfer, sale, or exchange closes.  To effectuate the terms of this Section 14.13, the Bankruptcy Court may enter any order necessary or appropriate to implement this provision of the Plan.

**14.14   Notice of Entry of Confirmation Order and Relevant Dates.**

Promptly upon entry of the Confirmation Order, the Debtors shall publish as directed by the Bankruptcy Court and serve on all known parties in interest and Holders of Claims and Equity Interests, notice of the entry of the Confirmation Order and all relevant deadlines and dates under the Plan, including the deadline for filing notice of Administrative Claims, and the deadline for filing rejection damage Claims.

**14.15   Interest and Attorneys' Fees.**

Interest accrued after the Petition Date will accrue and be paid on Claims only to the extent specifically provided for in this Plan, the Confirmation Order, or as otherwise required by the Bankruptcy Court or by applicable law.  No award or reimbursement of attorneys' fees or related expenses or disbursements shall be allowed on, or in connection with, any Claim, *except* as set forth in the Plan or as ordered by the Bankruptcy Court.

**14.16   Modification of the Plan.**

As provided in section 1127 of the Bankruptcy Code, modification of the Plan may be proposed in writing by the Debtors at any time before confirmation, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the

Americas 92755524 92879360 (2K)

Debtors shall have complied with section 1125 of the Bankruptcy Code. The Debtors may seek to modify the Plan at any time after confirmation and before substantial consummation, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan as modified, under section 1129 of the Bankruptcy Code, and the circumstances warrant such modifications. A Holder of a Claim that has accepted the Plan shall be deemed to have accepted such Plan as modified if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such Holder.

## 14.17   Revocation of Plan.

The Debtors reserve the right to revoke and withdraw the Plan and/or to adjourn the Confirmation Hearing prior to the occurrence of the Effective Date as permitted by the Commitment Letter and Term Sheet. If the Debtors revoke or withdraw the Plan, or if the Effective Date does not occur, then the Plan and all settlements and compromises set forth in the Plan and not otherwise approved by a separate Final Order shall be deemed null and void and nothing contained herein and no acts taken in preparation for consummation of the Plan shall be deemed to constitute a waiver or release of any Claims against or Equity Interests in the Debtors or to prejudice in any manner the rights of the Debtors or any other Person in any other further proceedings involving the Debtors.

## 14.18   Setoff Rights and Defenses.

In the event that the Debtors or their successors, including the Litigation Trusts, have a Claim of any nature whatsoever (including for breach or failure to comply with Sections 14.5, 14.6, 14.7, or 14.22 of the Plan) (each, an "**Estate Claim**") against the Holder of a Claim against the Debtors (each, a "**Creditor Claim**"), then the Debtors, Disbursing Agent, or the Litigation Trusts, as applicable, may, but are not required to, setoff against the Creditor Claim (and any payments or other Plan Distributions to be made in respect of such Creditor Claim hereunder) the Estate Claim against such Holder, subject to the provisions of sections 553, 556, and 560 of the Bankruptcy Code, and irrespective of which post- Effective Date Person holds any given Estate Claim. Neither the failure to setoff nor the allowance of any Claim under the Plan shall constitute a waiver or release of any Estate Claims or any other Claims that the Debtors or a Litigation Trust, as applicable, may have against any Creditor Claim or the Holder of any Creditor Claim. Either Litigation Trust may raise any defense or right of set-off available to the Debtors as of the Effective Date in opposition to a Creditor Claim that may receive a distribution from a Litigation Trust, and such defense or right of set-off shall not be diminished or impacted by the transfer of Estate Claims to the Litigation Trusts under this Plan, or by any settlement of an Estate Claim being pursued by the other Litigation Trust.

## 14.19   Compliance with Tax Requirements.

In connection with the Plan, the Debtors and the Litigation Trustees, as applicable, shall comply with all withholding and reporting requirements imposed by federal, state, local, and foreign taxing authorities and all Plan Distributions hereunder shall be subject to such withholding and reporting requirements. Notwithstanding the above, each Holder of an Allowed Claim that is to receive a Plan Distribution shall have the sole and exclusive responsibility for the satisfaction

58

and payment of any tax obligations imposed by any government unit, including income, withholding, and other tax obligations, on account of such Plan Distribution. The Litigation Trustees have the right, but not the obligation, to not make a Plan Distribution until such Holder has made arrangements satisfactory to the applicable Litigation Trustee for payment of any such tax obligations.

**14.20   Rates.**

The Plan does not provide for the change of any rate that is within the jurisdiction of any governmental regulatory commission after the occurrence of the Effective Date. Where a Claim has been denominated in foreign currency on a proof of claim, the Allowed amount of such Claim shall be calculated in legal tender of the United States based upon the conversion rate in place as of the Petition Date and in accordance with section 502(b) of the Bankruptcy Code.

**14.21   Dissolution of the Committee.**

On the Effective Date, the Committee shall dissolve and its members shall be released and discharged of and from all duties, responsibilities and obligations arising from or related to the Chapter 11 Cases. The Professional Persons retained by the Committee and the members thereof shall not be entitled to compensation or reimbursement of expenses for any services rendered after the Effective Date, except as may be necessary to file applications pursuant to Section 5.2 of the Plan and any appeal of the Confirmation Order.

**14.22   Injunctions.**

**On the Effective Date and *except* as otherwise provided herein, all Persons who have been, are, or may be Holders of Claims against or Equity Interests in the Debtors shall be permanently enjoined from taking any of the following actions against or affecting the Debtors, the Estates, the Litigation Trustees, the Reorganized Debtor, the Plan Sponsor, ERPI, the Investors, the Committee, or any of their successors and assigns, or their respective assets and property with respect to such Claims or Equity Interests (except for actions brought to enforce any rights or obligations under the Plan); or in respect of any of the Causes of Action released pursuant to the Plan:**

**(a)    commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (*including* all suits, actions and proceedings that are pending as of the Effective Date, which must be withdrawn or dismissed with prejudice);**

**(b)    enforcing, levying, attaching, collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order;**

**(c)    creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance; and**

**(d)    asserting any setoff or right of subrogation of any kind; *provided*, that any defenses, offsets or counterclaims which the Debtors, Disbursing Agent and the**

59

Litigation Trustees may have or assert in respect of the above referenced Claims are fully preserved in accordance with Section 14.18 of the Plan.

Notwithstanding anything to the contrary contained herein, no Insider or other Person that is a current or former employee of the Debtors shall be released from any obligation that may be due and owing thereby to the IRS as a result of the IRS's Claims against the Debtors; provided, however, so long as the Debtors are in substantial compliance with the payment of Allowed Tax Claims held by the IRS as set forth in Section 5.3 of the Plan, the IRS shall be enjoined from pursuing any such Insider or Person for payment of its Claims against the Debtors.

For the avoidance of doubt, the releases, exculpations and injunctions in Section 14.5 and this Section 14.22 include all Claims, Causes of Action, rights of subrogation, contribution or indemnification, interests, obligations, other rights, suits, damages, defenses, remedies and liabilities whatsoever that any Holder could assert in respect of Claims, Causes of Action, rights of subrogation, contribution or indemnification, interests, obligations, other rights, suits, damages, defenses, remedies and liabilities asserted or that could be asserted against a Holder prior to the Effective Date.

For the avoidance of doubt, the Debtors' affiliates are excluded from all releases, exculpations, and injunctions in the Plan and the Confirmation Order, including, but not limited to, as provided in Sections 14.5 and 14.22 of the Plan.

## 14.23   Indemnification.

All beneficiaries of the discharge, exculpation or injunction provisions in any of Sections 14.5, 14.6, 14.7 or 14.22 shall be indemnified and held harmless from, and shall be paid for, any cost, loss, expense, liability, Claim, demand or damage (including reasonable legal fees and the cost of enforcing this indemnity) arising out of or resulting from failure to adhere to, or violation of a discharge, exculpation, or injunction provision.  Such indemnity and hold harmless obligation may be realized by offset, setoff, or netting of Plan Distributions that would have otherwise been made to the Person failing to adhere to or violating same.

## 14.24   Binding Effect.

The Plan shall be binding upon the Debtors, all Holders of Claims against, and Equity Interests in the Debtors, and all other parties in interest and Persons and each of their respective successors and assigns.  To the extent any provision of the Disclosure Statement or any other solicitation document may be inconsistent with the terms of the Plan, the terms of the Plan shall be binding and conclusive.

## 14.25   Severability.

IN THE EVENT THE BANKRUPTCY COURT DETERMINES THAT ANY PROVISION OF THE PLAN IS UNENFORCEABLE EITHER ON ITS FACE OR AS APPLIED TO ANY CLAIM OR EQUITY INTEREST OR TRANSACTION, THE DEBTORS MAY MODIFY THE PLAN IN ACCORDANCE WITH SECTION 14.16 OF

60

THE PLAN SO THAT SUCH PROVISION SHALL NOT BE APPLICABLE TO THE HOLDER OF ANY SUCH CLAIM OR EQUITY INTEREST OR TRANSACTION.  SUCH A DETERMINATION OF UNENFORCEABILITY SHALL NOT (A) LIMIT OR AFFECT THE ENFORCEABILITY AND OPERATIVE EFFECT OF ANY OTHER PROVISION OF THE PLAN OR (B) REQUIRE THE RESOLICITATION OF ANY ACCEPTANCE OR REJECTION OF THE PLAN.

**14.26   No Admissions.**

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS, AND OTHER CAUSES OF ACTION OR THREATENED CAUSES OF ACTION, THIS PLAN SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS.  UNTIL CONFIRMED, THIS PLAN SHALL NOT BE ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING, NOR SHALL IT BE CONSTRUED TO BE CONCLUSIVE ADVICE ON THE TAX, SECURITIES, AND OTHER LEGAL EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS AGAINST, AND EQUITY INTERESTS IN, THE DEBTORS AND DEBTORS IN POSSESSION IN THE CHAPTER 11 CASES.

Americas 92755524 92879360 (2K)

Dated: ~~May 17,~~ June 8, 2017

Respectfully submitted,

**MESABI METALLICS COMPANY LLC (F/K/A ESSAR STEEL MINNESOTA LLC)**

By:    _/s/ David Pauker_____

      Name:  David Pauker_____

      Title:   Chief Restructuring Officer_____

**ESML HOLDINGS INC.**

By:    _/s/ David Pauker_____

      Name:  David Pauker_____

      Title:   Chief Restructuring Officer_____

62

Document comparison by Workshare Compare on Thursday, June 08, 2017
12:53:20 PM

| Input: | |
|---|---|
| Document 1 ID | interwovenSite://Americas_DMS/Americas/92755524/7 |
| Description | #92755524v7<Americas> - ESML- Second Amended Chapter 11 Plan [FILED COPY] |
| Document 2 ID | interwovenSite://AMERICAS_DMS/Americas/92879360/2 |
| Description | #92879360v2<Americas> - ESML- Third Amended Chapter 11 Plan |
| Rendering set | Standard |

| Legend: |
|---|
| Insertion |
| Deletion |
| Moved from |
| Moved to |
| Style change |
| Format change |
| Moved deletion |
| Inserted cell |
| Deleted cell |
| Moved cell |
| Split/Merged cell |
| Padding cell |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 186 |
| Deletions | 358 |
| Moved from | 1 |
| Moved to | 1 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 546 |