## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| | Case No. 16-11626 (BLS) |
| ESSAR STEEL MINNESOTA LLC and ESML HOLDINGS INC.,[1] | Jointly Administered |
| Debtors. | **Re: Docket Nos. 690, 691, 791, 792, 793, 794, 795, 808, 809, 810, 811, 814, 817, 918, 919, 956, 957, 958, 960, 961, 962, 990, 991, 992, 993, 999, 1000, 1002, 1003, 1005, 1009, 1010, 1012, 1022** |

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING THE THIRD AMENDED CHAPTER 11 PLAN OF REORGANIZATION FOR MESABI METALLICS COMPANY LLC (F/K/A ESSAR STEEL MINNESOTA LLC) AND ESML HOLDINGS INC. PROPOSED BY THE DEBTORS

On July 8, 2016 (the "**Petition Date**"), Mesabi Metallics Company LLC (f/k/a Essar Steel Minnesota LLC) ("**Mesabi**") and ESML Holdings Inc. ("**Holdings**," collectively with Mesabi, the "**Debtors**") each filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**"), thereby commencing the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"). The Debtors manage their property as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

On July 19, 2016, the United States Trustee for the District of Delaware (the "**United States Trustee**") appointed the Official Committee of Unsecured Creditors (the "**Committee**"). To date, no trustee or examiner has been requested or appointed in these Chapter 11 Cases.

---

[1] Essar Steel Minnesota LLC has changed its name to Mesabi Metallics Company LLC. The last four digits of its federal taxpayer identification number are 8770. The last four digits of ESML Holdings Inc.'s federal taxpayer identification number are 8071.

On February 2, 2017, the Debtors filed their *Chapter 11 Plan of Reorganization of Mesabi Metallics Company LLC (f/k/a Essar Steel Minnesota LLC) and ESML Holdings Inc.* [D.I. 690] and their *Proposed Disclosure Statement Relating to the Chapter 11 Plan of Reorganization of Mesabi Metallics Company LLC (f/k/a Essar Steel Minnesota LLC) and ESML Holdings Inc.* [D.I. 691].

On March 14, 2017, the Debtors filed their (i) *First Amended Chapter 11 Plan of Reorganization for Mesabi Metallics Company LLC (f/k/a Essar Steel Minnesota LLC) and ESML Holdings Inc.* [D.I. 791] (as amended from time to time, and currently the "**Third Amended Plan**" or the "**Plan**")[2] and (ii) a proposed first amended disclosure statement relating to such Plan [D.I. 793] (as amended from time to time, the "**Disclosure Statement**").

On March 16, 2017, the Bankruptcy Court held a hearing on the adequacy of the Disclosure Statement (the "**Disclosure Statement Hearing**").  At the Disclosure Statement Hearing, subject to certain amendments made on the record of the Disclosure Statement Hearing, the Bankruptcy Court approved the Disclosure Statement.  Following the Disclosure Statement Hearing, the Debtors revised the language of the Disclosure Statement in accordance with the discussion on the record at the Disclosure Statement Hearing.  Thereafter, on March 16, 2017, the Debtors filed a revised Disclosure Statement reflecting the foregoing modifications [D.I. 808], as well as a conformed version of their *First Amended Chapter 11 Plan of Reorganization for Mesabi Metallics Company LLC (f/k/a Essar Steel Minnesota LLC) and ESML Holdings Inc.* [D.I. 810].

---

[2] Where the context requires, each capitalized term used but not otherwise defined herein shall have the meaning ascribed to such term in the Plan, and if not ascribed a meaning in the Plan, then the meaning ascribed in the Disclosure Statement.

On March 17, 2017, the Bankruptcy Court entered the *Order (i) Approving the Disclosure Statement Relating to the Chapter 11 Plan of Reorganization of Mesabi Metallics Company LLC (f/k/a Essar Steel Minnesota LLC) and ESML Holdings Inc., (ii) Approving Form of Ballots and Proposed Solicitation and Tabulation Procedures for the Plan, (iii) Approving the Solicitation Packages and Prescribing the Form and Manner of Notice and Distribution Thereof, (iv) Establishing Procedures for Voting in Connection with the Plan Confirmation Process, and (v) Scheduling a Confirmation Hearing* [D.I. 817] (the "**Disclosure Statement Order**").

The Disclosure Statement Order, among other things, (a) established April 19, 2017 at 4:00 p.m. (Prevailing Eastern Time) as the deadline for voting on the Plan, and (b) scheduled a hearing commencing on April 26, 2017 at 9:30 a.m. (Prevailing Eastern Time) to consider confirmation of the Plan and objections thereto (the "**Confirmation Hearing**"). The Disclosure Statement Order also provides, among other things:

> **If no votes to accept or reject the Plan are received with respect to a particular class, such class may be deemed to have voted to accept the Plan**; provided, however, that such deemed acceptance shall not itself constitute at least one impaired class accepting the Plan sufficient to satisfy section 1129(a)(10) of the Bankruptcy Code, unless otherwise ordered by the Court.

Disclosure Statement Order, ¶ 24(m) (emphasis added).

On March 20, 2017, the Debtors' administrative advisor, Epiq Bankruptcy Solutions LLC ("**Epiq**"), transmitted the solicitation packages and confirmation hearing notices in accordance with the Disclosure Statement Order, as attested to in the Affidavit of Service [D.I. 833] (the "**Solicitation Affidavit**").

On April 12, 2017, the Debtors filed the *Notice of Plan Documents* [D.I. 889], including forms of the Litigation Trust Agreement, Transition Services Agreement, New By-Laws, New Charter, Prepetition Lender Notes, Prepetition Lien Trade Creditor Notes, Management Incentive

Americas 92908653 (2K)

Program, and Notice of Governors of the Reorganized Debtor (collectively, and, as amended or removed from time to time, the "**Plan Documents**").

The deadline for filing objections to the Plan as set forth in the Disclosure Statement Order was April 17, 2017 at 4:00 p.m. (Prevailing Eastern Time) (the "**Objection Deadline**"). The deadline for all Holders of Claims and Equity Interests entitled to vote on the First Amended Plan to cast their ballots was April 19, 2017, at 4:00 p.m. (Prevailing Eastern Time) (the "**Voting Deadline**"). The Debtors agreed to extend the Objection Deadline and the Voting Deadline for certain parties. Specifically, the Objection Deadline was extended to April 20, 2017 for the United States Trustee and to April 25, 2017 at 10:00 a.m. (Prevailing Eastern Time) for (a) ArcelorMittal, (b) the Committee, and (c) the Prepetition Lenders.[3] The Voting Deadline was extended to April 21, 2017 for ArcelorMittal.

Upon the adjournment of the Confirmation Hearing (as further described below), the Objection Deadline and deadline to change their votes were further extended for the Project Finance Lenders and Supplier Credit Lenders, initially to May 19, 2017 at 4:00 p.m. (Prevailing Eastern Time), and later to June 8, 2017 at 4:00 p.m. (Prevailing Eastern Time). Accordingly, the votes submitted by such parties and objections listed below are deemed timely for purposes of plan confirmation. The following objections (collectively, the "**Objections**") were filed:

- On February 8, 2017, the Minnesota Department of Natural Resources (the "**DNR**") filed an objection to the Debtors' motion to assume its mineral leases [D.I. 713]. On April 17, 2017, the DNR filed a revised objection to the Debtors' assumption of the mineral leases and opposition to the Plan's confirmation [D.I. 893] (the "**DNR Objection**").

---

[3] Certain of the Prepetition Lenders also had until April 25, 2017 by 5:00 p.m. (Prevailing Eastern Time) to change their vote on the First Amended Plan.

Americas 92908653 (2K)

- On April 12, 2017, Glacier Park Iron Ore Properties LLC ("**GPIOP**") filed an objection to the Debtors' assumption of GPIOP's mineral leases [D.I. 888].[4]

- On April 17, 2017, objections to confirmation were also filed by (a) Iowa Trenchless, L.C. ("**Iowa Trenchless**") [D.I. 894] and (b) River Consulting, LLC ("**River Consulting**") [D.I. 896].

Further, on April 17, 2017, Essar Steel Algoma Inc. ("**Algoma**") filed its *Reservation of Rights of Essar Steel Algoma Inc. Regarding the First Amended Chapter 11 Plan of Reorganization of Mesabi Metallics Company LLC (f/k/a Essar Steel Minnesota LLC) and ESML Holdings Inc.* [D.I. 895] (the "**Reservation of Rights**") regarding that certain Pellet Sale and Purchase Agreement, dated as of January 28, 2014 (the "**Algoma Offtake Agreement**") by and between Algoma and ESML.

On March 16, 2017, the Debtors filed the *Notice of Hearing to Approve the Bid Procedures in Connection with the First Amended Chapter 11 Plan of Reorganization for Mesabi Metallics Company LLC (f/k/a Essar Steel Minnesota LLC) and ESML Holdings Inc. and the First Amended Disclosure Statement Thereto* [D.I. 814] (the "**Bid Procedures Notice**"), which scheduled a hearing on April 13, 2017 to approve the proposed procedures to obtain the highest distributable value under the Plan through an auction. Between the filing of the Bid Procedures Notice and the bid procedures hearing date, the Debtors worked continuously to modify the bid procedures to satisfy the concerns and comments of the DIP Lender, the Prepetition Lenders, the Committee, and the United States Trustee. Prior to the hearing on the Bid Procedures, the Debtors reached a consensus with their key stakeholders and submitted revised bid procedures (the "**Bid Procedures**") under Certification of Counsel and this Bankruptcy Court entered an order approving the Bid Procedures on April 12, 2017 [D.I. 887].

---

[4] On April 25, 2017, GPIOP withdrew its objection [D.I. 927] after the entry of the *Order Approving Stipulation Regarding Assumption of GPIOP Mineral Leases* [D.I. 924], which resolved GPIOP's objection.

Americas 92968653 (2K)

On April 24, 2017, the Debtors filed the *Declaration of Jane Sullivan on Behalf of Epiq Bankruptcy Solutions, LLC Regarding Voting and Tabulation of Ballots Cast on the First Amended Chapter 11 Plan of Reorganization of Mesabi Metallics Company LLC (f/k/a Essar Steel Minnesota LLC) and ESML Holdings Inc.* [D.I. 918].

On April 24, 2017, the Confirmation Hearing was continued to May 22, 2017.

On April 26, 2017, after the auction, the Debtors, in consultation with the Committee and the Prepetition Lenders, selected Chippewa Capital Partners, LLC ("**Chippewa**") as the Successful Bidder (as defined in the Bid Procedures) pursuant to the Bid Procedures.

On May 17, 2017, the Debtors filed their *Second Amended Chapter 11 Plan of Reorganization for Mesabi Metallics Company LLC (f/k/a Essar Steel Minnesota LLC) and ESML Holdings Inc.* [D.I. 956].

On May 18, 2017, the Bankruptcy Court entered the *Order Approving Stipulation of Authorizing Votes of Acceptance of the Second Amended Plan of Reorganization of Mesabi Metallics Company LLC (f/k/a Essar Steel Minnesota LLC) and ESML Holdings Inc. by the Member of the Official Committee of Unsecured Creditors pursuant to Federal Rule of Bankruptcy Procedure 3018(a)* [D.I. 960], which changed the votes of Amur Equipment Finance, Inc. (f/k/a Axis Capital, Inc.) ("**Axis Capital**"), ArcelorMittal, and FLSmidth USA Inc. (the individual members of the Committee) from reject to accept.

On May 19, 2017, the Confirmation Hearing was continued to June 13, 2017 at 10:30 a.m. (Prevailing Eastern Time).

On June 8, 2017, the Debtors filed the *Third Amended Chapter 11 Plan of Reorganization for Mesabi Metallics Company LLC (f/k/a Essar Steel Minnesota LLC) and ESML Holdings Inc.* [D.I. 990] (as defined above, the Third Amended Plan) and the *Third*

*Amended Chapter 11 Plan of Reorganization of Mesabi Metallics Company LLC (f/k/a Essar Steel Minnesota LLC) and ESML Holdings Inc. [Blackline]* [D.I. 991].

On June 8, 2017, the Debtors filed the *Stipulation Authorizing Withdrawal of Votes on the First Amended Plan of Reorganization of Mesabi Metallics Company LLC (f/k/a Essar Steel Minnesota LLC) and ESML Holdings Inc. by the Project Finance Lenders pursuant to Federal Rules of Bankruptcy Procedure 3018(a)* [D.I. 992], and the *Stipulation Authorizing Withdrawal of Votes on the First Amended Plan of Reorganization of Mesabi Metallics Company LLC (f/k/a Essar Steel Minnesota LLC) and ESML Holdings Inc. by the Supplier Credit Lenders pursuant to Federal Rules of Bankruptcy Procedure 3018(a)* [D.I. 993].

On June 9, 2017, the Debtors filed (a) the *Revised Certification of Jane Sullivan on behalf of Epiq Bankruptcy Solutions, LLC, Regarding Voting and Tabulation of Ballots Cast on the First Amended Chapter 11 Plan of Reorganization of Mesabi Metallics Company LLC (f/k/a Essar Steel Minnesota LLC) and ESML Holdings Inc.* [D.I. 1000] (as revised, the "**Voting Certification**"); (b) the *Memorandum of Law in Support of Confirmation of Third Amended Chapter 11 Plan of Reorganization for Mesabi Metallics Company LLC (f/k/a Essar Steel Minnesota LLC) and ESML Holdings Inc.* [D.I. 1003] (the "**Confirmation Memorandum**"); and (c) the *Declaration of David Pauker, Chief Restructuring Officer, in Support of Confirmation of the Debtors' Third Amended Chapter 11 Plan of Reorganization* [D.I. 1002] (the "**Pauker Declaration**").

Further, the Debtors provided the following declarations in support of confirmation of the Plan: (a) the declaration of Adam M. Rosen of B. Riley & Co., LLC, Financial Advisor to ERP Iron Ore, Inc. and Chippewa Capital Partners, LLC (the "**Rosen Declaration**"); (b) the declaration of Robb J. Bigelow, Managing Director of ERP Iron Ore, Inc. (the "**Bigelow**

**Declaration**"); and (c) the declaration of Thomas M. Clarke of Chippewa Capital Partners, LLC (the "**Clarke Declaration**") (collectively, and with the Pauker Declaration, the "**Declarations in Support of the Plan**").

On June 12, 2017 and June 13, 2017, the Debtors filed additional and amended Plan Documents [D.I. 1005, 1022].

Based on the treatment contained in the Plan, Class 2, Class 3,[5] Class 4,[6] Class 5, Class 6, and Class 7 have all accepted the Plan; Class 1 is deemed to have accepted the Plan; and Class 8 is deemed to have rejected the Plan.

The Confirmation Hearing concluded on June 13, 2017.

NOW, THEREFORE, the Bankruptcy Court having considered the Plan, the Solicitation Affidavit, the Voting Certification, the Declarations in Support of the Plan, the Confirmation Memorandum, the Objections, the Reservation of Rights, all evidence proffered or adduced and the arguments of counsel at the Confirmation Hearing, and the entire record of the Chapter 11 Cases, and after due deliberation thereon and good cause appearing therefor, this Bankruptcy Court hereby makes and issues the following Findings of Fact and Conclusions of Law and hereby orders:[7]

---

[5] All voting subclasses, other than four, voted to accept the First Amended Plan. A.W. Kuettel & Sons, Inc., Iowa Trenchless, L.C., Lakehead Constructor, Inc., and Machinewell, Inc. initially voted to reject the Plan but changed their votes to accept the Plan prior to the Confirmation Hearing.
[6] All voting subclasses, other than one, voted to accept the First Amended Plan. Claudius Peters (Americas) Inc. initially voted to reject the Plan but changed its vote to accept the Plan prior to the Confirmation Hearing.
[7] This Confirmation Order constitutes this Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure (the "**Federal Rules**"), made applicable by Rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"). Any and all findings of fact shall constitute findings of fact even if they are stated as conclusions of law, and any and all conclusions of law shall constitute conclusions of law even if they are stated as findings of fact.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A.      Jurisdiction and Venue.  This Bankruptcy Court has subject matter jurisdiction to confirm the Plan pursuant to 28 U.S.C. §§ 157 and 1334.  Venue before this Bankruptcy Court was proper as of the Petition Date and continues to be proper pursuant to 28 U.S.C. §§ 1408 and 1409.  Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (L) and (O).  The Debtors were and are qualified to be debtors under section 109 of the Bankruptcy Code.

B.      Burden of Proof.  The Debtors, as proponents of the Plan, have the burden of proving the elements of section 1129(a) of the Bankruptcy Code by preponderance of the evidence, and, as set forth below, the Debtors have met that burden.

C.      Judicial Notice.  This Bankruptcy Court takes judicial notice of the docket in the Chapter 11 Cases maintained by the clerk of the Bankruptcy Court and/or its duly appointed agent, including, without limitation, all pleadings, notices and other documents filed, all orders entered and all evidence and arguments made, proffered or adduced at the hearings held before the Bankruptcy Court during the Chapter 11 Cases, including, without limitation, the Disclosure Statement Hearing and the Confirmation Hearing.

D.      The Record.  The following record (the "**Record**") was established to support confirmation of the Plan:

(i)      all documents identified by the Debtors at the Confirmation Hearing, including, without limitation, the Plan, the Disclosure Statement and all exhibits, schedules and attachments thereto and filed in connection therewith, and the Plan Documents, all of which were admitted into evidence without objection;

(ii)      the Declarations in Support of the Plan;

9

(iii)   the Solicitation Affidavit;

(iv)   the Voting Certification;

(v)   the entire record of the Chapter 11 Cases and the docket maintained by the clerk of the Bankruptcy Court and/or its duly appointed agent, including, without limitation, all pleadings and other documents filed, all orders entered and evidence and argument made, proffered or adduced at the hearings held before the Bankruptcy Court during the pendency of the Chapter 11 Cases, as to all of which the Bankruptcy Court took judicial notice at the Confirmation Hearing; and

(vi)   the statements and argument of counsel on the record at the Confirmation Hearing, and all papers and pleadings filed with the Bankruptcy Court in support of, in opposition to or otherwise in connection with, confirmation of the Plan.

The evidence that was admitted into the Record in support of confirmation of the Plan and all related matters demonstrates, by a clear preponderance of the evidence, that the Plan should be confirmed.

E.   Modifications to the Plan.   The Plan contains certain modifications (the "**Modifications**"), which were made after the expiration of the Voting Deadline.   The Modifications do not materially or adversely affect or change the treatment of any Holder of a Claim or Equity Interest that previously voted to "accept" the Plan.   All affected parties in interest had due and adequate notice and opportunity to participate in the plan confirmation process and the Confirmation Hearing. Pursuant to section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019, the Modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or resolicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that the Holders of Claims be afforded an opportunity to change previously

Americas 92908643 12K1

cast acceptances or rejections of the Plan. The Plan as modified by the Modifications shall constitute the Plan submitted for confirmation by the Bankruptcy Court.

F.    <u>Resolution of the Objections</u>. The consensual resolutions of all the Objections[8] and the Reservation of Rights satisfy all applicable requirements of the Bankruptcy Code and the Bankruptcy Rules and are in the best interest of the Debtors and their Estates and supported by the Record, and therefore are approved. The Objections and the Reservation of Rights were consensually resolved as provided in (a) the Plan, (b) the Confirmation Brief, and/or (c) in paragraphs 44, 60-63 of this Confirmation Order.

G.    <u>Solicitation and Notice</u>. To obtain the requisite acceptance of the Plan, on March 20, 2017, the Debtors commenced the solicitation of acceptances and rejections of the Plan by distributing the Disclosure Statement and related materials to Holders of Claims against the Debtors classified in Class 2 – Prepetition Lender Secured Claims, Class 3 –Mechanic's Lien Claims, Class 4 – Other Secured Claims, Class 5 – Project Unsecured Claims, Class 6 – General Unsecured Claims, and Class 7 – Convenience Claims.

H.    As evidenced by the Solicitation Affidavit, and in compliance with the requirements of the Disclosure Statement Order, the Debtors transmitted to Holders of scheduled claims as of the date of entry of the Disclosure Statement Order (the "**Record Date**") and to Holders of timely filed Claims as of the Record Date, except as provided below: (a) a CD-ROM containing the Disclosure Statement (together with the Plan and certain other exhibits attached thereto); (b) a copy of the Disclosure Statement Order; (c) with respect to all Holders of Unsecured Claims, a copy of a recommendation letter from the Committee; (d) a notice of hearing to consider confirmation of the Plan and deadline for filing objections thereto (the

---

[8] As described further below, the Debtors and the DNR have reached an agreement in principle, which resolves the DNR Objection.

"**Confirmation Hearing Notice**"); (e) an applicable ballot, customized for each recipient; and (f) a postage prepaid return envelope (collectively, the "**Solicitation Packages**").

      (i)      As evidenced by the Solicitation Affidavit, and in compliance with the requirements of the Disclosure Statement Order, the Debtors transmitted to all known Holders of Claims against and Equity Interests in the Debtors that were either classified as unimpaired or deemed to have rejected the Plan either a Notice of Non-Voting Status – Unimpaired Classes or Notice of Non-Voting Status – Deemed to Reject, as applicable.  Specifically, a Notice of Non-Voting Status – Unimpaired Classes was sent to each Holder of a claim in Class 1 – Priority Claims, and a Notice of Non-Voting Status – Deemed to Reject was sent to each Holder of a claim in Class 8 – Equity Interests.

      (ii)      As evidenced by the Solicitation Affidavit, the Debtors transmitted to parties in interest who were not entitled to vote on the Plan a Confirmation Hearing Notice.

      (iii)      In compliance with the requirements of the Disclosure Statement Order, the Debtors caused the Confirmation Hearing Notice to be published electronically at www.deb.uscourts.gov and http://dm.epiq11.com/ESM immediately following the Disclosure Statement Hearing.  On March 21, 2017, the Debtors also caused the Confirmation Hearing Notice to be published in the *Hibbing Daily Tribune*.

      (iv)      On May 24, 2017, the Debtors caused the *Second Amended Chapter 11 Plan of Reorganization of Mesabi Metallics Company LLC (f/k/a Essar Steel Minnesota LLC) and ESML Holdings Inc.*, dated May 17, 2017 [D.I. 956] and *Second Amended Chapter 11 Plan of Reorganization of Mesabi Metallics Company LLC (f/k/a Essar Steel Minnesota LLC) and ESML Holdings Inc., [Blackline]*, dated May 17, 2017 [D.I. 957] to be served [D.I. 966].

      (v)      On June 8, 2017, the Debtors caused the *Third Amended Chapter 11 Plan*

Americas 92008653 (2K)

*of Reorganization of Mesabi Metallics Company LLC (f/k/a Essar Steel Minnesota LLC) and ESML Holdings Inc.*, dated June 8, 2017 [D.I. 990] and *Third Amended Chapter 11 Plan of Reorganization of Mesabi Metallics Company LLC (f/k/a Essar Steel Minnesota LLC) and ESML Holdings Inc., [Blackline]*, dated June 8, 2017 [D.I. 991] to be served [D.I. 999].

      (vi)      The Debtors caused the additional and amended Plan Documents filed on June 12, 2017 [D.I. 1005] to be served that day [D.I. 1018].

      (vii)      The Debtors have complied with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, and all other applicable laws and rules in connection with the solicitation of votes on the Plan and the provision of notice of the Confirmation Hearing, the April 17, 2017 deadline for filing and serving objections to confirmation, the April 19, 2017 deadline for voting on the Plan, and all other relevant deadlines related to the Plan. As such, the notice provided was due and proper with respect to all matters relating to the solicitation of votes on, and the confirmation of, the Plan and satisfied the requirements of due process with respect to all creditors, equity holders and parties in interest who were provided actual or constructive notice.

      I.      <u>Voting</u>. As evidenced by the Voting Certification, each class of Claims and Equity Interests either (a) voted to accept the Plan under section 1126 of the Bankruptcy Code and for purposes of section 1129(a)(8)(A) of the Bankruptcy Code; (b) is deemed to have voted to accept the Plan pursuant to paragraph 24(m) of the Disclosure Statement Order; (c) is not impaired as provided in section 1124 and 1129(a)(8)(B) of the Bankruptcy Code; or (d) is deemed, under section 1126(g) of the Bankruptcy Code, to have voted to reject the Plan. Class 2, Class 3, Class 4, Class 5, Class 6, and Class 7 have all accepted the Plan and Class 1 is deemed to have accepted the Plan. Although section 1129(a)(8) of the Bankruptcy Code has not

Americas 92968653 (2K)

been satisfied with respect to Class 8, the Plan is confirmable because the Plan satisfies section 1129(b) with respect to this class of Claims.

J.    <u>Compromises and Settlements Under and in Connection With the Plan</u>. All of the settlements and compromises pursuant to and in connection with the Plan, including the resolution of the DNR Objection, described below, comply with the requirements of section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019.

K.    <u>Releases, Exculpations, and Injunctions</u>.    The releases, exculpations, and injunctions provided in the Plan and this Confirmation Order (a) are within the jurisdiction of the Bankruptcy Court under 28 U.S.C. § 1334; (b) are integral elements of the transactions incorporated into the Plan and inextricably bound with the other provisions of the Plan; (c) confer material benefit on, and are in the best interests of, the Debtors, their Estates, and their creditors; (d) are fair, equitable, and reasonable; (e) are given and made after due notice and opportunity for hearing; and (f) are consistent with sections 105, 524, 1123, 1129, 1141, and other applicable provisions of the Bankruptcy Code and other applicable law.

L.    <u>Securities under the Plan</u>. Pursuant to the Plan, and without further corporate or other action, the following debt and equity will be issued by the Reorganized Debtor: (a) the New Membership Interests and (b) the Prepetition Lender Notes and the Prepetition Lien Trade Creditor Notes, if any.

M.    <u>Exit Financing</u>.    The Debtors have demonstrated that they have a reasonable probability of obtaining exit financing in the approximate amount of $675 million. The Exit Facility will likely be secured by a first priority lien in and upon substantially all of the assets of the Reorganized Debtor (and/or a lien on assets of ERPI, on the terms agreed to by the Plan Sponsor), subject only to certain customary permitted liens. The Exit Facility will be used, *inter*

*alia*, to fund the Plan and complete the Project. The Debtors are authorized to execute, deliver, and perform their obligations under the Exit Facility Documents in accordance with the Plan and to satisfy the requirements of Sections 7.1(c) and 11.2 of the Plan.

N.    Notes. Each of the Plan Notes Documents to which the Reorganized Debtor is a party constitutes a valid and binding obligation, enforceable against the Reorganized Debtor in accordance with such Plan Notes Document's terms. The execution, delivery, and performance by the Reorganized Debtor of the Plan Notes Documents are not in contravention of any applicable law or agreements. All liens and security interests created pursuant to the Plan Notes Documents shall be valid, binding, enforceable, and effective.

O.    Executory Contracts and Unexpired Leases.  The Debtors have satisfied the requirements of Section 365 of the Bankruptcy Code necessary to assume the Mineral and Surface Leases, as well as the other executory contracts specified in Schedule 2 to the Disclosure Statement (which schedule is attached to this Confirmation Order as **Exhibit B**), which assumption shall be effective on, and conditioned on the occurrence of, the Effective Date. The Debtors have provided adequate assurance of future performance for each of the assumed executory contracts and unexpired leases that are being assumed by the Reorganized Debtor pursuant to the Plan. The Debtors have also cured or provided adequate assurance that the Reorganized Debtor will cure any defaults (if any) under or relating to each of the executory contracts and unexpired leases that are being assumed by the Reorganized Debtor pursuant to the Plan.

(i)    The Debtors have exercised reasonable business judgment in determining to reject any executory contracts and unexpired leases (which exclude the Mineral and Surface Leases, the assumed executory contracts and unexpired leases on Exhibit B hereto, and

Americas 92908653 (2K)

executory contracts and unexpired leases assumed pursuant to Article XII of the Plan), under the terms of the Plan and this Confirmation Order.  Each such rejection of an executory contract or unexpired lease pursuant to Article XII of the Plan will be legal, valid, and binding upon the Debtors and all non-Debtors parties to such executory contract or unexpired lease, as applicable, on the Effective Date, all to the same extent as if such rejection had been effectuated pursuant to an appropriate order of the Bankruptcy Court entered before the Confirmation Date under section 365 of the Bankruptcy Code.  Each of the executory contracts and unexpired leases to be rejected is deemed to be an executory contract or an unexpired lease, as applicable.

(ii)    The Plan constitutes a motion to reject all executory contracts and unexpired leases of the Debtors not previously or otherwise assumed, except (1) any executory contracts and unexpired leases excepted from rejection herein; (2) any executory contracts and unexpired leases that are the subject of separate motions to reject or assume filed pursuant to section 365 of the Bankruptcy Code by the Debtors before the entry of this Confirmation Order; (3) all executory contracts and unexpired leases assumed by order of the Bankruptcy Court entered before the Effective Date and not subsequently rejected pursuant to an order of the Bankruptcy Court; (4) all executory contracts and unexpired leases listed on Exhibit B hereto; (5) a guaranty or similar agreement executed by a third party which solely guarantees repayment or performance of an obligation owed to the Debtors or solely indemnifies the Debtors; (6) all executory contracts and unexpired leases with third parties regarding preservation of the confidentiality of documents produced by the Debtors; and (7) to the extent it is executory, other than master development agreements, an agreement embodied in development orders, city and/or county ordinances, zoning approvals, permits, and/or other related documents or any other official action of a governmental unit, quasi-governmental unit, and/or utility granting certain

development rights, property interests and/or entitlements to the Debtors, is rejected on the Effective Date. The rejection of any executory contract or unexpired lease rejected postconfirmation shall constitute a prepetition breach under sections 365(g) and 502(g) of the Bankruptcy Code as if such rejection was effected preconfirmation. Each executory contract or unexpired lease to be rejected pursuant to the Plan is burdensome and the rejection thereof is in the best interests of the Estates.

P.    Standing. The Debtors have satisfied section 1121 of the Bankruptcy Code in that the Debtors have standing to file a plan. Furthermore, the Plan reflects the date it was filed with the Bankruptcy Court and identifies the entities submitting it as plan proponents, thereby satisfying Bankruptcy Rule 3016(a).

Q.    The Plan Complies with the Bankruptcy Code (11 U.S.C. § 1129(a)(1)). As set forth below and as demonstrated by the Record, the Plan complies with all relevant sections of the Bankruptcy Code, Bankruptcy Rules, and applicable non-bankruptcy law relating to the confirmation of the Plan. In particular, the Plan complies with all of the requirements of section 1129 of the Bankruptcy Code.

R.    Proper Classification (11 U.S.C. §§ 1122 and 1123(a)(1)). The Plan complies fully with the requirements of sections 1122 and 1123 of the Bankruptcy Code. The Plan's classifications conform to the statute and separately classify claims based on valid business and legal reasons. The Debtors' classification has a rational basis because it is based on the respective legal rights of each Holder of a Claim against or Equity Interest in the Debtors' Estates and was not proposed to create a consenting impaired class and, thereby, manipulate class voting. Article II of the Plan designates classes of Claims and Equity Interests that require classification.

17

S.     Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2)). The Plan complies fully with the requirements of section 1123(a)(2) of the Bankruptcy Code. Article III of the Plan specifies which classes of Claims and Equity Interests are not impaired under the Plan.

T.     Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)). The Plan complies fully with the requirements of section 1123(a)(3) of the Bankruptcy Code. Article IV of the Plan specifies the treatment of classes and interests under the Plan, including those which are impaired.

U.     No Discrimination (11 U.S.C. § 1123(a)(4)). The Plan complies fully with the requirements of section 1123(a)(4) of the Bankruptcy Code. As reflected in the treatment set forth in Article IV of the Plan, the treatment of each of the Claims and Equity Interests in each particular class is the same as the treatment of each of the other Claims or Equity Interests in such class; *provided, however,* to the extent any claimant received any better treatment than that described by the Plan for its class on the basis of the standards for compromise and settlement, the Bankruptcy Court hereby finds that such better treatment does not need to be made available to other members of the class.

V.     Implementation of Plan (11 U.S.C. § 1123(a)(5)). The Plan complies fully with the requirements of section 1123(a)(5) of the Bankruptcy Code. The Plan provides adequate means for implementation of the Plan through, among other things, issuance of certain equity securities and notes, entry into the Exit Facility, assumption of the Mineral and Surface Leases, integration of the Reorganized Debtor and ERPI, and the implementation of the Litigation Trusts.

W.     Prohibition of Issuance of Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6)). The Plan complies fully with the requirements of section 1123(a)(6) of the Bankruptcy Code.

18

The Debtors are not issuing any nonvoting securities, and, therefore, satisfy section 1123(a)(6).

X.    Designation of Directors and Officers (11 U.S.C. § 1123(a)(7)). Section 7.11 of the Plan provides for the selection of the initial governors of the Reorganized Debtor. Under Section 7.12 of the Plan, unless Chippewa determines otherwise, ESML's current officers shall continue in such positions after the Effective Date for the Reorganized Debtor until replaced or removed in accordance with the New Governing Documents or company policy, or until any of such individual's voluntary resignation. Section 8.4 of the Plan (a) identifies Bradley E. Scher as the initial SC Litigation Trustee, (b) provides for the selection of (i) the UC Litigation Trustee by the UC Litigation Trustee Selection Committee and (ii) the members of the UC Litigation Trust Advisory Board and SC Litigation Trust Advisory Board. Therefore, section 1123(a)(7) of the Bankruptcy Code is satisfied.

Y.    Additional Plan Provisions (11 U.S.C. § 1123(b)). The Plan's provisions are appropriate and consistent with the provisions of the Bankruptcy Code.

Z.    Debtors' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2)). The Plan complies fully with the requirements of section 1129(a)(2) of the Bankruptcy Code as do the provisions of this Confirmation Order. Pursuant to section 1129(a)(2) of the Bankruptcy Code, the Debtors have complied with the applicable provisions of title 11, including, specifically, sections 1125 and 1126 of the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order governing notice, disclosure, and solicitation in connection with the Plan, the Disclosure Statement, the Plan Documents, and all other matters considered by the Bankruptcy Court in connection with the Chapter 11 Cases.

AA.    Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)). The Plan complies fully with the requirements of section 1129(a)(3) of the Bankruptcy Code. Having examined the

Americas 92908653 (2K)

totality of the circumstances surrounding the Plan, the Bankruptcy Court has determined that the Plan was proposed in good faith and not by any means forbidden by law. The Plan achieves the rehabilitative and reorganizational goals of the Bankruptcy Code by restructuring the Debtors' obligations and providing the means through which the Project can be completed and become operational. It is clear that the Plan promotes the objectives and purposes of the Bankruptcy Code.

BB.    Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)). The Plan complies fully with the requirements of section 1129(a)(4) of the Bankruptcy Code. Section 5.2 of the Plan clearly provides that each Professional Person who holds or asserts a Fee Claim will be required to file with the Bankruptcy Court, and serve upon all parties required to receive notice, a Fee Application within forty-five (45) days after the Effective Date. Failure to file and serve such notice timely and properly results in the Fee Claim not being entitled to any distribution under the Plan. A Fee Claim in respect of which a Fee Application has been properly filed and served pursuant to Section 5.2(c) of the Plan will become an Allowed Administrative Claim only to the extent allowed by an order of this Bankruptcy Court. Pursuant to Section 14.15 of the Plan, no award or reimbursement of attorneys' fees or related expenses or disbursements will be allowed on, or in connection with, any Claims, except as expressly set forth in the Plan or as ordered by the Bankruptcy Court. This Bankruptcy Court previously approved interim application procedures under section 331 of the Bankruptcy Code, pursuant to which the Bankruptcy Court authorized and approved the payment of certain fees and expenses of Professional Persons retained in the Chapter 11 Cases on an interim basis. All such fees and expenses, as well as all other accrued fees and expenses of Professional Persons through the Effective Date, remain subject to final review by the Bankruptcy Court and objection for

20

reasonableness or any other reason under applicable provisions of the Bankruptcy Code, and all rights and defenses with respect thereto are reserved. The foregoing procedures for this Bankruptcy Court's review and ultimate determination of fees and expenses paid satisfy the objectives of section 1129(a)(4) of the Bankruptcy Code.

CC.    Directors, Officers and Insiders (11 U.S.C. § 1129(a)(5)). The Plan complies fully with the requirements of section 1129(a)(5) of the Bankruptcy Code. The identity and affiliations of the persons that will serve as initial governors or officers of the Reorganized Debtor as of the Effective Date of the Plan have been fully disclosed in the Plan Documents. The appointment to, or continuance in, such offices of such persons is consistent with the interests of Holders of Claims against and Equity Interests in the Debtors and with public policy. The replacement or removal of the initial governors and officers of the Reorganized Debtor shall be subject to the terms of the New Governing Documents. The identity of any insider that will be employed or retained by the Reorganized Debtor and the nature of such insider's compensation have also been fully disclosed, to the extent applicable and presently determinable.

DD.    No Rate Changes (11 U.S.C. § 1129(a)(6)). The Plan complies fully with the requirements of section 1129(a)(6) of the Bankruptcy Code. Pursuant to Section 14.20, the Plan does not provide for the change of any rate that is within the jurisdiction of any governmental regulatory commission after the occurrence of the Effective Date. Therefore, the provisions of section 1129(a)(6) of the Bankruptcy Code are inapplicable and thus satisfied.

EE.    Best Interests of Creditors (11 U.S.C. § 1129(a)(7)). The Plan complies fully with the requirements of section 1129(a)(7) of the Bankruptcy Code. As set forth fully in the Liquidation Analysis and by the evidence adduced in the Confirmation Hearing, the "best interests" test is satisfied as to all impaired classes of Claims and Equity Interests. Furthermore,

Americas 92008653 (2K)

a liquidation under chapter 7 as set forth in the Liquidation Analysis would adversely affect the ultimate proceeds available for distribution to all Holders of Allowed Claims in the Chapter 11 Cases.  Moreover, the increased costs associated with a liquidation under chapter 7 would substantially reduce the proceeds available for distribution.  These costs would include, among other things, increased administrative fees and costs payable to a trustee in bankruptcy and professional advisors to such trustee, each of which would be unfamiliar with the Chapter 11 Cases.  In the context of the increased costs and delay associated with the administration of a chapter 7 case, confirmation of the Plan provides each rejecting creditor and interest holder with a recovery that is not less than such holder would receive in a chapter 7 liquidation of the Debtors.  Based upon the foregoing, the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.  Therefore, the "best interests" test is satisfied with respect to each of these classes.

FF.    Acceptance by Impaired Classes (11 U.S.C. § 1129(a)(8)).  Class 8 –Equity Interests is deemed to have rejected the Plan pursuant to section 1126(g).  Accordingly, section 1129(a)(8) has not and cannot be satisfied.  The Plan, however, is still confirmable because it satisfies the nonconsensual confirmation provisions of section 1129(b), as set forth below.

GG.    Treatment of Administrative, Priority and Tax Claims (11 U.S.C. § 1129(a)(9)).  The treatment of Allowed Administrative Claims pursuant to Section 5.2 of the Plan satisfies the requirements of 1129(a)(9)(A), (B) and (C) of the Bankruptcy Code.  The treatment of Allowed Tax Claims pursuant to Section 5.3 of the Plan satisfies the requirements of 1129(a)(9)(D) of the Bankruptcy Code.

HH.    Acceptance by Impaired Classes (11 U.S.C. § 1129(a)(10)).  The Plan complies fully with the requirements of section 1129(a)(10) of the Bankruptcy Code.  Specifically, as set

Americas 97908653 (2K)

forth in the Voting Certification, Class 2, Class 3, Class 4, Class 5, Class 6, and Class 7 have voted to accept the Plan.

II. Feasibility (11 U.S.C. § 1129(a)(11)). The Plan complies fully with the requirements of section 1129(a)(11) of the Bankruptcy Code. Based on the Record before the Bankruptcy Court, the Bankruptcy Court concludes that the Debtors will have sufficient means to meet all of their obligations under the Plan. The Record establishes that the Reorganized Debtor will emerge from bankruptcy as a viable, financially healthy entity, unlikely to be in need of further financial reorganization, and likely to be able to incrementally complete the Project.

JJ. Payment of Fees (11 U.S.C. § 1129(a)(12)). The Plan complies fully with the requirements of section 1129(a)(12) of the Bankruptcy Code. Section 14.1 of the Plan provides for the payment of all statutory fees (a) by the Debtors on or before the Effective Date and (b) by the Reorganized Debtor as the Disbursing Agent post-Effective Date. The Plan accordingly satisfies section 1129(a)(12) of the Bankruptcy Code.

KK. Miscellaneous Provisions (11 U.S.C. §§ 1129(a)(13)-(16)). Sections 1129(a)(13)-(16) are inapplicable as the Debtors (a) do not provide retiree benefits[9] (1129(a)(13)), (b) have no domestic support obligations (1129(a)(14)), (c) are not individuals (1129(a)(15)), and (d) are for-profit businesses (1129(a)(16)).

LL. Nonconsensual Confirmation (Cramdown) of Non-Accepting Classes (11 U.S.C. § 1129(b)). The Plan does not discriminate unfairly and is fair and equitable to each class of Claims or Equity Interests that has not accepted the Plan, specifically including Class 8 – Equity

---

[9] As defined in section 1114 of the Bankruptcy Code, "retiree benefits" means "payments to any entity or person for the purpose of providing or reimbursing payments for retired employees and their spouses and dependents, for medical, surgical, or hospital care benefits, or benefits in the event of sickness, accident, disability, or death under any plan, fund, or program (through the purchase of insurance or otherwise) maintained or established in whole or in part by the debtor prior to filing a petition commencing a case under [the Bankruptcy Code]." 11 U.S.C. § 1114(a).

Interests. Further, within their respective classes, there exists no unfair discrimination of any of the Holders of Claims or Equity Interests. Finally, the Plan does not violate the "absolute priority" rule contained in section 1129(b)(2).

MM.    Confirmation of Only One Plan (11 U.S.C. § 1129(c)).    The Plan (including previous versions thereof) is the only plan that has been filed in these Chapter 11 Cases which has been found to satisfy the requirements of subsections (a) and (b) of section 1129 of the Bankruptcy Code.    Accordingly, the requirements of section 1129(c) of the Bankruptcy Code have been satisfied.

NN.    Principal Purpose of Plan (11 U.S.C. § 1129(d)).    The Plan complies fully with the requirements of section 1129(d) of the Bankruptcy Code.    The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933 and no governmental unit has objected to the confirmation of the Plan on any such grounds.

OO.    Satisfaction of Confirmation Requirements.    The Plan satisfies all of the requirements for confirmation set forth in section 1129 of the Bankruptcy Code and should be confirmed.

PP.    Good Faith Solicitation (11 U.S.C. § 1125(e)).    Based on the record in the Chapter 11 Cases, the Debtors and each of their respective current or former officers, governors, members, employees, agents, attorneys, advisors, accountants, restructuring consultants, financial advisors and investment bankers have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all of their respective activities relating to the solicitation of acceptances to the Plan.

QQ.   <u>Plan Documents</u>.  The Plan Documents, as they may be amended as contemplated and permitted by the Plan, have been negotiated in good faith and are, in the judgment of the parties, necessary and appropriate to effectuate the Plan and the Bankruptcy Court so finds.

RR.   <u>Plan Consolidation</u>.  The consolidation of the Debtors for purposes of voting on the Plan, confirmation of the Plan, and making Plan Distributions is appropriate.  Furthermore, no Holder of a Claim or Equity Interest has objected or opposed such consolidation.

## ORDER

### Confirmation of the Plan

1.   Pursuant to section 1127 of the Bankruptcy Code, the Modifications are approved, and pursuant to section 1129 of the Bankruptcy Code, the Plan is hereby CONFIRMED.  Each of the Objections and reservation of rights to the Plan not otherwise withdrawn, resolved, or otherwise disposed of (including by the resolutions set forth in paragraphs 44, 60-63 of this Confirmation Order), are OVERRULED and denied.  All withdrawn Objections and reservation of rights are deemed withdrawn with prejudice.

2.   Notice of the Confirmation Hearing complied with (a) the terms of the Disclosure Statement Order, (b) the Bankruptcy Code, and (c) the Bankruptcy Rules; and was appropriate and satisfactory based on the circumstances of the Chapter 11 Cases.

3.   The following are hereby incorporated by reference into and are an integral part of this Confirmation Order: (a) the Plan, (b) the exhibits to the Plan, and (c) the Plan Documents (as may be amended or modified).  The failure to reference any particular Plan Document, any provision of a Plan Document, or the Plan in this Confirmation Order will have no effect on the Bankruptcy Court's approval and authorization of, or the validity, binding effect, or enforceability of, the Plan and the Plan Documents in their entirety, it being the intention of the

Americas 92906653 (2K)

Bankruptcy Court that all of their terms and provisions are approved, as if they are incorporated in this Confirmation Order.

**Compromises and Settlements Under the Plan**

4.    The settlements and compromises set forth in the Plan and this Confirmation Order are approved in all respects.

**Classification and Treatment**

5.    All Claims and Equity Interests shall be, and hereby are, classified and treated as set forth in the Plan. The Plan's classification scheme shall be, and hereby is, approved.

6.    The treatment of all Claims and Equity Interests as provided in the Plan and the Plan Documents shall be, and hereby is, approved.

**Administrative Claims**

7.    The Holder of an Administrative Claim other than (a) a Fee Claim, (b) a Claim for Statutory Fees, (c) a DIP Claim, (d) an Administrative Claim, or (e) a Claim under the Chippewa Cash Collateral Order that has been Allowed on or before the Effective Date, must file and serve on the Debtors, the Committee (if before the Effective Date), and the Office of the United States Trustee, notice of such Administrative Claim within forty-five (45) days after service of the Notice of the Effective Date.  The Notice of Effective Date shall include notice of the Administrative Bar Date.  Any and all Administrative Claims filed must include at a minimum (a) the name of the Holder of the Claim; (b) the amount of the Claim; and (c) the basis of the Claim.  **Failure to timely and properly file and serve a request for payment of an Administrative Claim shall result in such Administrative Claim not being entitled to any distribution under the Plan.**

8.    An Administrative Claim with respect to which notice has been properly filed and served pursuant to Section 5.2(a) of the Plan shall become an Allowed Administrative Claim if

26

no objection is filed on or before the later of (a) the date that is ninety (90) days after the Effective Date; and (b) such date as may be (i) agreed to by the Holder of such Administrative Claim, or (ii) approved by the Bankruptcy Court on motion of a party in interest, without notice or a hearing. If an objection is filed by the applicable objection deadline (or any extension thereof), the Administrative Claim shall become an Allowed Administrative Claim only to the extent allowed by Final Order.

9.      Each Professional Person who holds or asserts a Fee Claim shall be required to file with the Bankruptcy Court, and serve on all parties required to receive notice, a Fee Application within forty-five (45) days after the Effective Date. **The failure to file and serve such Fee Application timely and properly shall result in the Fee Claim not being entitled to any distribution under the Plan.** A Fee Claim in respect of which a Fee Application has been properly filed and served pursuant to Section 5.2(b) of the Plan shall become an Allowed Administrative Claim only to the extent allowed by order of the Bankruptcy Court.

### Enforceability of Plan and Plan Documents

10.      Pursuant to sections 1123(a), 1141(a) and 1142 of the Bankruptcy Code and the provisions of this Confirmation Order, the Plan and all Plan-related documents (including, but not limited to, the Plan Documents, as may be amended or modified) shall be, and hereby are, valid, binding and enforceable notwithstanding any otherwise applicable nonbankruptcy law. Each of the Plan Documents (to the extent not already approved by order of this Bankruptcy Court) is hereby approved, as amended hereafter from time to time. The Debtors may modify, amend, or enter into the Plan Documents, without further order of the Bankruptcy Court, in accordance with the provisions of the Plan. All Plan Documents shall be in the form and substance acceptable to the Plan Sponsor.

27

## Authorization to Implement the Plan

11.     Upon the entry of this Confirmation Order, the Debtors and the Litigation Trustees, as applicable, are authorized to take or cause to be taken all corporate actions necessary or appropriate to implement all provisions of, and to consummate, the Plan and to execute, enter into or otherwise make effective all documents arising in connection therewith, including, without limitation, the Plan Documents (as they may be amended or modified as permitted by the Plan), prior to, on and after the Effective Date.  All such actions taken or caused to be taken shall be, and hereby are, authorized and approved by the Bankruptcy Court such that no further approval, act or action need to be taken under any applicable law, order, rule or regulation.

12.     The governors of the Debtors are authorized and directed to do all things and to execute and deliver all agreements, documents, instruments, notices and certificates as are contemplated by the Plan and to take all necessary actions required in connection therewith, in the name of and on behalf of the Debtors.

13.     The approvals and authorizations specifically set forth in this Confirmation Order are not intended to limit the authority of the Debtors or any officer or governor thereof or the Litigation Trustees to take any and all actions necessary or appropriate to implement, effectuate, and consummate any and all documents or transactions contemplated by the Plan or this Confirmation Order.

14.     In furtherance of Section 7.1(d) of the Plan, the Debtors are authorized to enter into agreements with the Plan Sponsor (or ERPI), prior to the Effective Date, without further order of the Bankruptcy Court, to, among other things, save or share certain costs and capture synergies among businesses, *provided, however,* any such agreements shall be funded by Chippewa (or ERPI) and shall (i) not add to the cost of administering the Estates, or (ii) require

Americas 92906653 (2K)

reimbursement to the Estates of any expenditure by the Estates that is primarily for the benefit of the Plan Sponsor or ERPI.

## Cancellation of Instruments and Securities

15.    Upon the occurrence of the Effective Date, all Equity Interests in the Debtors and any other note, bond, indenture or other instrument, or document evidencing or creating any indebtedness or obligation of the Debtors, including, but not limited to, the Prepetition Credit Facilities, shall be deemed cancelled on the Effective Date.

## Transfers by Debtors; Revesting of Assets

16.    All transfers of property of the Estates, including without limitation, the distribution to Holders of Allowed Claims and Equity Interests to be made under Sections 4.1, 5.2, 5.3 of the Plan, (a) are or will be legal, valid, and effective transfers of property; (b) vest or will vest in the transferees with good title to such property free and clear of all Claims, interests, Liens, charges, or other encumbrances of any and every kind or nature whatsoever; (c) do not and will not constitute avoidable transfers under the Bankruptcy Code or under applicable law; (d) do not and will not subject the Reorganized Debtor to any liability by reason of such transfer under the Bankruptcy Code or under applicable nonbankruptcy law, including, without limitation, any laws affecting successor, transferee, or stamp and recording tax liability; and (e) are for good consideration and value. Pursuant to 11 U.S.C. § 1411(b) and (c), all property of the Debtors shall revest in the Reorganized Debtor or its successor or assign, free and clear of all Claims, interests, Liens, charges, and other encumbrances of any and every kind or nature whatsoever, except as expressly provided in the Plan. Such revesting does not constitute an avoidable transfer under the Bankruptcy Code or applicable nonbankruptcy law.

Americas 92908653 (2K)

17.     On and after the occurrence of the Effective Date, except as expressly provided in the Plan, the Reorganized Debtor may operate its business and may use, acquire, and dispose of its Assets free of any restrictions of the Bankruptcy Code.

18.     Notwithstanding the foregoing, all Transferred Causes of Action and the Litigation Trust Assets shall be transferred to the UC Litigation Trust and SC Litigation Trust as provided in the Plan on the Effective Date without the need for any further action or court order.

19.     The obligations of the Reorganized Debtor in connection with the Prepetition Lender Notes shall be secured by a junior lien in and upon substantially all of the assets of the Reorganized Debtor and ERPI, subject only to the liens granted pursuant to the Exit Facility Documents, the Prepetition Lien Trade Creditor Notes, and certain customary permitted liens and exceptions.  The Prepetition Lender Notes Documents (as may be amended or modified) shall be in form and substance reasonably acceptable to the Term Loan Lenders, Project Finance Lenders and Supplier Credit Lenders, and their acceptance thereof, or any comments thereto, shall not be unreasonably withheld, conditioned, or delayed.  The Bankruptcy Court shall adjudicate whether the Prepetition Lenders' acceptance of the Prepetition Lender Notes Documents, or any comments thereto, is being unreasonably withheld, conditioned, or delayed in the event of a dispute with respect thereto.

20.     The obligations of the Reorganized Debtor in connection with the Prepetition Lien Trade Creditor Notes shall be secured by assets to be determined at or after the Confirmation Hearing.

### Plan Distributions

21.     The Disbursing Agent shall make all Plan Distributions, except that payments made to Litigation Trust Beneficiaries from the Litigation Trusts shall be made by the Litigation Trustees in accordance with the Litigation Trust Agreements, and such distributions shall be in

Americas 92908653 (2K)

accordance with the Plan and Plan Documents. For federal income tax purposes, *except* to the extent a Plan Distribution is made in connection with reinstatement of an obligation pursuant to section 1124 of the Bankruptcy Code, a Plan Distribution will be allocated first to the principal amount of a Claim and then, to the extent the Plan Distribution exceeds the principal amount of the Claim, to the portion of the Claim representing accrued but unpaid interest. Except as otherwise provided herein, Plan Distributions shall be made to the Holders of Allowed Claims as reflected in the registry of claims maintained by the Claims Agent on the Effective Date.

22.     The Disbursing Agent and the Litigation Trustees shall only recognize a transfer of a Claim after the Effective Date that complies with Bankruptcy Rule 3001(e).

23.     Interest accrued after the Petition Date will accrue and be paid on Claims only to the extent specifically provided for in the Plan, this Confirmation Order, or as otherwise required by this Bankruptcy Court or by applicable law. No award or reimbursement of attorneys' fees or related expenses or disbursements shall be allowed on, or in connection with, any Claim, except as expressly set forth in the Plan or as ordered by this Bankruptcy Court.

24.     Each Plan Distribution shall be made on the relevant Plan Distribution Date therefor and shall be deemed to have been timely made if made on such date or within twenty (20) days thereafter.

25.     Proof of Claim Number 116, as amended, filed by Wilmington Trust, National Association as Security Agent under the ICA shall be treated as an Other Secured Claim and shall receive treatment pursuant to Section 4.1(f)(i) of the Plan.

26.     Allowed Other Secured Claims that arise from enforceable warehouseman's liens shall receive treatment pursuant to Section 4.1(f)(i) of the Plan.

Americas 92908663 (2K)

27.    Proof of Claim Number 93, filed by Machinewell, Inc., is an Allowed Mechanic's Lien Claim in the amount of $496,568.09, which shall receive treatment pursuant to Section 4.1(e)(i)(A) of the Plan.

28.    Claudius Peters (Americas) Inc.'s Amended Proof of Claim Number 129 (which amended and superseded Proof of Claim Number 11) shall be deemed Allowed in the agreed amount of $185,000.00, in full satisfaction of its Amended Proof of Claim Number 129. Such claim shall be paid in full in cash on the Effective Date of the Plan. Furthermore, Claudius Peters (Americas) Inc. shall retain its lien, which shall remain effective and enforceable until such time as the Allowed Claim is paid in full in Cash on the Effective Date.

29.    For the avoidance of doubt, notwithstanding anything in this Confirmation Order or the Plan, under no circumstance will the Reorganized Debtor or the Disbursing Agent have to issue, surrender, or pay any Plan Distributions that are different in type or in excess of the Plan Distributions provided for in Section 4.1 of the Plan.

### Administration of the Litigation Trusts

30.    The Litigation Trust Agreements, substantially in the forms filed as Plan Documents (as may be amended or modified), are hereby approved. Any material amendments or modifications to the SC Litigation Trust Agreement (as may be amended or modified) shall be in form and substance acceptable to each of the Term Loan Lenders, Project Finance Lenders and Supplier Credit Lenders.

31.    The Litigation Trustees shall be compensated in the manner set forth in and consistent with their respective Litigation Trustee Agreements. The Litigation Trustees shall have all powers, rights, duties and protections afforded the Litigation Trustees under the Plan and their respective Litigation Trust Agreements.

Americas 92008653 (2K)

32.     On and after the Effective Date, in furtherance of and consistent with the purpose of their respective Litigation Trusts and the Plan, and in each case subject to all terms and conditions of the Litigation Trust Agreements, the Litigation Trustees shall be authorized to (a) invest the respective Litigation Trust Assets, withdraw funds from their respective Litigation Trusts, make distributions, incur obligations for reasonable and necessary expenses of liquidating and converting their respective Litigation Trust Assets to Cash, and pay taxes and other obligations owed by such Litigation Trust from funds held by such Litigation Trustee in accordance with the Plan; (b) engage professionals and service providers to assist such Litigation Trustee with respect to its responsibilities; (c) evaluate and determine strategy with respect to the Transferred Causes of Action and the objections to Trust Claims, and to prosecute, compromise, transfer, release, abandon, and/or settle the Transferred Causes of Action and the objections to Trust Claims on behalf of their respective Litigation Trusts; (d) liquidate any remaining Litigation Trust Assets of their respective Litigations Trusts, and provide for the distributions therefrom in accordance with the provisions of the Plan; (e) interpret the provisions of the Plan relating to their respective Litigation Trusts in such Litigation Trustee's reasonable discretion; (f) obtain insurance, as necessary; (g) obtain financing, as necessary; (h) establish reserves to fund ongoing litigation; (i) purchase assignments of Claims; (j) enter into joint prosecution agreements providing for allocation of expenses and proceeds; (k) maintain an office; (l) investigate, prosecute, compromise, and/or settle any Causes of Action related to or against Cliffs Natural Resources Inc. with respect to the SC Litigation Trust or any other party against which the Debtors have a claim or Cause of Action; (m) otherwise administer their respective Litigation Trust; and (n) exercise such other powers and authority as may be vested in or

Americas 92008653 t2K1

assumed by such Litigation Trustee by any Final Order, or as may be necessary and proper to carry out the provisions of the Plan relating to their respective Litigation Trust.

33.    The Litigation Trustees shall be responsible for all decisions and duties with respect to their respective Litigation Trust and its assets. In all circumstances, the Litigation Trustees shall act in the best interests of all beneficiaries and in furtherance of the purpose of their respective Litigation Trust.

### Vesting of Assets in the Litigation Trusts

34.    On the Effective Date, the Litigation Trusts will be created pursuant to their respective Litigation Trust Agreements. In accordance with section 1141 of the Bankruptcy Code, all of the Litigation Trust Assets, as well as the rights and powers of the Estates applicable to the Litigation Trust Assets, shall automatically vest in their respective Litigation Trusts, free and clear of all Claims and interests, for the benefit of their respective Litigation Trust Beneficiaries.

### Executory Contracts and Unexpired Leases

35.    Except as otherwise provided for in the Plan, on the Effective Date, each executory contract and unexpired lease that is not or was not (a) a Mineral and Surface Lease; (b) the subject of a separate motion to reject or assume filed pursuant to section 365 of the Bankruptcy Code by the Debtors before the entry of this Confirmation Order; (c) assumed by order of the Bankruptcy Court entered before the Effective Date and not subsequently rejected pursuant to an order of the Bankruptcy Court; (d) listed on Exhibit B hereto and any subsequently filed "Schedule of Assumed Executory Contracts and Unexpired Leases" to be filed by the Debtors with the Bankruptcy Court before the Effective Date; (e) a guaranty or similar agreement executed by a third party which guarantees repayment or performance of an obligation owed to the Debtors or to indemnify the Debtors; (f) with third parties regarding

34

preservation of the confidentiality of documents produced by the Debtors; or (g) to the extent it is executory, other than master development agreements, an agreement embodied in development orders, city and/or county ordinances, zoning approvals, permits and/or other related documents or any other official action of a governmental unit, quasi-governmental unit, and/or utility granting certain development rights, property interests and/or entitlements to the Debtors, is rejected as of the Effective Date.  The rejection of any executory contract or unexpired lease rejected postconfirmation shall constitute a prepetition breach under sections 365(g) and 502(g) of the Bankruptcy Code as if such rejection was effected preconfirmation; *provided, however,* that the rejection of any executory contract or unexpired lease previously breached by the non-Debtor party to the contract or lease will not create a counterclaim or defense of any kind, including a right of setoff, against the Debtors, nor shall it impair the Reorganized Debtor's right to pursue a damage claim against the non-Debtor counterparty on account of such breach.

36.     All master development agreements with any governmental unit or quasi-governmental unit are rejected effective as of the Effective Date.

37.     Notice of the Confirmation Order to contract counterparties of executory contracts or unexpired leases rejected hereby constitutes adequate and sufficient notice that (a) any Claims arising thereunder or related thereto shall be treated as Unsecured Claims under the Plan, and (b) the Debtors are no longer bound by, or otherwise obligated to perform, any such obligations, transactions or undertakings relating thereto or arising thereunder.

38.     Claims created by the rejection of executory contracts and unexpired leases or the expiration or termination of any executory contract or unexpired lease must be filed with the Bankruptcy Court and served on the Debtors (a) in the case of an executory contract or unexpired

Americas 92908653 (2K)

lease rejected by the Debtors prior to the Confirmation Date, in accordance with the Bar Date Notice; (b) in the case of an executory contract or unexpired lease that was rejected by the Debtors prior to the Effective Date or that was terminated or expired by its terms prior to the Effective Date, no later than thirty (30) days after the Effective Date (the "**Rejection Claim Bar Date**"); or (c) in the case of an executory contract or unexpired lease that is rejected pursuant to Section 12.1 of the Plan, no later than the Rejection Claim Bar Date. Any such Claims for which a proof of claim is not filed and served by the deadlines set forth in the Bar Date Notice or the Rejection Claim Bar Date, as applicable, will be forever barred from assertion and shall not be enforceable against the Debtors or the Estates. Unless otherwise ordered by the Bankruptcy Court, all such Claims that are timely filed as provided herein shall be treated as Unsecured Claims under the Plan subject to objection by a Litigation Trustee. The Notice of Effective Date shall include notice of the Rejection Claim Bar Date.

39. Subject to paragraph 44 herein, all of the executory contracts and unexpired leases included in Exhibit B hereto or any subsequently filed "Schedule of Assumed Executory Contracts and Unexpired Leases" or as otherwise designated as being assumed in the Plan, other than the GPIOP Mineral Lease, are hereby assumed, which assumption shall be effective on, and conditioned on the occurrence of, the Effective Date. The Debtors have provided adequate assurance of future performance for each of the assumed executory contracts and unexpired leases that are being assumed by the Reorganized Debtor pursuant to the Plan. The Debtors have also cured or provided adequate assurance that the Reorganized Debtor will cure defaults (if any) under or relating to each of the executory contracts and unexpired leases that are being assumed by the Reorganized Debtor pursuant to the Plan.

Americas 92908653 (2K)

40.     Assumption of each executory contract and unexpired lease that is designated to be assumed as set forth in the Plan and for which no timely objection was filed as required by Section 12.1(d) is approved pursuant to sections 365 of the Bankruptcy Code, and any objections to such assumption are hereby deemed waived in all respects.

41.     At the election of the Debtors, any monetary defaults under each executory contract and unexpired lease to be assumed under the Plan shall be satisfied pursuant to section 365(b)(1) of the Bankruptcy Code: (a) by payment of the default amount in Cash on the Effective Date or as soon thereafter as practicable; or (b) on such other terms as agreed to by the parties to such executory contract or unexpired lease.

42.     Exhibit B and any subsequently filed "Schedule of Assumed Executory Contracts and Unexpired Leases" set forth the Debtors' cure obligations for each agreement for which a cure obligation must be satisfied as a condition to the assumption of such agreement. The cure obligation set forth on Exhibit B and any subsequently filed "Schedule of Assumed Executory Contracts and Unexpired Leases" shall be binding on the non-Debtor counterparty, and the non-Debtor counterparty shall be deemed to have waived any and all objections to the assumption of the relevant agreement or cure amount as proposed by the Debtors.

43.     Subject to paragraph 44 herein, prior to the Effective Date, the Bankruptcy Court or the Debtors and the lessors of the Mineral and Surface Leases will determine the amount of any cure payments under the Mineral and Surface Leases. Within five (5) days after this Confirmation Order becomes a Final Order, the Plan Sponsor shall post (a) a $1 million letter of credit, escrow, or similar financial guarantee such as a surety bond to secure the payment of any cure amounts due and owing under the Mineral and Surface Leases, other than the DNR Leases (the "**Non-DNR Guarantee**"). Any requirement in the Plan to post or provide a letter of credit,

Americas 92908653 12K3

escrow, or similar financial guarantee such as a surety bond for the benefit of the DNR is void as superseded in its entirety by the DNR Settlement Agreement (as defined below). All deposits, letters of credit, escrows, or similar financial guarantees such as surety bonds that are issued, placed or caused to be issued or placed by Chippewa shall be released, cancelled and returned to Chippewa in the event the Effective Date does not occur.

      44.    The DNR Settlement.

      (i)    Subject to Definitive Documentation (as defined below) and the approval of the Executive Council of the State of Minnesota, the Debtors, Chippewa, and the DNR have reached an agreement in principle resolving the DNR Objection (the "**DNR Settlement Agreement**") upon the terms reflected under the term sheet attached hereto as **Exhibit A** and other documentation. The DNR Settlement Agreement is hereby approved by the Court.

      (ii)    Upon execution of definitive documentation of the DNR Settlement Agreement and all other necessary and appropriate documentation (including a master amendment to the DNR Leases and the Itasca County royalty agreement) (the "**Definitive Documentation**"), the Debtors shall file a proposed implementation order attaching the Definitive Documentation by certification of counsel; *provided, however*, that if by June 21, 2017 (or such later date the Debtors, Chippewa, and the DNR agree to), the Executive Council of the State of Minnesota has not approved the Definitive Documentation or the Debtors, Chippewa, and the DNR are unable to agree on the Definitive Documentation, the Bankruptcy Court shall schedule a hearing on less than one week's notice to adjudicate any disputes related to the assumption of the DNR Leases (including the issues raised in the DNR Objection) (the "**DNR Hearing**"), and the DNR consents to an extension of time to assume or reject the DNR Leases under section 365(d)(4) of the Bankruptcy Code until the later of (a) entry of the

38

implementation order attaching the Definitive Documentation, or (b) final order of the Bankruptcy Court resolving any disputes related to the assumption or rejection of the DNR Leases.

       (iii)    The letter of credit posted by Chippewa pursuant to the DNR Settlement Agreement shall remain undrawn, and shall be cancelled and the $4 million released to Chippewa, prior to any DNR Hearing; *provided*, *however*, that this subparagraph shall be null and void in the event the implementation order attaching the Definitive Documentation is entered prior to the DNR Hearing.

45.    If the Effective Date does not occur within six (6) months after the Confirmation Date, (a) the lessors may draw and/or apply the entire Non-DNR Guarantee, as applicable, as liquidated damages and (b) absent prior written consent to other treatment by a lessor regarding the Mineral and Surface Leases, other than the DNR Leases, to which they are a party, such Mineral and Surface Leases shall be deemed rejected and the Debtors will immediately surrender such leases.

46.    Pursuant to the Plan, the Algoma Offtake Agreement is rejected. Nothing in paragraph 35 herein or in subsection 12.1 of the Plan shall preclude or otherwise impair a claim asserted by Algoma in connection with the rejection of the Algoma Offtake Agreement or any other asserted breach of the Algoma Offtake Agreement by the Debtors, and Algoma shall retain any and all claims, counterclaims, and defenses (including setoff rights) in respect thereof, and the Debtors, creditors, and other parties in interest (including the SC Litigation Trust and the UC Litigation Trust) shall retain the right to assert any and all Causes of Action, claims, counterclaims and defenses in response thereto.

Americas 92908653 (2K)

**Releases and Exculpations**

47.     The exculpations set forth in Section 14.5 of the Plan are incorporated herein by reference and shall be, and hereby are, approved, and shall be effective without further action upon the occurrence of the Effective Date.  None of the Debtors, the Reorganized Debtor, the Committee, or any of their respective officers, governors, employees, Professional Persons, or successors and assigns will have or incur any liability to any Person for any act or omission in connection with, arising out of, or relating to the Chapter 11 Cases, the pursuit of confirmation of the Plan, the consummation of the Plan, or the implementation or administration of the Plan or the property to be distributed under the Plan, except for willful misconduct, gross negligence, or fraud as finally determined by the Bankruptcy Court, and, in all respects shall be entitled to rely upon the advice of counsel and all information provided by other exculpated persons herein without any duty to investigate the veracity or accuracy of such information with respect to their duties and responsibilities under the Plan.  The exculpation in Section 14.5 of the Plan shall only be applicable to any prepetition officers, directors, governors, or employees of the Debtors or the Reorganized Debtor who are employed by the Debtors as of the Confirmation Date.

48.     The releases set forth in Section 7.6 of the Plan are incorporated herein by reference and shall be, and hereby are, approved, and shall be effective without further action upon the occurrence of the Effective Date.  **For the avoidance of doubt, nothing in the Plan or the Confirmation Order, including sections 14.6, 14.7, and 14.22 of the Plan, shall operate as a release of, or impair in any way, any claim or judgment by any party against any of the Debtors' affiliates and/or related non-debtor entities, including, without limitation, Essar Global Fund Limited or any of its affiliates, including claims or judgments predicated upon guarantees of claims against the Debtors.  Furthermore, the discharge and release of the Debtors in the Plan and the Confirmation Order shall not impair any party**

40

from enforcing any and all guarantees of the Debtors' obligations by any non-debtor affiliates.

49.    All liens on non-Debtor assets held by Holders of Mechanic's Lien Claims are hereby released.

### Dissolution of Holdings

50.    Holdings shall dissolve on the Effective Date or as soon as practicable thereafter, without further court order. The Reorganized Debtor shall be authorized to take all necessary actions that may be necessary or appropriate to dissolve Holdings as required by applicable nonbankruptcy law.

### Retention of Jurisdiction

51.    Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall retain and shall have exclusive jurisdiction over any matter: (a) arising under the Bankruptcy Code; (b) arising in or related to the Chapter 11 Cases or the Plan; or (c) that relates to any of the matters set forth in Article XIII of the Plan.

### Effect of Confirmation

52.    The rights afforded in the Plan and the treatment of all Claims and Equity Interests therein shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Equity Interests of any nature whatsoever, including any accrued postpetition interest, against the Debtors and the Debtors in Possession, or any of their Estates, Assets, properties, or interests in property.    Except as otherwise provided in the Plan or this Confirmation Order, on the Effective Date, all Claims against and Equity Interests in the Debtors and the Debtors in Possession, or any of their Estates, Assets, properties, or interests in property shall be satisfied, discharged, and released in full.    Neither the Debtors nor their Estates nor the Reorganized Debtor shall be responsible for any pre-Effective Date obligations of the Debtors or

the Debtors in Possession.  Except as otherwise provided in the Plan or this Confirmation Order, all Persons shall be precluded and forever barred from asserting against the Debtors or the Reorganized Debtor, their respective successors or assigns, or their Estates, Assets, properties, or interests in property any event, occurrence, condition, thing, or other or further Claims or Causes of Action based upon any act, omission, transaction, or other activity of any kind or nature that occurred or came into existence prior to the Effective Date, whether or not the facts of or legal bases therefor were known or existed prior to the Effective Date.

53.    Except as otherwise provided in the Plan or this Confirmation Order, on the Effective Date, without further notice or order, all Claims of any nature whatsoever shall be automatically discharged forever.  Except as otherwise provided in the Plan or this Confirmation Order, on the Effective Date, the Assets, the Debtors, their Estates, and all successors thereto shall be deemed fully discharged and released from any and all Claims, including, but not limited to, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), and 502(i) of the Bankruptcy Code, whether or not (a) a proof of claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code; (b) a Claim based upon such debt is allowed under section 502 of the Bankruptcy Code; or (c) the Holder of a Claim based upon such debt has accepted the Plan.  This Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtors, their Estates, and all successors thereto.  As provided in section 524 of the Bankruptcy Code, such discharge shall void any judgment against the Assets, the Debtors, their Estates, or any successor thereto at any time obtained to the extent it relates to a discharged Claim, and operates as an injunction against the prosecution of any action against the Assets, the Debtors, their Estates, or property of the Debtors to the extent it relates to a discharged Claim.

Americas 92908663 (2K)

54.     Except as otherwise provided in the Plan, upon the occurrence of the Effective Date, the Debtors shall be discharged from all Claims and Causes of Action to the fullest extent permitted by section 1141 of the Bankruptcy Code, and all Holders of Claims and Equity Interests shall be precluded from asserting against the Debtors, the Reorganized Debtor, the Assets, or any property dealt with under the Plan, any further Claim or other Cause of Action based upon any act or omission, transaction, event, thing, or other activity of any kind or nature that occurred or came into existence prior to the Effective Date.

55.     Pursuant to section 1146 of the Bankruptcy Code, the issuance, transfer or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust, lien, pledge or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.   This Bankruptcy Court may enter any order necessary or appropriate to implement this paragraph or Section 14.13 of the Plan.

<h3 align="center">Injunctions</h3>

56.     **On the Effective Date and *except* as otherwise provided herein, all Persons who have been, are, or may be Holders of Claims against or Equity Interests in the Debtors shall be permanently enjoined from taking any of the following actions against or affecting (i) the Debtors, the Estates, the Litigation Trustees, the Reorganized Debtor, the Plan Sponsor, ERPI, the Investors, the Committee, or any of their successors and assigns, or their respective assets and property with respect to such Claims or Equity Interests (except for actions brought to enforce any rights or obligations under the Plan); or (ii) in respect of any of the Causes of Action released pursuant to the Plan:**

Americas 92908653 12K3

(i)        commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (*including* all suits, actions and proceedings that are pending as of the Effective Date, which must be withdrawn or dismissed with prejudice);

(ii)        enforcing, levying, attaching, collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order;

(iii)        creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any lien or encumbrance; and

(iv)        asserting any setoff or right of subrogation of any kind; *provided*, that any defenses, offsets or counterclaims which the Debtors and the Litigation Trustees may have or assert in respect of the above referenced Claims are fully preserved in accordance with Section 14.18 of the Plan.

57.    Notwithstanding anything to the contrary contained in the Plan, no Insider or other Person that is a current or former employee of the Debtors shall be released from any obligation that may be due and owing thereby to the IRS as a result of the IRS's Claims against the Debtors; *provided*, *however*, so long as the Debtors are in substantial compliance with the payment of Allowed Tax Claims held by the IRS as set forth in Section 5.3 of the Plan, the IRS shall be enjoined from pursuing any such Insider or Person for payment of its Claims against the Debtors.

58.    For the avoidance of doubt, the releases, exculpations, and injunctions in Sections 14.5 and 14.22 of the Plan include all Claims, Causes of Action, rights of subrogation, contribution or indemnification, interests, obligations, other rights, suits,

Americas 92908653 (2K)

damages, defenses, remedies, and liabilities whatsoever that any Holder could assert in respect of Claims, Causes of Action, rights of subrogation, contribution or indemnification, interests, obligations, other rights, suits, damages, defenses, remedies, and liabilities asserted or that could be asserted against a Holder prior to the Effective Date.

59.     **Notwithstanding anything to the contrary herein or in the Plan, for the avoidance of doubt, the Debtors' affiliates are excluded from all releases, exculpations, and injunctions in the Plan and this Confirmation Order, including, but not limited to, as provided in Sections 14.5 and 14.22 of the Plan.**

**Resolution of Objections**

60.     Notwithstanding anything in the Plan or this Confirmation Order to the contrary, pursuant to the Certification of Counsel filed on April 24, 2017 [D.I. 917] and the related order entered by this Bankruptcy Court [D.I. 924], the deadline to assume the GPIOP Mineral Lease was extended to June 30, 2017.  For the avoidance of doubt, the Plan shall not operate as a motion to assume the GPIOP Mineral Lease and the GPIOP Mineral Lease shall not be rejected under any provision of the Plan or this Confirmation Order.  On April 25, 2017, GPIOP withdrew its objection [D.I. 927].

61.     Iowa Trenchless shall be included on Schedule 4 to the Disclosure Statement, and shall receive treatment pursuant to Section 4.1(e)(1)(A) of the Plan.

62.     The forms of Post-Emergence Trade Agreements agreed to between (a) the Debtors and River Consulting and (b) the Debtors and Iowa Trenchless are hereby approved. The objections of River Consulting and Iowa Trenchless have been resolved thereby.

63.     The resolution to the DNR Objection is provided in paragraph 44 above.

Americas 92908653 (2K)

64.     Nothing in the Plan or this Confirmation Order shall or shall be deemed to preclude *Great Lakes Gas Transmission Limited Partnership* from asserting that is has a valid right of setoff under section 553 of the Bankruptcy Code and/or recoupment with respect to the amount awarded by the Honorable Susan Richard Nelson in connection with the Order, dated May 26, 2017, in Case No. 09-cv-3037 pending in the United States District Court for the District of Minnesota, but only to the extent of the Allowed amount subject to setoff as provided in section 506(a) of the Bankruptcy Code; provided, further, that (i) any party in interest in the Chapter 11 Cases (including the SC Litigation Trustee and the UC Litigation Trustee) may oppose any asserted setoff and/or recoupment claim; and (ii) any setoff and/or recoupment claim asserted by *Great Lakes Gas Transmission Limited Partnership* shall be heard and decided by the Bankruptcy Court.

65.     The foregoing language resolves the limited objection filed by Great Lakes Gas Transmission Limited Partnership on June 12, 2017 [D.I. 1019].

## Miscellaneous Provisions

66.     New Membership Interests will be issued without registration under the Securities Act of 1933 or any similar laws, rules or regulations pursuant to section 1145 of the Bankruptcy Code and are exempt from such laws, rules, or regulations to the maximum extent permitted by law.

67.     The provisions of the Plan and this Confirmation Order, including the findings of fact and conclusions of law set forth herein, are each nonseverable and mutually dependent.

68.     The treatment of Claims and Equity Interests set forth in the Plan is in full and complete satisfaction of the legal, contractual, and equitable rights that each Person holding a Claim or an Equity Interest may have against or in the Debtors, the Estates, or the Assets.  This

Americas 92008653 (2K)

treatment supersedes and replaces any agreements or rights those Persons may have in or against the Debtors, the Estates, or the Assets.

69.     In accordance with section 1142 of the Bankruptcy Code, the Debtors and the Reorganized Debtor shall be, and hereby are, authorized and empowered to issue, execute, deliver, file, and record any document whether or not such document is specifically referred to in the Plan, the Plan Documents, or any exhibit thereto, and to take any action necessary or appropriate to consummate this Confirmation Order, the Plan and all transactions and agreements therein (including recordings to release liens, claims, encumbrances, or interests) in accordance with its terms without further notice to or action, order, or approval of the Bankruptcy Court or any other Person.

70.     The Reorganized Debtor, its successors or assigns, and their respective properties (including the Assets) shall not, as a result of confirmation or consummation of the Plan or related transactions, (a) be or be deemed to be a successor to the Debtors or the Estates, (b) have or be deemed to have, de facto or otherwise, merged, or consolidated with or into the Debtors or the Estates; or (c) be or be deemed to be a continuation or substantial continuation of the Debtors, the Estates, or any enterprise of the Debtors.

71.     The Debtors are authorized to consummate the Plan at any time after the entry of this Confirmation Order, subject to the satisfaction or waiver of the conditions precedent to the Effective Date.   On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code.  If any or all of the provisions of this Confirmation Order are hereafter reversed, modified, or vacated by subsequent order of this Bankruptcy Court or any other court, such reversal, modification, or vacatur shall not affect the validity of the acts or obligations incurred or undertaken pursuant to, or in

47

Americas 92008663 (2K)

connection with the Plan prior to the Debtors' receipt of written notice of such order. Notwithstanding any such reversal, modification, or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, the Confirmation Order prior to the effective date of such reversal, modification, or vacatur shall be governed in all respects by the provisions of the Confirmation Order and the Plan and all related documents or any amendments or modifications thereto.

72.     The stay in effect in the Chapter 11 Cases pursuant to section 362(a) of the Bankruptcy Code shall continue to be in effect until the Effective Date, and at that time shall be dissolved and of no further force or effect, subject to the injunctions set forth in this Confirmation Order, Section 14.22 of the Plan and/or sections 524 and 1141 of the Bankruptcy Code; *provided, however*, that nothing herein shall bar the taking of such actions by the Debtors and the Committee as are necessary to effectuate the transactions contemplated by the Plan or by this Confirmation Order prior to the Effective Date.

73.     During the period from the Confirmation Date through and until the Effective Date, the Debtors shall continue to operate their businesses as debtors-in-possession, subject to the oversight of the Bankruptcy Court as provided in the Bankruptcy Code, the Bankruptcy Rules and all orders of the Bankruptcy Court that are then in full force and effect.

74.     Except with respect to the treatment of any Claim, nothing in the Plan or this Confirmation Order shall be construed to modify, discharge, alter, amend or impair the terms of, or rights under or reserved in, any stipulation or agreement (including any reservations of rights contained therein) between the Debtors and any party in interest that has been approved by a Final Order (each a "**Settlement Agreement**"). Nothing in the Plan or this Confirmation Order creates jurisdiction in the Bankruptcy Court that the Bankruptcy Court otherwise would not have

Americas 92908653 (2K)

over any such rights under or reserved in any Settlement Agreement.

75. Upon the Effective Date, the Committee shall dissolve automatically, whereupon its members, professionals, and agents shall be released from any further duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code, except with respect to (a) applications for Fee Claims or reimbursement of expenses incurred as a member of the Committee and (b) any motions or other actions seeking enforcement or implementation of the provisions of the Plan or the Confirmation Order or pending appeals of orders entered in the Chapter 11 Cases.

76. In accordance with Section 14.14 of the Plan, the Debtors will serve and publish notice of the entry of this Confirmation Order within 15 days of the occurrence of the Effective Date in the *Hibbing Daily Tribune*.

77. To the extent that any provisions of this Confirmation Order may be inconsistent with the terms of the Plan or any Plan Documents, the terms of this Confirmation Order shall be controlling, binding, and conclusive.

78. Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 6006(d) and 7062, to the extent applicable, the Bankruptcy Court finds that there is no reason for delay in the implementation of this Confirmation Order and, thus, this Confirmation Order shall be effective and enforceable immediately upon entry. The period in which an appeal of this Confirmation Order must be filed shall commence upon the entry hereof.

Dated: Wilmington, Delaware
      June 13, 2017

                                 UNITED STATES BANKRUPTCY JUDGE

Americas 92908653 (2K)